*IN THE UNITED STATES DISTRICT COURT*
*FOR THE DISTRICT OF MARYLAND*

| | | |
|---|---|---|
| PRACTICEWORKS, INC., et al., | ) | |
| | ) | Civil Action No. |
| Plaintiffs/Counter-defendants, | ) | JFM 02 CV 1205 |
| | ) | |
| v. | ) | |
| | ) | |
| PROFESSIONAL SOFTWARE SOLUTIONS | ) | |
| OF ILLINOIS, INC., | ) | |
| | ) | |
| Defendant/Counter-Plaintiff. | ) | |

_____

| | | |
|---|---|---|
| PRACTICEWORKS, INC., et al., | ) | |
| | ) | Civil Action No. |
| Plaintiffs/Counter-defendants, | ) | JFM 02 CV 1206 |
| | ) | |
| v. | ) | |
| | ) | |
| DENTAL MEDICAL AUTOMATION, INC., | ) | |
| | ) | |
| Defendant/Counter-Plaintiff. | ) | |

**DEFENDANTS' JOINT OPPOSITION TO PLAINTIFFS/COUNTER-
DEFENDANTS' MOTION FOR ATTORNEYS FEES AND COSTS**

LAW OFFICES OF MARK E. WIEMELT, P.C.
10 S. LaSalle St., Ste. 3300
Chicago, Illinois  60603

OBER, KALER, GRIMES & SHRIVER
120 E. Baltimore Street
Baltimore, MD 21202-1643

Counsel for Defendants
Dental Medical Automation, Inc. and Professional Software Solutions, of Illinois, Inc.

Defendants/Counter-Plaintiffs (hereinafter "Defendants"), DENTAL MEDICAL

AUTOMATION, INC. and PROFESSIONAL SOFTWARE SOLUTIONS OF

ILLINOIS, INC., by and through their attorneys, LAW OFFICES OF MARK E.

WIEMELT, P.C. and OBER, KALER, GRIMES & SHRIVER, submit this Joint

Opposition to Plaintiffs/Counter-Defendants (hereinafter "Plaintiffs) Motion to Enforce

the Court's Decision and Judgment Against Defendants for Attorneys Fees and Costs

(hereinafter "Motion for Attorneys Fees).

Plaintiffs failed to meet their burden to establish reasonable attorneys fees and this

Court should deny Plaintiffs' Motion for failing to meet its burden or at the very least use

its discretion to reduce any award of attorneys fees and costs to a reasonable amount.

Alternatively, Defendants respectfully request focused discovery relating to

Plaintiffs' attorneys fees.  Specifically, Defendants respectfully request that Plaintiffs

produce un-redacted, detailed, contemporaneous billing records and submit their reasons

why these bills are reasonable, carefully calculated, and conscientiously measured in light

of Plaintiffs' heavy obligation to present well-documented claims.

## I.    INTRODUCTION

Plaintiffs served their Motion for Attorneys Fees on January 17, 2003.  After

numerous requests by Defendants for documentation supporting Plaintiffs' outrageously

excessive request for attorneys fees and costs in the amount of $620,684.28, Plaintiffs

reluctantly provided Defendants with copies of billing records which had been redacted

to the extent that they are nearly useless for purposes of establishing the suitability and

reasonableness of the requested fees and costs.  (Wiemelt Affidavit ¶2).

1

Notwithstanding the absence of well-documented claims or any credible justification for the outrageously excessive demand for fees and costs and directly contrary to Plaintiffs' claim that it is Defendants' "intransigent refusal to afford any value to the legal services rendered to Plaintiff" that precipitated the continuing fee dispute, Defendants offered to settle all of the remaining issues in both of the cases, including the payment of a net sum to Plaintiffs of $50,000.00 (inclusive of attorneys fees and costs), a waiver of Defendants' appellate rights, and dismissal with prejudice of Defendants' Counterclaims, including Defendants claims for compensatory damages, attorneys fees and costs, provided that Plaintiffs drop their harassing position regarding whether Defendants can continue to provide support and services to customers. (Wiemelt Affidavit ¶3).  Unfortunately, Plaintiffs took the position that the entire $620,684.28 was warranted despite the absence of well-documented claims and filed their Memorandum in support of their Motion for Attorneys Fees on March 25, 2003, pushing the envelope of outrageously excessive claims to a new limit by increasing their demand to $712,243.98.[1] Although Plaintiffs provided very broad and vague billing summaries for the first time with their Memorandum, the lack of sufficiently detailed information for either the Court or the Defendants to verify these summaries worries Defendants.

Plaintiffs' continued failure and refusal to provide reasonable, carefully calculated, and conscientiously measured claims fails to meet their burden of proving that their requested fees and costs are reasonable.  Plaintiffs position that the total amount of attorneys fees and costs allegedly expended is necessarily the reasonable amount of attorneys fees and costs is erroneous, *see Copeland v. Marshall*, 641 F.2d 880, 891 D.C.

---

[1] Footnote 1 of Plaintiffs' Memo. suggests that the excessively outrageous claims for attorneys fees and costs have not yet reached their limit.

