**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                  )

PRACTICEWORKS, INC., et al.,        )

                                  )

                    Plaintiffs,     )    Civil No.:  JFM 02 CV 1205

                                  )

         - against -             )

                                  )

PROFESSIONAL SOFTWARE SOLUTIONS   )
OF ILLINOIS, INC.,             )

                                  )

                    Defendant.    )
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                  )

PRACTICEWORKS, INC., et al.,        )

                                  )

                    Plaintiffs,     )    Civil No.:  JFM 02 CV 1206

                                  )

         - against -             )

                                  )

DENTAL MEDICAL AUTOMATION, INC.,   )

                                  )

                    Defendant.    )
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**REPLY MEMORANDUM IN FURTHER SUPPORT OF PLAINTIFFS'
MOTION TO ENFORCE THE COURT'S DECISION AND JUDGMENT
AGAINST DEFENDANTS FOR ATTORNEYS' FEES AND COSTS**

                                **KATTEN MUCHIN ZAVIS ROSENMAN**
                                575 Madison Avenue
                                New York, New York 10022

                                Counsel for Plaintiffs
                                PracticeWorks, Inc. and SoftDent LLC

**Of Counsel**:

Howard E. Cotton
Michael S. Gordon

22186028.03

TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................1

ARGUMENT .........................................................................................................................5

I.   RELYING ON MISLEADING, NON-BINDING, AND
     LARGELY IRRELEVANT CASELAW, DEFENDANTS
     HAVE FAILED TO DEMONSTRATE THAT PLAINTIFFS'
     ATTORNEYS' FEES AND COSTS ARE UNREASONABLE ...................................................5

     A.   Defendants Do Not Dispute—and Thus Concede—that Plaintiffs
          Have Met the Documentation Requirements Under Maryland Cases
          Involving Contracts, Like Here, Providing for an Award of Attorneys'
          Fees and Costs to the Prevailing Party...........................................................................8

     B.   Even if Defendants' Cases Were Relevant and
          Applicable (Which They Are Not) Plaintiffs Have Presented
          Well-Documented Attorneys' Fees Claims ...........................................................10

          1.   Plaintiffs Have Documented Adequately the
               Attorneys' Fees and Costs Reasonably Incurred During
               the Period January 17, 2002 Through April 7, 2002....................................11

          2.   Plaintiffs Have Documented Adequately the Attorneys' Fees
               and Costs Reasonably Incurred During The Period
               September 28, 2002 Through December 31, 2002 ......................................12

          3.   Plaintiffs Have Documented Adequately the Attorneys'
               Fees and Costs Reasonably Incurred  from January 7, 2003
                Through February 21, 2003 in Defeating Defendants'
               Motion for Reconsideration ........................................................................13

     C.   Defendants' Various Challenges to Plaintiffs'
          Redaction of Bills Should Be Rejected..........................................................................15

     D.   Unlike Defendants' Retention of Chicago Counsel, Plaintiffs' Retention
           of KMZ Rosenman was Logistically and Strategically Reasonable......................17

          1.   The Successful Result Obtained By KMZ Rosenman Further
               Underscores the Reasonableness of Plaintiffs' Retention of KMZ
               Rosenman as Well as the Fees and Costs Incurred  in Connection
               with these Actions.......................................................................................19

          2.   Plaintiffs Could Not Have Retained the Same
               Attorney as Dentsply, Their Corporate Predecessor....................................22

     E.   Plaintiffs Have Established That KMZ Rosenman's Hourly Rates Are
          Reasonable And Commensurate With Fees Charged By Comparable Firms.........................23

CONCLUSION ......................................................................................................................25

i

Plaintiffs PracticeWorks, Inc. ("PracticeWorks") and SoftDent LLC ("SoftDent") (collectively "Plaintiffs"), respectfully submit this memorandum in further support of their motion to enforce the Court's Memorandum Decision and Judgment entered as of January 7, 2003 against Defendants Professional Software Solutions of Illinois, Inc. ("PSSI") and Dental Medical Automation, Inc. ("DMA") (collectively "Defendants"), ordering that Defendants compensate Plaintiffs for their "reasonable attorney's fees and costs associated with bringing this action and litigating . . . [their] motion [for partial summary judgment and partial judgment on the pleadings]."  (See January 7 Judgment at ¶ 4; see also January 7 Decision at p. 9).

## PRELIMINARY STATEMENT

In their Joint Opposition to Plaintiffs' Motion for Attorneys' Fees and Costs ("Def. Mem."), Defendants repeatedly characterize Plaintiffs' attorneys fees and costs as "outrageously excessive." Notwithstanding this self-serving hyperbole, Defendants have not—and cannot—deny the extraordinary results that KMZ Rosenman achieved in bringing this action: obtaining summary judgment on all three of Plaintiffs' claims, dismissing all seven of Defendants' counterclaims that were the subject of Plaintiffs' motion and successfully defeating Defendants' motion for reconsideration of the January 7 Decision and Judgment. When considered in the context of the overall potential losses Plaintiffs might have incurred had they been unsuccessful on their dispositive motion, KMZ Rosenman's fees are entirely reasonable and appropriate.

Following Plaintiffs' successful result on the summary judgment motion, and pursuant to the Court's direction that the parties attempt to resolve the amount of attorneys' fees and costs due and owing to Plaintiffs pursuant to the January 7 Decision and Judgment, Plaintiffs sought, in good faith, to negotiate a global resolution of the above-captioned cases.[1]  However, Defendants took the implausible settlement

---

[1]    Contrary to Defendants' suggestion of Plaintiffs' "reluctant" furnishing of bills to Defendants' counsel (Def. Mem. at 2), immediately following the briefing of Defendants' motion for reconsideration which transpired from mid-January through mid-February 2003, Plaintiffs promptly furnished Defendants with bills for the time period in issue.  See Reply Affidavit of Howard E. Cotton, sworn to May 30, 2003 ("Cotton Reply Aff.") at ¶ 2.

position that Plaintiffs' attorneys' fees and costs should be set off against the purported value of Defendants' two remaining counterclaims (which Defendants have not pursued in the nearly five months since the Court's January 7 Decision and Judgment) and Defendants' appellate rights, resulting in "a wash." Understandably, Plaintiffs did not consider such proposition to constitute an even trade, and thus Defendants' disingenuous settlement position was rejected.

Contrary to Defendants' contention in their Joint Opposition, at no point did Defendants *ever* offer a lump sum payment of $50,000 for attorneys' fees and costs incurred by Plaintiffs in these cases. (Def. Mem. at 2). However, even if such amount had been offered, it would have been rejected as inadequate and unacceptable, given the disparity in value between the legal services rendered by KMZ Rosenman on the one hand, and the purported value of Defendants' counterclaims and appellate rights on the other. In addition, Defendants further proposed that they be permitted to continue providing support and service to Plaintiffs' software customers—even though such support and service is a virtual impossibility absent Defendants' improper use of Plaintiffs' proprietary materials. Accordingly, in light of Defendants' refusal to afford any real value to Plaintiffs' attorneys' fees and/or to agree to a settlement package wherein they tendered any monies to Plaintiffs, settlement discussions failed and necessitated the instant application.

In their Joint Opposition papers, Defendants audaciously ask the Court to "exercise its discretion and deny Plaintiffs' motion *entirely*" on a host of purported grounds (emphasis added). In asking the Court to exercise discretion that would lead to a complete denial of Plaintiffs' application, Defendants ignore two key facts: (i) that they are contractually obligated to pay said fees and costs under the dealership agreements at issue in these matters (the "Agreements"); and (ii) that judgment already has been entered requiring them to do so.

In the same vein, *every case cited by Defendants in opposition to Plaintiffs' motion to enforce arises under a statutory scheme not present here*, *e.g.*, under the Civil Rights Attorney's Fees Awards Act of 1976 (42 U.S.C. § 1988), the Voting Rights Act, the Clean Water Act, the Employee Retirement Income Security Act of 1974 ("ERISA"), the Truth in Lending Act, and the Bankruptcy Code—pursuant

2

to which district courts are afforded broader discretion and a far greater role in assessing the reasonableness of attorneys' fees and costs than under a contractual provision, which is at issue here.

