IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

------------------------------------------------x
PRACTICEWORKS, INC., et al.,              )
                                          )
                          Plaintiffs      )   Civil No.: JFM 02 CV 1205
                                          )
       - against -                        )
                                          )
PROFESSIONAL SOFTWARE SOLUTIONS           )
OF ILLINOIS, INC.,                        )
                                          )
                          Defendant.      )
------------------------------------------------x
------------------------------------------------x
                                          )
PRACTICEWORKS, INC., et al.,              )
                                          )
                          Plaintiffs      )   Civil No.: JFM 02 CV 1206
                                          )
       - against -                        )
                                          )
DENTAL MEDICAL AUTOMATION, INC.,          )
                                          )
                          Defendant.      )
------------------------------------------------x

**REPLY AFFIDAVIT OF DENNIS STOCKWELL IN FURTHER SUPPORT OF PLAINTIFFS' MOTION TO ENFORCE THE COURT'S DECISION AND JUDGMENT AGAINST DEFENDANTS FOR ATTORNEYS' FEES AND COSTS**

COUNTY OF COBB    )
                  ) ss.:
STATE OF GEORGIA  )

**DENNIS STOCKWELL**, being duly sworn, deposes and says:

1. I am the General Counsel of Plaintiffs PracticeWorks, Inc. and SoftDent LLC (collectively "Plaintiffs"). As such, I am fully familiar with the facts set forth herein. I submit

1

22186029.022

this affidavit in support of Plaintiffs' Motion to Enforce the Court's Memorandum Decision entered as of January 7, 2003 (the "January 7 Decision"), and its Order and Judgment entered as of January 7, 2003 (the January 7 Judgment") (jointly, the "January 7 Decision and Judgment") against Defendants Professional Software Solutions of Illinois, Inc. ("PSSI") and Dental Medical Automation, Inc. ("DMA") (collectively "Defendants"), entering judgment in favor of Plaintiffs "for reasonable attorney's fees and costs associated with bringing this action and litigating . . . [their] motion [for partial summary judgment and partial judgment on the pleadings]." (January 7 Judgment at ¶ 4; see also January 7 Decision at p. 9).

### KMZ Rosenman's Fees Are Reasonable

2.   I have reviewed Defendants' Joint Opposition to Plaintiffs' Motion for Attorneys' Fees and Costs ("Def. Mem.") in which Defendants repeatedly characterize Plaintiffs' attorneys' fees and costs as "outrageously excessive." Notwithstanding this self-serving hyperbole, Plaintiffs believe that KMZ Rosenman's fees are reasonable and appropriate in light of the extraordinary results that KMZ Rosenman achieved in bringing this action, *i.e.*, obtaining summary judgment on all three of Plaintiffs' claims, dismissing all seven of Defendants' counterclaims that were the subject of Plaintiffs' motion and successfully defeating Defendants' motion for reconsideration of the January 7 Decision and Judgment.

3.   After months of careful analysis of jurisdictional and procedural issues, see *infra*, KMZ Rosenman opted to bring a consolidated proceeding before this Court and, ***in nine short months***, obtained the aforementioned dispositive relief, including the judgment for attorneys'

2

fees and costs that Plaintiffs seek to enforce on the instant motion.[1] This nine-month period was coextensive with the amount of notice of termination and non-renewal afforded by Plaintiffs to Defendants (and which time frame the Court has found to be reasonable as a matter of law).

4. In opposition to KMZ Rosenman's efforts to streamline these proceedings through the dispositive motion practice that led to the Court's January 7 Decision and Judgment, Defendants pressed for multiple depositions and related discovery. By obtaining permission from the Court to file a dispositive motion, and by negotiating with Defendants' counsel, Mark Wiemelt, for a stay of depositions pending the outcome of the Court's decision, KMZ Rosenman was able to obtain an expeditious resolution of this matter and thereby avoid substantial waste of time and money.

