**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

```
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                  )
PRACTICEWORKS, INC., et al.,                      )
                                                  )
                         Plaintiffs,              )   Civil No.:  JFM 02 CV 1205
                                                  )
          - against -                             )
                                                  )
PROFESSIONAL SOFTWARE SOLUTIONS                   )
OF ILLINOIS, INC.,                                )
                                                  )
                         Defendant.               )
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                  )
PRACTICEWORKS, INC., et al.,                      )
                                                  )
                         Plaintiffs,              )   Civil No.:  JFM 02 CV 1206
                                                  )
          - against -                             )
                                                  )
DENTAL MEDICAL AUTOMATION, INC.,                  )
                                                  )
                         Defendant.               )
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
```

**REPLY AFFIDAVIT OF HOWARD E. COTTON IN FURTHER SUPPORT OF
PLAINTIFFS' MOTION TO ENFORCE THE COURT'S DECISION AND
JUDGMENT AGAINST DEFENDANTS FOR ATTORNEYS' FEES AND COSTS**

COUNTY OF NEW YORK )
                   ) ss.:
STATE OF NEW YORK  )

**HOWARD E. COTTON**, being duly sworn, deposes and says:

1. I am a member of the law firm of Katten Muchin Zavis Rosenman ("KMZ Rosenman"), counsel for Plaintiffs PracticeWorks, Inc. ("PracticeWorks") and SoftDent LLC ("SoftDent") (collectively "Plaintiffs"). As such, I am fully familiar with the facts set forth herein and the exihibits annexed hereto. I submit this reply affidavit in further support of Plaintiffs' motion to enforce the Court's Memorandum Decision and Judgment entered as of January 7, 2003 against Defendants Professional Software Solutions of Illinois, Inc. ("PSSI") and Dental Medical Automation, Inc. ("DMA") (collectively

22186024.01

"Defendants"), ordering that Defendants compensate Plaintiffs for their "reasonable attorney's fees and costs associated with bringing this action and litigating . . . [their] motion [for partial summary judgment and partial judgment on the pleadings]." (See January 7 Judgment at ¶ 4; see also January 7 Decision at p. 9).

2. Contrary to Defendants' suggestion of Plaintiffs' "reluctant" furnishing of bills to Defendants' counsel (Def. Mem. at 2), immediately following the briefing of Defendants' motion for reconsideration which transpired from mid-January through mid-February 2003, Plaintiffs promptly furnished Defendants with bills for the time period in issue.

## SUMMARY OF ATTORNEYS' FEES AND DISBURSEMENTS INCURRED BY PLAINTIFFS IN FEBRUARY 2003

3. At the time Plaintiffs filed their Memorandum in Support of their Motion to Enforce the Court's Decision and Judgment Against Defendants for Attorneys' Fees and Costs, dated March 25, 2003 ("Pl. Mem."), they were not in possession of KMZ Rosenman's bill for reasonable time charges and disbursements incurred during the month of February 2003. As such, set forth herein is a summary of the services rendered and disbursements incurred by KMZ Rosenman professionals and paraprofessionals on Plaintiffs' behalf during the month of February 2003.

4. Annexed hereto as Exhibit A is a true and correct copy of KMZ Rosenman's Invoice Number 1300006845 dated March 31, 2003, reflecting time charges for services rendered by KMZ Rosenman on an hourly basis during February 2003. During February 2003, Plaintiffs incurred reasonable time charges in the amount of $65,337, which included, *inter alia*, the exchange of significant correspondence with Defendants and the Court, as well as research relating to, Defendants' non-compliance with the Court's January 7 Decision and Judgment, opposing Defendants' unsuccessful motion for reconsideration of said Decision and Judgment, and preparing the instant application to enforce the Court's judgment against Defendants for attorneys' fees and costs. See Ex. A.

5. I supervised these activities spending 42.7 hours in February reviewing Defendants' motion for reconsideration and drafting Plaintiffs' opposition thereto, preparing for and participating in

oral argument on Defendants' motion (by teleconference on February 21), conferring with Messrs. Dennis Stockwell and Al Fiore regarding the Court's January 7 Decision and Judgment and Defendants' refusal to abide by the same, and conferring with Mr. Gordon regarding litigation strategy and case management issues.

