# EXHIBIT A

# KMZRosenman
## KATTEN MUCHIN ZAVIS ROSENMAN

Direct Billing Inquiries to:
**Janice Thomas**
212-872-5346
FEIN: 36-2796532

575 Madison Avenue
New York, NY 10022-2585

March 31, 2003

Practiceworks, Inc.
Attn: Dennis J Stockwell, Esq.
General Counsel
1765 The Exchange
Atlanta, GA 30339

Invoice No. 1300006845
Client No. 101050

Re:     Professional Software Solutions, NE KMZR Matter No. (00003)

For legal services rendered through February 28, 2003........................... $65,337.00

Disbursements ............................................................................... $1,776.91

CURRENT INVOICE CHARGES:    $67,113.91

PRIOR UNPAID BALANCE (See Remittance Page for Detail):    $91,559.70

TOTAL BALANCE DUE:    $158,673.61

Disbursements and other charges incurred which have not yet been posted
as of the above date will be billed at a later date.

A Law Partnership including Professional Corporations

101050.00003

Practiceworks, Inc.
Professional Software Solutions, NE
Invoice No. 1300006845

### PROFESSIONAL SERVICES

| Date | Attorney or Assistant | Description | Hours | Amount |
|---|---|---|---|---|
| 02/02/03 | Gordon, Michael S. | | 3.70 | 1,535.50 |
| 02/03/03 | Gordon, Michael S. | | 5.10 | 2,116.50 |
| 02/03/03 | Cahen, Geoffrey M. | | 8.20 | 1,558.00 |
| 02/04/03 | Cotton, Howard E. | | 4.00 | 2,200.00 |
| 02/04/03 | Folb, Kerri | | 5.00 | 1,425.00 |
| 02/04/03 | Gordon, Michael S. | | 6.50 | 2,697.50 |
| 02/04/03 | Cahen, Geoffrey M. | | 2.30 | 437.00 |
| 02/05/03 | Cotton, Howard E. | | 3.80 | 2,090.00 |

REDACTED

REDACTED

101050.00003

Practiceworks, Inc.
Professional Software Solutions, NE
Invoice No. 1300006845

### PROFESSIONAL SERVICES

| Date | Attorney or Assistant | Description | Hours | Amount |
|------|----------------------|-------------|-------|--------|
| 02/05/03 | Folb, Kerri | | 4.00 | 1,140.00 |
| 02/05/03 | Gordon, Michael S. | | 6.50 | 2,697.50 |
| 02/06/03 | Cotton, Howard E. | | 3.90 | 2,145.00 |
| 02/06/03 | Folb, Kerri | | 2.00 | 570.00 |
| 02/06/03 | Gordon, Michael S. | | 7.20 | 2,988.00 |
| 02/07/03 | Cotton, Howard E. | | 4.70 | 2,585.00 |
| 02/07/03 | Gordon, Michael S. | | 7.00 | 2,905.00 |
| 02/10/03 | Cotton, Howard E. | | 3.70 | 2,035.00 |
| 02/10/03 | Gordon, Michael S. | | 5.20 | 2,158.00 |

101050.00003

Practiceworks, Inc.
Professional Software Solutions, NE
Invoice No. 1300006845

## PROFESSIONAL SERVICES

| Date | Attorney or Assistant | Description | Hours | Amount |
|------|----------------------|-------------|-------|--------|
| 02/10/03 | Tiffany, Michael J. | | 0.00 | N/C |
| 02/11/03 | Cotton, Howard E. | | 0.70 | 385.00 |
| 02/11/03 | Gordon, Michael S. | | 3.50 | 1,452.50 |
| 02/12/03 | Cotton, Howard E. | | 0.70 | 385.00 |
| 02/12/03 | Gordon, Michael S. | | 3.30 | 1,369.50 |
| 02/13/03 | Cotton, Howard E. | | 2.10 | 1,155.00 |
| 02/13/03 | Gordon, Michael S. | | 3.50 | 1,452.50 |
| 02/14/03 | Gordon, Michael S. | | 3.70 | 1,535.50 |
| 02/18/03 | Cotton, Howard E. | | 1.40 | 770.00 |
| 02/18/03 | Gordon, Michael S. | | 2.30 | 954.50 |
| 02/19/03 | Cotton, Howard E. | | 2.40 | 1,320.00 |
| 02/19/03 | Folb, Kerri | | 4.00 | 1,140.00 |
| 02/19/03 | Gordon, Michael S. | | 3.80 | 1,577.00 |

4

101050.00003

Practiceworks, Inc.
Professional Software Solutions, NE
Invoice No. 1300006845

## PROFESSIONAL SERVICES

| Date | Attorney or Assistant | Description | Hours | Amount |
|------|----------------------|-------------|-------|--------|
| 02/20/03 | Cotton, Howard E. | | 3.90 | 2,145.00 |
| 02/20/03 | Folb, Kerri | | 5.30 | 1,510.50 |
| 02/20/03 | Gordon, Michael S. | | 4.50 | 1,867.50 |
| 02/21/03 | Cotton, Howard E. | | 5.10 | 2,805.00 |
| 02/21/03 | Gordon, Michael S. | | 5.00 | 2,075.00 |
| 02/24/03 | Cotton, Howard E. | | 2.00 | 1,100.00 |
| 02/24/03 | Gordon, Michael S. | | 3.00 | 1,245.00 |
| 02/25/03 | Gordon, Michael S. | | 1.90 | 788.50 |
| 02/26/03 | Cotton, Howard E. | | 1.60 | 880.00 |
| 02/26/03 | Gordon, Michael S. | | 2.70 | 1,120.50 |
| 02/27/03 | Cotton, Howard E. | | 1.40 | 770.00 |
| 02/27/03 | Gordon, Michael S. | | 1.50 | 622.50 |
| 02/28/03 | Cotton, Howard E. | | 1.30 | 715.00 |
| 02/28/03 | Gordon, Michael S. | | 2.20 | 913.00 |

REDACTED

REDACTED

5

101050.00003

Practiceworks, Inc.
Professional Software Solutions, NE
Invoice No. 1300006845

## PROFESSIONAL SERVICES

| Date | Attorney or Assistant | Description | Hours | Amount |
|------|----------------------|-------------|-------|--------|

REDACTED

|  |  | Totals: | 155.60 | $65,337.00 |

## SUMMARY OF PROFESSIONAL SERVICES

| | Attorney or Assistant | Hours | Rate | Amount |
|------|----------------------|-------|------|--------|
| 20004 | Cahen, Geoffrey M. | 10.50 | 190.00 | $1,995.00 |
| 03215 | Cotton, Howard E. | 42.70 | 550.00 | $23,485.00 |
| 04015 | Folb, Kerri | 20.30 | 285.00 | $5,785.50 |
| 04359 | Gordon, Michael S. | 82.10 | 415.00 | $34,071.50 |
| | Current Fees for Matter 00003: | 155.60 | | $65,337.00 |

6

101050.00003

Practiceworks, Inc.
Professional Software Solutions, NE
Invoice No. 1300006845

## DISBURSEMENTS

| Date | Description | Amount |
|---|---|---|
| 01/13/03 | PAYEE: Cash; REQUEST#: 271410; DATE: 2/4/2003. Cab. | 7.00 |
| 01/14/03 | PAYEE: Cash; REQUEST#: 271410; DATE: 2/4/2003.  Cab 1/14. | 7.00 |
| 01/15/03 | VENDOR: The Great American Health Bar Corp.; INVOICE#: 368126; DATE: 1/15/2003   K. Kolb ordered 1/15/03 | 12.20 |
| 01/20/03 | VENDOR: Federal Express Corp.; INVOICE#: 4-529-52711; DATE: 1/20/2003 From:  Joanne Baker KMZ Rosenman NY  TO:  Dennis Stockwell Atlanta GA 01/10/03 | 11.31 |
| 01/27/03 | VENDOR: The Great American Health Bar Corp.; INVOICE#: 368403; DATE: 1/27/2003            K. Folb ordered 1/27/03 | 11.70 |
| 01/27/03 | VENDOR: Federal Express Corp.; INVOICE#: 4-529-92858; DATE: 1/27/2003 From:  J. Baker  TO:  Mark Wiemelt Chicago  IL  01/17/03 | 11.31 |
| 01/27/03 | VENDOR: Federal Express Corp.; INVOICE#: 4-529-92858; DATE: 1/27/2003 From:  J. Baker  To Felicia Cannon Clerk  Baltimore MD 01/17/03 | 9.66 |
| 01/27/03 | VENDOR: Federal Express Corp.; INVOICE#: 4-529-92858; DATE: 1/27/2003From:  J Baker  TO:  J . Murphy Baltimore MD  01/17/03 | 9.66 |
| 02/03/03 | Photocopies | 2.00 |
| 02/03/03 | Legal Research: CAHEN, GEOFREY | 34.51 |
| 02/03/03 | Legal Research: M. TIFFANY | 44.00 |
| 02/03/03 | Legal Research: G. CAHEN | 93.50 |
| 02/04/03 | Long Distance call to SMYRNA, GA, 6785898749 By BAKER JOANNE P. | 0.30 |
| 02/04/03 | Fax sent to 14109622698 from COTTON HOWARD E. | 4.80 |
| 02/04/03 | Fax sent to 13123726568 from COTTON HOWARD E. | 4.80 |
| 02/04/03 | Fax sent to 14105470699 from COTTON HOWARD E. | 4.80 |
| 02/04/03 | Fax sent to 17708505011 from COTTON HOWARD E. | 19.20 |
| 02/04/03 | Fax sent to 12128888133 from GORDON MICHAEL S | 8.00 |
| 02/04/03 | Fax sent to 14109622698 from GORDON MICHAEL S | 9.60 |
| 02/04/03 | Fax sent to 13123726568 from GORDON MICHAEL S | 9.60 |
| 02/04/03 | Fax sent to 14105470699 from GORDON MICHAEL S | 9.60 |
| 02/04/03 | Fax No: 14109622698 | 0.60 |
| 02/04/03 | Fax No: 13123726568 | 0.60 |
| 02/04/03 | Fax No: 14105470699 | 0.60 |
| 02/04/03 | Fax No: 17708505011 | 3.59 |
| 02/04/03 | Fax No: 14109622698 | 0.90 |
| 02/04/03 | Fax No: 13123726568 | 0.90 |

7

101050.00003

Practiceworks, Inc.
Professional Software Solutions, NE
Invoice No. 1300006845

## DISBURSEMENTS

| Date | Description | Amount |
|------|-------------|--------|
| 02/04/03 | Fax No: 14105470699 | 0.90 |
| 02/04/03 | Photocopies | 33.20 |
| 02/04/03 | Legal Research: CAHEN, GEOFREY | 49.30 |
| 02/04/03 | Legal Research: M. TAFFANY | 22.00 |
| 02/04/03 | Legal Research: G. CAHEN | 38.50 |
| 02/04/03 | Legal Research: K. FOLB | 38.50 |
| 02/05/03 | Long Distance call to BALTIMOR, MD, 4109620782 By BAKER JOANNE P. | 0.60 |
| 02/05/03 | Long Distance call to BALTIMOR, MD, 4109620782 By BAKER JOANNE P. | 0.30 |
| 02/05/03 | Long Distance call to ATLANTA, GA, 4048748300 By BAKER JOANNE P. | 0.30 |
| 02/05/03 | Fax sent to 14109622698 from GORDON MICHAEL S | 9.60 |
| 02/05/03 | Fax sent to 14048175459 from COTTON HOWARD E. | 8.00 |
| 02/05/03 | Fax sent to 16787429620 from COTTON HOWARD E. | 8.00 |
| 02/05/03 | Fax No: 16787429620 | 0.90 |
| 02/05/03 | Fax No: 14109622698 | 0.90 |
| 02/05/03 | Fax No: 14048175459 | 0.90 |
| 02/05/03 | Photocopies | 5.40 |
| 02/05/03 | Legal Research: FOLB, KERRI | 497.99 |
| 02/06/03 | Legal Research: M. TIFFANY | 16.50 |
| 02/07/03 | Automated Document Preparation | 17.50 |
| 02/07/03 | Photocopies | 8.00 |
| 02/07/03 | Photocopies | 11.60 |
| 02/07/03 | Legal Research: TIFFANY, MICHAEL | 19.72 |
| 02/07/03 | Legal Research: M. TIFFANY | 220.00 |
| 02/09/03 | Fax sent to 12127129562 from GORDON MICHAEL S | 72.00 |
| 02/10/03 | Postage | 3.95 |
| 02/10/03 | Binding | 8.00 |
| 02/10/03 | Photocopies | 135.00 |
| 02/10/03 | Photocopies | 28.20 |
| 02/11/03 | Photocopies | 0.60 |
| 02/11/03 | Photocopies | 1.00 |
| 02/13/03 | Photocopies | 20.40 |
| 02/14/03 | Photocopies | 1.60 |
| 02/19/03 | Legal Research: FOLB, KERRI | 118.40 |
| 02/20/03 | Photocopies | 0.20 |
| 02/20/03 | Legal Research: FOLB, KERRI | 23.08 |