Cir. 1980), and this Court has the discretion to deny the outrageously excessive attorneys

fee petition, *see Brown v. Stackler*, 612 F.2d 1057, 1059 (7th Cir. 1980), or at the very

least reduce the amount of attorneys fees to an amount that this Court deems reasonable,

*see CoStar Group, Inc. v. Loopnet, Inc.*, 106 F.Supp. 2d 780, 788 (Dist. Md. 2000).

Alternatively, Defendants respectfully request focused discovery relating to

Plaintiffs' attorneys fees. *National Assoc. of Concerned Veterans v. Secretary of

Defense*, 675 F.2d 1319, 1329 (D.C. Cir. 1982).

## II.    PLAINTIFFS FAILED TO MEET THEIR BURDEN OF DEMONSTRATING ENTITLEMENT TO THE REQUESTED ATTORNEYS FEES AND COSTS

Plaintiffs' Motion and Memorandum is little more than a compilation of the total

number of hours allegedly expended by numerous attorneys and paraprofessionals on

these matters multiplied by their respective billing rates. Such an exercise is manifestly

inadequate and it is within this Court's power to deny Plaintiffs' fees and costs request

entirely. *See*, *e.g.*, *Brown*, 612 F.2d at 1059. Alternatively, it is within this Court's

power to reduce Plaintiffs' requested attorneys fees and costs to a number that it deems

reasonable. *See*, *e.g.*, *CoStar*, 106 F.Supp. 2d at 788; *Spell*, 824 F.2d at 1402 (4th Cir.

1987). If the Court wishes to proceed along this course, Defendants respectfully request

focused discovery relating to Plaintiffs' attorneys fees. Specifically, Defendants

respectfully request that Plaintiffs produce un-redacted, detailed, contemporaneous

billing records and submit their reasons why these bills are reasonable, carefully

calculated, and conscientiously measured in light of Plaintiffs' "heavy obligation to

present well-documented claims." *National Assoc. of Concerned Veterans*, 675 F.2d at 1319.

Plaintiffs have failed to meet their heavy obligation to present well-documented claims for the following reasons: (1) Plaintiffs fail to establish the reasonableness of their hourly rates for these matters; (2) Plaintiffs fail to establish the reasonableness of the number of hours and the costs allegedly expended in litigating only prevailing issues in these actions; and (3) Plaintiffs have failed to exercise any sort of billing judgment by merely submitting all bills allegedly submitted by their attorneys with all indications of the type and nature of work performed redacted, and further, these redacted bills prevent the Court, and the Defendants from determining whether or not the attorneys fees submitted by Plaintiffs are related to these matters or reasonable.

"Procedural fairness also requires that the party opposing the fee be permitted the opportunity to scrutinize the reasonableness of the fee requested and to present any legitimate objections." *National Assoc. of Concerned Veterans*, 675 F.2d at 1324. Therefore, Defendants respectfully request that this Court deny Plaintiffs' fee motion, or at the very least allow limited and focused discovery directed toward Plaintiffs un-redacted and detailed billing records and further require Plaintiffs to submit their reasons why these bills are reasonable, carefully calculated, and conscientiously measured in light Plaintiffs' "heavy obligation to present well-documented claims."

A.      *This Court should deny Plaintiffs' outrageously excessive fee motion*

At least one Circuit Court has affirmed a judgment of a denial of an attorneys fee petition in light of "outrageously excessive" claims and stated that "[s]uch denial is an entirely appropriate, and hopefully effective, means of encouraging counsel to maintain

adequate records and submit **reasonable, carefully calculated, and conscientiously measured** claims when seeking … counsel fees." *Brown*, 612 F.2d at 1059 (emphasis added)("If, as appellant argues, the Court were required to award a reasonable fee when an outrageously unreasonable one has been asked for, claimants would be encouraged to make unreasonable demands, knowing that the only unfavorable consequence of such misconduct would be reduction of their fee to what they should have asked for in the first place. To discourage such greed a severer reaction is needful.").

In light of Plaintiffs' outrageously excessive claims and failure to submit well-documented claims which are reasonable, carefully calculated, and conscientiously measured, this Court should deny Plaintiffs' fee motion in its entirety.

> 1.    *In light of Plaintiffs' failure to meet its "heavy obligation to present well-documented claims," Plaintiffs have not presented evidence that their billing rates are reasonable and therefore this Court should deny or reduce Plaintiffs' fee motion.*