Improperly attempting to appropriate the stringent eligibility requirements from the aforementioned irrelevant case law, Defendants attack as "impermissibly vague" the comprehensive description of KMZ Rosenman's legal services contained in Plaintiffs' initial memorandum of law. Further, Defendants press for the disclosure of specific **privileged** information, *e.g.*, detailed descriptions of KMZ Rosenman's inter-office and client conferences, as well as witness interviews and research strategies. (Def. Mem. at 14-15). However, because these actions are still pending—due in large part to the intransigent refusal of Defendants to participate in meaningful settlement negotiations—Plaintiffs appropriately have revealed only the subject matter of the legal services rendered by their counsel and have redacted their bills so as to preserve attorney-client privileged information, including, *inter alia*, attorney thought processes, strategies and/or communications memorialized in these time records. Notwithstanding the foregoing, it should be reiterated that Plaintiffs have offered to furnish the Court with unredacted bills for *in camera* inspection so as to confirm the accuracy of the aforementioned descriptions.[2]

Defendants also have called into question the reasonableness of Plaintiffs' retention of KMZ Rosenman as their national counsel, as opposed to a local Baltimore firm. Defendants' allegations of unreasonableness are a classic example of the proverbial pot calling the kettle black. Indeed, Defendants' "lead" counsel, Mark Wiemelt, is an attorney based in **Chicago, Illinois** specializing in intellectual property law, with Ober, Kaler, Grimes & Shriver performing no more than traditional local counsel functions (*e.g.*, filing and serving papers). By comparison, Plaintiffs' retention of counsel would appear to be more reasonable than that of Defendants, given that KMZ Rosenman's 50-attorney Washington,

---

[2]    In an attempt to draw a negative inference from Plaintiffs' redaction of bills, Defendants suggest that Plaintiffs may be seeking reimbursement on this application for legal services rendered and/or disbursements incurred in connection with disputes involving other dealers (Def. Mem. at 12-13). While it is true that KMZ Rosenman handled numerous matters for Plaintiffs, as attested in the accompanying Reply Affidavit of Plaintiffs' General Counsel, Dennis Stockwell ("Stockwell Reply Aff."), including the above-captioned matters, contained time charges or disbursements attributable to other dealer disputes. (Stockwell Reply Aff. ¶23).

3

D.C office has attorneys therein admitted to practice in the District of Maryland and is situated near SoftDent's offices in Hunt Valley, Maryland; KMZ Rosenman's 200-attorney New York office is located just a few blocks from Plaintiffs' New York office;[3] and KMZ Rosenman's 300-attorney Chicago office has attorneys therein admitted to practice in Illinois and Ohio, where Defendants PSSI and DMA, respectively, are located.

Moreover, as attested in the accompanying Stockwell Reply Affidavit, it was far from clear at the time Plaintiffs first retained KMZ Rosenman that Maryland would be the chosen forum for the above-captioned actions. Indeed, the very real possibility existed that Defendants would file separate actions in Illinois (PSSI's domicile) and Ohio (DMA's domicile)—which lawsuits could have proceeded along different tracks and potentially could have resulted in inconsistent determinations. Having attorneys admitted to practice in all the relevant jurisdictions—Chicago, Ohio and Maryland—KMZ Rosenman was an ideal choice, buttressed by the fact that the firm possessed significant expertise in all the relevant areas at issue in these actions, including commercial litigation (federal and state), the Uniform Commercial Code and intellectual property. The reasonableness of Plaintiffs' choice of counsel further is borne out by KMZ Rosenman's having achieved extraordinary results, obtaining an adjudication as to the rights of **both** Defendants in **one** court on **one** motion—in nine-months' time. It also should be noted that the total amount of attorneys' fees and costs being sought by Plaintiffs is to be borne equally by ***two Defendants pursuant to two separate dealership agreements***.

Similarly, Plaintiffs have submitted compelling evidence in the form of a national survey of attorney billing rates prepared by *The National Law Journal*, which evidence firmly establishes that KMZ Rosenman's rates are reasonable and should be utilized by the Court in computing the attorneys' fees and costs due and owing to Plaintiffs. Contrary to Defendants' assertions concerning said survey's purported inadmissibility, this very survey has been cited by other courts, including the District of Maryland, in calculating attorneys' fees awards.

---

[3]    Moreover, Plaintiffs' principal place of business is Atlanta, Georgia, making it even more implausible for them to retain a local Baltimore-based firm for these proceedings.

4

Finally, Defendants misleadingly contend that Plaintiffs have "pushed the envelope" by originally demanding $620,684.28 in attorneys fees and then later increasing their demand to $712,243.98. (See Def. Mem. at 2). As more fully explained below, that argument should be rejected because the increased fees and costs arise out of Defendants' flouting of the Court's January 7 Decision and Judgment followed by their filing of a meritless motion for reargument of the same, which motion the Court denied, see infra. As noted in Plaintiffs' initial memorandum of law, Plaintiffs continued to incur legal fees and costs during the month February 2003 because they were required to contest said motion. Thus, as clearly indicated in Plaintiffs' moving papers, the amount of reasonable attorneys' fees and costs sought in Plaintiffs' initial submission—$712,243.98—did not include unbilled but incurred time charges and disbursements for the month of February 2003 in connection with said defense. The Cotton Reply Affidavit contains a summary of reasonable time charges and disbursements incurred by Plaintiffs during the month of February 2003 bringing the total amount of reasonable attorneys fees and costs sought by Plaintiffs herein, including fees and costs attributable to February 2003, to $779,357.89.

## ARGUMENT

## I.

### RELYING ON MISLEADING, NON-BINDING, AND LARGELY IRRELEVANT CASELAW, DEFENDANTS HAVE FAILED TO DEMONSTRATE THAT PLAINTIFFS' ATTORNEYS' FEES AND COSTS ARE UNREASONABLE

In their Joint Opposition, Defendants utterly ignore the fact that they are contractually obligated to pay Plaintiffs' attorneys' fees and costs and that judgment already has been entered requiring them to do so. Indeed, as the Court noted in its January 7 Decision, the Agreements provide for an award of attorneys' fees and costs to the party that prevails in any dispute arising thereunder. (See January 7 Decision at p. 9, *quoting* Agreements § 17). The Court further noted that "[t]he validity of this section is **undisputed**, as demonstrated by both parties' requests for fees under it," and thus "grant[ed] summary judgment in favor of plaintiffs for reasonable attorney's fees." (Id.) (emphasis added).

Notwithstanding the foregoing, Defendants attempt to lead the Court on a frolic and detour. Separate and apart from the fact that virtually all of Defendants' cases *lie outside the Fourth Circuit* and thus are non-binding on the Court, Defendants' cases also are largely irrelevant for the independent

5

reason that they do not involve a contractual obligation to reimburse a prevailing party's attorneys' fees and costs, ***but rather arise under a statutory scheme not present here***.

For example, <u>National Assoc. of Concerned Veterans v. Secretary of Defense</u>, 675 F. 2d 1319, 1329 (D.C. Cir. 1982) ("<u>NACV</u>")—a case upon which Defendants extensively rely (<u>see</u>, <u>e.g.</u>, Def. Mem. at 4, 10-11, 18-20)—arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e <u>et</u> <u>seq.</u> ("Title VII"), and the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"), neither of which are relevant or applicable here. Unlike the Agreements at issue here, both Title VII and FOIA confer upon a federal court the "discretion" to award attorneys' fees to a prevailing claimant, and further impose upon said prevailing claimant a "heavy obligation to present well-documented claims." 675 F.2d at 1324. Defendants' attempt to impose said heavy obligation on Plaintiffs (and the Court) is insupportable and improper as a matter of law.[4]

The methodologies for evaluating attorneys' fees applications, as articulated in <u>Copeland</u> and its progeny, are largely irrelevant to the case at bar. Indeed, the D.C. Circuit in <u>Copeland</u> linked a district court's broad discretionary role in assessing the reasonableness of attorneys' fees to the fact that many civil rights attorneys work on a contingency basis with the likelihood of fee recovery often uncertain. Under such circumstances—not present here—the D.C. Circuit in <u>Copeland</u> admonished district court judges to "exercise their discretion as conscientiously as possible" in calculating a "contingency adjustment" modulated to the "inherently imprecise" determination of the "risk of failure of a [civil rights] lawsuit that ultimately proved to be successful." 641 F.2d at 893.