5. Following the successful result on the summary judgment motion, and pursuant to the Court's direction that the parties attempt to resolve the amount of attorneys' fees and costs due and owing to Plaintiffs pursuant to the January 7 Decision and Judgment, Plaintiffs sought, in good faith, to negotiate a global resolution of the above-captioned cases. However, Defendants took the implausible settlement position that Plaintiffs' attorneys' fees and costs should be set off against the purported value of Defendants' two remaining counterclaims and Defendants' appellate rights, resulting in "a wash." Understandably, Plaintiffs did not consider

---

[1] Indeed, one of the most beneficial aspects of the results obtained by KMZ Rosenman was that Plaintiffs obtained an adjudication as to the rights of *both* Defendants in *one* court on *one* motion. Had KMZ Rosenman not prosecuted these actions in a consolidated proceeding, the possibility existed of lengthier proceedings pending in multiple jurisdictions at much greater expense. It also must be remembered that the amount being sought is to be borne equally by two Defendants pursuant to two separate dealership agreements.

such proposition to remotely constitute an even trade, and thus Defendants' disingenuous settlement position was rejected.

6. Contrary to Defendants' contention, to the best of my knowledge, at no point did Defendants *ever* offer a lump sum payment of $50,000 for attorneys' fees and costs incurred by Plaintiffs in these cases. (Def. Mem. at 2). However, even if such amount had been offered, it would have been rejected as inadequate and unacceptable, given the disparity in value between the legal services rendered by KMZ Rosenman on the one hand, and the purported value (if any) of Defendants' counterclaims and appellate rights on the other. In addition, Defendants further proposed that they be permitted to continue providing support and service to Plaintiffs' software customers—even though such support and service is a virtual impossibility absent Defendants' improper use of Plaintiffs' proprietary materials. Accordingly, in light of Defendants' refusal to afford any real value to Plaintiffs' attorneys' fees and/or to agree to a settlement package wherein they tendered any monies to Plaintiffs, settlement discussions failed and necessitated the instant application.

7. Consistent with Defendants' attempt to deny Plaintiffs any reimbursement for their attorneys' fees and costs is Defendants' unseemly request that the Court "exercise its discretion and deny Plaintiffs' motion *entirely*" on a host of purported grounds (emphasis added). In asking the Court to exercise discretion that would lead to a complete denial of Plaintiffs' application, Defendants ignore two key facts: (i) that they are contractually obligated to pay said fees and costs; and (ii) that judgment already has been entered requiring them to do so.

4

8.     Indeed, as the Court noted in its January 7 Decision, the Agreements provide that: "'[i]n the event that any action is filed in relation to this Agreement, the unsuccessful party in the action shall pay to the successful party, in addition to all of the sums that the unsuccessful party may be called on to pay, a reasonable sum for the successful party's reasonable attorneys' fees.'" (January 7 Decision at p. 9, *quoting* Agreements § 17). The Court further noted that "[t]he validity of this section is **undisputed**, as demonstrated by both parties' requests for fees under it," and thus "grant[ed] summary judgment in favor of plaintiffs for reasonable attorney's fees." (Id.) (emphasis added).

9.     Hence, Defendants' disingenuous request that the Court exercise its discretion and deny Plaintiffs' motion *entirely* constitutes nothing more than an improper attempt to subvert and undermine a contractual provision to which Defendants agreed and in connection with which their liability already has been adjudged.

### Plaintiffs' Decision to Retain KMZ Rosenman, Rather than a Local Baltimore Firm, Was Reasonable

10.    Defendants also have called into question the reasonableness of Plaintiffs' retention of KMZ Rosenman as their national counsel, as opposed to a local firm, such as Goodell, DeVries, Leech and Dan, LLP or Defendants' own local counsel, Ober, Kaler, Grimes & Shriver. (Def. Mem. at 8-9). Defendants further maintain that Plaintiffs have "failed to produce any evidence that attorneys with the requisite skill to litigate the complexity and specialized nature of the cases were not available locally" and that Plaintiffs have "failed even to allege that . . . the nearest counsel with requisite expertise was KMZR in New York." (Id. at 7-8). Defendants' allegations of unreasonableness are a classic example of the proverbial pot calling the kettle black. Indeed, Defendants fail to mention that their "lead" counsel, Mark

Wiemelt, is an attorney based in *Chicago, Illinois* specializing in intellectual property law, with Ober Kaler performing no more than traditional local counsel functions (*e.g.*, filing and serving papers).