6.     Mr. Gordon spent 82.10 hours drafting and revising Plaintiffs' papers in opposition to Defendants' motion for reconsideration, drafting letters to Defendants' counsel and the Court regarding Defendants' non-compliance with the January 7 Decision and Judgment, researching myriad federal procedural rules implicated by Defendants' non-compliance with the Court's January 7 Decision and Judgment, and participating in oral argument on Defendants' motion (by teleconference on February 21), reviewing Plaintiffs' bills and drafting the instant motion to enforce.  Junior associates Geoffrey Cahen and Kerri Folb assisted Mr. Gordon by researching various issues implicated by Defendants' non-compliance with the January 7 Decision and Judgment and the consequent motion for reconsideration, and issues relating to the instant motion to enforce.  Mr. Cahen spent 10.5 hours and Ms. Folb spent 20.3 hours researching such issues.

7.     Additionally, during February 2003, Plaintiffs incurred actual, necessary and reasonable out-of-pocket expenses in the amount of $1,776.91 (which included charges for telephone and facsimile communications, photocopying charges and legal research on Westlaw, all of which are itemized on Exhibit A), for a total amount of $67,113.91.  Thus, the total amount of reasonable attorneys' fees and costs sought by Plaintiffs herein, including fees and costs attributable to February 2003, is $779,357.89.

## PREVAILING ISSUES WERE THE FOCUS OF DEFENDANTS' OWN DISCOVERY DEMANDS

8.     Defendants have taken the position that attorneys' fees and costs for the period following the briefing of Plaintiffs' summary judgment motion are "outrageously excessive" on the purported ground that "it is unlikely that Plaintiffs' attorneys performed any work on issues for which Plaintiffs ultimately prevailed" during that period. (Def. Mem. at 13).

22186024.01

9. However, is clear that the extensive discovery activities undertaken after the dispositive motions were fully submitted in September 2002 largely involved claims upon which Plaintiffs prevailed in the January 7 Judgment and Decision. Indeed, Defendants' own document requests and interrogatories propounded in these actions, which are annexed hereto as Exhibits B and C, respectively, confirm that "prevailing issues" were the central focus of discovery including, the negotiation and drafting of the Agreements, the purported "re-negotiation" of the Agreements in 1997, the purchase quotas contained in the Agreements (non-compliance with which Defendants' erroneously argued was a basis for terminating the Agreements), the durational term of the Agreements, Plaintiffs' decision to terminate the Agreements, the terminability of other dealership agreements, and the basis for Plaintiffs' allegation that nine-months' notice of termination was reasonable.  See, e.g., Ex. B, Defendants' Amended First Request for Documents and Things, dated September 26, 2002 at ¶¶ 1, 2, 3, 5, 6, 8-12, 13, 18, 20, 25, 28, and Ex. C, Defendants' First Set of Interrogatories to Plaintiffs, dated August 30, 2002 at ¶¶ 1-5, 6, 8-10, 13.  In the same vein, notwithstanding their correct belief that these issues were determinable as a matter of law, Plaintiffs were forced to propound discovery demands directed to issues upon which they ultimately prevailed (Pl. Mem. at 28-32).

10. Further, in this same period, the parties exchanged detailed correspondence concerning discovery disputes, including Defendants' eleventh-hour request to take ten pre-trial depositions during the weeks immediately preceding the discovery cut-off.  Accordingly, KMZ Rosenman met with and interviewed certain of the noticed parties, prepared outlines for the defense of said depositions and prepared comprehensive outlines for the taking of Defendants' depositions.

### DEFENDANTS' MOTION FOR RECONSIDERATION WAS NOT "PRECIPITATED BY PLAINTIFFS

11. Similarly, Defendants attempt to abdicate responsibility for the fees and costs incurred by Plaintiffs in defeating their motion for reargument on the purported ground that Plaintiffs' conduct "precipitated" said motion. (Def. Mem. at 14)

4

12. Following an exchange of letters between the parties arising out of Defendants' flouting of the Court's January 7 Decision and Judgment, on January 17, 2003, Defendants filed a motion to reconsider, alter, amend and/or stay enforcement of said Decision and Judgment. In addition to denying Defendants' motions on February 21, the Court clarified its dismissal of the Eighth Counterclaim to the limited extent of holding that Defendants could provide technical support and services pertaining to the software at issue "provided, of course, . . . that relevant materials were returned and not used." (See Trans. at p. 11, a copy of which is annexed hereto as Exhibit D). The Court's holding was consistent with its finding in its January 7 Decision that Defendants were required "'to immediately return [to the plaintiffs] any and all materials regarding the Products in any form whatsoever,'" as required in the Agreements. (Decision at p. 9, *quoting* Section 13.3 of the Agreements).