8

101050.00003

Practiceworks, Inc.
Professional Software Solutions, NE
Invoice No. 1300006845

## DISBURSEMENTS

| Date | Description | Amount |
|------|-------------|--------|
| 02/21/03 | Photocopies | 5.00 |
| 02/24/03 | Fax sent to 13123726568 from COTTON HOWARD | 3.20 |
| 02/24/03 | Fax No: 13123726568 | 0.60 |
| 02/24/03 | Photocopies | 5.00 |
| 02/24/03 | Photocopies | 1.20 |
| 02/27/03 | FedEx DC; Inv.#: 4-552-62023; Date: 1/14/03; B. Corcoran to: Clerk of the Court/U.S. District Court-Maryland - Baltimore, MD 21201 delivered 1/7/03. | 7.53 |
| 02/28/03 | Photocopies | 1.60 |

**Current Disbursements for Matter 00003:**          **$1,776.91**

# REMITTANCE

**Please include this remittance advice with your payment to ensure proper account crediting**

| | | |
|---|---|---|
| **Attorney:** | 03215 | Howard Cotton |
| **Client:** | 101050 | Practiceworks, Inc. |
| **Matter:** | 00003 | Professional Software Solutions, NE |

| | | | |
|---|---|---|---|
| **Invoice No.:** | 1300006845 | **Invoice Date:** | 03/31/03 |

**Current Invoice Charges:**                                                                 **$67,113.91**

**PREVIOUS BALANCE DUE:**

| Inv Date | Invoice # | Invoice Amt | Previous Payments | Balance | Current Payment |
|---|---|---|---|---|---|
| 02/28/03 | 1300000573 | 91,559.70 | 0.00 | 91,559.70 | |
| | | | | | 91,559.70 |

**Total Now Due:**   **$158,673.61**

```
┌─────────────────────────────────────────────────┐
│ TOTAL AMOUNT ENCLOSED:                            │
└─────────────────────────────────────────────────┘
```

**Mailing Address:**
**Katten Muchin Zavis Rosenman**
**575 Madison Avenue**
**New York, NY 10022-2585**

**Wiring Instructions:**

**JP Morgan Chase Bank**

**1211 Avenue of the Americas, 39th Floor**

**New York, New York 10036**

**Attn: Deanne Frederick**

**Phone: 212-789-6046**

**ABA #021000021**

**Swift Code: CHASUS33**

**Reference: 101050.00003**

**For Credit To: Katten Muchin Zavis Rosenman**

**Operating Account**

**Account #967343933**

**When wiring a payment please fax a copy of the Remittance to Heidi Grossman at 212-872-5344**

**Please direct any billing inquiries to Janice Thomas 212-872-5346**

# EXHIBIT B

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| PRACTICEWORKS, INC., et al., | ) | |
| | ) | Civil Action No. |
| Plaintiffs/Counter-Defendants, | ) | JFM 02 CV 1206 |
| | ) | |
| v. | ) | |
| | ) | |
| DENTAL MEDICAL AUTOMATION, INC., | ) | |
| | ) | |
| Defendant/Counter-Plaintiff. | ) | |

## DEFENDANTS' AMENDED FIRST SET OF REQUESTS FOR DOCUMENTS AND THINGS

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Defendant and Counter-Plaintiff DENTAL MEDICAL AUTOMATION, INC. ("Plaintiff") requests that Plaintiffs and Counter-Defendants PRACTICEWORKS, INC. and SOFTDENT, LLC ("Defendants') produce the following documents and tangible things for inspection and copying in accordance with the definitions and instructions set forth below within thirty (30) days after service hereof:

## DEFINITIONS AND INSTRUCTIONS

A. "Documents," as used herein, has the same full meaning as Rule 34(a) of the Federal Rules of Civil Procedure, and includes, without limitation, the originals of all writings of every kind, including but not limited to letters, e-mails, dockets, telegrams, speeches, calendars, diary entries, travel records, expense records, advertising, promotional materials, pamphlets, handwritten notes, drafts, lists, directives, orders, tabulations,

1

minutes and records of meetings, and telephone records, which are in the possession, custody or control of Plaintiff. The term "document" further includes data processing and computer printouts, tapes, disks, and retrieval listings, and data processing equipment, together with programs and program documentation necessary to utilize or retrieve such data or information, and all other mechanical or electronic means of storing or recording data or information, as well as tape, film, or cassette sound or visual recordings, and reproductions or film impressions of any of the aforementioned writings. The term "documents" also includes copies of documents which are not identical duplicates of the originals, and copies of documents if the originals of documents are not in the possession, custody or control of Plaintiff.

     B.    As used herein, "person" shall mean any individual, firm, partnership, corporation, proprietorship, association, governmental body, or any other organization or entity.

     C.    As used herein, "date" shall mean the exact day, month and year if ascertainable, or, if not, the best available approximation (including relationship to other events).

     D.    As used herein, "identify" when used in reference to:

        (a)    an individual, means to state his or her full name, present or last known residential and business addresses and present or last known position and/or business affiliation;

        (b)    a firm, partnership, corporation, proprietor-ship, joint venture, association, or other organization or entity, means to state its full name, present or last known address and place of incorporation or formation;

        (c)    a document, means to state the date, title (if any), each author, each recipient, type of document (i.e., publication, letter, memorandum, book, telegram, chart, etc.) or some

other means of identifying it, and its present location or custodian;

(d) a communication, means to state its date and place, the person(s) who participated in it or who were present during any part of it or who have knowledge about it and the substance of the communication; and

(e) a product, means to state the product's description, manufacturer designation by the manufacturer thereof (e.g., style, model, proprietary name, established name, product classification number and/or catalog number), and brand name or trademark.

E.    As used herein, "Practiceworks" shall mean plaintiff and counter-defendant Practiceworks, Inc., its predecessors, divisions, subsidiaries, affiliated or related companies, parents, agents, servants, employees, attorneys and all persons in active concert and participation with plaintiff and counter-defendant Practiceworks, Inc.

F.    As used herein, "Softdent" shall mean plaintiff and counter-defendant Softdent, LLC, its predecessors, divisions, subsidiaries, affiliated or related companies, parents, agents, servants, employees, attorneys and all persons in active concert and participation with plaintiff and counter-defendant Softdent, LLC.

G.    As used herein, "DMA" shall mean defendant and counter-plaintiff Dental Medical Automation, Inc., its agents, servants, employees, attorneys and all persons in active concert and participation with defendant and counter-plaintiff Dental Medical Automation, Inc.

H.    As used herein, "and" and "or" shall be construed both conjunctively and disjunctively and the singular shall be deemed to also refer to the plural and vice versa.

I.    As used herein, "communication" means any transmission of information by any means including, but not limited to, e-mail, telephone, letters, telegrams,

3

teletypes, telexes, telecopies, computer linkups, written memoranda and face-to-face communication.

      J.      With respect to any Interrogatory as to which an objection is made, state the specific grounds for the objection and respond to such Interrogatory to the extent to which there is not objection.

      K.      If either Plaintiff objects to any Interrogatory, or any subpart thereof, on the ground that the Interrogatory requests the disclosure of privileged attorney-client communications, work product or any other matter allegedly immune from discovery, state the date and. general subject matter of the communication or work product, identify each person who was present at or participated in such communication or the preparation of such work product, and the basis for the claim or privilege or immunity.

      L.      As used herein, "software" means any software or products containing the "SoftDent Dental Management System", related products, or components thereof, including SoftDent's "Platinum," "Advantage," and "Subscription" products.

      M.      As used herein, "support" means any technical assistance, service, upgrades and electronic services pertaining to the software or products containing the "SoftDent Dental Management System", related products, or components thereof, including SoftDent's "Platinum," "Advantage," and "Subscription" products.

## REQUESTS

1.      All documents referred to in your Answers to Interrogatories.

2.      All statements (as that term is used in Fed. R. Civ. P. 26(b)(3)) which were previously made by Plaintiffs and their predecessors, and any of their present or former directors, officers, or employees, concerning the action or its subject matter.

4

3.      All documents (including, but not limited to, correspondence, notes, memoranda, and journal entries) which relate to, describe, summarize, or memorialize any communication between you and your predecessors, DMA, Chuck Dermott, Frank Jones, Jr., Jeff Lyon, or anyone known or believed by you to have been acting under the authority of DMA or your predecessors concerning DMA's Dealer/Resellers Agreement.

4.      All documents and things evidencing the chain of title of how PracticeWorks and SoftDent acquired the rights to the Dealer/Resellers Agreement between PSS and DMA.

5.      All documents and things evidencing, pertaining to, regarding, referring to or relating to the quota set forth in the Dealer/Resellers Agreement between PSS and DMA, acquired by Plaintiffs.

6.      All documents and things referring to, relating to, or evidencing the decision to or actual reduction, augmentation, modification or termination of the territory or the Dealer/Resellers Agreement of any and all dealers, including, but not limited to DMA, from January 1, 1993 to the present.

7.      All documents and things evidencing communications by Plaintiffs (or all predecessors in interest) and third parties doing business in DMA's territory regarding, relating to or referring to DMA or Plaintiffs' products or services, from January 1, 1993 to the present.

8.      All documents and things evidencing any contract, agreement, or proposed contract or agreement, between Plaintiffs (or all predecessors in interest) and DMA.

9.    All documents and things evidencing any contract, agreement, or proposed contract or agreement, between Plaintiffs (or all predecessors in interest) and dealers of the Software and associated products other than DMA.

10.    All documents and things referring to, relating to, or evidencing the durational term of any contract/agreement between Plaintiffs and DMA and between Plaintiffs (or all predecessors in interest) and all other dealers besides DMA.

11.    All documents and things concerning the negotiation, execution, performance, attempted renegotiation and attempted termination of the Agreement between Plaintiffs (or all predecessors in interest) and DMA dated January 1, 1993, and any Addendum thereto.

12.    All documents and things concerning any litigation or controversies between Plaintiffs and other parties involving or relating to a Dealer/Resellers Agreement.

13.    All documents and things regarding any allegation set forth by Plaintiffs in any and all pleadings in this matter.

14.    All documents and things comprising of or concerning the advertising, communication of offer, or offer of SoftDent software and related products for direct sale from Plaintiffs (or all predecessors in interest) to any dentists, orthodontists, oral surgeons or practice groups comprising of the like located in the zip code ranges defined in the Agreement to comprise Defendant's "Exclusive Territory" since January 1, 1993.

15.    All documents and things showing all sales made by DMA or others in DMA's Territory from January 1, 1993 to the present time for, including but not limited

to: 1) updates; 2) upgrades; 3) Soft Chart; 4) Electronic Claims submission and statements; and 5) customer support.

16.    All documents and things concerning the distribution of SoftDent software upgrades, pricing, and participation in trade shows.