"To inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence . . . that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *CoStar*, 106 F.Supp. at 787-88 *citing*, *Blum v. Stenson,* 465 U.S. 886, 896 n.11., 79 L. Ed. 2d 891, 104 S. Ct. 1541 (1984). "A rate determined in this way is normally deemed reasonable, and is referred to as the prevailing market rate." *Id.* at 788. "Evidence of the prevailing market rate usually takes the form of affidavits from other counsel attesting to their rates or the prevailing market rate." *Id.*; s*ee, e.g., Glover v. Johnson*, 934 F.2d 703, 716-17 (6th Cir. 1991) (affirming award where "third-party affidavits submitted by Plaintiffs established the prevailing market rate"). "However, in the absence of sufficient documentation, the court may rely

on its own knowledge of the market." *CoStar*, 106 F.Supp. 2d at 788; s*ee Norman v. Housing Auth.*, 836 F.2d 1292, 1303 (11th Cir. 1988) ("'The court ... is itself an expert on the question [of reasonableness] and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value.'" (*quoting Campbell v. Green*, 112 F.2d 143, 144 (5th Cir. 1940))); *Miele v. New York State Teamsters Conference Pension & Retirement Fund*, 831 F.2d 407, 409 (2d Cir. 1987) (holding that a district judge may rely on his own knowledge of private firm hourly rates in the community in determining the prevailing market rate); *Lucero v. City of Trinidad*, 815 F.2d 1384, 1385 (10th Cir. 1987) (holding that absent other evidence of prevailing market rates, the district judge may establish a reasonable rate based on his familiarity with the prevailing rates in the area).

In *CoStar*, a copyright matter, the petitioner requested the rate of $420 per hour for a partner at the Washington, D.C. office of Arnold & Porter ("the firm") who had practiced for 22 years. *CoStar*, 106 F. Supp. 2d at 788. The petitioner requested the rate of $250-260 per hour for an associate at the firm who had been practicing for 5 years, and requested the rate of $185-195 per hour for an associate at the firm who had practiced for 2 years. *Id.* Also requested was the rate of $70 per hour for work done by a paralegal at the firm. *Id.* The court found that petitioners presented no evidence of the prevailing market rate and therefore used its own knowledge to determine a reasonable market rate for attorneys fees in copyright cases. *Id.* The court set the rates respectively at $250 per hour, $180 per hour, $140 per hour and $65 per hour. *Id.*

In the instant cases, because Plaintiffs offer only inadmissible hearsay evidence in the form of a survey which lacks foundation, the Court should disregard the survey and

reject the fee motion in its entirety.  In contrast to *CoStar*, where the Court knew of the work performed by the attorneys and could therefore adjudge a reasonable market rate for the work performed, Plaintiffs' failure to submit well-documented claims, including detailed records which adequately substantiate the nature of the work performed by each individual attorney, prevents a determination of a reasonable market rate for the work performed.  Plaintiffs' end run of comparing their rates to what they believe is a reasonable market rate for similar services without adequately disclosing the nature of services they performed is manifestly inadequate in light of Plaintiffs' "heavy obligation to present well-documented claims."  Furthermore, Plaintiffs' comparison of their attorneys rates to the rates disclosed in the survey does nothing to reveal what is a reasonable rate for similar work performed by other attorneys.  Significantly, the survey contains no indication of billing rates for specific types of work performed.  As a result, Plaintiffs' attempt to compare firm rates regardless of types of work performed.  Additionally, the rates presented are rates of large firms.  Plaintiffs have submitted no evidence of billing rates for smaller firms that may perform the identical services.

Additionally, Plaintiffs are misguided by attempting to compare the instant case to the facts of *Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169 (4th Cir. 1994) and *National Wildlife Federation v. Hanson*, 859 F.2d 313 (4th Cir. 1988).  The Court in *Rum Creek* stated "[i]n *National Wildlife Federation v. Hanson*, 859 F.2d 313 (4th Cir. 1988), we observed that the community in which the court sits is the first place to look to in evaluating the prevailing market rate. Rates charged by attorneys in other cities, however, may be considered when 'the complexity and specialized nature of a case may mean that no attorney, with the required skills, is available locally,' and the party choosing the

attorney from elsewhere acted reasonably in making the choice.  In this case both criteria are fulfilled." *Rum Creek*, 31 F.3d at 179.

In sharp contrast to *Rum Creek*, the Plaintiffs in these cases failed to produce any evidence that attorneys with the requisite skill to litigate the complexity and specialized nature of the cases were not available locally.  In addition, they failed to even allege under *National Wildlife Federal v. Hanson* that local counsel was unable to take the case and the nearest counsel with requisite expertise was KMZR in New York.  859 F.2d 313, 317-18 (4th Cir. 1988).

Furthermore, Plaintiffs failed to present evidence that in choosing their attorneys from elsewhere they acted reasonably in making the choice.  Plaintiffs presented only statements that Plaintiffs "engaged KMZ Rosenman as their national counsel to assist them in conflicts arising out of the termination of dealership relationships." (Memorandum p. 37).   However, in the fall of 2000, Defendants' counsel Mark E. Wiemelt exchanged correspondence with Attorney Richard M. Barnes, of the Baltimore firm of Goodell, DeVries, Leech & Dan, LLP, regarding the same breaches of contract under the Agreement which form a part of Defendants' remaining Counterclaims. (Wiemelt Affidavit ¶4).  According to the Goodell, DeVries, Leech & Dan, LLP website, DENTSPLY International Inc., Plaintiffs predecessor-in-interest with respect to the Agreements at issues, is represented by Mr. Barnes nationally (Wiemelt Affidavit ¶5). As counsel for DENTSPLY, Mr. Barnes' representation apparently includes defending claims brought by licensees and advising about commercial disputes with independent value added resellers such as Defendants (Wiemelt Affidavit ¶6).  Curiously, Plaintiffs fail to explain why a local firm such as Goodell, DeVries, Leech & Dan, LLP could not