---

[4]    As explained in <u>NACV</u>, awards for attorneys' fees in civil rights cases are evaluated pursuant to the "market value" approach adopted by the D.C. Circuit in its seminal decision, <u>Copeland v. Marshall</u>, 641 F.2d 880 (D.C. Cir. 1980) (en banc)—also a Title VII case and also improperly relied on extensively by Defendants (<u>see</u> Def. Mem. at 2-3, 11 and 18-19). The "market value" approach involves a determination of the "lodestar" or number of hours reasonably expended by an attorney multiplied by the reasonable hourly rate, <u>see</u> <u>NACV</u>, 675 F.2d at 1323 (citing <u>Copeland</u>, 641 F.2d at 891) which the <u>Copeland</u> court defined as that prevailing in the community for similar work, <u>id.</u> (citing <u>Copeland</u>, 641 F.2d at 892). Once established, the "lodestar" may be adjusted to reflect various other factors, such as unusually superior or inferior representation. <u>Id.</u> (citing <u>Copeland</u>, 641 F.2d at 893-94).

As with Copeland and NACV, Defendants' numerous other attorneys' fees cases arise under the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988,[5] or other inapplicable federal statutes—including the Voting Rights Act, the Clean Water Act, the Employee Retirement Income Security Act of 1974 ("ERISA"), the Truth in Lending Act and the Bankruptcy Code[6]—all of which vest district courts with "discretion" to grant an award, of attorneys' fees and costs to a prevailing party and do not involve, like here, a contractual obligation and judgment requiring reimbursement of said fees and costs.

Consistent with the foregoing, District of Maryland Local Rule 109.2.b distinguishes between the documentation requirements attendant to an attorneys' fee application such as this one, arising under a contract provision, and those arising in the civil rights context (*i.e.*, under Copeland) as set forth in Appendix B thereto in the "Rules and Guidelines for Determining Lodestar Attorneys' Fees in Civil Rights and Discrimination Cases."[7]

---

[5]    The following case law relied on by Defendants construes the issue of reasonable attorneys' fees in the distinguishable and largely irrelevant context of the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988. See, e.g., Blum v. Stenson, 465 U.S. 886 (1984); Hensley v. Eckhart, 461 U.S. 424 (1983); Glover v. Johnson, 934 F. 2d 703 (6th Cir. 1991); Lightfoot v. Walker, 826 F. 2d 516 (7th Cir. 1987); Lucero v. City of Trinidad, 815 F. 2d 1384 (10th Cir. 1987); Spell v. McDaniel, 824 F. 2d 1380 (4th Cir. 1987) (same); Daly v. Hill, 790 F. 2d 1071 (4th Cir. 1986); Grendel's Den, Inc. v. Larkin, 749 F. 2d 945 (1st Cir. 1984); New York State Ass'n for Retarded Children v. Carey, 711 F. 2d 1136 (2d Cir. 1983); Ramos v. Lamm, 713 F. 2d 546 (10th Cir. 1983); Brown v. Stackler, 612 F. 2d 1057 (7th Cir. 1980); and Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974).

[6]    See, e.g., League of Latin Am. Citizens v. Roscoe Indep. Sch. Dist., 119 F.3d 1228, 1233 (5th Cir. 1997) (addressing discretionary award of attorneys fees under 42 U.S.C. § 1988 and Section 1973l(e) of the Voting Rights Act); In re Olson, 884 F. 2d 1415, 1428 (D.C. Cir. 1989) (addressing discretionary attorneys fee award under 28 U.S.C. § 593(f)(1) in connection with investigation by Independent Counsel appointed pursuant to 28 U.S.C. § 591); Norman v. Housing Auth., 836 F. 2d 1292, 1303 (11th Cir. 1988) (addressing discretionary award of attorneys fees in class action lawsuit brought by tenants against public housing authority for overcharging rent); Miele v. New York State Teamsters Conference Pension & Retirement Fund, 831 F. 2d 407, 409 (2d Cir. 1987) (addressing award of attorneys fees in ERISA action pursuant to 29 U.S.C. § 1132(g)(1)); Barber v. Kimbrell's, Inc., 577 F. 2d 216, 226 (4th Cir. 1978) (addressing award of attorneys fees pursuant to Truth in Lending Act, 15 U.S.C. § 1640(a)); Campbell v. Green, 112 F. 2d 143, 144 (5th Cir. 1940) (addressing discretionary attorneys fee award under Bankruptcy Act, 11 U.S.C.A. 644).

[7]    Consistent with Copeland's acknowledgement that many civil rights cases are taken on a contingency basis, the Court's "Rules and Guidelines for Determining Lodestar Attorneys' Fees in Civil Rights and Discrimination Cases" states that fee guidelines contained therein "were derived by informally surveying members of the bar concerning hourly rates paid on the defense side in employment discrimination and civil rights cases and adding an upward adjustment to account for the risk of nonpayment faced by a

(continued)

As such, Defendants' improper attempt to conflate their contractual obligation into said statutory scheme flies in the face of the plain language of the Agreements and constitutes a further breach thereof.

**A.      Defendants Do Not Dispute—and Thus Concede—that Plaintiffs Have Met the Documentation Requirements Under Maryland Cases Involving Contracts, Like Here, Providing for an Award of Attorneys' Fees and Costs to the Prevailing Party**

In their zealous reliance upon the stringent documentation requirements set forth in attorneys' fees cases arising under various federal statutes, Defendants ignore and thus do not dispute the applicability of <u>Reisterstown Plaza Associates v. General Nutrition Center, Inc.</u>, 89 Md. App. 232, 247, 597 A.2d 1049, 1056-1057 (Md. Ct. Spec. App. 1991) ("<u>Reisterstown</u>") as cited in Plaintiffs' initial memorandum (Pl. Mem at 36).  Like here, <u>Reisterstown</u> involved a contract whereunder the unsuccessful party was required to reimburse the prevailing party's attorneys' fees and costs.  Consistent with Local Rule 109.2.b, the <u>Reisterstown</u> court held that the reasonableness of attorneys' fees is governed by, *inter alia*, (i) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;  (ii) the fee customarily charged in the locality for similar legal services; (iii) the amount involved and the results obtained; (iv) the time limitations imposed by the client or by the circumstances; (v) the nature and length of the professional relationship with the client; (vi) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (vii) whether the fee is fixed or contingent.  89 Md. App. at 247, 597 A.2d at 1056-1057.

When considering the time and labor required to implement Plaintiffs' complex litigation strategy, the novelty and difficulty of the procedural and substantive issues involved, and the skill requisite to perform said legal service properly, <u>see</u> *supra* Point I(D), the fees and costs incurred by Plaintiffs in terminating the Agreements are entirely reasonable.  Said reasonableness is further manifest, when considering the time limitations imposed by the circumstances, *i.e.*, KMZ Rosenman's obtaining dispositive relief within the nine month period of reasonable notice of termination afforded by Plaintiffs

_____

(continued from previous page . . .)

plaintiff's lawyer in the event that her client does not prevail."  <u>See</u> Appendix B at p. 79 n.5, Local Rules of the United States District Court for the District of Maryland.  For the same reason that the Appendix B Lodestar Guidelines are inapplicable to Plaintiffs' motion to enforce, Defendants' cases premised thereupon also should be rejected.

to Defendants, absent any applications for injunctive relief and the like, and the potential losses Plaintiffs could have incurred absent said result, see id.