11.     By comparison, Plaintiffs' retention of counsel would appear to be more reasonable than that of Defendants, given that in addition to the roughly 200 attorneys in New York, KMZ Rosenman has in excess of 300 attorneys in Chicago—a potential venue for Plaintiffs' litigation with PSSI and DMA—and attorneys therein admitted to practice in Illinois and Ohio, where PSSI and DMA, respectively, are located. Additionally, KMZ Rosenman has approximately 50 attorneys in Washington, D.C., with a number of those attorneys admitted to practice in the District of Maryland.

12.     Moreover, from a logistical standpoint, KMZ Rosenman was a sensible choice for Plaintiffs as well. KMZ Rosenman's Washington, D.C office is situated near SoftDent's offices in Hunt Valley, Maryland and, KMZ Rosenman's New York office is located just a few blocks from Plaintiffs' New York office. In fact, on a few occasions, Plaintiffs have used KMZ Rosenman's New York offices for board meetings and senior-level executive meetings.

13.     Separate and apart from the foregoing factors, prior to the commencement of the above-captioned actions, PracticeWorks decided that it wanted to retain a top-tier national firm that would facilitate PracticeWorks' goal of maximizing the value of the dental software businesses that it had acquired, including SoftDent. Indeed, in mid-2001, Plaintiffs assumed from their corporate predecessors agreements, including the Agreements, conferring exclusive distributorships to various dealers of the SoftDent line of dental office management software. At the time it assumed these dealership agreements, PracticeWorks already had a national, direct

22186029.022

sales force in place to sell its own line of dental office management software. Plaintiffs determined that it was inefficient and unnecessarily costly to maintain in the same national market both a direct sales force for its own line of software as well as a separate dealer network for the SoftDent line of software. Thus, in the interests of conforming the marketing of the SoftDent software to an already existing direct sales method, Plaintiffs decided not to renew and to terminate dealerships like those at issue here.

14.  Upon acquiring the dental software businesses, including SoftDent, Plaintiffs believed that dealership agreements then in place, including the Agreements, could be terminated and non-renewed, thus enabling Plaintiffs to get the most out of the businesses they had acquired (*i.e.*, by utilizing their direct sales force and by not having to pay commissions to dealers). Had Plaintiffs failed in their attempt to terminate and non-renew Defendants' dealerships—which, at the time they retained KMZ Rosenman were the two largest in the dealer network—said failure would have had a significant adverse impact on Plaintiffs' termination and non-renewal of other dealership agreements. Thus, Plaintiffs needed a firm like KMZ Rosenman that could implement a national strategy to effectuate the proper termination and non-renewal of the dealerships Plaintiffs had inherited—a task that KMZ Rosenman more than accomplished.

15.  In addition to this national plan, it was far from clear at the time Plaintiffs first retained KMZ Rosenman that Maryland would be the chosen forum for the above-captioned actions. Indeed, the very real possibility existed that Defendants would file separate actions in Illinois (PSSI's domicile) and Ohio (DMA's domicile)—which lawsuits could have proceeded along different tracks and potentially could have resulted in inconsistent determinations. As explained herein and in the accompanying reply memorandum of law, in the initial months of

7

their retention, *i.e.*, from January through the beginning of April 2002, KMZ Rosenman conducted extensive research to properly advise Plaintiffs as to which jurisdiction would be most suitable for the commencement of the instant actions.