13. Attempting to distract attention from the fact that Plaintiffs prevailed on the reconsideration motion and thus are contractually entitled to recoup their attorneys' fees and costs in connection therewith, Defendants disingenuously contend that said motion "was primarily directed at [Defendants'] request for clarification" of the January 7 Decision and Judgment (Def. Mem. at 14).

14. Defendants' contention, however, is belied by their own moving papers, a copy of which is annexed hereto as Exhibit E. Indeed, only one-third of Defendants' moving brief (pages 2 through 7) is directed to said clarification request, *while the remaining two-thirds* of their moving brief (pages 7 through 21) contains a rehashing of arguments (unrelated to Defendants' clarification request) previously considered and rejected by the Court in its January 7 Decision and Judgment. The reason that Defendants' motion for clarification "consumed almost all of the oral hearing" on February 21 (Def. Mem. at 14) was because the Court declined even to entertain argument on the issues Defendants sought to rehash, which comprised the greater portion of their motion. The Court thus held: "[t]hey're issues that I thoroughly considered . . . [a]nd to the extent that I'm asked to reconsider them, I deny that motion." (Ex. D, Trans. at 14-15).

5

15.     In any event, since Plaintiffs were the prevailing parties on Defendants' motion for reconsideration, Plaintiffs are entitled to their reasonable attorneys fees and costs under the express language of the Agreements and the Court's January 7 Decision and Judgment.

### DEFENDANTS' CHALLENGES TO VARIOUS DISBURSEMENTS SHOULD BE REJECTED

16.     Similarly without merit is Defendants' red herring contention that, because the name "Professional Software Solutions, NE" is listed on copies of the redacted bills submitted by Plaintiffs, "all of the submitted billings are for the Professional Software Solutions, NE matter and not related to the present matters." (Def. Mem. at 17). Said "NE" designation was a suffix inadvertently included by KMZ Rosenman's Accounting Department when a matter name for the above-captioned actions was created by them in January 2002. However, as attested by Plaintiffs' General Counsel, the bills submitted in connection with the instant application reflect time charges and disbursements incurred in the above-captioned actions only.

17.     Defendants further challenge Plaintiffs' electronic research charges in the amount of approximately $25,000 pointing to the purported "flat rate" of $120.00 per month charged to Defendants' Chicago counsel. (Def. Mem. at 16)  Plaintiffs' legal research costs implicate a *thirteen month period* (January 2002 through January 2003) during which comprehensive research on myriad substantive and procedural issues was undertaken almost entirely on these legal databases. Moreover, a broad range of billing rates are available on Lexis and Westlaw, depending upon the size of the law firm and the scope of databases to which the firm desires access. A major firm like KMZ Rosenman has access to a wide number of databases whereas a small Chicago practitioner like Defendants' counsel may obtain a flat rate for access to a limited number of databases. In any event, Defendants' bald challenge to Plaintiffs' electronic research costs constitutes yet another thinly veiled attack on Plaintiffs' reasonable retention of a national law firm to effectuate their goal of terminating and non-renewing the Agreements in an extraordinary nine-month time frame.

6

22186024.01

18. Defendants raise similar challenges to charges of $207.94 for meals, $229.43 for Federal Express service, $649.20 for faxes, $379.42 for telephone and $2,375.07 for travel. (Def. Mem. at 16). Given the disparate locations involved—Plaintiffs being in Georgia, their counsel in New York and Washington, D.C., and these actions pending in Baltimore—all of these charges incurred over thirteen months, in fact, demonstrate the cost efficiency of Plaintiffs' counsel and thus are reasonable.

**WHEREFORE**, for the foregoing reasons, those set forth in the accompanying Reply Affidavit of Dennis Stockwell, the accompanying Reply Memorandum, and Plaintiffs' prior submissions on March 25, 2003, it is respectfully requested that Defendants be adjudged to reimburse Plaintiffs in the amount of $779,357.89 in bringing this action, litigating their motion for partial summary judgment and partial judgment on the pleadings, and in successfully defending against Defendants' motion for reconsideration.

                                                        /s/ Howard E. Cotton
                                                          HOWARD E. COTTON

Sworn to before me this
30th day of May, 2003

/s/ Michael S. Gordon
      Notary Public

22186024.01