17.    All documents and things concerning SoftDent products, related products, and services offered for sale or provided by Plaintiffs (or all predecessors in interest) or their dealers or distributors, since January 1, 1993.

18.    All correspondence amongst individuals within Plaintiffs' (or all predecessors in interest) companies regarding the January 1, 1993 Agreement between Plaintiffs (or all predecessors in interest) and DMA; and all documents and things concerning any communications amongst individuals within Plaintiffs' companies Plaintiffs (or all predecessors in interest) regarding same.

19.    All documents and things concerning Al Fiore's authority, whether real, implied, or apparent, to act on behalf of each of the Plaintiffs.

20.    All documents and things concerning any agreements or proposed agreements between Plaintiffs (or all predecessors in interest) and Defendant, including, but not limited to, the Agreements, the proposed agreements, and any drafts thereof and correspondence concerning same.

21.    All documents and things concerning Plaintiffs' activities at the 2002 Chicago Midwinter trade show.

22.    All documents concerning Plaintiffs' and their predecessors' computer or e-mail archiving, back-up or storage programs or policies.

23.    All documents concerning the financial condition of Plaintiffs.

7

24.     A document entitled "Clarifications to Form 1995 PSS Dealer Agreement Term Sheet."

25.     Copies of all documents and things referring or relating to compensation paid to any dealer upon termination, modification, sale or assignment of a Dealer/Resellers Agreement.

26.     All documents and things passing between Plaintiffs and any person which Plaintiffs expect to call as a witness (including without limitation any expert witness) at any trial or hearing in this action.

27.     All statements (as that term is used in Fed. R. Civ. P. 26(b)(3)) which were previously made by third parties concerning the action or its subject matter.

28.     All documents and things not heretofore specifically requested that relate, in any way, to the subject matter of the peladings.

29.     All documents and things that were reviewed, referred to, relied upon, consulted, or identified in connection with investigating and responding to Defendant's First Set of Interrogatories.

30.     All documents and things that may or will be used at trial or any evidentiary hearing in this matter.

By: _____

One of Plaintiff's Attorneys

Lead Counsel (Pro Hac Vice):
Mark E. Wiemelt (06208213)
LAW OFFICES OF MARK E. WIEMELT, P.C.
10 S. LaSalle St., Ste. 3500
Chicago, Illinois 60603
(312) 372-7664

Local Counsel:
John M.G. Murphy
Ober, Kaler, Grimes & Shriver
120 E. Baltimore Street
Baltimore, MD 21202-1643
(410) 347-7334

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this _10_ th day of _September_, 2002, a copy of

the foregoing was mailed, First Class postage pre-paid to:


S. Scott Morrison, Esq.
Katten, Muchin, Zavis, Rosenman
1025 Thomas Jefferson Street, N.W.
East Lobby, Suite 700
Washington, DC 20007-5201

and to:

Howard E. Cotton, Esq.
Michael S. Gordon, Esq.
Katten, Muchin, Zavis, Rosenman
575 Madison Avenue
New York, NY 10022

Attorneys for Plaintiffs


Mark E. Wiemelt

**EXHIBIT C**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| PRACTICEWORKS, INC., et al., | ) | |
| | ) | Civil Action No. |
| Plaintiffs/Counter-Defendants, | ) | JFM 02 CV 1206 |
| | ) | |
| v. | ) | |
| | ) | |
| DENTAL MEDICAL AUTOMATION, INC., | ) | |
| | ) | |
| Defendant/Counter-Plaintiff. | ) | |

## DEFENDANT'S FIRST SET OF INTERROGATORIES TO PLAINTIFFS

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Defendant and Counter-Plaintiff DENTAL MEDICAL AUTOMATION, INC. ("Plaintiff") requests that Plaintiffs and Counter-Defendants PRACTICEWORKS, INC. and SOFTDENT, LLC ("Plaintiffs") answer the following interrogatories in accordance with the definitions and instructions set forth below within thirty (30) days after service hereof:

## DEFINITIONS AND INSTRUCTIONS

A. "Documents," as used herein, has the same full meaning as Rule 34(a) of the Federal Rules of Civil Procedure, and includes, without limitation, the originals of all writings of every kind, including but not limited to letters, e-mails, dockets, telegrams, speeches, calendars, diary entries, travel records, expense records, advertising, promotional materials, pamphlets, handwritten notes, drafts, lists, directives, orders, tabulations, minutes and records of meetings, and telephone records, which are in the possession, custody or control of Plaintiff. The term "document" further includes data

processing and computer printouts, tapes, disks, and retrieval listings, and data processing equipment, together with programs and program documentation necessary to utilize or retrieve such data or information, and all other mechanical or electronic means of storing or recording data or information, as well as tape, film, or cassette sound or visual recordings, and reproductions or film impressions of any of the aforementioned writings. The term "documents" also includes copies of documents which are not identical duplicates of the originals, and copies of documents if the originals of documents are not in the possession, custody or control of Plaintiff.

B.    As used herein, "person" shall mean any individual, firm, partnership, corporation, proprietorship, association, governmental body, or any other organization or entity.

C.    As used herein, "date" shall mean the exact day, month and year if ascertainable, or, if not, the best available approximation (including relationship to other events).

D.    As used herein, "identify" when used in reference to:

(a)    an individual, means to state his or her full name, present or last known residential and business addresses and present or last known position and/or business affiliation;

(b)    a firm, partnership, corporation, proprietor-ship, joint venture, association, or other organization or entity, means to state its full name, present or last known address and place of incorporation or formation;

(c)    a document, means to state the date, title (if any), each author, each recipient, type of document (i.e., publication, letter, memorandum, book, telegram, chart, etc.) or some other means of identifying it, and its present location or custodian;

(d)    a communication, means to state its date and place, the person(s) who participated in it or who were present during any part of it or who have knowledge about it and the substance of the communication; and

(e)    a product, means to state the product's description, manufacturer designation by the manufacturer thereof (e.g., style, model, proprietary name, established name, product classification number and/or catalog number), and brand name or trademark.

E.    As used herein, "Practiceworks" shall mean plaintiff and counter-defendant Practiceworks, Inc., its predecessors, divisions, subsidiaries, affiliated or related companies, parents, agents, servants, employees, attorneys and all persons in active concert and participation with plaintiff and counter-defendant Practiceworks, Inc.

F.    As used herein, "Softdent" shall mean plaintiff and counter-defendant Softdent, LLC, its predecessors, divisions, subsidiaries, affiliated or related companies, parents, agents, servants, employees, attorneys and all persons in active concert and participation with plaintiff and counter-defendant Softdent, LLC.

G.    As used herein, "DMA" shall mean defendant and counter-plaintiff Dental Medical Automation, Inc., its agents, servants, employees, attorneys and all persons in active concert and participation with defendant and counter-plaintiff Dental Medical Automation, Inc.

H.    As used herein, "and" and "or" shall be construed both conjunctively and disjunctively and the singular shall be deemed to also refer to the plural and vice versa.

I.    As used herein, "communication" means any transmission of information by any means including, but not limited to, e-mail, telephone, letters, telegrams, teletypes, telexes, telecopies, computer linkups, written memoranda and face-to-face communication.

3

J.    With respect to any Interrogatory as to which an objection is made, state the specific grounds for the objection and respond to such Interrogatory to the extent to which there is not objection.

K.    If either Plaintiff objects to any Interrogatory, or any subpart thereof, on the ground that the Interrogatory requests the disclosure of privileged attorney-client communications, work product or any other matter allegedly immune from discovery, state the date and general subject matter of the communication or work product, identify each person who was present at or participated in such communication or the preparation of such work product, and the basis for the claim or privilege or immunity.

L.    As used herein, "software" means any software or products containing the "SoftDent Dental Management System", related products, or components thereof, including SoftDent's "Platinum," "Advantage," and "Subscription" products.

M.    As used herein, "support" means any technical assistance, service, updates, upgrades and electronic services pertaining to the software or products containing the "SoftDent Dental Management System" , related products, or components thereof, including SoftDent's "Platinum," "Advantage," and "Subscription" products.

## INTERROGATORIES

1.    Identify any and all individuals having knowledge of the negotiation, execution, performance, attempted renegotiation, and/or attempted termination of the Agreement between Plaintiffs and Defendant dated January 1, 1993, and each Addendum thereto; and identify all documents related thereto.

4

2.    State the full factual and legal basis for each of Plaintiffs' alleged affirmative defenses to Defendant's counterclaims, and identify all documents related thereto and all persons with knowledge thereof.

3.    For DMA, provide the following:

   a)    total sales in the Territory from January 1, 1993, by year to the present;

   b)    a breakdown of sales by product, including but not limited to i) updates; ii) upgrades; iii) soft chart; iv) electronic claims submission and statements; and v) customer support; and

   c)    how sales and quota were calculated for DMA from January 1, 1993, to the present.

For each subparagraph above, list any and all witnesses and documents that support your contention.

4.    Identify and describe all litigation or controversies, including arbitration, mediation, and/or settlement, between Plaintiffs and distributors, resellers, dealers or licensees of Plaintiffs' products or services by stating the names of the parties, the jurisdiction, the proceeding number, the outcome of the proceeding or current status of the matter, and the citation of the decision if applicable; and identify all documents referring or relating thereto and all persons with knowledge thereof.

5.    Identify and describe any and all statements, written and/or oral, regarding any allegation set forth by Plaintiffs in their Complaint, as well as any reply to Defendant's Answers as set forth in Plaintiffs' Reply to Defendant's Counterclaims; and identify all persons with knowledge thereof.

5

6.    Identify each person involved in the decision not to renew and to attempt to terminate DMA's SoftDent dealership; and identify all documents referring or relating thereto.

7.    Identify any documents regarding the acquisition of PracticeWorks from mid-1997 through March 2001 of dental management software providers; and identify all persons with knowledge thereof.

8.    Identify each and every dealer by name and address that had a contract with PracticeWorks to market and support the SoftDent Dental Office Practice Management Software Program that was acquired by and assigned to Practiceworks, Inc. and SoftDent, LLC, from January 1, 1993 to the present.  For each dealer: identify each and every dealer that has had its agreement (contract) terminated by you for i) non-renewal; ii) failure to meet sales quota; or iii) any reason since March 2001 by giving the name and address of each such dealer, the basis for termination for each such dealer, including all circumstances for the termination, and whether any compensation was paid to any terminated dealer after termination for any reason; and list all witnesses and documents referring or relating thereto.

9.    Identify all people with knowledge and/or understanding of the intended duration of the Agreement between Plaintiffs and Defendant; and identify all documents referring or relating thereto.

10.    Identify the factual and legal basis for Plaintiffs' allegation that the nine-month Disposition Period provided for in the letter of April 8, 2002 constitutes reasonable notice, and as such, an effective notice of termination or non-renewal of the

6

Agreement; and identify all documents related thereto and all persons with knowledge thereof.

11.    Identify each customer or prospective customer, including any dentists, orthodontists, oral surgeons or practice groups comprising of the like located in the zip code ranges defined in the Agreement to comprise Defendant's "Exclusive Territory," who has referred to, inquired about, and/or mentioned Jeff Suglio, SoftDent software and/or related products and/or DMA, since April 8, 2002, and describe the date and substance of each such reference; and identify all documents referring or relating thereto and all persons with knowledge thereof.

12.    Identify each customer or prospective customer, including any dentists, orthodontists, oral surgeons or practice groups comprising of the like located in the zip codes defined in the Agreement to comprise Defendant's "Exclusive Territory," to whom PracticeWorks or SoftDent has either directed one or more communications offering the SoftDent software and related products for direct sale, or has sold SoftDent software and related products; and identify all documents related thereto and all persons with knowledge thereof.

13.    Identify each person who has had any written and/or oral communication with Chuck Dermott, Robert J. Chaisson or Jeff Lyon regarding any allegation set forth in this matter after April 8, 2002; and identify all documents related thereto and all persons with knowledge thereof.