have handled these cases, particularly when their attorneys were already familiar with the Agreements at issue and even familiar with some of the present issues and disputes arising thereunder. Plaintiffs also fail to explain why a firm such as Ober, Kaler, Grimes & Shriver could not have handled these cases. Defendants found and retained Ober, Kaler in these matters after the Complaints were filed with little difficulty and note that Ober, Kaler has billed Defendants no more than the hourly rate of $265.00 for partner John Murphy. (Wiemelt Affidavit ¶¶7 & 8).

In light of the foregoing, Defendants respectfully request that this Court exercise its discretion and deny Plaintiffs' motion entirely. Alternatively, the Court may rely on its own knowledge to determine reasonable attorney rates for these matters.

>    2.    *In light of Plaintiffs' failure to meet its "heavy obligation to present well-documented claims," Plaintiffs have not presented evidence that the number of hours expended litigating only prevailing issues and the costs are reasonable and therefore this Court should deny Plaintiffs' fee motion.*

"A fee applicant has the burden of proving hours to the district court by submitting contemporaneous time records that reveal all hours for which compensation is requested and how those hours were allotted to **specific tasks**." *CoStar*, 106 F.Supp. 2d at 788 (emphasis added); *See also In re Olson*, 280 U.S. App. D.C. 205, 884 F.2d 1415, 1428 (D.C. Cir. 1989); *Lightfoot v. Walker*, 826 F.2d 516, 523 n.7 (7th Cir. 1987); *Grendel's Den, Inc. v. Larkin*, 749 F.2d 945, 952 (1st Cir. 1984); *Ramos v. Lamm*, 713 F.2d 546, 553 (10th Cir. 1983); *New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983). "The records must specify, for each attorney, the date, the hours expended and the nature of the work done." *CoStar*, 106 F.Supp. 2d at 788. "The court may reduce the number of hours awarded if the documentation is vague or incomplete." *Id*.; s*ee Hensley v. Eckerhart,* 461 U.S. 424, 433, 76 L. Ed. 2d 40, 103

9

S.Ct. 1933 (1983) ("Where the documentation of hours is inadequate, the district court may reduce the award accordingly."); *League of United Latin Am. Citizens v. Roscoe Indep. Sch. Dist.*, 119 F.3d 1228, 1233 (5th Cir. 1997) ("Litigants take their chances by submitting fee applications that are too vague to permit the district court to determine whether the hours claimed were reasonably spent.").

In *National Assoc. of Concerned Veterans*, 675 F.2d 1319, a consolidated appeal cited favorably by the 4th Circuit, *see Spell v. McDaniel*, 824 F.2d 1380, 1402 (4th Cir. 1987), the court stated that "the fee application must also contain sufficiently detailed information about the hours logged and the work done." 675 F.2d at 1327. "This is essential not only to permit the District Court to make an accurate and equitable award but to place [] counsel in a position to make an informed determination as to the merits of the application." *Id.* "In the preparation of fee applications it is insufficient to provide the District Court with very broad summaries of work done and hours logged." *Id.* "The fee application need not present the exact number of minutes spent nor the precise activity to which each hour was devoted nor the specific attainments of each attorney." *Id.* (internal citations omitted). "But the application must be sufficiently detailed to permit the District Court to make an independent determination whether or not the hours claimed are justified." *Id.* "The better practice is to prepare detailed summaries based on contemporaneous time records indicating the work performed by each attorney for whom fees are sought." *Id.* "In any event, once the reasonableness of the hours claimed becomes an issue, the applicant should voluntarily make his time charges available for inspection by the District Court or opposing counsel on request." *Id.*

In deciding the second of the consolidated appeals, the *National Assoc. of Concerned Veterans* court was presented with the issue of whether documentation of hours expended was too summary to decide the reasonableness of an award of attorneys fees.  Specifically, the petitioner submitted summary documentation that "divided the litigation into four major phases-pretrial litigation, trial phase, Court of Appeals, and remand-and then indicated how many hours individual attorneys had expended during each phase of the litigation."  *Id.* at 1334.  However, "[n]o time charges were provided to back up the summary."  *Id.*  The appellate court ruled that the summary was inadequate and the case should be remanded so that discovery should be permitted to test the accuracy of the submissions.  *Id.* at 1335.

Comparing *National Assoc. of Concerned Veterans* to the instant case, it is clear that Plaintiffs submissions are inadequate.  Specifically, the billing records are bare regarding "the nature of the work" performed by the attorneys.  *See*, *CoStar*, 106 F.Supp. 2d at 788.  Further, the inclusion of a summary without disclosing actual billing records disturbs Defendants because these charges may include attorneys fees and costs billed on other unrelated matters and billed on issues for which Plaintiffs did not ultimately prevail. "It does not follow that the amount of time actually expended is the amount of time reasonably expended."  *Copeland*, 641 F.2d at 891.