Consistent with Reisterstown, Sullivan v. Easco Corp., 662 F. Supp. 1396 (D. Md. 1987) also involved a contract providing for an award of attorneys' fees and costs to the party prevailing in a dispute thereunder. The court rejected the defendant's allegations of impermissible vagueness on the ground that the plaintiff's submissions—which, like Plaintiffs' submissions here, carefully summarized the services provided and hours charged by the plaintiff's attorneys—provided a sufficient basis for granting the plaintiff's application for attorneys' fees and costs in their entirety. Id. at 1405.

As contrasted with "the heavy obligation to present well-documented claims" required under Defendants' inapposite case NACV, 675 F.2d at 1324, the Sullivan court held that, under Maryland law, "the party requesting attorney's fees and expenses must offer *some documentation* of the hours worked, and an explanation of how the time was spent, and . . . the Court . . . independently fixes the amount of a reasonable fee." Sullivan, 662 F.Supp. at 1404 (emphasis added). The court further noted that the plaintiff—like Plaintiffs here—had "*outline[d]* [in a memorandum to the court] the hours spent and basic services rendered by the various partners and associates with the law firm . . . which represent[ed] [plaintiff] in the instant case," id. at 1405 (emphasis supplied). The Sullivan court deemed sufficient the supporting documentation submitted by the plaintiff, including summarization, in letter form, of the attorneys involved, their hourly rates, the time spent and the basic services rendered. Based on the foregoing submissions, the court concluded that, "[c]learly [the plaintiff] ha[d] satisfied his burden of documentation with respect to attorneys fees." Id. at 1405. Here, similarly, the initial memorandum and supporting affidavits submitted by Plaintiffs, along with the instant reply memorandum and accompanying reply affidavits, articulating in painstaking detail, *inter alia*, the attorneys involved, their hourly rates, the time spent and the basic services rendered, are sufficient to satisfy Plaintiffs' burden of documentation under Maryland law with respect to the attorneys fees and costs sought and thus the Court should grant Plaintiffs' motion to enforce in its entirety.

9

**B.    Even if Defendants' Cases Were Relevant and
Applicable (Which They Are Not) Plaintiffs Have
Presented Well-Documented Attorneys' Fees Claims**

Even if Defendants' statutory-based cases were relevant and applicable to Plaintiffs' application (which they are not), Plaintiffs have complied with the stringent documentation requirements thereunder. Indeed, Plaintiffs' submissions are sufficiently detailed to permit the Court to grant Plaintiffs application for fees and costs in its entirety. Plaintiffs will not repeat those descriptions again here. Instead, Plaintiffs respectfully refer the Court to pages 16 to 34 of the Plaintiffs' initial memorandum of law, (and for expenses incurred in February 2003, the Cotton Reply Affidavit submitted herewith), which contain detailed descriptions of the specific services provided and projects performed by KMZ Rosenman— including, *inter alia*, (1) inter-office meetings involving KMZ Rosenman attorneys concerning the manifold issues raised in connection with the above-captioned actions; (2) conferences involving KMZ Rosenman and Plaintiffs' employees; (3) fact finding interviews of potential witnesses; (4) legal research and analysis of numerous complex issues involving the laws of three states with respect to the substantive and jurisdictional issues (as well as the availability of injunctive relief) and preparation of numerous memoranda regarding the same; (5) the exchange of discovery requests and responses, along with the production and analysis of thousands of pages of documents; (6) preparation of deposition outlines; (7) preparation of pleadings; and (8) preparation of a successful dispositive motion—all of which bear testament to the reasonableness of Plaintiffs' fee and cost application.[8] (See Plaintiff Mem. at 16-34).

---

[8]    Relying on Brown v. Stackler, 612 F.2d 1057 (7th Cir. 1980), Defendants maintain that Plaintiffs' application should be denied in its entirety on the purported ground that Plaintiffs' documentation is impermissibly vague (Def. Mem. at 4-5). The myriad distinguishing factors in Brown underscore the absurdity of Defendants' position. Separate and apart from Brown arising under the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988, the attorneys' fee application at issue was denied because the work performed consisted mostly of "motions for extensions of time" to answer a "six-page complaint [that] raised an issue which everyone knew would be controlled by the results of litigation pending in other courts." 612 F.2d at 1058. Despite the fact that the attorney had performed virtually no substantive work, the attorney sought reimbursement for "over 800 hours of billable time" which the court correctly determined to be unreasonable. Id. Here, in stark contrast to the attorney in Brown, KMZ Rosenman was able to formulate and execute a complex litigation strategy involving myriad procedural and substantive issues that enabled Plaintiffs to terminate the Agreements in a single, consolidated proceeding. Moreover, as Plaintiffs' initial memorandum of law makes clear, KMZ Rosenman worked vigorously throughout the relevant period to achieve Plaintiffs' objectives in sharp contrast to the attorney in Brown.

Plaintiffs will address, however, the principal challenges raised by Defendants with respect to the fees and costs incurred:  (i) prior to the filing of the complaints (i.e., January through April 2002), (ii) after the submission of Plaintiffs' dispositive motions (i.e., October through December 2002) and (iii) in defeating Defendants' motion for reconsideration of the January 7 Decision and Judgment.  As explained below, Defendants' allegations of vagueness and insufficiency are insupportable and should be rejected.

1.      **Plaintiffs Have Documented Adequately the Attorneys'
        Fees and Costs Reasonably Incurred During The Period
        January 17, 2002 Through April 7, 2002**

As borne out by Plaintiffs' submissions, in the initial months of their retention, *i.e.*, from January through the beginning of April 2002, KMZ Rosenman conducted extensive research to properly advise Plaintiffs as to which jurisdiction would be most suitable for the commencement of the instant actions. Although called into question by Defendants, the fees that were incurred during this period— approximately $155,000—were well spent insofar as KMZ Rosenman considered myriad jurisdictional and substantive issues so as to avoid the possibility of unduly wasteful motion practice that could have been brought by Defendants (*e.g.*, to transfer venue, for *forum non conveniens*, personal jurisdiction). (Stockwell Reply Aff. ¶¶ 15-16).

Indeed, at pages 17 to 21 of their initial memorandum of law, Plaintiffs provided an exhaustive summary of the tasks undertaken by KMZ Rosenman during the January through March 2002 period, which tasks included: (1) a comprehensive review of the Agreements, including the terminability thereof and the scope of products covered thereunder; (2) careful analysis and research of the myriad jurisdictional and procedural issues attendant to the commencement of the instant actions (although governed by Maryland law, the Agreements do not contain a forum selection provision and thus actions could have been commenced by either party in state or federal court in any of one of a number of jurisdictions); (3) extensive fact finding interviews by KMZ Rosenman attorneys with various witnesses concerning the history and course of dealing associated with the Agreements; (4) researching and analyzing multiple substantive legal issues in specialized practice areas including the law dealership agreements, the Uniform Commercial Code, intellectual property; and (5) drafting comprehensive memoranda analyzing the foregoing issues.

11

It was far from clear at the time Plaintiffs first retained KMZ Rosenman that Maryland would be the chosen forum for the above-captioned actions. Indeed, the very real possibility existed that Defendants would file separate actions in Illinois (PSSI's domicile) and Ohio (DMA's domicile)—which lawsuits could have proceeded along different tracks and potentially could have resulted in inconsistent determinations. As such, in the initial months of their retention, *i.e.*, from January through the beginning of April 2002, KMZ Rosenman conducted extensive research to properly advise Plaintiffs as to which jurisdiction would be most suitable for the commencement of the instant actions. The performance of these tasks was critical to KMZ Rosenman's formulation and execution of a strategy that would allow Plaintiffs to carry out their objective of terminating the Agreements in a single consolidated proceeding in order to minimize their total costs and obtain the speediest possible result. And, since the strategy devised by KMZ Rosenman during this pre-filing period proved successful in terminating the Agreements in nine short months, it is clear that that the fees and expenses incurred during the period January 17, 2002 through April 7, 2002 are recoverable pursuant to the Court's January 7 Judgment and Decision.