16. The fees that were incurred during this period—approximately $155,000—were well spent insofar as KMZ Rosenman considered myriad jurisdictional and substantive issues so as to avoid the possibility of unduly wasteful motion practice that could have been brought by Defendants (*e.g.*, to transfer venue, for *forum non conveniens*, personal jurisdiction). Having attorneys admitted to practice in all the relevant jurisdictions, *i.e.*, Chicago, Ohio and Maryland, KMZ Rosenman was an ideal choice, as the firm was fully prepared to take the laboring oar on Plaintiffs' behalf regardless of the jurisdiction in which the litigation was commenced (or in which motion practice may have been brought).[2]

17. Even if Plaintiffs had retained a Baltimore firm for the purpose of initiating the above-captioned actions in Maryland, there was no guarantee that Defendants would not jointly or individually seek to transfer venue to their respective home states, Illinois and Ohio, or, for that matter, to initiate their own actions in those states. In that scenario, with only Baltimore counsel retained, Plaintiffs would have been relegated—after the fact—to engaging additional counsel in these other jurisdictions, which additional counsel would then first have to become

---

[2] Although the Agreements are governed by Maryland law (Agreements § 19), they do not contain a forum selection provision. Thus, these actions could have been commenced by either party in state or federal court in any of one of a number of jurisdictions, thus further justifying Plaintiffs' retention of a national law firm like KMZ Rosenman with a presence in many of the potential jurisdictions, as opposed to a local firm with a presence only in Baltimore.

22186029.022

versed in the procedural and substantive aspects of these cases—all at much greater expense to Plaintiffs.

18. In addition to a law firm with broad geographic reach, Plaintiffs required the services of attorneys with expertise in, *inter alia*, commercial litigation (federal and state), the Uniform Commercial Code and intellectual property to assist them in connection with their national agenda. Given the paucity of Maryland law on the terminability and nonrenewal of agreements of indefinite duration, it was necessary to research cases from jurisdictions across the country in order to properly analyze the relevant legal issues and to formulate a litigation strategy—a task better suited to KMZ Rosenman than a local firm with a singular presence in Baltimore. KMZ Rosenman also has a well-established and nationally recognized intellectual property practice group, ideally suited for responding to the intellectual property challenges raised by Defendants, including, *inter alia*, that the Agreements were "licensing agreements" of indefinite duration governed by the Federal Copyright Act and/or Maryland Uniform Computer Information Transactions Act (the "MD UCITA"). Needless to say, KMZ Rosenman's expertise in these intellectual property matters led to the dismissal of Defendants' counterclaims asserted under the aforementioned statutes.

19. In sum, a firm based solely in Baltimore simply could not have offered the geographic reach and multidisciplinary expertise that Plaintiffs required when they chose to retain KMZ Rosenman. Accordingly, the Court should apply KMZ Rosenman's rate structure in computing Plaintiffs' attorneys fee award, and not the rate structure of a small local firm.

22186029.022

### Plaintiffs Could Not Have Retained the Same
### Attorney as Dentsply, Their Corporate Predecessor

20. In a last ditch effort to circumvent their contractual obligation to reimburse Plaintiffs' attorneys' fees and costs, Defendants posit that Plaintiffs should have retained Richard M. Barnes, an attorney with the Baltimore firm Goodell, DeVries, Leech & Dan LLP, who represented one of Plaintiffs' corporate predecessors, Dentsply International, Inc. ("Dentsply") (Def. Mem. at 8-9). Preliminarily, it should be noted that, I have never met nor spoken to Mr. Barnes about the Agreements and thus would have had no reason to retain him. Notwithstanding the foregoing, while Mr. Barnes may be familiar with the Agreements, contrary to Defendants' assertion, Mr. Barnes could not have represented Plaintiffs due to a potential conflict of interest between Plaintiffs and Dentsply. Indeed, at the time Plaintiffs assumed the Agreements and other dealership agreements from Dentsply, the parties entered into a confidential contribution agreement regarding, *inter alia*, indemnification of actual and potential claims arising under these agreements that might or would be asserted against Plaintiffs. Given the potentially adverse interests of Plaintiffs and Dentsply regarding said indemnity issues, Plaintiffs could not retain the same counsel as Dentsply in these proceedings.

21. Moreover, even if there were no conflict of interest, the Goodell firm is based in Baltimore and does not maintain offices in any other states. Accordingly, that firm simply does not possess the geographic and multidisciplinary resources possessed by KMZ Rosenman, as noted hereinabove, and therefore it is unreasonable for Defendants to suggest that Plaintiffs should have retained the Goodell firm in connection with these actions. In any event, if Plaintiffs had retained a Baltimore firm to implement the termination and non-renewal of the Agreements,

10

they would have retained a top-tier or top-rated firm, whose rates, undoubtedly, would be comparable to those of KMZ Rosenman.