14.    Since January 1, 1993, identify any and all individuals having knowledge of issues pertaining to the distribution of SoftDent software upgrades, pricing, and participation in trade shows, and identify all documents related thereto.

15.    Since January 1, 1993, identify any and all individuals having knowledge of SoftDent products and services which were offered for sale in geographical territories other than the "Exclusive Territory" defined by the Agreement and which Plaintiffs did not permit DMA to offer for sale in its "Exclusive Territory", and identify all documents related thereto.

16.    Please indicate under what circumstance, if any, Al Fiore has authority, whether real, implied or apparent, to act on behalf of each of the Plaintiffs; and identify all documents referring or relating thereto and all persons with knowledge thereof.

17.    With respect to each person who Plaintiffs expect to call as an expert witness at the trial of this action, identify the person, state the subject matter on which the person is expected to testify, describe the person's qualifications (including but not limited to, the persons educational background, employment history, and publications), identify the cases in, which the person has given prior testimony, state the substances of the facts and opinions as to which the person is expected to testify, and provide a summary of all bases of each opinion and a list of materials considered in reaching each opinion.

18.    Please describe in detail Plaintiffs' SoftDent's "Platinum", "Advantage", "SoftDent Lights", and "Subscription" products, related products and services; and identify all documents referring or relating thereto and all persons with knowledge thereof.

19.    Please describe in detail all instances in which Plaintiffs have i) offered to sell Software and related products to customers within DMA's "Exclusive Territory"; ii) sold Software and related products to customers within DMA's "Exclusive Territory"; iii)

8

directly advertised its SoftDent Software and related products and services to customers and potential customers within DMA's "Exclusive Territory"; iv) provided mailing lists, demographic studies, brochures, demonstration disks and other sales materials to DMA, as provided in paragraph 4.4 of the Agreement; and v) provided regular reports as required in paragraph 4.1 of the Agreement; and identify all documents referring or relating thereto and all persons with knowledge thereof.

20.    Please describe in detail all instances in which Plaintiffs have forwarded sales "leads" within DMA's "Exclusive Territory" to DMA, including an identification of the potential customer; and identify all documents referring or relating thereto and all persons with knowledge thereof.

21.    Please describe in detail and identify any and all inquiries received from customers or prospective customers regarding SoftDent software or related products, including but not limited to: the identity of the customer or prospective customer; ii) any and all contact information for the customer or prospective customer; and iii) the identity of the software or related products.

22.    For each software product owned, developed, sold, licensed or distributed by Plaintiffs since January 1, 1993, please identify: the name or title of the software; the name of the author; the date of creation; whether it was a work made for hire; and the date of first publication; and identify all documents referring or relating thereto and all persons with knowledge thereof.

23.    For each of the foregoing Interrogatories, identify the individuals who are most knowledgeable with respect to the subject matter of the Interrogatory, including, but not limited to, the individuals who prepared or assisted in the preparation of the response

9

to the Interrogatory or a portion thereof, and the individuals who were consulted in

connection with providing a response to the Interrogatory.

DENTAL MEDICAL AUTOMATION, INC.

Dated: August 3 0 , 2002        By:

_____
One of Their Attorneys

Lead Counsel (Pro Hac Vice):
Mark E. Wiemelt (06208213)
LAW OFFICES OF MARK E. WIEMELT, P.C.
10 S. LaSalle St., Ste. 3500
Chicago, Illinois 60603
(312) 372-7664

Local Counsel:
John M.G. Murphy
Ober, Kaler, Grimes & Shriver
120 E. Baltimore Street
Baltimore, MD 21202-1643
(410) 347-7334

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 30 th day of August, 2002, a copy of

the foregoing was mailed, First Class postage pre-paid to:


S. Scott Morrison, Esq.
Katten, Muchin, Zavis, Rosenman
1025 Thomas Jefferson Street, N.W.
East Lobby, Suite 700
Washington, DC 20007-5201

and to:

Howard E. Cotton, Esq.
Michael S. Gordon, Esq.
Katten, Muchin, Zavis, Rosenman
575 Madison Avenue
New York, NY 10022

Attorneys for Plaintiffs

Mark E. Wiemelt

11

**EXHIBIT D**

1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION

PRACTICEWORKS, INC.
SOFTDENT, LLC

                                         CIVIL CASE NO.
     V.                                JFM-02-1206

DENTAL MEDICAL AUTOMATION, INC.
    DEFENDANT

                                     /
_____


Friday, February 21, 2003
Baltimore, Maryland
(Conference Call)


Before:  Honorable J. Frederick Motz, Judge


Appearances: (By Telephone)

    On Behalf of the Plaintiffs:
      Michael S. Gordon, Esquire
      Howard E. Cotton, Esquire

    On Behalf of the Defendant:
      John M. G. Murphy, Esquire
      Mark E. Wiemelt, Esquire


Reported by:
Mary M. Zajac, RPR
Room 3515, U.S. Courthouse
101 West Lombard Street
Baltimore, Maryland 21201

2

1          (Conference call at 8:30 a.m.)

2          THE COURT:  I have a court reporter here who obviously

3    can't see you all.  So if I could ask you to identify yourselves

4    for the record and then try to remember to say who you are each

5    time you speak.

6          MR. COTTON:  Well, this is Howard Cotton.  I'm a

7    member of the law firm of Katten, Muchin, Zavis and Rosenman in

8    New York City.  And with me is Michael Gordon, also from the

9    same law firm.

10         MR. WIEMELT:  Good morning, Your Honor.  Mark Wiemelt

11   on behalf of the defendants.

12         THE COURT:  All right.

13         MR. MURPHY:  And Your Honor, this is John Murphy, Ober

14   Kaler, on behalf of the defendants as well.

15         THE COURT:  Let me start because I'm not sure it was

16   referred to before the reply memorandum was filed, and that is

17   the statement made by the plaintiff on Page 30 of their summary

18   judgment motion in which they seem to indicate that they were

19   not asking that as for existing customers its services no longer

20   be provided, could no longer be provided.

21         MR. GORDON:  Your Honor, this is Michael Gordon.  Are

22   you referring to reply papers on the motion for reconsideration?

23         THE COURT:  Yes.

24         MR. GORDON:  We haven't received those papers.

25         THE COURT:  That's unfortunate.

3

1      MR. MURPHY:  I mailed them out, I guess, Wednesday.

2      THE COURT:  This is Wiemelt.

3      MR. MURPHY:  Yeah, this is John Murphy.

4      THE COURT:  Mr. Murphy.

5      MR. GORDON:  Yes.  This has happened before where they

6  sent these papers by regular mail.  And we're in New York City,

7  they're mailing it from Baltimore, because of the inclement

8  weather we have not received their reply papers, neither by fax,

9  by hard copy or anything.

10     THE COURT:  Well --

11     MR. MURPHY:  Must be the weather, Your Honor.  I put

12 it in the mail Wednesday afternoon as soon as I got in the

13 office.

14     MR. GORDON:  We, as a matter of course, we had Federal

15 Expressed our papers to Mr. Wiemelt and Murphy.

16     THE COURT:  You know, this is all very interesting.  I

17 asked you to identify yourselves.  I know this is the gentleman

18 from New York speaking.  Would you please identify yourself?

19     MR. GORDON:  Mr. Gordon from New York.

20     THE COURT:  Mr. Gordon.  Has been Mr. Murphy speaking

21 on the other end.

22     MR. MURPHY:  Yes, that was me.

23     THE COURT:  Obviously, in this day and age, sending

24 stuff out by mail is stupid.  But fortunately, as of two weeks

25 from now it will all be academic because we'll be doing

4

1    electronic case filing.

2         MR. GORDON:  Your Honor, this is Michael Gordon.  I

3    think what you're referring to is in the reply.  I'm going out

4    on a limb here trying to intuit what you're referring to.  But

5    I'm assuming that in their reply papers, they've made reference

6    to a statement made in our brief with respect to the right to

7    provide support and service.

8         And what we said in our brief, in our moving brief,

9    was that because the rights to provide support and service were

10   inextricably intertwined with the materials that we have given

11   them, that it was inconceivable that they would be able to

12   continue providing technical support and service because as Your

13   Honor recognized in the decision on Page Nine, they are required

14   to immediately return all materials to us.  You know, sample

15   software, documentation.

16        And so it is impossible for them to continue providing

17   technical support and service to the extent that they're holding

18   on to these materials.

19        If they return the materials, I don't know how they're

20   going to go about doing that.  But that was the point that we

21   made in our moving brief last August, if that's what is being

22   referred to.

23        THE COURT:  Well, maybe that will help clarify the

24   issue.  Is what's being, I'm being ask to reconsider in part is

25   simply whether the technical services can be provided, provided

all relevant materials were returned?

MR. WIEMELT: Judge, this is Mark Wiemelt. I don't believe there's any factual basis in the record to make the conclusion that the defendants can return all the materials and not provide technical support and service. It's clearly the defendant's position that they can do that just as anyone who is not a party to the agreements can provide technical support and service to the plaintiffs' software.

THE COURT: Is all that you're asking is for the right to continue to provide technical services after having returned all relevant materials?

MR. WIEMELT: That's correct, Your Honor. Mark Wiemelt.

MR. GORDON: Your Honor, this is Michael Gordon. I want to point out that defendants specifically sought a declaration from the Court regarding their continuing right to support, to provide support and service, which is derived from their exclusive right as distributor and value added resaler as granted by the plaintiff in the agreements.

They asked the Court to declare that those rights continued. They sought an injunction and to preliminarily enjoin us from providing technical support and service, and the Court declined both of those applications.

So they themselves have acknowledged that these rights derived from the agreements. The Court determined that those

1    rights terminated as of December 31st, 2002.  They put the issue

2    into play.  And the Court ruled unequivocally, unambiguously,

3    and clearly that the rights to provide support and service end

4    on December 31st, 2002.

5         THE COURT:  But still, you said in your papers, Page

6    30 of your original memorandum in support, and now I've got to

7    find it, but I think you've just reiterated it here.

8    "Plaintiffs did not dispute the defendants may continue to

9    provide 'technical support' and 'service' to their former and

10   existing customers even after the agreements have been

11   terminated."

12        Now, my understanding is that you've reiterated that

13   today.  Your position is that they can't provide that unless

14   they have the technical materials that they have to return.

15        MR. GORDON:  Which they still, might I add, have not

16   returned.  And our position was we didn't see how they would be

17   able to continue providing said support and services without

18   having those materials.  As I said, they are just inextricably

19   intertwined.

20        THE COURT:  That's a different question.  If all I am

21   being asked is to clarify my opinion to say that they can

22   continue to provide technical support and service as long as

23   they return all relevant materials, then it seems to me that

24   there's no disagreement.

25        MR. GORDON:  Well, I guess the question I have is what

1   was the purpose of them seeking a declaration as to their

2   continuing right if they thought, like anybody else in the

3   public, that they had a right to continue doing so?  I don't

4   understand why they, why they interposed a counterclaim directed

5   to this right if indeed they thought this right continued.  I

6   mean, the Court determined that it doesn't continue.

7           THE COURT:  Well, I'm not sure I understand that,

8   either, why they asserted the counterclaim and then, and then --

9           MR. GORDON:  The agreement, Your Honor.  I mean, there

10  are judicial admissions all over their counterclaim.  You know,

11  this is an agreement for the provision of services.  This is a,

12  these rights derive from the agreement as cited in said

13  Paragraphs 12 and 105 in their third counterclaim.

14         They're asking to permanently and preliminarily enjoin

15  us, plaintiffs, from directly offering support and service to

16  their customers.  If they thought that, quote, "like any other

17  members of the public" their right to provide support and

18  service was outside the contract, then I can't imagine why they

19  would have requested that kind of relief from the Court.  It

20  just doesn't make sense.  And the Court has ruled on this issue

21  very clearly.  And it's our position that those rights have

22  ended.