In failing to submit detailed billing records, Plaintiffs' attorney Howard Cotton stated that "Plaintiffs do not wish to burden the Court with an overly detailed or lengthy recitation of the conferences, telephone conversations, memoranda, factual investigations, research projects, document accumulation and review, drafting of research memoranda, pleadings, affidavits and legal memoranda that occupied KMZ Rosenman's time and

attention during the Relevant Period." (Cotton Aff. ¶ 4).    Additionally, Attorney Cotton

stated that "Plaintiffs do not wish to waive the attorney-client and work-product

privileges by disclosing such detailed information to Defendants." (Cotton Aff. ¶ 4).

These statements must be read in the context of Plaintiffs' admissions in their

memorandum that "KMZ Rosenman had represented Plaintiffs in five other dealership

disputes, albeit, involving different agreements [] but governed by Maryland law and

implicating the same legal principles at issue in this case." (Plaintiffs' Memo. p. 37)

(internal citations omitted). In fact, Plaintiffs began taking steps to terminate all 23 of

their dealerships in 2001 and were involved in at least five disputes with dealerships other

than the Defendants before or during the same time period as these pending cases. (Aff.

of Mark E. Wiemelt ¶9). It is entirely possible that Plaintiffs have submitted billing

records containing matters which should have been at least partially billed on those other

disputes, yet are trying to collect those amounts in this litigation. A review of the

unredacted billing records may reveal such improper practice. However, Plaintiffs

submitted the unreasonably redacted records under the guise of an unwillingness to

burden the Court and unwillingness to disclose detailed information containing attorney-

client and work-product privilege, and thereby prevent the Court and Defendants from

testing the accuracy of the submissions.

Notably, Plaintiffs claim the outrageously excessive amount of $155,934.12 in

attorneys fees and costs from January 17, 2002 through April 7, 2002. This time period

is prior to Plaintiffs' mailing of the purported notices of termination and non-renewal to

Defendants on April 7, 2002 and the filing of the Complaints on April 10, 2002.

Moreover, while Plaintiffs allege that they took more than two and one-half months to

evaluate the matters, spending more than $155,000.00, they provided no prior notice of termination and non-renewal to Defendants and even served the Complaints on Defendants before Defendants received the purported notices of termination and non-renewal. This time period is also during or after a time in which Plaintiffs were apparently involved in multiple disputes which numerous other dealers involving similar agreements also governed by Maryland law and implicating the same legal principles at issue. Consequently, the claim for over $155,000.00 for fees and costs apparently spent at least partially re-researching issues relating to termination of Agreements, which are admittedly similar to the other agreements also governed by Maryland law and implicating the same legal principles at issue, is unreasonable, if not outrageously excessive.

Similarly, the claim for $125,387.19 in attorneys fees and costs for the period between September 28, 2002 and January 17, 2003 is outrageously excessive considering that the Motion for Partial Summary Judgment was already fully briefed as of September 27, 2002. During this time, it is unlikely that Plaintiffs' attorneys performed any work on issues for which Plaintiffs ultimately prevailed. However, since the records are redacted, Defendants and the Court are left to guess whether the fees submitted are related to issues on which Plaintiffs ultimately prevailed and are ultimately reasonable in light of Plaintiffs' burden, or whether these amounts were billed on other unrelated matters or on discovery and other issues related primarily to Defendants' remaining Counterclaims. In fact, Defendants note that the parties were engaged primarily in discovery relating in large part to the remaining Counterclaims during this time period. (Aff. of Mark E. Wiemelt ¶10). Much of the discovery related to damages with respect to the remaining

Counterclaims, including the sales of Products by the parties and third parties. (Aff. of Mark E. Wiemelt ¶11).   Indeed, the vast majority of the documents exchanged by the parties relate to sales of Products, including invoices, documentation of sales calls and leads, and the like.  (Aff. of Mark E. Wiemelt ¶12).  Consequently, the claim for $125,387.19 in attorneys fees and costs for the period between September 28, 2002 and January 17, 2003 is unreasonable, if not outrageously excessive.

Furthermore, Plaintiffs claim for $91,559.70 in attorneys fees and costs associated with "defeating Defendants' motion for reconsideration" grossly mischaracterizes and distorts the record, and is also outrageously excessive.  As the Court may remember and Defendants' Motion for Clarification and the transcript of the February 21, 2003 hearing confirms, Plaintiffs' conduct precipitated Defendants' Motion which was primarily directed at their request for clarification of the Court's January 7, 2002 Memorandum and Opinion.  The Court may also recall that the Motion for Clarification consumed almost all of the oral hearing and the requested clarification was granted by the Court.  Certainly Plaintiffs did not prevail on the issue addressed in the Motion for Clarification and their claim for $91,559.70 in attorneys fees and costs associated with "defeating Defendants' motion for reconsideration" is outrageously excessive.