> **2.    Plaintiffs Have Documented Adequately the Attorneys'
> Fees and Costs Reasonably Incurred During The Period
> September 28, 2002 Through December 31, 2002**

Defendants also contend that attorneys' fees and costs for the period following the briefing of Plaintiffs' summary judgment motion are "outrageously excessive" on the purported ground that "it is unlikely that Plaintiffs' attorneys performed any work on issues for which Plaintiffs ultimately prevailed" during that period. (Def. Mem. at 13). As a preliminary matter, it should be noted that among the attorneys' fees and costs Defendants have been adjudged to pay are fees and costs associated with "bringing this action," which undoubtedly include fees and costs incurred after the submission of Plaintiffs' summary judgment motion (See January 7 Judgment at ¶ 4; see also January 7 Decision at p. 9).

Moreover, it is clear that the extensive discovery activities undertaken after the dispositive motions were fully submitted in September 2002 largely involved claims upon which Plaintiffs prevailed in the January 7 Judgment and Decision. Indeed, Defendants' own document requests and interrogatories propounded in these actions, which are annexed as Exhibits B and C to the Cotton Reply Affidavit,

12

confirm that "prevailing issues" were the central focus of discovery including, the negotiation and drafting of the Agreements, the purported "re-negotiation" of the Agreements in 1997, the purchase quotas contained in the Agreements (non-compliance with which Defendants' erroneously argued was a basis for terminating the Agreements), the durational term of the Agreements, Plaintiffs' decision to terminate the Agreements, the terminability of other dealership agreements, and the basis for Plaintiffs' allegation that nine-months' notice of termination was reasonable.  (See, e.g., Cotton Reply Aff., Ex. B, Defendants' Amended First Request for Documents and Things, dated September 26, 2002 at ¶¶ 1, 2, 3, 5, 6, 8-12, 13, 18, 20, 25, 28,  and Ex. C, Defendants' First Set of Interrogatories to Plaintiffs, dated August 30, 2002 at ¶¶ 1-5, 6, 8-10, 13).  In the same vein, notwithstanding their correct belief that these issues were determinable as a matter of law, Plaintiffs were forced to propound discovery demands directed to issues upon which they ultimately prevailed (Pl. Mem. at 28-32).

Additionally moreover, in October 2002, Plaintiffs responded to Defendants' discovery demands by accumulating, reviewing and producing *14,811 pages of responsive documents*.  Further, in this same period, the parties exchanged detailed correspondence concerning discovery disputes, including Defendants' eleventh-hour request to take ten pre-trial depositions during the weeks immediately preceding the discovery cut-off.  Accordingly, KMZ Rosenman met with and interviewed certain of the noticed parties, prepared outlines for the defense of said depositions and prepared comprehensive outlines for the taking of Defendants' depositions.

Finally, in December 2002, Plaintiffs received and reviewed Defendants' *9,000-page document production*, and negotiated a standstill agreement with Defendants pending the Court's adjudication of Plaintiffs' motions. It is therefore clear that the $115,879 in attorneys' fees and costs incurred from October through December 2002 were part of "bringing this action," pertain to prevailing issues and thus are recoverable from Defendants.

### 3. Plaintiffs Have Documented Adequately the Attorneys' Fees and Costs Reasonably Incurred from January 7, 2003 through February 21, 2003 in Defeating Defendants' Motion for Reconsideration

Even though their application for reargument of the January 7 Decision and Order was denied by the Court, in an act of revisionist history, Defendants attempt to abdicate responsibility for the fees and

13

costs incurred by Plaintiffs in defeating said motion on the purported ground that Plaintiffs' conduct "precipitated" said motion.  (Def. Mem. at 14).

Following an exchange of letters between the parties arising out of Defendants' flouting of the Court's January 7 Decision and Judgment, on January 17, 2003, Defendants filed a motion to reconsider, alter, amend and/or stay enforcement of said Decision and Judgment. In addition to denying Defendants' motions on February 21, the Court clarified its dismissal of the Eighth Counterclaim to the limited extent of holding that Defendants could provide technical support and services pertaining to the software at issue "provided, of course, . . . that relevant materials were returned and not used."  (Cotton Reply Aff., Ex. D, Trans. at p. 11).  The Court's holding was consistent with its finding in its January 7 Decision that Defendants were required "'to immediately return [to the plaintiffs] any and all materials regarding the Products in any form whatsoever,'" as required in the Agreements.  (Decision at p. 9, *quoting* Section 13.3 of the Agreements).

Attempting to distract attention from the fact that Plaintiffs prevailed on the reconsideration motion and thus are contractually entitled to recoup their attorneys' fees and costs in connection therewith, Defendants disingenuously contend that said motion "was primarily directed at [Defendants'] request for clarification" of the January 7 Decision and Judgment (Def. Mem. at 14).  Defendants' contention, however, is belied by their own moving papers. (Cotton Reply Aff., Ex. E).  Indeed, only one-third of Defendants' moving brief (pages 2 through 7) is directed to said clarification request, **while the remaining two-thirds** of their moving brief (pages 7 through 21) contains a rehashing of arguments (unrelated to Defendants' clarification request) previously considered and rejected by the Court in its January 7 Decision and Judgment.  The reason that Defendants' motion for clarification "consumed almost all of the oral hearing" on February 21 (Def. Mem. at 14) was because the Court declined even to entertain argument on the issues Defendants sought to rehash, which comprised the greater portion of their motion. The Court thus held: "[t]hey're issues that I thoroughly considered . . . [a]nd to the extent that I'm asked to reconsider them, I deny that motion." (Cotton Reply Aff., Ex. D, Trans. at 14-15).

In any event, since Plaintiffs were the prevailing parties on Defendants' motion for reconsideration, Plaintiffs are entitled to their reasonable attorneys fees and costs under the express language of the Agreements and the Court's January 7 Decision and Judgment.

**C.     Defendants' Various Challenges to Plaintiffs'
        Redaction of Bills Should Be Rejected**

Bereft of any evidentiary support, Defendants purport to draw various negative inferences from Plaintiffs' redaction of bills submitted on the instant application, alleging that Plaintiffs (i) engaged in "inappropriate billing practices" (Def. Mem. at 14-15) and (ii) are seeking reimbursement for legal services rendered and/or disbursements incurred in connection with disputes involving other dealers (id. at 12-13).   On the basis of these trumped-up allegations, Defendants' ask the Court for "focused discovery" of Plaintiffs' billing records, i.e., that Plaintiffs be required to present unredacted bills. Defendants' unfounded allegations and their request for "focused discovery" should be rejected.[9]

First, Plaintiffs have more than adequately complied with their documentation requirements under Maryland law, setting forth in a memorandum the hours spent and a detailed description of the services rendered by the various attorneys and paraprofessionals at KMZ Rosenman involved in these actions. Further, the hourly fees charged by each partner and associate are readily ascertainable from the aforementioned information.  See Sullivan, 662 F. Supp. at 1405.  The greater level of detail sought by Defendants under their inapposite body of case law should be rejected.