### Defendants' Objection to Plaintiffs' Submission of Redacted Bills and Defendants' Bald Allegations of Improper Billing Practices Should Be Rejected By the Court

22. Contrary to Defendants' protestations, it was entirely appropriate for Plaintiffs to redact the bills submitted on the instant application, given the fact that these matters are still pending—due in large part to the intransigent refusal of Defendants to participate in meaningful settlement negotiations—and thus to preserve attorney-client privileged information, including, *inter alia*, attorney thought processes, strategies and/or communications memorialized in these time records. Notwithstanding the detailed descriptions of the specific services provided and projects performed by KMZ Rosenman contained in Plaintiffs' initial memorandum, Plaintiffs further have offered to furnish the Court with unredacted bills for *in camera* inspection so as to confirm the accuracy of the aforementioned descriptions.

23. However, in an attempt to draw a negative inference from Plaintiffs' redaction of bills, Defendants suggest—particularly with respect to the January through April 2002 time period immediately preceding the commencement of the above-captioned actions, see *supra* paragraphs 15-16—that Plaintiffs may be seeking reimbursement on this application for legal services rendered and/or disbursements incurred in connection with disputes involving other dealers (Def. Mem. at 12-13). While it is true that KMZ Rosenman handled numerous matters for Plaintiffs, as Plaintiffs' General Counsel and the person responsible for reviewing and approving all legal bills for payment, I can attest to the fact that these matters all were separately billed under separate matter numbers. Moreover, I reviewed all the bills for the above-captioned actions and can further attest that, to the best of my knowledge, these bills, submitted here in

11

22186029.022

redacted form, do not contain *any* time charges or disbursements for other matters and/or other dealer disputes. Rather, the time charges and disbursements for which Plaintiffs are seeking reimbursement were incurred entirely in connection with the above-captioned matters.

### Plaintiffs Attorneys' Fees and Costs Are Reasonable When Considered in Context of the Overall Potential Liability Involved

24. Finally, in addition to the foregoing issues, it should also be emphasized that Plaintiffs' fees and costs in the amount of $779,357.89—comprised of $736,519.50 in attorneys' fees and $42,838.39 in actual, necessary and reasonable out-of-pocket expenses incurred to date and recoverable in accord with the Court's January 7 Decision and Judgment—should be looked at in the context of the results obtained and the overall potential liability involved. The fees and costs incurred—here, approximately $780,000—constitute a mere fraction of the potential losses Plaintiffs might have incurred absent the extraordinary result achieved by KMZ Rosenman. Here, had Plaintiffs been unsuccessful in terminating the Agreements, in addition to having to pay Defendants' reasonable attorneys' fees and costs, said defeat would have diminished the overall value of the businesses Plaintiffs acquired insofar as Plaintiffs would have faced significant resistance from other dealers under similar agreements—emboldened by Plaintiffs' inability to terminate and non-renew the Agreements—taking the position that said agreements were not terminable at will and/or had not been terminated on reasonable notice. As such, considering KMZ Rosenman's fees in the context of the extraordinary results obtained by them and the overall potential losses Plaintiffs might have incurred had they been unsuccessful on their dispositive motion, KMZ Rosenman's fees are entirely reasonable and appropriate.

22186029.022

**WHEREFORE**, for all of the foregoing reasons and those set forth in the accompanying reply memorandum of law, and the previously submitted Affidavit of Howard E. Cotton, sworn to March 25, 2003 and Plaintiffs' memorandum of law of the same date, it is respectfully requested that Defendants be adjudged to reimburse Plaintiffs in the amount of $620,684.28 in bringing this action and litigating their motion for partial summary judgment and partial judgment on the pleadings, plus additional attorneys' fees and costs in the amount of $158,673.61 incurred by Plaintiffs in successfully defending against Defendants' motion for reconsideration, for a total of $779,357.89.

_____
DENNIS STOCKWELL

Sworn to before me this
30th day of May, 2003

_____ 5/30/03
Notary Public