23         THE COURT:  Well, I'll hear from Mr. Wiemelt.  I guess

24  the answer is, in light of my ruling or maybe people can make

25  mistakes when they file counterclaims.

1      MR. GORDON:  By the way --

2      THE COURT:  Wait a minute.  I want to hear from Mr.

3  Wiemelt.  I know it's difficult over the telephone.  But I just

4  said I wanted to hear from Mr. Wiemelt and I was speaking.

5      MR. GORDON:  Sorry, Your Honor.

6      THE COURT:  Now, Mr. Wiemelt, my understanding is that

7  if for whatever reason you filed the counterclaim, then you

8  didn't oppose it on summary judgment.  Your position is now, may

9  have been then, that you had rights derived from the agreement,

10 presumably unspoken, you also had rights derived from common

11 law.

12     Now, I have ruled against you on the agreement after

13 you didn't oppose it and I probably, you didn't oppose it and I

14 ruled against you.  Now you're saying, well, all I want is a

15 clarification that all you ruled was on our counterclaim which

16 says, you know, that no rights from the agreement, that provided

17 that we return all the materials, we still have a right under

18 the law, as any other member of the public, to provide technical

19 support and service.

20     MR. WIEMELT:  Mark Wiemelt, Your Honor.  That's

21 correct.  And I note that in plaintiff's motion for summary

22 judgment on Page 30, they continue by stating, quote, "hence

23 defendants may continue to provide technical support and service

24 insofar as these activities do not involve the use of materials

25 which defendants otherwise are obligated to return to

1   plaintiffs."

2        In light of those two admissions in their, in their

3   motion for summary judgment, we saw no reason to contest that

4   and didn't file a response because we, they agreed that we could

5   provide technical support and service after the agreements were

6   terminated.  So we conceded the point that we could not provide

7   updates, upgrades, and other electronic services under the

8   agreement, but we thought we would retain our common law rights

9   to provide technical support and service, especially because the

10  plaintiffs agreed with us on that point.

11       THE COURT:  And on this issue, that's all you're

12  asking clarification on?

13       MR. WIEMELT:  That is correct.

14       THE COURT:  All right.  Mr. Gordon.

15       MR. GORDON:  Yeah.  As I previously said, we agreed

16  with them to the extent that they returned all materials to us.

17  Our understanding, that they are continuing to use our software

18  and our documentation to provide that support.

19       And again, we don't see how they're going to be able

20  to provide support.  And we, in fact, believe that they will

21  compromise the integrity of the product if they purport to

22  provide support without the materials that they are supposed to

23  return to us.

24       Again, I don't understand why the technical support

25  issue was lumped into the counterclaim.  We feel the Court's

1    decision was clear and unambiguous and should stick.

2         THE COURT:  Mr. Wiemelt, what about the fact that, how

3    can you provide, are you returning all the materials?  Have you

4    returned them?  Are you using them?  What's the story on that?

5         MR. WIEMELT:  Mark Wiemelt, Your Honor.  We're

6    prepared, you know, upon resolution of the issues in this case,

7    there are some counterclaims pending.  And I guess we'd have to

8    resolve what to do with the material to the extent that it's

9    relevant to our counterclaims.  But we're prepared to return

10   those materials once those issues are decided and we can

11   continue to provide support and service without the materials.

12        It's important to note that the materials relate, were

13   advertising collateral used to sell the product.  It's not

14   necessary for my clients to use that material to provide

15   technical support and service for the products.

16        Now, I want to make it clear.  They will use software

17   but they're using only software that they have, that they have

18   lawfully purchased and for which title has passed to them.  And

19   there's no question that any member of the public can either use

20   software they purchased from the plaintiff to provide technical

21   support and service or the defendants can simply use the

22   software that their customers have purchased from plaintiffs to

23   provide technical support and service.

24        So to say it's a virtual impossibility for the

25   defendants to provide technical support and service after

1    returning the materials related to the product is inaccurate.

2        MR. GORDON:  Your Honor, Michael Gordon.  Implicit in

3    what Mr. Wiemelt just said, he's using our software.  And he has

4    judicially admitted that his rights to sell, support and service

5    derive from the agreement.  The agreements have terminated.

6        And again, it's our position, based on the plain

7    language of the agreements and on the Court's determination with

8    respect to the counterclaim, that all of these rights have come

9    to an end.

10        THE COURT:  Okay.  I'm prepared to rule on this.  The

11    motion for clarification is granted on this limited issue.  All

12    I intended to do was to address the rights under the agreement.

13    That's what I was focused upon.

14        In light of what the plaintiffs had said, frankly, I'm

15    not even sure I had focused upon this, but the plaintiffs

16    themselves made it clear in their memorandum in support that

17    they were not disputing "the defendants may continue to provide

18    technical support and service to their former and existing

19    customers even after the agreements have been terminated",

20    provided, and that's the end of the quote, but provided, of

21    course, protected, that relevant materials were returned and not

22    used.

23        That's all I'm holding today is that that, my holding

24    was limited to that; to the extent that there was an independent

25    right on the part of the defendants to provide technical support

1   and service just like any other member of the public, I did not

2   mean to address that.  And so to that extent, my opinion is

3   clarified because that's all I was addressing.

4           Now, if there are issues that materials are being

5   improperly used, that's a whole different question.  And if the

6   plaintiffs want to move for an injunction, if their position is,

7   well, materials are being used improperly, that they should be

8   returned or that software is being used improperly, that is a

9   whole different legal issue.  And I am perfectly willing to

10  entertain that in the proper context.  But this isn't the

11  context.

12          The opinion was limited to the counterclaim.  Why the

13  counterclaim was asserted, you know, that's curious, but maybe

14  not.  I don't want to reanalyze that.

15          The fact of the matter is all I was addressing was

16  what was before me, and that was whether or not the agreement

17  provided a -- I've held what I held and I was not intending to

18  address any independent right that the defendants may have had

19  because the plaintiffs didn't put that before me.  They said in

20  their motion that they did not dispute that the defendants could

21  continue to provide technical support and service, provided that

22  they didn't improperly use plaintiffs' materials.

23          So on these other issues, I mean, I'm here.

24          MR. GORDON:  This is Michael Gordon.  Now, you had

25  raised the possibility of us filing an application for

13

1    injunctive relief but we do not want to burden the Court with

2    additional paper.  Your decision said, on Page Nine, defendants

3    are required to immediately return to plaintiffs any and all

4    materials regarding the products in any form whatsoever.

5            We would be moving for an application or an order

6    directly requiring them to do that at the risk of contempt.  If

7    they are willing to do that, then we don't need to make an

8    application for injunctive relief.

9            THE COURT:  Mr. Wiemelt?

10           MR. WIEMELT:  Yeah, Judge, Mark Wiemelt.  We're

11   willing to return the materials and not use them to provide

12   technical support and service.  Again, the one issue we have is

13   many of these materials are relevant to our counterclaims.  So,

14   you know, I guess we would be willing not to use them but to

15   return them would then be returning the evidence of some of our

16   counterclaims.

17           THE COURT:  Maybe you and Mr. Gordon can work that

18   out.  Maybe, maybe they should be held by you as counsel if you

19   need them and not by your client, in case there's concern that,

20   in fact, they're being used to provide services.  Would that be

21   an avenue of a possible resolution of that issue?

22           MR. GORDON:  Yeah.  As long as all copies as well are

23   maintained by Mr. Wiemelt.

24           MR. WIEMELT:  Mark Wiemelt.  Yeah.  That's acceptable,

25   Judge.  And I guess we'll try to work it out.  But I would ask

1    that they try to more clearly identify which issues they think

2    are subject to return.

3            MR. GORDON:  Everything.  The agreement says "any and

4    all materials regarding the product."  Extremely broad language.

5    Everything you've ever received.  Everything your clients have

6    ever received.

7            MR. WIEMELT:  Mark Wiemelt again.  I think in theory,

8    and probably in practice, it's possible to do that.  We talked

9    before.  It's hypothetically possible to burn down the building

10   and walk across the street with a lunch pail and still provide

11   technical support and service.

12            I think I can check with my clients and see if they

13   can't drop all the materials that have ever been given them by

14   the plaintiffs, with the exception of the software that they've

15   purchased, drop all that material off to my office pending this

16   litigation.

17            THE COURT:  Okay.

18            MR. GORDON:  Okay.

19            THE COURT:  Good.  That seems to resolve it.

20            As far as the other issues are concerned, they were

21   closely, they're close legal issues now, they were close legal

22   issues then in terms of, I don't know how close they were.  But

23   they're difficult legal issues in terms of the reasonable notice

24   and in terms of the extrinsic evidence.  They're issues that I

25   thoroughly considered.  And to the extent that I'm asked to

1   reconsider them, I deny that motion.  Okay?

2           MR. GORDON:  Thank you, Your Honor.

3           THE COURT:  Thank you all very much.  I'm sorry I was

4   sharp with you, Mr. Gordon.  I know it's very tough on these

5   telephones when you don't see one another.  There's delay in

6   transmissions.  Thank you.  Anything else?

7           MR. GORDON:  No.

8           THE COURT:  Are we otherwise on schedule?

9           MR. COTTON:  Judge, this is Mr. Cotton.  I wanted to

10  raise an issue with respect to the orders issue regarding

11  attorney's fees.

12          What we're still trying to do and hopefully we'll be

13  able to do this without further engaging the Court is work that

14  issue out.

15          THE COURT:  By the way, I've told Mary, unless you all

16  want this, this doesn't have to be on the record, does it?

17          MR. COTTON:  That's entirely up to you.

18          (Off record discussion.)

19          (Conclusion of Proceedings.)

20

21

22

23

24

25

16

## REPORTER'S CERTIFICATE

I, Mary M. Zajac, do hereby certify that I recorded stenographically the proceedings in the matter of PracticeWorks, Inc. Versus Dental Medical Automation, Inc., Case Number(s) JFM-02-1206, on February 21, 2003.

I further certify that the aforegoing pages constitute the official transcript of proceedings as transcribed by me to the within matter in a complete and accurate manner.

In Witness Whereof, I have hereunto affixed my signature this *14th* day of *March* , 2003.


Mary M. Zajac,
Official Court Reporter

**EXHIBIT E**

*IN THE UNITED STATES DISTRICT COURT*
*FOR THE DISTRICT OF MARYLAND*

| | | |
|---|---|---|
| PRACTICEWORKS, INC., et al | ) | |
| | ) | Civil Action No. |
| Plaintiffs/Counter-Defendants, | ) | JFM02CV1205 |
| | ) | |
| v. | ) | |
| | ) | |
| PROFESSIONAL SOFTWARE SOLUTIONS OF | ) | |
| ILLINOIS, INC., | ) | |
| | ) | |
| Defendant/Counter-Plaintiff. | ) | **DEMAND FOR JURY TRIAL** |

## MEMORANDUM IN SUPPORT OF PSSI'S MOTION TO CLARIFY, RECONSIDER, ALTER OR AMEND MEMORANDUM AND/OR ORDER

NOW COMES the Defendant/Counter-Plaintiff Professional Software Solutions of Illinois, Inc., (hereinafter "PSSI"), by and through its attorney, John M.G. Murphy, of Ober, Kaler, Grimes & Shriver, and Mark E. Wiemelt, of the Law Offices of Mark E. Wiemelt, P.C., and submits this Memorandum in Support of PSSI's Motion to Clarify, Reconsider, Alter and/or Amend the Memorandum dated January 7, 2003 and/or the Order dated January 7, 2003 under Fed.R.Civ.P. 52(b), 59(e) and 60(b).

PSSI respectfully requests this Court to clarify whether its Memorandum dated January 7, 2003 and Order dated January 7, 2003 properly enjoins and/or prevents PSSI from providing post-termination technical support and services.