In addition, a review of the very broad summaries provide by Plaintiffs in their Memorandum reveals numerous instances of inappropriate billing practices.  For example, Plaintiff's summaries vaguely claim indeterminate time spent on "inter-office conferences between and among KMZ Rosenman professionals handling said matters." The Court and Defendants are left to speculate who was involved in said unspecified conferences, when they were held, how long they lasted, and why they should be

considered reasonable, necessary and related only to the instant matters, rather than other of Plaintiff's disputes or Plaintiffs business affairs in general.

Likewise, Plaintiffs' summaries vaguely claim indeterminate time spent on "conferences with Dennis Stockwell, Plaintiff's General Counsel, and Al Fiore, Plaintiff's Vice President of Corporate Development." The Court and Defendants are again left to speculate who was involved in said unspecified conferences, when they were held, how long they lasted, and why they should be considered reasonable, necessary and related only to the instant matters, rather than other of Plaintiff's disputes or Plaintiffs business affairs in general.

In addition, Plaintiffs' summaries vaguely claim indeterminate time spent "interviewing potential witnesses." The Court and Defendants are left to speculate who was involved in said unspecified interviews, when they were held, how long they lasted, and why they should be considered reasonable, necessary and related only to the instant matters, rather than other of Plaintiffs' disputes.

Furthermore, Plaintiffs method of vaguely claiming indeterminate time spent researching "the myriad potential and actual defenses to said termination" is not sufficiently detailed to permit the Court or the Defendants to make an independent determination of whether or not the hours claimed are justified.

In addition, Plaintiffs' summaries vaguely claim indeterminate time spent on unspecified "day-to-day administration" without providing further detail.

Plaintiffs also unreasonably seek reimbursement for research regarding recoverability of damages, an issue which appears to be related at least in part to the remaining Counterclaims. In addition, Plaintiffs seek reimbursement for time spent by an

associate who allegedly "drafted a memorandum concerning issues implicated by two remaining counterclaims." Plaintiffs also seek reimbursement for time spent by an associate on "deposition outlines for various witnesses." Each of these tasks allegedly occurred after the Motion for Summary Judgment was fully briefed and appear to be related to the remaining Counterclaims.

Notably lacking in these cases is the Court's ability to determine from Plaintiffs' very broad summaries whether Plaintiffs' counsel engaged in inappropriate duplicative billing or other inefficient billing practices. For example, the Court cannot determine whether the use of 16 attorneys and multiple paraprofessionals by Plaintiffs was reasonable and necessary or duplicative and inefficient.

Moreover, even the redacted summaries appear to demonstrate unnecessary, unreasonable and inappropriate expenses for things such as local travel, meals, long-distance travel, and generalized miscellaneous items without any explanation or means of determining their appropriateness. In particular, Plaintiffs' seek recovery in the amount of $207.94 for meals, $703.44 for unspecified miscellaneous KMZ items, $1,697.69 in unspecified miscellaneous Westgroup charges, $229.43 for FedEx service, including six entries for $10.86 charges on October 16, 2002, well after the Motion for Summary Judgment was fully briefed, $649.20 for faxes, $379.42 for telephone, and $2,375.07 for travel, without further details or explanation.

Particularly disturbing is the fact that Plaintiffs seek recovery in the amount of $25,551.55 for Lexis/Westlaw research, without further details or explanation. Defendants note that their lead counsel was able to use unlimited Lexis research for the flat rate of $120.00 per month during these matters. (Aff. of Mark E. Wiemelt ¶13).

Perhaps most disturbing is the fact that the billing matter listed on each of the redacted bills submitted by Plaintiffs is Professional Software Solutions, NE, an entity which is unrelated to Defendants but which had a dispute with Plaintiffs arising out of a similar Dealership Agreement. (Aff. of Mark E. Wiemelt ¶14). From the face of the redacted records, it appears that all of the submitted billings are for the Professional Software Solutions, NE matter and not related to the present matters.

Additionally, Plaintiffs cite Md. Dist. Ct. Local R. 109.2.b and feign attempting to follow the local rules in their Memorandum. However, Plaintiffs fail to properly cite and apply the local rules. For example, one of the local rules states that movant must provide "a **detailed description** of the work performed broken down by hours or fractions thereof expended **on each task**." *Id.* In comparison, Plaintiffs Memorandum deceptively omits the qualifier of "on each task" and neither Plaintiffs' redacted billing records nor Plaintiffs' summary meet the requirements of a detailed description for each task. In addition, the rules call for a discussion of "the claims as to which the party did not prevail." As set forth above, Plaintiffs did not prevail on the remaining Counterclaims or on their opposition to Defendants' Motion for Clarification. Therefore, Plaintiffs' fee motion should be denied for failure to comply with Md. Dist. Ct. Local R. 109.2.b.

For the reason set forth above, Defendants respectfully request that this Court exercise its discretion and deny Plaintiffs' motion because their documentation is vague, inadequate, and not sufficiently detailed to permit the Court to make an independent determination whether or not the hours and costs claimed are justified. Alternatively, discovery should be permitted to test the accuracy of the submissions.