---

[9]     Defendants further challenge Plaintiffs' electronic research charges in the amount of approximately $25,000 pointing to the purported "flat rate" of $120.00 per month charged to Defendants' Chicago counsel.  (Def. Mem. at 16)  Plaintiffs' legal research costs implicate a ***thirteen month period*** (January 2002 through January 2003) during which comprehensive research on myriad substantive and procedural issues was undertaken almost entirely on these legal databases.  Moreover, a broad range of billing rates are available on Lexis and Westlaw, depending upon the size of the law firm and the scope of databases to which the firm desires access.  A major firm like KMZ Rosenman has access to a wide number of databases whereas a small Chicago practitioner like Defendants' counsel may obtain a flat rate for access to a limited number of databases.  In any event, Defendants' bald challenge to Plaintiffs' electronic research costs constitutes yet another thinly veiled attack on Plaintiffs' reasonable retention of a national law firm to effectuate their goal of terminating and non-renewing the Agreements in an extraordinary nine-month time frame.  Defendants raise similar challenges to charges of $207.94 for meals, $229.43 for Federal Express service, $649.20 for faxes, $379.42 for telephone and $2,375.07 for travel. (Def. Mem. at 16).  Given the disparate locations involved—Plaintiffs being in Georgia, their counsel in New York and Washington, D.C., and these actions pending in Baltimore—all of these charges incurred over thirteen months, in fact, demonstrate the cost efficiency of Plaintiffs' counsel and thus are reasonable.

Second, it is well-established that a party is not required to produce unredacted copies of billing records that contain attorney thought processes, strategies and/or communications protected from disclosure by the attorney client privilege, especially when, as here, *these cases are still active* and the redacting party has offered to submit the unredacted records to the Court for *in camera* review.  See, e.g., Chaudhry v. Gallerizzo, 174 F.3d 394, 402-03 (4th Cir. 1999) (denying motion to compel party to produce unredacted legal bills that contained confidential information regarding legal advice).

Third, apart from arising under an inapposite statutory scheme, the cases cited by Defendants in support of their request for "focused discovery" are distinguishable. For example, in NACV, although the court ordered discovery concerning a party's attorneys' fee application, it did so because, unlike here, the party seeking fees had failed to provide documents setting forth "time charges . . . to back up the summary" it had prepared.  675 F.2d at 1334-35.  Moreover, the party seeking fees apparently had "no systematic methods for recording time and may not be in a position to provide meaningful records when requested."  Id. at 1334-35.  Here, by contrast, KMZ Rosenman's attorneys and paraprofessionals maintain daily diaries of their time recorded concurrent with the rendition of professional services, and thus employ "systematic methods for recording time."

Finally, with respect to Defendants' allegations that Plaintiffs are seeking reimbursement for costs and fees incurred in other dealer disputes, as attested by Plaintiffs' General Counsel in his accompanying reply affidavit, having "reviewed all the bills for the above-captioned actions. . . these bills, submitted here in redacted form, do not contain *any* time charges or disbursements for other matters and/or other dealer disputes."  (Stockwell Reply Aff. ¶ 13)  (emphasis added). Thus, there is simply no basis for Defendants' suggestion that Plaintiffs are seeking to improperly bill them for services relating to litigations involving other dealers.[10]  For all of these reasons, Defendants' various assaults upon Plaintiffs' redaction of bills should be rejected.

---

[10]    Similarly without merit is Defendants' red herring contention that, because the name "Professional Software Solutions, NE" is listed on copies of the redacted bills submitted by Plaintiffs, "all of the submitted billings are for the Professional Software Solutions, NE matter and not related to the present matters." (Def. Mem. at 17).  As attested in the Cotton Reply Affidavit, said "NE" designation was a suffix inadvertently included by KMZ Rosenman's Accounting Department when a matter name for the

(continued)

**D.    Unlike Defendants' Retention of Chicago Counsel, Plaintiffs' Retention of KMZ Rosenman was Logistically and Strategically Reasonable**

Grasping at straws in an attempt to undermine the extraordinary results achieved by KMZ Rosenman and its concomitant entitlement to a full award of the attorneys' fees and costs sought on the instant motion to enforce, Defendants purport to call into question the reasonableness of Plaintiffs' retention KMZ Rosenman as their national counsel.  Defendants contend that the rates charged by KMZ Rosenman should be reduced because firms based in Baltimore, Maryland, such as Goodell, DeVries, Leech and Dan, LLP or Defendants' own local counsel, Ober, Kaler, Grimes & Shriver, with lower billing rates purportedly could have "perform[ed] identical services" to those performed by KMZ Rosenman. (Def. Mem. at 7-9).  Defendants' allegations of unreasonableness are a classic example of the proverbial pot calling the kettle black.  Indeed, Defendants fail to mention *that their "lead" counsel, Mark Wiemelt, is an attorney based in Chicago, Illinois specializing in intellectual property law*, with Ober Kaler performing no more than traditional local counsel functions (*e.g.*, filing and serving papers).

When considered in tandem with Defendants' retention of an intellectual property attorney located in Chicago, Illinois, Plaintiffs' retention of KMZ Rosenman undoubtedly is more reasonable, given that KMZ Rosenman's 50-attorney Washington, D.C office has attorneys therein admitted to practice in the District of Maryland and is situated near SoftDent's offices in Hunt Valley, Maryland; KMZ Rosenman's 200-attorney New York office is located just a few blocks from Plaintiffs' New York office and KMZ Rosenman 300-attorney Chicago office has attorneys therein admitted to practice in Illinois and Ohio, where PSSI and DMA, respectively, are located..  (Stockwell Reply Aff. ¶¶ 11-12).

Separate and apart from the foregoing factors, prior to the commencement of the above-captioned actions, Plaintiff PracticeWorks decided that it wanted to retain a top-tier national firm that would facilitate PracticeWorks' goal of maximizing the value of the dental software businesses that it had acquired, including Plaintiff SoftDent.  Indeed, in mid-2001, Plaintiffs assumed from their corporate

---

(continued from previous page . . .)

above-captioned actions was created by them in January 2002.  (Cotton Reply Aff. ¶ 16).  However, as attested by Plaintiffs' General Counsel, the bills submitted in connection with the instant application reflect time charges and disbursements incurred in the above-captioned actions only. (Stockwell Reply Aff. ¶ 23).

22186028.03

predecessors agreements, including the Agreements, conferring exclusive distributorships to various dealers of the SoftDent line of dental office management software.  At the time it assumed these dealership agreements, PracticeWorks already had a national, direct sales force in place to sell its own line of dental office management software.  Plaintiffs determined that it was inefficient and unnecessarily costly to maintain in the same national market both a direct sales force for its own line of software as well as a separate dealer network for the SoftDent line of software.  Thus, in the interests of conforming the marketing of the SoftDent software to an already existing direct sales method, Plaintiffs decided not to renew and to terminate dealerships like those at issue here. (Stockwell Reply Aff. ¶ 13).

Upon acquiring the dental software businesses, including SoftDent, Plaintiffs believed that dealership agreements then in place, including the Agreements, could be terminated and non-renewed, thus enabling Plaintiffs to get the most out of the businesses they had acquired (*i.e.*, by utilizing their direct sales force and by not having to pay commissions to dealers).  Had Plaintiffs failed in their attempt to terminate and non-renew Defendants' dealerships—which, at the time they retained KMZ Rosenman were the two largest in the dealer network—said failure would have had a significant adverse impact on Plaintiffs' termination and non-renewal of other dealership agreements.  Thus, Plaintiffs needed a firm like KMZ Rosenman that could implement a national strategy to effectuate the proper termination and non-renewal of the dealerships Plaintiffs had inherited—a task that KMZ Rosenman more than accomplished. (Stockwell Reply Aff. ¶ 14).

Even if Plaintiffs had retained a Baltimore firm for the purpose of initiating the above-captioned actions in Maryland, there was no guarantee that Defendants would not jointly or individually seek to transfer venue to their respective home states, Illinois and Ohio, or, for that matter, to initiate their own actions in those states.  In that scenario, with only Baltimore counsel retained, Plaintiffs would have been relegated—after the fact—to engaging additional counsel in these other jurisdictions, which additional counsel would then first have to become versed in the procedural and substantive aspects of these cases— all at much greater expense to Plaintiffs. (Stockwell Reply Aff. ¶ 17). Having attorneys admitted to practice in all the relevant jurisdictions, *i.e.*, Chicago, Ohio and Maryland, KMZ Rosenman was an ideal choice, as the firm was fully prepared to take the laboring oar on Plaintiffs' behalf regardless of the

18

jurisdiction in which the litigation was commenced (or in which motion practice may have been brought). (Id. ¶ 16).