In addition, PSSI respectfully requests this Court to reconsider its Order and Memorandum with respect to the following issues: (1) assuming the Agreement is terminable upon reasonable notice, whether a genuine issue of material fact exists as to

- 1 -

whether Plantiffs provided reasonable notice of termination to PSSI; (2) whether the Agreement's termination provisions are ambiguous; and (3) whether refusing to consider PSSI's evidence of admissions by Plaintiffs' representatives and their predecessors' representatives subsequent to execution of the Agreement was proper.

PSSI also respectfully requests this Court to amend or alter its Memorandum dated January 7, 2003 and its Order dated January 7, 2003 to more particularly specify the terms of the judgment and to reflect the Court's findings with respect to clarification and reconsideration, as appropriate.

## I. BECAUSE PLAINTIFFS' COUNSEL IS MISINTERPRETING AND MISCONSTRUING THE MEANING AND EFFECT OF THE COURT'S GRANTING OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT WITH RESPECT TO COUNTERCLAIM 8 AND THE COURT'S STATEMENTS IN ITS MEMORANDUM REGARDING SAME, CLARIFICATION IS REQUESTED.

In denying PSSI's Counterclaim 8, the Court stated in its Memorandum that PSSI is "not entitled to continue technical support and services anticipated by the Agreement[s]." (Memo. p. 9). For purposes of this Motion to Clarify, PSSI does not contest the Court's granting of Partial Summary Judgment in favor of Plaintiffs on Counterclaim 8. However, Plaintiffs misinterpret and misconstrue the Court's Memorandum and Order as enjoining or preventing PSSI from providing post-termination technical support and services. PSSI does not believe the Court's Memorandum or Order was intended to or properly enjoins or prevents PSSI from providing post-termination technical support or services. The confusion over the Court's Order and Memorandum has precipitated unnecessary disputes between the parties and requires clarification since PSSI has entered into long-term agreements for the provision of technical support and services. (See, Affidavit of Wiemelt, Exh. A). Therefore, PSSI requests the Court to clarify the meaning and effect of its

Memorandum and Order regarding PSSI's rights to provide post-termination technical support and services. *See Plaskon Electronic Materials, Inc. v. Allied-Signal, Inc.*, 904, 907 F.Supp. 644 (N.D. Ohio 1995) (modifying court's opinion to resolve ambiguity and the fear of "the possibility of confusion over the Court's language").

PSSI's Counterclaim 8 requested "a declaratory judgment pursuant to 28 U.S.C. § 2201 that its rights to provide support, service, updates, upgrades and electronic services derived from its exclusive rights as a distributor and value added reseller as granted by Counter-Defendants in the Agreement cannot be terminated by the letter of April 8, 2002." PSSI did not oppose Plaintiffs' Motion for Partial Summary Judgment on Counterclaim 8 because PSSI's rights to provide technical support and service do not derive from and were not granted by the Agreement. However, nothing within the Agreement or the law prevents PSSI from providing such support and service post-termination, as Plaintiffs now suggest.

Even if not amended or reversed, the Court's entry of partial summary judgment denying PSSI's Counterclaim 8 does not equate to an injunction or a judgment that PSSI cannot provide support or service separate and apart from any rights granted by the Agreement. While the Court properly noted that "[Defendants] point to no language in the Agreements, and there is none, that allows them to continue to sell updates, upgrades, and provide certain electronic services following termination of the Agreements," PSSI disputes the implication that some terms within the Agreement are required before PSSI can provide post-termination technical support and services, as opposed to updates, upgrades and certain electronic services.[1]  (Memo. p. 9).  Again, PSSI's rights to provide

---

[1] PSSI does not contest that its rights to provide Products, including updates, upgrades and certain electronic services derive from the Agreement and terminate upon proper termination of the Agreement.

- 3 -

technical support and services do not derive from the exclusive rights granted in the Agreement. Even if all of the rights granted by the Agreement were properly terminated, and regardless of whether PSSI is required to "immediately return to [the plaintiffs] any and all materials regarding the Products in any form whatsoever", PSSI's rights which are independent of the Agreement survive termination. Like any other member of the public, PSSI is entitled to provide technical support and service for Plaintiffs' products, absent unfair competition or other unlawful conduct.

Again, nothing within the Agreement prevents PSSI from providing technical support and service post-termination. While the Agreement contains a covenant not to compete, it is inapplicable by its own terms because it references only the sale of software and because PSSI was not terminated for Default. The covenant not to compete reads in part:

After termination of the Dealer by PSS for Default. . . Dealer shall not engage in the business of selling dental or medical software products

(Pl.'s Ex. B and C, Agreements ¶12.1).

This clause does not reference post-termination technical support and services. Since post-termination technical support and services are not governed by the Agreement and PSSI was not terminated for Default, the common law should govern PSSI's right to compete and to provide technical support and services.

Plaintiffs attempt to misconstrue and misinterpret the Court's Order as granting injunctive relief. Initially, PSSI notes that Plaintiffs never sought injunctive relief regarding post-termination technical support and service in either their Complaint or their Motion for Partial Summary Judgment. Instead, Plaintiffs argue that the Court's granting

of partial summary judgment denying PSSI's request for a declaration under the terms of

the Agreement equates to an injunction against conduct which is not governed by the

Agreement. Plaintiffs' argument that the Court entered an enforceable injunction

preventing PSSI from providing technical support or service post-termination lacks factual

or legal support.

The Court presumably did not intend to enjoin any conduct of PSSI as the Court's

Order does not provide with specificity the terms of an enforceable injunction under Fed.

R. Civ. P. 65(d).

> [W]hile an injunction regarding the Act need not be laboriously detailed, it
> must say something about the conduct enjoined. Moreover, to the extent
> that the district judge's order reflects an intent to enjoin [defendant] from
> future conduct, it does so only by reference to the complaint, a practice
> obviously prohibited by the rule. If this was to [sic] an injunction, it does
> not remotely conform to the dictates of Rule 65(d).

*Reich v. ABC/York-Estes Corp.*, 64 F.2d 316, 319-20 (7th Cir. 1995) (citation omitted).

Consequently, "[t]he failure to comply with Rule 65(d) renders the order issued by the

district court not an injunction and places [defendant] under no obligations." *Id.* In the

instant case, the Court apparently included no Rule 65(d) language in the Order because it

did not intend to enjoin any conduct of PSSI.[2] Therefore, PSSI is under no obligation not

to provide technical support and service post-termination of the Agreement.

In a further effort to misconstrue the Court's judgment, Plaintiffs attempt to

mischaracterize a portion of the Court's Memorandum as an enforceable part of the Court's

Order. Plaintiffs argue that language within the Memorandum which references the Order

somehow incorporates the terms of the Memorandum into the Order. Plaintiffs'

incorporation by reference argument also lacks factual or legal support.

---

[2] As evidence that the Court did not intend to enjoin PSSI, PSSI notes that no injunction bond hearing was
held.

Initially, in order for the terms of the Memorandum to be incorporated into the terms of the Order, the Order should reference the Memorandum, not vice versa. Moreover, incorporation by reference is impermissible under the Federal Rules of Civil Procedure. Fed. R. Civ. P. 58 provides that "Every judgment shall be set forth on a separate document." "Under Fed. R. Civ. P. 58 the judgment must be self-contained and complete. . . . It must describe the relief to which the prevailing party is entitled and not simply record that a motion has been granted." *American Interinsurance Exchange v. Casualty Company of North Carolina*, 835 F.2d 157, 159 (7th Cir. 1987) (citations omitted). The Order and not merely the Memorandum must contain the relief granted. *See Azeez v. Fairman*, 795 F.2d 1296, 1297 (7th Cir. 1986) (District Court Judge stated in his opinion that he would enter a declaratory judgment, but the actual judgment granted only monetary relief). "An opinion is not a substitute for a judgment, for the judgment must be self-contained." *Horn v. Thurmond*, 898 F. 2d 589, 591 (7th Cir. 1990). "The meaning of a judgment depends on what it says rather than on what is in the compliant or what the parties (or judges) intended." *Citizens Electric Corporation v. Bituminous Fire & Marine Ins. Co.*, 68 F.3d 1016, 1021 (7th Cir. 1995) (citation omitted) (noting that the Supreme Court adopted a four-corners rule for consent judgments). "An opinion explains the reasons for entering a judgment but is not itself a source of legal obligations." *Horn,*, 898 F. 2d at 591. Therefore, the Order and not the Memorandum provides the terms of the judgment against PSSI, and the Order does not provide that PSSI is enjoined from doing any act, including providing technical support or service post-termination of the Agreement.

Finally, it was unnecessary for the Court to determine whether PSSI could provide

post-termination technical support and services independent of the Agreement. PSSI asked

the Court to declare the rights under the Agreement. Plaintiffs sought only a denial of

PSSI's request for a declaration of rights under the Agreement. Presumably, that is why

the Court qualified its statement that PSSI is "not entitled to continue technical support and

services" by adding the phrase "anticipated by the Agreement[s]." (Memo. p.9). Because

it was unnecessary for the Court to determine whether PSSI could provide post-termination

technical support and services independent of the Agreement, PSSI seeks a clarification

that neither the Court's Memorandum nor its Order enjoins or prevents PSSI from

providing post-termination technical support and services. Alternatively, PSSI respectfully

requests this Court to amend or alter its Order dated January 7, 2003 and Memorandum

dated January 7, 2003 to clarify that nothing in the Court's Order or Memorandum shall be

construed to enjoin or prevent PSSI from providing post-termination technical support and

services.

## II. THE COURT'S RULING THAT NO GENUINE ISSUE OF MATERIAL FACT EXISTS AS TO WHETHER PLAINTIFFS PROVIDED REASONABLE NOTICE OF TERMINATION SHOULD BE RECONSIDERED.

Even assuming that the Agreement could be terminated upon reasonable notice, the

Court erred by granting partial summary judgment that Plaintiffs provided reasonable

notice of termination of the Agreement because PSSI presented sufficient evidence to at

least create a genuine issue of material fact as to whether the notice of termination was

reasonable. More particularly, the Court erred in failing to consider all of PSSI's evidence

regarding reasonableness of the notice and in failing to recognize that Plaintiffs offered

only arguments and absolutely no evidence in their favor on the issue. Therefore, the Court

should reconsider and amend or alter its Memorandum and Order to provide that a genuine

issue of material fact exists on the issue of whether Plaintiffs provided reasonable notice of termination of the Agreement.

Summary judgment is appropriate only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986). A material fact is in dispute when its existence or non-existence could lead a jury to different outcomes. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986). A genuine issue exists when there is sufficient evidence on which a reasonable jury could return a verdict in favor of the non-moving party. *Id.* The evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in her favor. *Id.* at 255. Mere speculation by the non-moving party cannot create a genuine issue of material fact. *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985).

The non-moving party offers appropriate Fed. R. Civ. P. 56 (e) affidavits in support of its arguments. ("When a motion for summary judgment is made. . . an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e)). The Rule 56(e) affidavits submitted by PSSI contained more than "mere bald assertions" and were not "speculation," but rather they contained facts and statements of PSSI which should have been taken as true and all justifiable inferences should have been drawn in favor of PSSI as the non-moving party. *See infra* § II. A.

This Court erred by impermissibly ignoring the non-moving party's evidence; erred by construing the evidence of record in favor of the moving party; and erred by denying

that an issue of material facts exists. Therefore, this Court should reconsider and reverse its decision that no reasonable jury could find that the notice given by the moving party was unreasonable in light of the circumstances.

## A. A GENUINE ISSUE OF MATERIAL FACT EXISTS AS TO WHETHER THE NOTICE OF TERMINATION GIVEN IN THIS PARTICULAR CASE WAS REASONABLE

For the court to determine the appropriateness of the reasonableness of notice at the summary judgment stage, the court must consider all the evidence of record and construe that evidence in a light most favorable to the non-moving party, PSSI, to determine if no genuine issue of material fact exists. The Court failed to do so.