3.    *In light of Plaintiffs' failure to meet its "heavy obligation to present well-documented claims," Plaintiffs have not displayed any billing judgment and therefore this Court should deny Plaintiffs' fee motion.*

"After reviewing the billing records submitted, the court must ensure that the prevailing attorneys have exercised 'billing judgment.'"  *CoStar*, 106 F.Supp. 2d at 789. "Billing judgment consists of winnowing the hours actually expended down to the hours reasonably expended."  *CoStar*, 106 F.Supp. 2d at 789.  "Time that is 'excessive, redundant, or otherwise unnecessary' should be excluded." *Id.*

Plaintiffs have failed to exercise any sort of billing judgment in their motion, which is nothing more than the total amount of time allegedly expended by each attorney only on prevailing issues in these matters multiplied by exorbitant billing rates.  Such an exercise has repeatedly been frowned upon by this Court and sister courts.  *See*, *CoStar*, 106 F.Supp. at 788 (Dist. Md. 2000) ("contemporaneous time records generally are the required method of proving hours"); *National Assoc. of Concerned Veterans*, 675 F.2d at 1331 n. 19 ("Where a fee submission is manifestly inadequate, the District Court has no obligation to proceed further and denial is appropriate."); *Brown*, 612 F.2d at 1059 ("If, as appellant argues, the Court were required to award a reasonable fee when an outrageously unreasonable one has been asked for, claimants would be encouraged to make unreasonable demands, knowing that the only unfavorable consequence of such misconduct would be reduction of their fee to what they should have asked for in the first place.  To discourage such greed a severer reaction is needful."); *Copeland,* 641 F.2d at 891.

In *Copeland*, the court stated that "[c]ompiling raw totals of hours spent" does not equate to a reasonable attorneys fees motion.

It does not follow that the amount of time actually expended is the amount of time reasonably expended. In the private sector, 'billing judgment' is an important component in fee setting. It is no less important here. Hours that are not properly billed to one's client also are not properly billed to one's adversary pursuant to statutory authority. Thus, no compensation is due for nonproductive time. For example, where three attorneys are present at a hearing when one would suffice, compensation should be denied for the excess time. Similarly, no compensation should be paid for time spent litigating claims upon which the party seeking the fee did not ultimately prevail.

*Id.* at 891-92.

In light of Plaintiffs' submission of all attorneys fees without offering any evidence of billing judgment, including the failure to reduce their outrageously excessive claim by any amount for discovery or research relating to the remaining counterclaims, and Plaintiffs' failure to reduce the claim by any amount due to the clarification of the January 7 Order which was necessitated by Plaintiffs' harassing and inconsistent arguments with respect to Defendants' continued rights to provide support and services, Plaintiffs fail to meet their "heavy obligation" and Defendants respectfully request that this Court deny Plaintiffs' motion.

B.      *In the alternative, this Court should allow focused and limited discovery before this Court Analyzes the Reasonableness of Plaintiffs' Motion.*

"The court may reduce the number of hours awarded if the documentation is vague or incomplete." *CoStar*, 106 F.Supp. 2d at 788; s*ee Hensley v. Eckerhart,* 461 U.S. 424, 433, 76 L. Ed. 2d 40, 103 S.Ct. 1933 (1983). Also with this Court's discretion is the power to order focused and limited discovery regarding Plaintiffs' attorneys fees motion. *National Assoc. of Concerned Veterans Defense*, 675 F.2d at 1329. In *National Assoc. of Concerned Veterans*, the court was presented with the issue of whether to grant discovery requests related to the justification for the claimed billing rate and the nature

and extent of the work done by the applicant's counsel on various phases of the case. *Id.*
The court stated that "[t]his information is essential in the calculation of the fee award
and opposing counsel should have access to this information as a matter of right." *Id.* In
deciding the second of the consolidated appeals, the *National Assoc. of Concerned
Veterans* court concluded that summary documentation that "divided the litigation into
four major phases-pretrial litigation, trial phase, Court of Appeals, and remand-and then
indicated how many hours individual attorneys had expended during each phase of the
litigation," but did not provide any time charges, was inadequate and the case should be
remanded so that discovery should be permitted to test the accuracy of the submissions.
*Id.* at 1334-35.

  Similarly, in deciding the third of the consolidated appeals, the *National Assoc. of
Concerned Veterans* court was presented with the issue of whether sharply focused
discovery should be granted on the issue of potential recovery for the hours expended by
attorneys conferring together about the case. *Id.* at 1337. The court found that although
it is within the District Court's discretion to allow this time, since the case was being
remanded other grounds the additional discovery was to take place but allowed limited
discovery to decide the matter. *Id.*

  As in *National Assoc. of Concerned Veterans*, this Court should grant discovery
relating to Plaintiffs' attorneys fees motion before deciding the reasonableness of the
request. Defendants will limit discovery to the production of Plaintiffs' un-redacted
billing records and their billing records related to the termination and non-renewals of
other dealers, including the mediations, arbitrations and litigation involving other dealers.
Such a request is not unreasonable in light of Plaintiffs' heavy obligation to prove the

reasonableness of the requested fees.  Only after production of these documents will the

Court, and the Defendants, be able to assess the reasonableness of Plaintiffs' claims.