In addition to a law firm with broad geographic reach, Plaintiffs required the services of attorneys with expertise in, *inter alia*, commercial litigation (federal and state), the Uniform Commercial Code and intellectual property to assist them in connection with their national agenda. Given the paucity of Maryland law on the terminability and nonrenewal of agreements of indefinite duration, it was necessary to research cases from jurisdictions across the country in order to properly analyze the relevant legal issues and to formulate a litigation strategy—a task better suited to KMZ Rosenman than a local firm with a singular presence in Baltimore. (Stockwell Reply Aff. ¶ 18).

In sum, a firm based solely in Baltimore simply could not have offered the geographic reach and multidisciplinary expertise that Plaintiffs required when they chose to retain KMZ Rosenman. Accordingly, the Court should apply KMZ Rosenman's rate structure in computing Plaintiffs' attorneys fee award, and not the rate structure of a small local firm.

      **1.**      **The Successful Result Obtained By KMZ Rosenman Further Underscores the Reasonableness of Plaintiffs' Retention of KMZ Rosenman as Well as the Fees and Costs Incurred in Connection with these Actions**

The skill of KMZ Rosenman in achieving remarkable results within a short time frame cannot be understated and fully justifies the attorneys fee award sought by Plaintiffs. As the Maryland Court of Appeals held in <u>Reisterstown</u>, the reasonableness of attorneys' fees under Maryland law requires consideration, *inter alia*, of the skill requisite to perform the legal service properly, the time limitations imposed by the circumstances, the amount of attorneys' fees involved and the results obtained.[11]   89 Md.App. at 247, 597 A.2d at 1057.

---

[11]   Similarly, Local Rule 109.2.b requires that any motion for an award of attorneys' fees be accompanied by a memorandum setting forth "the nature of the case, the claims as to which the party prevailed . . . a detailed description of the work performed broken down by hours or fractions thereof expended on each task, the attorney's customary fee for such like work, the customary fee for like work prevailing in the attorney's community, a listing of any expenditures for which reimbursement is sought, any additional factors required by case law, and additional factors that the attorney wishes to bring to the Court's attention."   These requirements are binding and applicable here, rather than those set forth in <u>Johnson v. Georgia Highway Express, Inc.</u>, 488 F.2d 714, 717-719 (5th Cir. 1974) (Def. Mem. at 21-22),

(continued)

First, KMZ Rosenman obtained summary judgment against both Defendants under two separate Agreements on all of Plaintiffs' claims and all of Defendants' counterclaims that were the subject of Plaintiffs' motion in a period of only nine months, which period was coextensive with the amount of notice of termination afforded by Plaintiffs to Defendants (and which time frame the Court has found to be reasonable as a matter of law).

Second, in successfully formulating and executing Plaintiffs' litigation strategy in the context of a single, consolidated proceeding before this Court, KMZ Rosenman was able to prevent Defendants from filing separate actions in separate states concerning the termination of their Agreements, which would have resulted in far more expensive and protracted litigation than the litigation herein.

Defendants consistently sought to frustrate Plaintiffs' efforts to streamline the proceedings herein, and, had they been successful in those efforts, would have greatly increased the costs of the litigation of these matters.  To that end, Defendants opposed Plaintiffs request for leave to file the dispositive motion that culminated in the Court's January 7 Decision and Judgment, and instead pressed for multiple depositions and related discovery.  (Stockwell Reply Aff. ¶ 4).  If Defendants had prevailed on that issue, the parties would have engaged in expensive pretrial discovery followed by a trial, which would undeniably have resulted in greatly increased fees and expenses.  However, by obtaining permission from the Court to file its dispositive motion, and by convincing Defendants to agree to a stay on deposition discovery pending the outcome of the Court's decision, KMZ Rosenman was able to obtain an expeditious resolution of this matter and thereby avoid substantial additional expense.

Similarly, although the parties exchanged thousands of pages of document discovery after KMZ Rosenman was granted leave to file its motion for dispositive relief, KMZ Rosenman was able to obtain Defendants' agreement to defer further activities concerning the manifold disputes relating to such document discovery pending the Court's determination of Plaintiffs' motion, which deferral similarly prevented the generation of substantial additional fees.  Thus, contrary to Defendants' assertion that KMZ

---

(continued from previous page . . .)

which, like Defendants' other inapposite cases, arises under Section 706(k) of Title VII of the Civil Rights Act of 1964.

Rosenman's fees are "outrageously excessive" (see Def. Mem. at 5), the fees undoubtedly would have been much higher if the strategy devised by KMZ Rosenman had not been effectuated over Defendants' repeated objections.

    In addition to the foregoing issues, it should also be emphasized that Plaintiffs' fees and costs in the amount of $779,357.89—comprised of $736,519.50 in attorneys' fees and $42,838.39 in actual, necessary and reasonable out-of-pocket expenses incurred to date and recoverable in accord with the Court's January 7 Decision and Judgment—should be looked at in the context of the results obtained and the overall potential liability involved. The fees and costs incurred—here, approximately $780,000— were incurred in terminating *two* dealerships governed by *two* separate agreements, with costs borne equally by each dealer. Defendants' disingenuous presentation of the lump sum misleadingly obscures the sharing of these costs by two separate parties. Separate and apart from the foregoing, Plaintiffs' fees and costs constitute a mere fraction of the potential losses Plaintiffs might have incurred absent the extraordinary result achieved by KMZ Rosenman. (Stockwell Reply Aff. ¶ 24). Here, had Plaintiffs been unsuccessful in terminating the Agreements, in addition to having to pay Defendants' reasonable attorneys' fees and costs, said defeat would have diminished the overall value of the businesses Plaintiffs acquired insofar as Plaintiffs would have faced significant resistance from other dealers under similar agreements—emboldened by Plaintiffs' inability to terminate and non-renew the Agreements—taking the position that said agreements were not terminable at will and/or had not been terminated on reasonable notice. (Id.) As such, considering KMZ Rosenman's fees in the context of the extraordinary results obtained by them and the overall potential losses Plaintiffs might have incurred had they been unsuccessful on their dispositive motion, KMZ Rosenman's fees are entirely reasonable and appropriate.

    Straining credulity, Defendants challenge the reasonableness of KMZ Rosenman's billing rates on the purported ground that "the final results [obtained by KMZ Rosenman] are speculative, questionable and premature." (Def. Mem. at 22). Notwithstanding the precatory nature of Defendants' remaining two counterclaims—one of which is not even recognized as an independent cause of action under Maryland law, see Swedish Civil Aviation Admin. v. Project Mgmt. Enterprises, Inc., 190 F. Supp. 2d 785, 793-94 (D. Md. 2002) (holding that breach of the implied duty of good faith and fair dealing is

not recognized as an independent cause of action under Maryland law)—Defendants' failure to press these counterclaims in the nearly five months since the Court's issuance of the January 7 Decision and Judgement confirms the certainly and finality of the results obtained by KMZ Rosenman.

> ### 2. Plaintiffs Could Not Have Retained the Same Attorney as Dentsply, Their Corporate Predecessor

In a last ditch effort to circumvent their contractual obligation to reimburse Plaintiffs' attorneys' fees and costs, Defendants posit that Plaintiffs should have retained Richard M. Barnes, an attorney with the Baltimore firm Goodell, DeVries, Leech & Dan LLP, who represented one of Plaintiffs' corporate predecessors, Dentsply International, Inc. ("Dentsply") (Def. Mem. at 8-9).