First, when determining the reasonableness of notice, the court may consider the nature, purpose and circumstances surrounding the reasonableness of termination. *See e.g. Lerner v. Lerner Corporation*, 132 Md. App. 32, 46, 750 A.2d 709, 716 (Md. Ct. Spec. App. 2000). "In determining what constitutes a reasonable duration, reference should be made to the subject matter of the agreement." *Id* "In *Williston*, it states that 'courts frequently interpret promises requiring continued performance for a reasonable time or until terminated by reasonable notice, **all the circumstances surrounding the transaction must be considered in reaching an appropriate conclusion.'** *Id*. citing 1 *Williston on Contracts*, § 4:19, at 446-47 (footnotes omitted) (emphasis added)." *Lerner*, 132 at 46, 750 at 716. In attempting to determine the intention of the parties, "the court may consider all relevant circumstances—including circumstances as of the time of entering into the agreement, events thereafter, and considerations of policy and fairness." *Id.* "In determining the reasonable duration of a contract, reference should always be made to the subject matter of the agreement." *Goldman, Skeen & Walder, P.A. v. Cooper, Beckman &*

- 9 -

*Tuerk*, 122 Md.App. 29, 712 A.2d 1 (Md. Ct. Spec. App. 1998). What is a reasonable time depends on the nature, purpose, and circumstances. *See Best Distributing Company, Inc. v. Seyfert Foods, Inc.*, 714 N.E.2d 1196, 1206 (Ind. Ct. App. 1999) (oral agreement) (distributor found substitute); *Monarch Beverage Co., Inc. v. Tyfield Importers, Inc.*, 823 N.E.2d 1187, 1190 (7th Cir. 1987) (oral agreement) (Based on specific testimony of employee of Monarch on cross-examination, the court held that Monarch could have substituted product within the notice period); *Best Way Distributing Company, v. Brown-Forman Corporation*, 873 F.2d 1437, 1989 WL 37395 (4th Cir. 1989) (unpublished) (oral agreement) (uncontested that 90 days was reasonable notice); *Aaron E. Levine and Company, Inc. v. Calkraft Paper Co.*, 429 F.Supp. 1039, 1051 (E.D. Mich. 1976) (Levine re-entered into a distributorship contract with a third party).

Even assuming arguendo that the Agreement is terminable at will upon reasonable notice, the question of reasonableness alone presented a question of fact which could not be decided in this case on Plaintiffs' Motion for Partial Summary Judgment. The only evidence of record was presented by PSSI. The moving party presented no evidence and insisted on filing a Motion for Partial Summary Judgment prior to discovery. Moreover, the facts contained within PSSI's Rule 56(e) affidavits, which were uncontradicted and are to be taken as true and all reasonable inferences be drawn in favor of PSSI, show that a genuine issue of fact exists as to whether Plaintiffs provided reasonable notice of termination.

The Court's Memorandum considered only two statements from which the Court decided there is no genuine issue of fact: the statement by PSSI that nine months is unreasonable; and PSSI's statement that it does not have a substitute agreement. (See

- 10 -

Memorandum, page 8). Many other circumstances surrounding the transaction which were properly made of record by PSSI and which were uncontradicted should have been considered by the Court when deciding the issue of reasonableness of the notice.

The duration of the Agreement is a relevant circumstance surrounding the transaction which was not considered by the Court. PSSI entered into the Agreement in 1993 and remained obligated to the Agreement for more than nine years. (Eyer Aff. ¶ 2). The performance of PSSI under the Agreement is also a relevant circumstance surrounding the transaction which was not considered by the Court. During the term of the Agreement, PSSI met and exceeded the required quota of sales for all years in which it has been a party to the Agreement. (Eyer Aff. ¶ 4). PSSI's purchase quota was in excess of 1068. (Eyer Aff. ¶ 5). The excess purchase quota dictates that PSSI met its purchase quota through the year 2014. Therefore, a reasonable jury could decide that a reasonable notice of termination could extend well into the year 2014.

A reasonable jury could also decide that reasonable notice of termination necessitates more than nine months' notice be given considering PSSI relied on the exclusive rights to distribute the Products and expended significant funds to maximize and develop the economic viability of PSSI in the defined territories. (Eyer Aff. ¶ 11). A reasonable jury could decide that a reasonable notice of termination necessitates more than nine months' notice be given considering PSSI relied on a continuing Agreement and did not pursue other opportunities. (Eyer Aff. ¶ 12). All of these facts are relevant circumstances surrounding the transaction which were not considered by the Court.

Furthermore, circumstances surrounding the transaction which were not considered by the Court include the extrinsic evidence which the Court did not consider for purposes

- 11 -

of interpreting whether the Agreement was ambiguous and terminable upon reasonable notice. Although the Court did not consider the evidence in connection with interpreting the Agreement, the Court should have considered the evidence in considering whether the non-moving party PSSI offered sufficient evidence regarding the issue of reasonableness of the notice to defeat the Motion for Partial Summary Judgment. For example, the Court should have considered the March 25, 1993 faxed communication from Chuck Dermott, who executed the Agreement on behalf of Plaintiffs' predecessor, to John Wegner and Lawrence E. Eyer of PSSI and Jeffrey Suglio of DMA. In the fax, Mr. Dermott addressed the issue of raising the proposed quota (from 25 to 50) and stated that "As long as I have the products, you will, unless you can't meet quotas or start destroying our reputation in your respective territories (highly unlikely)." (Eyer Aff., ¶17, Ex. 1). This statement should be admitted into evidence for the purpose of determining the reasonableness of the notice because it is a circumstance surrounding the transaction. In light of this evidence, a reasonable jury could decide that a reasonable notice of termination would not be nine months.

Likewise, regardless of whether the Agreement is considered ambiguous, the Court improperly excluded extrinsic evidence which was subsequent to the execution of the Agreement and which constitutes admissions, including the following:

Chuck Dermott provided Lawrence E. Eyer of PSSI with a copy of an e-mail dated November 10, 1997 from Chuck Dermott to Frank Jones, counsel for Plaintiffs' predecessor InfoSoft, Inc., in which Mr. Dermott stated in relevant part as follows:

> By Way of Background: In 1993, I entered into a **long-term contract** with both Jeffrey Suglio of Dental Medical Automation and John Wegner of PSS of Illinois. This was brought on by various economic decisions that each of these organizations had to make in order to grow their businesses. They

wanted some assurance that they were not going to become the proverbial
babies that were thrown out with the bathwater. Since they were among the
very few that I was sure were "keepers", I agreed to enter into a **long-term
relationship** that I felt was of mutual benefit to all parties involved
(InfoSoft, PSS, and the aforementioned Dealers.) It used our Standard
Dealer/Reseller agreement, but extended to them certain **unalienable rights.**
(Eyer Aff., ¶18, Ex. 2)(emphasis added).

On December 5, 1997, in connection with attempted re-negotiations of the PSSI and

DMA Agreements, Lawrence E. Eyer received from Jeff Lyon a facsimile

communication comprising a copy of correspondence from Frank Jones, counsel for

Plaintiff's predecessor InfoSoft, Inc., to Jeff Lyon, of InfoSoft, Inc., stating in

relevant part as follows:

> 5.   Quotas.        ...Right now the agreement throws the initial
> quota, the renewal quota and the **termination rights** all together in a
> jumbled way that is **very unclear in operation**...First, there should be a
> "look back" provision that addresses how to deal with a **Dealer which has
> not made quota for a contract year just ended (this obviously has
> implications regarding our ability to terminate).**
> ...
> ...**the agreement renews automatically, and our termination rights are
> very limited.**
> ...
> **given all of the other ground which we have given on contract
> termination rights....**
>
> 6.   Term; Termination Rights.    I still don't see why the
> **contracts continue ad infinitum**; this is *highly* unusual. However, based
> upon our discussion, I have lightly edited Eyer's language. These changes
> **retain his automatic renewal feature**...
>      8.   Miscellaneous Provisions
>
> ...my incomplete list of "death by a thousand cuts includes:"
> ...
> (h)    the inclusion of an automatic renewal in perpetuity;
> (emphasis added).

(Eyer Aff., ¶19, Ex. 3)(emphasis added).

In a telephone conversation with Jeffrey Suglio on May 9th, 2002, Chuck Dermott

indicated that at the time the DMA and PSSI Agreements were executed, he intended that

- 13 -

DMA and PSSI would not lose their exclusive rights to distribute Products in their Territories as long as they met the average quota provided in the Agreement. (Suglio Aff., ¶19) In a telephone conversation with Jeffrey Suglio on May 9th, 2002, Chuck Dermott indicated that he informed Al Fiore of Plaintiffs that at the time the DMA and PSSI Agreements were executed, he intended that DMA and PSSI would not lose their exclusive rights to distribute Products in their Territories as long as they met the average quota provided in the Agreement. (Suglio Aff., ¶20). In a telephone conversation on June 12th, 2002, Chuck Dermott indicated that he informed Plaintiffs' lawyers that at the time the DMA and PSSI Agreements were executed, he intended that DMA and PSSI would not lose their exclusive rights to distribute Products in their Territories as long as they met the average quota provided in the Agreement. (Suglio Aff., ¶21). During numerous conversations since the date of the Agreements, Al Fiore has stated to both Jeffrey Suglio and Lawrence E. Eyer that the Agreements cannot be terminated without cause. (Suglio Aff., ¶23, Eyer Aff., ¶21). Given all of the foregoing uncontradicted evidence of the circumstances surrounding the Agreement, a reasonable jury could decide that a reasonable notice of termination would not be nine months.

Furthermore, the Court did not consider other uncontradicted evidence of the circumstances surrounding the Agreement. In negotiating and entering into the Agreement, PSSI contemplated a continuing business relationship. (Eyer Aff., ¶6). PSSI negotiated and put forth the effort to define six particular circumstances for termination, including a specific right to revoke PSSI's exclusive right as a distributor in the defined Territory if PSSI failed to maintain the specific and determinable purchase quota of fifty Products per year on average. (Eyer Aff. ¶7). The existence of the quota was specifically negotiated by the parties. (Eyer Aff. ¶8). The amount of the quota was specifically negotiated by the parties. (Eyer Aff. ¶9). The use of an average quota versus an annual quota was specifically negotiated by the parties. (Eyer Aff. ¶10). PSSI expended substantial time and money and did not pursue other opportunities during the more than nine year term of the

Agreement, in reliance on the continuing business relationship with Plaintiffs. (Eyer Aff. ¶12). PSSI entered into the Agreement and continued performance with the expectation that its contractual relationship with Plaintiffs would be automatically renewed in accord with the terms of the Agreement, including but not limited to unless and until it failed to meet the quota. (Eyer Aff. ¶15). PSSI substantially complied with all of the material terms and conditions of the Agreement. (Eyer Aff. ¶16). Additionally, Plaintiffs admit that the Agreements "were a renewal of prior dealership agreements between the parties. . . ." (Plaintiffs' Memo. p.7). Given all of the foregoing uncontradicted evidence of the circumstances surrounding the Agreement, a reasonable jury could decide that a reasonable notice of termination would not be nine months.

PSSI's Rule 56(e) affidavits present facts, and not merely "bald assertions" or "speculation." Again, the Court's Memorandum considers only two statements from which the Court decides there is no genuine issue of fact: (1) the statement by PSSI that nine months is unreasonable; and (2) PSSI's statement that it does not have a substitute agreement. (See Memorandum, page 8). Standing alone, PSSI's first statement may be dismissed as a bald assertion. However, the Court must consider all evidence presented within PSSI's Rule 56(e) affidavits, which, as shown above, shows a genuine issue of fact exists as to whether the notice of termination was reasonable. *See DeGirolamo v. Sanus Corp. Health Systems*, No. 90-2146, 1991 U.S. App. LEXIS 12281, *6 (4th Cir. June 17, 1991) (non-moving party's affidavit containing statements as to why non-movant believed he was fired created a genuine issue of material fact).