Therefore, this Court should allow Defendants to conduct limited and focused discovery

relating to the reasonableness of Plaintiffs' attorneys fees motion.

C.      *Even if this Court Were To Exercise Its Discretion to Determine Whether*
*Plaintiffs' Fee Motion is Reasonable Without The Benefit of Plaintiffs' Billing Records,*
*the Twelve Factors Derived From* Johnson v. Georgia Highway Express, Inc. *Must Be*
*Considered.*

        Before ascertaining reasonable attorneys fees, the Court must consider pertinent

facts.  *National Wildlife Federation v. Hanson*, 859 F.2d 313, 319 (4th Cir. 1988).  These

pertinent facts include (1) the time and labor expended; (2) the novelty and difficulty of

the questions raised; (3) the skill required to properly perform the legal services rendered;

(4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee

for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time

limitations imposed by the client or circumstances; (8) the amount in controversy and the

results obtained; (9) the experience, reputation and ability of the attorney; (10) the

undesirability of the case within the legal community in which the suit arose; (11) the

nature and length of the professional relationship between attorney and client; and (12)

attorneys' fees awards in similar cases.  *Daly v. Hill*, 790 F.2d 1071, 1075 n. 2 (4th Cir.

1986).  District courts are to consider and make detailed findings with regard to these

twelve factors relevant to the determination of reasonable attorneys fees.  *Barber v.*

*Kimbrell's, Inc.*, 577 F.2d 216, 226 (4th Cir. 1978).  "These factors must be considered by

district courts in this circuit in arriving at a determination of reasonable attorneys fees in

any case where such determination is necessary; and in order to make review by us effective, we hold that any award must be accompanied by detailed findings of fact with regard to the factors considered." *Id.*

Defendants submit that under the twelve factor analysis: (1) Plaintiffs attorneys' time and labor expended in filing the Complaints and achieving a partial summary judgment without the benefit of discovery, oral argument or more than one court appearance was unreasonable, if not outrageously excessive, as set forth above; (2) the questions raised were apparently neither novel nor difficult according to Plaintiffs, particularly in light of their having encountered the issues on numerous occasions previously and Plaintiffs' statements in their Memorandum of Law in Support of Plaintiffs' Motion for Partial Summary Judgment and for Partial Judgment on the Pleadings that these cases pose a simple question of law for which no factual discovery was necessary (S/J Memo. p. 2); (3) the skill required to properly perform the legal services rendered is held by local Baltimore counsel, including attorneys at Goodell, DeVries, Leech & Dan, LLP who were already familiar with the Agreements and issues, as well as Ober, Kaler, Grimes & Shriver; (8) the final results obtained are speculative, questionable and premature, at least with respect to the remaining Counterclaims and the Motion for Clarification; and both (9) the experience, reputation and ability of the attorney and (11) the nature and length of the professional relationship between attorney and client favored use of the Baltimore attorneys at Goodell, DeVries, Leech & Dan, LLP who were already familiar with the Agreements and issues. Moreover, Plaintiffs failed to present any credible, admissible evidence of (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's

expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances, particularly since Plaintiffs' sought and agreed to numerous extensions of time thought the course of litigation and researched the matter for more than two and one-half months before mailing a notice to Defendants or filing suit; (10) the undesirability of the case within the legal community in which the suit arose; and (12) attorneys' fees awards in similar cases.

In light of these factors and given the nature of Plaintiffs' outrageously excessive attorneys fees request, the Court should exercise its discretion to reduce Plaintiffs' fee request to a number it deems reasonable or to reduce Plaintiffs' attorneys fees request in light of their utter disregard of their "heavy obligation to present well-documented claims."

## III.    CONCLUSION

Plaintiffs failed to meet their burden to establish reasonable attorneys fees and this Court should deny Plaintiffs' motion for failing to meet its burden, or in the alternative exercise its discretion to reduce the attorneys fees to a reasonable amount.

Alternatively, Defendants respectfully request focused discovery relating to Plaintiffs' attorneys fees.  Specifically, Defendants respectfully request that Plaintiffs produce un-redacted, detailed, contemporaneous billing records and submit their reasons why these bills are reasonable, carefully calculated, and conscientiously measured in light of Plaintiffs' heavy obligation to present well-documented claims.

Respectfully Submitted,

DENTAL MEDICAL AUTOMATION, INC. and
PROFESSIONAL SOFTWARE SOLUTIONS,OF
ILLINOIS, INC.

_____/s/_____
Mark E. Wiemelt, Esquire

LAW OFFICES OF MARK E. WIEMELT, P.C.
10 S. LaSalle St., Ste. 3500
Chicago, Illinois  60603
Phone: 312-372-7664
fax: 312-372-6568

OBER, KALER, GRIMES & SHRIVER
120 E. Baltimore Street
Baltimore, MD 21202-1643