Preliminarily, Plaintiffs' General Counsel has attested that he never met nor spoke to Mr. Barnes about the Agreements and thus would have had no reason to retain him.  Notwithstanding the foregoing, while Mr. Barnes may be familiar with the Agreements, contrary to Defendants' assertion, Mr. Barnes could not have represented Plaintiffs due to a potential conflict of interest between Plaintiffs and Dentsply.  (Stockwell Reply Aff. ¶ 20).  Indeed, at the time Plaintiffs assumed the Agreements and other dealership agreements from Dentsply, the parties entered into a confidential contribution agreement regarding, *inter alia*, indemnification of actual and potential claims arising under these agreements that might or would be asserted against Plaintiffs.  Given the potentially adverse interests of Plaintiffs and Dentsply regarding said indemnity issues, Plaintiffs could not retain the same counsel as Dentsply in these proceedings. (Id.)

Moreover, even if there were no conflict of interest, the Goodell firm is based in Baltimore and does not maintain offices in any other states.  Accordingly, that firm simply does not possess the geographic and multidisciplinary resources possessed by KMZ Rosenman, as noted hereinabove, and therefore it is unreasonable for Defendants to suggest that Plaintiffs should have retained the Goodell firm in connection with these actions.  In any event, as Mr. Stockwell attests in his Reply Affidavit, if Plaintiffs had retained a Baltimore firm to implement the termination and non-renewal of the Agreements, they would have retained a top-tier or top-rated firm, whose rates, undoubtedly, would be comparable to those of KMZ Rosenman.  Undoubtedly, such firm would be the Venable firm or Piper Rudnick, see *infra*.

22

E.    **Plaintiffs Have Established That KMZ Rosenman's Hourly Rates Are**
      **Reasonable And Commensurate With Fees Charged By Comparable Firms**

As noted in Plaintiff's initial memorandum of law, Local Rule 109.2.b requires that a party making an attorneys fee application submit with its application, *inter alia*, information concerning "the attorney's customary fee for . . . like work" and "the customary fee for like work prevailing in the attorney's community. . . ."  See Local Rule 109.2.  As such, Plaintiffs set forth in their initial memorandum of law the rates charged by the KMZ Rosenman attorneys involved with the above-captioned actions, provided redacted copies of the bills reflecting the charges actually incurred and a detailed summary of the work performed by each attorney, and confirmed that the rates charged in the instant actions do not differ from the rates generally charged to and collected from KMZ Rosenman's other clients.  (See Plaintiff Mem. at 8-35).  Moreover, Plaintiffs submitted *The National Law Journal's* 2002 survey of billing rates at law firms nationwide ("*The National Law Journal* Survey") for the purpose of establishing that the rates charged by KMZ Rosenman are commensurate with "the customary fee" for like work prevailing in KMZ Rosenman's community.  (See Cotton Aff., Ex. L, "A Firm By Firm Sampling of Billing Rates Nationwide, *The National Law Journal*, December 2002).  As amplified in Plaintiffs' initial memorandum of law, *The National Law Journal* Survey firmly establishes that KMZ Rosenman's billing range for partners—from $415 to $550 per hour—and for associates—from $185 to $400 per hour—is entirely commensurate with the billing rates of comparable national law firms in New York, Washington, D.C. and, even, Baltimore, Maryland.  (See Plaintiff Mem. at 34-35).

Notwithstanding Plaintiffs' compliance with Local Rule 109.2.b, Defendants baldly contend that Plaintiff's motion should be denied, or the amount of its application reduced, on the purported ground that Plaintiffs "have not presented evidence that their billing rates are reasonable" (Def. Mem. at 5).  Faced with irrefutable evidence of said reasonableness, Defendants feebly contend that *The National Law Journal* Survey should not be considered on the purported ground that it is "inadmissible hearsay evidence" (id. at 6-7).

Not surprisingly, Defendants fail to cite a single case in support of their inadmissibility argument.  However, courts in this district and elsewhere have relied upon previous editions of the very same *National Law Journal* Survey cited here by Plaintiffs in addressing the reasonableness of attorneys fee

23

applications.  See, e.g., Padgett v. Comm'rs, Somerset Co., Civ. No. HAR-85-3190, 1989 U.S. Dist. LEXIS 5096 at * 5 n. 5 (D. Md. May 2, 1989) (court stated that it "takes note" of National Law Journal Survey in computing prevailing market rates for attorneys fees for purpose of deciding attorneys fee application); accord M.S. o/b/o I.O. v. N.Y.C. Bd. of Educ., No. 01 Civ. 4015, 2002 U.S. Dist. LEXIS 22220 at * 12 (S.D.N.Y. Nov. 15, 2002) (accepting National Law Journal Survey as evidence of prevailing attorneys fee rates in deciding attorneys fee application); cf. Dameron v. Sinai Hospital of Baltimore, Inc., 644 F. Supp. 551, 558 (D. Md. 1986) (holding that survey of billing rates charged by Los Angeles based attorneys for work done in the District of Maryland supported claim that attorney's rates were reasonable).  Accordingly, this Court should accept The National Law Journal Survey as evidence that the fees charged by KMZ Rosenman were reasonable and consistent with fees customarily charged by national firms similar to KMZ Rosenman.

In any event, if Plaintiffs had retained a Baltimore firm to implement the termination and non-renewal of the Agreements, they would have retained a top-tier or top-rated firm, whose rates, undoubtedly, would be comparable to those of KMZ Rosenman (Stockwell Reply Aff. ¶ 21). Significantly, national firms with Baltimore offices that meet the foregoing criteria have billing rate structures comparable to KMZ Rosenman.  For example, Piper Rudnick LLP is a 794 attorney law firm having offices in Baltimore, Chicago and New York which, like KMZ Rosenman, has departments specializing in commercial litigation and intellectual property. (Cotton Aff., Ex. L).  Like KMZ Rosenman, which has a billing range for partners of $415 to $550 per hour and $185 to $400 for associates, Piper Rudnick charges $295 to $615 per hour for partners and $140 to $405 for associates. (Id.) Similarly, one of Maryland's top law firms, the Venable Firm, with 448 attorneys, has billing ranges entirely comparable to those of KMZ Rosenman, with an hourly billing range for partners from $250 to $670, and an hourly billing range for associates of $165 to $310. (Id.)  Thus, contrary to Defendants' assertion, the rates of comparable Maryland based firms demonstrate that KMZ Rosenman's rates are

reasonable and should be utilized by the Court for the purpose of calculating Plaintiffs' attorneys fee award.[12]

## **CONCLUSION**

For all of the foregoing reasons, it is respectfully requested that Defendants be adjudged to reimburse Plaintiffs in the amount of $779,357.89 in bringing this action, litigating their motion for partial summary judgment and partial judgment on the pleadings, and in successfully defending against Defendants' motion for reconsideration.

Dated:  May 30, 2003

                        Respectfully submitted,

                        KATTEN MUCHIN ZAVIS ROSENMAN

By:        /s/  Howard E. Cotton
           Howard E. Cotton (admitted *pro hac vice*)
           Michael S. Gordon (admitted *pro hac vice*)
           575 Madison Avenue
           New York, New York 10022
           Telephone: (212) 940-8855
           Facsimile: (212) 894-5966

           Counsel for Plaintiffs
           PracticeWorks, Inc. and SoftDent LLC

---

[12]    In one of the only cases cited by Defendants from this Circuit, CoStar Group, Inc. v. Loopnet, Inc., 106 F. Supp. 2d 780, 788 (D. Md. 2000) attorneys' fees were awarded under Fed. R. Civ. P. 30(d)(2) and 37(a)(4) in connection with costs incurred in bringing a motion to compel and the re-taking of a party's deposition. 106 F.Supp.2d at 787.  Even if CoStar did not involve a discretionary award of attorneys' fees under the Federal Rules of Civil Procedure, it is factually distinguishable for the independent reason that the attorneys' fees applicant there, unlike Plaintiffs here, "provided **no** evidence regarding the prevailing market rate" in the community for similar services and failed to provide a legitimate basis for charging rates exceeding the rates normally charged by lawyers practicing before the court.  Id. at 788 (emphasis added).    Here, by contrast, Plaintiffs have submitted the *National Law Journal* Survey and have demonstrated that the rates charged by KMZ Rosenman are commensurate with the billing rates of comparable national law firms.