Finally, Plaintiffs offered absolutely no evidence on the issue, and have given up their right to challenge PSSI's evidence. Plaintiffs are instead trying to punish PSSI for Plaintiffs failure to conduct discovery. Instead, this Court should have taken all the evidence as true, which is solely evidence presented by PSSI, and drawn all reasonable inferences in favor of the non-movant PSSI. Accordingly, a genuine issue of material fact exists as to whether Plaintiffs provided reasonable notice of termination to PSSI.

- 15 -

## B. THE CASES RELIED UPON BY THE PLAINTIFFS AND THE COURT DO NOT SUPPORT THE COURT'S DECISION

*1. Serpa Corp. and Best Way*

The Court should not have relied upon *Serpa Corp.* or *Best Way* for the proposition that shorter time periods in other cases dictate that as a matter of law a longer time period in the instant case is acceptable. In *Serpa Corp*, the court stated "plaintiff [non-movant] did not present any evidence that a month was insufficient time to secure another supplier, to make adjustments to its operations, or that it provided [non-movant] with an inadequate opportunity to maintain its staff." *Serpa Corp. v. McWane, Inc.*, 199 F.3d 6, 14 (1st Cir. 1999).   In contrast, PSSI in the instant case has presented plenty of evidence to create a genuine issue as to whether the notice of termination was reasonable. *See Supra* II. A.

In *Best Way*, an <u>unpublished opinion,</u> the issue of whether 90 days was reasonable notice was <u>uncontested</u>. *Best Way Distributing Co. v. Brown-Forman Corp.*, 873 F.2d 1437, 1989 WL 37395 *1 (4th Cir. 1989). The Court is in error when it analogized the instant case which must be decided on its particular facts to the uncontested *Best Way* case.

*Serpa* and *Best Way* have distinguishable facts and those shorter time periods for notice should not be used to justify the unreasonable notice in the instant case without an examination of the particular facts of this case.

*2. Evans and Goldberg*

Further, the Court should not have relied upon *Evans* and *Goldberg* for the proposition that PSSI's statements are not evidence of the reasonableness of notice because they are "bald assertions." (Memorandum, page 8). As noted above, PSSI's evidence consists of far more than the two statements considered by the Court.

- 16 -

In addition, *Evans* and *Goldberg* are both employment discrimination cases where the only evidence in support of the non-movant's position consist mainly of self-serving statements. *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 960 (4th Cir. 1996); *Goldberg v. B. Green & Co., Inc.*, 836 F.2d 845, 848 (4th Cir. 1988).

In *Evans*, a sex discrimination case, the non-movant offered no evidence of sex discrimination. 80 F.3d at 959. Instead, the non-movant offered allegations of "differential treatment in pay, benefits and seniority but fail[ed] to provide supporting proof." *Id.* The non-movant also offered a statement by her manager deemed "non-discriminatory on its face." *Id.* Finally, non-movant submitted her own affidavit "mostly made up of conclusory statements about her qualifications and the deficiencies of her colleagues." *Id.* The court rejected this evidence as being her "own naked opinion, without more." *Id., citing Goldberg v. B. Green & Co., Inc.*, 836 F.2d 845, 848 (4th Cir. 1988).

In *Goldberg*, an age discrimination case, the plaintiff also offered no evidence of age discrimination after taking full discovery. 836 F.2d at 848. The only evidence presented was plaintiff's "own naked opinion" of his employer's discriminatory intent and certain circumstantial evidence: the circumstantial evidence consisted of (1) a 3rd party statement that "merely repeats facts" which plaintiff previously alleged; (2) allegations that the employer hired an "unnamed younger employee" and (3) employer's "incredible nature of [its] stated reason for firing [plaintiff]." *Id.* The court rejected this evidence as being insufficient to create a genuine issue of material fact. *Id.*

A common thread found within *Goldberg* and *Evans*, which is absent in the instant case, is that non-movants' opinions of discriminatory intent are unsupported by any evidence to create a genuine issue of material fact. In contrast, the uncontradicted evidence

- 17 -

of record in the instant case presents facts which support PSSI's position that the notice of termination was unreasonable, or at the very least presents a genuine issue of material fact as to whether the moving party provided reasonable notice of termination to the non-moving party.

A case that the Court should have considered is *DeGirolamo v. Sanus Corp. Health Systems*, No. 90-2146, 1991 U.S. App. LEXIS 12281, *6-7 (4th Cir. June 17, 1991). The Court in *DeGirolamo* found that reasonable inferences could be drawn from the "totality of the evidence" including statements within non-movant's Rule 56(e) affidavit, such that it would be improper to resolve the issue of abusive discharge on summary judgment. The statements within non-movant's Rule 56(e) affidavit consisted of information non-movant learned regarding the employer's activities, that he told the employer that he would not engage in such activity, that the employer did engage in activity meant to deceive a 3rd party, and that his on the job performance was acceptable and he improved the financial performance of the employer. *Id.* at *6-7. The court determined that reasonable inferences could be drawn from non-movant's affidavit that would make resolution of the issue on summary judgment improper, even though the court stated that "the question is a close one" and the non-movant's evidence was "thin." *Id.* at *6-7. While the Court may reconsider and declare PSSI's uncontradicted evidence thin, it is more than sufficient to defeat the Motion for Partial Summary Judgment when compared to Plaintiffs' total lack of evidence.

Similar to *DeGirolamo*, in the instant case, the Court should consider the totality of PSSI's evidence of record. As demonstrated above, the uncontradicted statements and facts found within PSSI's Rule 56(e) affidavits taken as true and all reasonable inferences

- 18 -

drawn in favor of the non-movant creates a genuine issue of material fact. Therefore, this

Court should reverse its decision of partial summary judgment that the notice of

termination was reasonable because a genuine issue of material fact exists.

## III. THE COURT ERRED BY FINDING THE AGREEMENT TO BE UNAMBIGUOUS AND NOT CONSIDERING PSSI'S EVIDENCE REGARDING THE AMBIGUOUS TERMINATION LANGUAGE PRESENT IN THE AGREEMENT.

An ambiguity exists on the face of the contract language, and therefore the Court

should have examined extrinsic evidence available to interpret the ambiguity.

A written contract is ambiguous if, when read by a reasonably prudent person, it is

susceptible of more than one meaning. *Calomiris v. Woods*, 353 Md. 425, 432, 727 A.2d

358, 361 (Md. Ct. App. 1999). "The determination of whether language is susceptible of

more than one meaning includes consideration of 'the character of the contract, its purpose,

and the facts and circumstances of the parties at the time of execution.'" *Id.* at 436, 727

A.2d at 363, *citing Pacific Indem. V. Interstate Fire & Cas.*, 302 Md. 383, 388, 488 A.2d

486, 488 (1985).

The termination provisions within the Agreement are ambiguous on their face

because the termination provisions are susceptible of the following meanings: (1) the

Agreement provides five (5) grounds for termination; and (2) the Agreement provides six

(6) grounds for termination.

The Agreement lists six grounds for termination: the five Default provisions and a

quota provision which reads in part:

> PSS hereby grants to Dealer the exclusive *right to sell the Products* in the following Zip Code ranges. . . .   Such exclusivity shall continue during the term of this Agreement and all renewals thereof for so long as Dealer's purchases from PSS average twenty (50) programs per year.

(Pl.'s Ex. B and C, Agreements ¶ 3.1).

- 19 -

> PSS reserves the right to revoke this exclusivity in the event that the
> Dealer does not maintain the purchase quota outlined hereinabove.

(Pl.'s Ex. B and C, Agreements ¶ 3.2).

The ambiguity centers on the whether the quota provision creates a sixth ground for

termination.

This interpretation is reasonable considering the primary purpose of entering into

the Agreement is so that a Dealer has the exclusive right to sell within its territory.  The

Agreement states:

> PSS acknowledges that Dealer, in executing this Agreement, is relying
> on the exclusive right to distribute the Products in the Territory. . . .

(Pl.'s Ex. B and C, Agreements ¶ 3.1).

A reasonably prudent person could believe that from the face of the Agreement

the Dealer entered into the Agreement for the primary purpose of obtaining

exclusive rights within its territory.  If those exclusive rights are terminated, then

Dealer's rights under the Agreement are effectively terminated.   It is worth

noting that the Agreement does not provide for non-exclusive rights.   For

example, the Agreement is silent as to the royalties or other consideration to be

paid in the event the right to distribute the Products became non-exclusive. Thus

a reasonable person could interpret the Agreement's quota provision as a sixth

ground for terminating the Agreement.

Based on the face of the Agreement, since the Agreement and its termination

provisions are susceptible of multiple meanings regarding grounds for terminating the

Agreement, extrinsic evidence should be considered to examine the true meaning of the

provisions.  The extrinsic evidence demonstrates that the parties intended that the

agreement be terminable for only a set of specific circumstances, including the failure to

meet quota, therefore the agreement is not terminable at will.  (See Non-movants'

Memorandum of Law, section II. pages 21-27).  Therefore, PSSI requests this Court to find

the Agreement's termination provisions to be ambiguous, and find that the extrinsic

evidence supports the interpretation that the Agreement is not terminable at-will.

## IV.  THE COURT ERRED BY NOT CONSIDERING PSSI'S EVIDENCE REGARDING PLAINTIFF'S ADMISSIONS.

Regardless of whether the Agreement contains an ambiguity, the Court erred in

refusing to consider PSSI's evidence of admissions by Plaintiffs' representatives and their

predecessors' representatives since the admissions are not prior or contemporaneous

extrinsic evidence.  This evidence includes the admissions of a lawyer regarding the

interpretation of the Agreement's duration and "very limited" termination provisions,

admissions that PSSI would not lose their exclusive rights to distribute Products in the

Territory as long as it met the average quota provided in the Agreement, admissions that

the Agreement cannot be terminated without cause, a written admission that the long-term

contract granted bargained for "**unalienable rights**" to PSSI, and admissions by Plaintiffs

attempted increase of the quota amount and change of the exclusivity, term and termination

provisions of the Agreement.  Therefore, the foregoing admissions which were made

subsequent to execution of the Agreement should have been considered by the Court and

the Agreement should not have been declared terminable upon reasonable notice.


## V.  CONCLUSION

PSSI respectfully requests this Court to clarify whether its Memorandum dated

January 7, 2003 and Order dated January 7, 2003 properly enjoins or prevents PSSI from

providing post-termination technical support and services.  In addition, PSSI respectfully

requests this Court to reconsider and amend or alter its Memorandum dated January 7,

2003 and Order dated January 7, 2003 to provide that the Agreement's termination

provisions are ambiguous and that the Agreement is not terminable upon reasonable notice,

or to alternatively provide that a genuine issue of material fact exists as to whether

Plaintiffs provided reasonable notice of termination to PSSI.


Respectfully submitted,

PROFESSIONAL SOFTWARE
SOLUTIONS OF ILLINOIS, INC.


By: _____
       One of Its Attorneys


Dated: ___/ - 2 / _____, 2003


Lead Counsel (Pro Hac Vice):
Mark E. Wiemelt (06208213)
LAW OFFICES OF MARK E. WIEMELT, P.C.
10 S. LaSalle St., Ste. 3500
Chicago, Illinois  60603
(312) 372-7664

Local Counsel:
John M.G. Murphy
Ober, Kaler, Grimes & Shriver
120 E. Baltimore Street
Baltimore, MD 21202-1643
(410) 347-7334


- 22 -

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 22d day of January, 2003, a copy of a Memorandum in Support of PSSI's Motion to Clarify, Reconsider, Alter or Amend Memorandum and/or Order  was mailed, First Class postage pre-paid to:

S. Scott Morrison, Esq.
Katten, Muchin, Zavis, Rosenman
1025 Thomas Jefferson Street, N.W.
East Lobby, Suite 700
Washington, DC  20007-5201

and to:

Howard E. Cotton, Esq.
Michael S. Gordon, Esq.
Katten, Muchin, Zavis, Rosenman
575 Madison Avenue
New York, NY  10022

Attorneys for Plaintiffs

John M.G. Murphy