*IN THE UNITED STATES DISTRICT COURT*
*FOR THE DISTRICT OF MARYLAND*

| | | |
|---|---|---|
| PRACTICEWORKS, INC., | ) | |
| 1765 The Exchange | ) | |
| Atlanta, Georgia 30339, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| SOFTDENT, LLC, | ) | |
| 311 International Circle, | ) | |
| Hunt Valley, Maryland 21030, | ) | |
| Baltimore County, | ) | |
| | ) | Civil Action No. |
| Plaintiffs/Counter-Defendants, | ) | CCB02CV1205 |
| | ) | |
| v. | ) | |
| | ) | |
| PROFESSIONAL SOFTWARE SOLUTIONS OF | ) | |
| ILLINOIS, INC., | ) | |
| 5155 West 111th Street, | ) | |
| Alsip, IL 60803, | ) | |
| | ) | |
| Defendant/Counter-Plaintiff. | ) | **DEMAND FOR JURY TRIAL** |

## ANSWER, AFFIRMATIVE DEFENSES AND FIRST AMENDED
## COUNTERCLAIMS

NOW COMES the Defendant Professional Software Solutions, Inc., (hereinafter
"PSSI"), by and through its attorney, John M.G. Murphy, of Ober, Kaler, Grimes &
Shriver, and Mark E. Wiemelt, of the Law Offices of Mark E. Wiemelt, P.C., and answers
the Complaint of Plaintiffs PracticeWorks, Inc., (hereinafter "PracticeWorks") and
Softdent, L.L.C., (hereinafter "Softdent") as follows:

- 1 -

## NATURE OF THE ACTION

1.      Upon information and belief, Defendant PSSI admits the allegations set forth in paragraph 1.

2.      Defendant PSSI admits the allegations set forth in paragraph 2.  Further answering, Defendant PSSI states that the copy of the Agreement which is attached to the Complaint as Exhibit A speaks for itself.

3.      Defendant PSSI is without sufficient knowledge or information to form a belief as to the truth of the allegations set forth in paragraph 3.

4.      Defendant PSSI admits that the five contingencies which constitute "Defaults" under the Agreement have not occurred, but is without sufficient knowledge or information to form a belief as to whether the five contingencies are likely never to occur, and denies the remaining allegations set forth in paragraph 4.

5.      Defendant PSSI admits that Plaintiffs have attempted to not renew the Agreement with Defendant, but denies the remaining allegations set forth in Paragraph 5.  Further answering, Defendant PSSI states that the copy of the Agreement which is attached to the Complaint as Exhibit A speaks for itself.

6.      Defendant PSSI admits that Plaintiff SoftDent transmitted to Defendant a letter dated April 8, 2002 stating that the Agreement was terminated, effective as of December 31, 2002, and would not be renewed for the term commencing January 1, 2003, but denies the effect of the letter and denies the remaining allegations set forth in paragraph 6.

7.      Defendant PSSI admits that it objects to and disagrees with Plaintiffs' right to terminate and not renew the Agreement.

8.      Defendant PSSI admits that Plaintiffs seek a declaratory judgment, pursuant to 28 U.S.C. § 2201, but denies that Plaintiffs are entitled to such relief.  Further answering, Defendant PSSI denies that the letter sent to Defendant on April 8, 2002 operated to

terminate the Agreement effective as of December 31, 2002; and denies that nine months' notice of termination, as has been provided, is proper or constitutes reasonable notice.

9.     Defendant PSSI admits that Plaintiffs seek a declaratory judgment, pursuant to 28 U.S.C. § 2201, but denies that Plaintiffs are entitled to such relief.  Further answering, Defendant PSSI denies that the letter sent to Defendant on April 8, 2002 operated not to renew the Agreement for the one-year term commencing January 1, 2003; and denies that nine months' notice of termination, as has been provided, is proper or constitutes reasonable notice.

10.     Defendant PSSI admits the allegations set forth in paragraph 10, but denies that Plaintiffs are entitled to such relief.  Further answering, Defendant PSSI states that the copy of the Agreement which is attached to the Complaint as Exhibit A speaks for itself.

## THE PARTIES

11.     Upon information and belief, Defendant PSSI admits the allegations set forth in paragraph 11.

12.     Upon information and belief, Defendant PSSI admits the allegations set forth in paragraph 12.

13.     Defendant PSSI admits the allegations set forth in paragraph 13.

## JURISDICTION AND VENUE

14.     Defendant PSSI admits that subject matter jurisdiction is proper.

15.     Defendant PSSI admits that venue is proper.

## FACTS COMMON TO ALL CLAIMS

16.     Defendant PSSI admits entering into an Agreement with PracticeWorks' predecessor-in-interest Professional Software Solutions, Inc. ("PSS Md."), a Maryland corporation, on or about January 1, 1993, but denies Plaintiffs' characterization of the Agreement.  Further answering, Defendant PSSI states that the copy of the Agreement which is attached to the Complaint as Exhibit A speaks for itself.

17.    Defendant PSSI is without sufficient knowledge or information to form a belief as to the truth of the allegations set forth in paragraph 17.

18.    Defendant PSSI is without sufficient knowledge or information to form a belief as to the truth of the allegations set forth in paragraph 18.

19.    Defendant PSSI is without sufficient knowledge or information to form a belief as to the truth of the allegations set forth in paragraph 19.

20.    Defendant PSSI is without sufficient knowledge or information to form a belief as to the truth of the allegations set forth in paragraph 20.

**The Terms of the Agreement**

21.    Defendant PSSI denies the allegations set forth in paragraph 21.  Further answering, Defendant PSSI states that the copy of the Agreement which is attached to the Complaint as Exhibit A speaks for itself.

22.    Defendant PSSI denies the allegations set forth in paragraph 22.

23.    Defendant PSSI denies the allegations set forth in paragraph 23.  Further answering, Defendant PSSI states that the copy of the Agreement which is attached to the Complaint as Exhibit A speaks for itself.

24.    Defendant PSSI denies that the term of the Agreement was unspecified or indefinite.  Further answering, Defendant PSSI states that the copy of the Agreement which is attached to the Complaint as Exhibit A speaks for itself.

25.    Defendant PSSI denies the allegations set forth in paragraph 25.

26.    Defendant PSSI denies the allegations set forth in paragraph 26.

27.    Defendant PSSI denies that the cited terms of the Agreement use equivocal language.  Further answering, Defendant PSSI states that the copy of the Agreement which is attached to the Complaint as Exhibit A speaks for itself.

28.    Defendant PSSI denies the allegations set forth in paragraph 28.  Further answering, Defendant PSSI states that the copy of the Agreement which is attached to the Complaint as Exhibit A speaks for itself.

29.     Defendant PSSI admits that none of the Events of Default have occurred. Defendant PSSI is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations set forth in paragraph 29.

30.     Defendant denies the allegations set forth in paragraph 30.

31.     Defendant PSSI denies the allegations set forth in paragraph 31.

32.     Defendant PSSI denies the allegations set forth in paragraph 32.

**Plaintiffs' Termination and Non-Renewal of the Agreement**

33.     Defendant PSSI is without sufficient knowledge or information to form a belief as to the truth of the allegations set forth in paragraph 33.

34.     Defendant PSSI admits that a copy of a letter dated April 8, 2002 and received by Defendant PSSI is attached to the Complaint as Exhibit B.  Further answering, Defendant PSSI states that the copy of the Agreement which is attached to the Complaint as Exhibit B speaks for itself.

35.     Defendant PSSI admits that it objects to and disagrees with Plaintiffs' right to terminate and not renew the Agreement.

**FIRST COUNT FOR A DECLARATION**

36.     Defendant PSSI realleges and incorporates by reference as if copied herein verbatim its answers to paragraphs 1 through 35 in answer to the allegations of paragraph 36.

37.     Defendant PSSI denies the allegations set forth in paragraph 37.

38.     Defendant PSSI admits that none of the Events of Default have occurred. Defendant PSSI is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations set forth in paragraph 38.

39.     Defendant PSSI admits the allegations set forth in paragraph 39.

40.     Defendant PSSI denies the allegations set forth in paragraph 40.

41.     Defendant PSSI admits that a copy of a letter dated April 8, 2002 and received by Defendant PSSI is attached to the Complaint as Exhibit B.  Further answering, Defendant PSSI states that the copy of the Agreement which is attached to the Complaint as Exhibit B speaks for itself.

42.     Defendant PSSI admits that SoftDent's Notice ostensibly provided a Disposition Period of nine months.  Defendant PSSI denies that this Disposition Period is reasonable or proper.

43.     Defendant PSSI admits that it objects to and disagrees with Plaintiffs' right to terminate and not renew the Agreement.

44.     Defendant PSSI admits the allegations set forth in paragraph 44.

45.     Defendant PSSI admits the allegations set forth in paragraph 45.

46.     Defendant PSSI admits the allegations set forth in paragraph 46.

47.     Defendant PSSI admits that Plaintiffs seek a declaratory judgment, pursuant to 28 U.S.C. § 2201, but denies that Plaintiffs are entitled to such relief.  Further answering, Defendant PSSI denies that the letter sent to Defendant on April 8, 2002 operated to terminate the Agreement effective as of December 31, 2002; and denies that nine month Disposition Period ostensibly provided for in the letter is reasonable or proper.

## SECOND COUNT FOR A DECLARATION

48.     Defendant PSSI realleges and incorporates by reference as if copied herein verbatim its answers to paragraphs 1 through 47 in answer to the allegations of paragraph 48.

49.     Defendant PSSI denies the allegations set forth in paragraph 49.

50.     Defendant PSSI denies the allegations set forth in paragraph 50.

51.     Defendant PSSI admits that a copy of a letter dated April 8, 2002 and received by Defendant PSSI is attached to the Complaint as Exhibit B.  Further answering, Defendant PSSI states that the copy of the Agreement which is attached to the Complaint as Exhibit B speaks for itself.

52.     Defendant PSSI admits that SoftDent's Notice ostensibly provided a Disposition Period of nine months.  Defendant PSSI denies that this Disposition Period is reasonable or proper.

53.     Defendant PSSI admits that it objects to and disagrees with Plaintiffs' right to terminate and not renew the Agreement.

54.     Defendant PSSI admits the allegations set forth in paragraph 54.

55.     Defendant PSSI admits the allegations set forth in paragraph 55.

56.     Defendant PSSI admits the allegations set forth in paragraph 56.

57.     Defendant PSSI admits that Plaintiffs seek a declaratory judgment, pursuant to 28 U.S.C. § 2201, but denies that Plaintiffs are entitled to such relief.  Further answering, Defendant PSSI denies that the letter sent to Defendant on April 8, 2002 operated not to renew the Agreement for the term commencing January 1, 2003; and denies that nine month Disposition Period ostensibly provided for in the letter is reasonable or proper.

## THIRD COUNT FOR ATTORNEYS FEES

58.     Defendant PSSI realleges and incorporates by reference as if copied herein verbatim its answers to paragraphs 1 through 57 in answer to the allegations of paragraph 58.

59.    Defendant PSSI admits the allegations set forth in paragraph 59.

60.    Defendant PSSI denies the allegations set forth in paragraph 60.

61.    Defendant PSSI denies the allegations set forth in paragraph 61.

## **PRAYER FOR RELIEF**

Defendants have not violated any statutes or any common law alleged in the Complaint.  Therefore, no judgment is necessary.

## **AFFRIMATIVE DEFENSES**

1.    Count One fails to state a cause of action against Defendant PSSI upon which relief can be granted.

2.    Count Two fails to state a cause of action against Defendant PSSI upon which relief can be granted.

3.    Count Three fails to state a cause of action against Defendant PSSI upon which relief can be granted.

4.    Plaintiffs have failed to mitigate any purported damages or attorneys fees.

5.    Plaintiffs claims are barred by the doctrine of waiver.

6.    Plantiffs claims are barred by the doctrine of estoppel.

WHEREFORE, Defendant request that Plaintiffs' Complaint be dismissed in its entirety, with prejudice, that Defendant be granted its costs and reasonable attorney's fees incurred in connection with its defense of the Complaint, and that Defendant be awarded such relief as the Court deems appropriate.

## JURY DEMAND

Defendant hereby demands a trial by jury in the above-captioned action.

## DEFENDANT PROFESSIONAL SOFTWARE SOLUTIONS OF ILLINOIS, INC.'S FIRST AMENDED COUNTERCLAIMS

NOW COMES the Counter-Plaintiff Professional Software Solutions of Illinois, Inc., (hereinafter "PSSI"), by and through its attorneys, John M.G. Murphy, of Ober, Kaler, Grimes & Shriver, and Mark E. Wiemelt, of the Law Offices of Mark E. Wiemelt, P.C., and alleges its counterclaims against Counter-Defendants PracticeWorks, Inc., and Softdent, L.L.C., (collectively, "Counter-Defendants") as follows:

## NATURE OF THE ACTION

1.    Counter-Plaintiff PSSI is an Illinois corporation.

2.    On or about January 1, 1993, Counter-Plaintiff entered into a Dealer/Resellers Agreement (the "Agreement") with Counter-Defendant PracticeWorks' predecessor-in-interest Professional Software Solutions, Inc., a Maryland Corporation, providing for, inter alia, Counter-Plaintiff's rights as an exclusive distributor and value added reseller of dental management computer software known as the "SoftDent Dental Management System" (the "Software"), and related products, during the term of the Agreement, which were developed, manufactured or distributed by PSS, in specified zip code ranges located in and around Illinois, a copy of which is attached to the Complaint in this matter as Exhibit A.

3.    On April 8, 2002, Counter-Defendants transmitted to Counter-Plaintiff a letter purportedly terminating the Agreement effective as of December 31, 2002, and further purportedly operating to provide for non-renewal of the Agreement for the term

commencing January 1, 2003, a copy of which is attached to the Complaint in this matter as Exhibit B.

4.     Counter-Plaintiff objects to and disagrees with Counter-Defendants' assertion that the letter of April 8, 2002, effectuated a termination or non-renewal of the Agreement.

5.     Accordingly, Counter-Plaintiff seeks a declaratory judgment, pursuant to 28 U.S.C. § 2201, that the letter sent to Counter-Plaintiff on April 8, 2002, did not operate to terminate the Agreement effective as of December 31, 2002; and that the Agreement is one consisting of discrete year-to-year terms automatically renewable in the event that Counter-Plaintiff meets its quota of purchases as set forth in the Agreement, and as such, is not "terminable at will" or upon reasonable notice.

6.     In the alternative, Counter-Plaintiff seeks a declaratory judgment pursuant to 28 U.S.C. § 2201 that the letter sent to Counter-Plaintiff on April 8, 2002, did not operate as a non-renewal of the Agreement effective as of January 1, 2003; and that nine months' notice of termination does not constitute reasonable notice.

7.     In the alternative, Counter-Plaintiff seeks a declaratory judgment pursuant to 28 U.S.C. § 2201 that the letter sent to Counter-Plaintiff on April 8, 2002, operated as an anticipatory breach of the Agreement by Counter-Defendants to grant Counter-Plaintiff exclusivity in its defined sales territory so long as Counter-Plaintiff meets its quota of purchases set forth in the Agreement.

8.     In the alternative, Counter-Plaintiff seeks a declaratory judgment that terms of the duration of the Agreement are preempted by Federal Copyright Law, 17 U.S.C. §§ 203(a) and 302(c).

9.     In the alternative, Counter-Plaintiff seeks a declaratory judgment that the Agreement is one for the provision of services, and as such, the Agreement does not fall under the law of Article 2 of the Uniform Commercial Code, but rather, it falls under the

common law of Maryland, the Maryland Uniform Computer Information Transactions Act and/or the Copyright Laws of the United States.

10.     Counter-Plaintiff also alleges that Counter-Defendants breached express terms of the Agreement, thereby entitling Counter-Plaintiff to compensatory damages.

11.     Counter-Plaintiff also alleges that Counter-Defendants breached the Agreement's implied covenant of good faith and fair dealing.

12.     Counter-Plaintiff also alleges that Counter-Defendants tortiously interfered with Counter-Plaintiff's contracts with Counter-Plaintiff's customers.

13.     Counter-Plaintiff also alleges that Counter-Defendants tortiously interfered with Counter-Plaintiff's prospective economic advantage with respect to Counter-Plaintiff's prospective customers.

14.     In the alternative, Counter-Plaintiff seeks a declaratory judgment that its continuing royalty stream for support, service, updates, upgrades and electronic services derived from its exclusive rights as a distributor and value added reseller as granted by Counter-Defendants in the Agreement cannot be terminated by the letter of April 8, 2002.

15.     Additionally, Counter-Plaintiff seeks to recoup under the express terms of the Agreement its expenses including, without limitation, attorneys' fees, disbursements and other costs incurred by Counter-Plaintiff in commencing the instant action and in enforcing its rights under the Agreement.


## THE PARTIES

16.     Counter-Plaintiff PSSI is a corporation organized under the laws of the State of Illinois with its principal place of business in Illinois.

17.     Upon information and belief, Counter-Defendant PracticeWorks is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in the State of Georgia.

18.     Upon information and belief, Counter-Defendant SoftDent, a wholly-owned subsidiary of Counter-Defendant Practice-Works, is a limited liability corporation organized and existing under the laws of the State of Delaware, with its principal place of business in the State of Maryland.

### JURISDICTION AND VENUE

18.     The Maryland District Court has jurisdiction over this action as a counterclaim and pursuant to: (i) 28 U.S.C. §§ 1332(a)(2) and 1332(c), in that Counter-Plaintiff PSSI is a citizen of the State of Illinois, Counter-Defendant PracticeWorks is a citizen of the State of Georgia, and Counter-Defendant SoftDent is a citizen of the State of Maryland and furthermore, the amount in controversy, exclusive of interest and costs, exceeds the sum or value of $75,000.00, from the perspective of either Counter-Plaintiff or Counter-Defendants; and (ii) 28 U.S.C. §1338(a) (arising under Copyright Laws).

19.     Upon information and belief, Counter-Defendants transact business within the State of Maryland and specifically within this judicial district.

20.     Venue is proper in the Judicial District of the District of Maryland as a counterclaim and under 28 U.S.C. § 1391 (b) because a substantial part of the events giving rise to Counter-Plaintiff's claims occurred within this jurisdiction, and Counter-Defendants are subject to personal jurisdiction in the District of Maryland.

### FACTS COMMON TO ALL COUNTERCLAIMS

21.     On or about January 1, 1993, Counter-Plaintiff executed the Agreement thereby entering into a contractual business relationship with Counter-Defendant PracticeWorks' predecessor-in-interest Professional Software Solutions, Inc. ("PSS"), a

Maryland Corporation, providing for, <u>inter alia</u>, Counter-Plaintiff's exclusive rights as a distributor and value added reseller of the Software, and related products, during the term of the Agreement, which were developed, manufactured or distributed by PSS, in specified zip code ranges located in and around Illinois.

22.    The Agreement provided that Counter-Plaintiff's exclusive rights as a distributor and value added reseller of the Software and related products shall continue during the term of the Agreement and all renewals thereof for so long as Counter-Plaintiff purchases from PSS an average of fifty Products per year.

23.    The Agreement further acknowledged that Counter-Plaintiff, in executing the Agreement, is relying on the exclusive right as a distributor and value added reseller of the Software and related products in the specified zip code ranges, and is expending significant funds (and foregoing other opportunities) to fully develop and maximize the economic viability of the defined territory for the benefit of Counter-Plaintiff and PSS.

24.    The Agreement provided that title to the products shall pass from PSS to PSSI after delivery of such Products.

25.    The Agreement further provided that PSS reserves the right to revoke Counter-Plaintiff's exclusive right as a distributor and value added reseller of the Software and related products in the defined territory if Counter-Plaintiff failed to maintain the purchase quota of fifty Products per year on average.

26.    The Agreement enumerates five events of default (the "Events of Default"), each of which "w[ould] permit the aggrieved party to terminate [the] Agreement" as follows:

11.1    An affirmative act of insolvency by either Dealer or PSS or the filing by Dealer or PSS, as the case may be, of a petition under any bankruptcy, reorganization, insolvency, or moratoria law, or any law for the relief of, or relating to, debtors

- 13 -

11.2   The filing of any involuntary petition under any bankruptcy statute against Dealer or PSS or the appointment of any receiver or trustee to take possession of property of Dealer or PSS, as the case may be, unless such petition or appointment is set aside or withdrawn or ceases to be in effect within sixty (60) days of the date of such filing or appointment;

11.3   A final non-appealable judgment of a court with competent jurisdiction or the final non-appealable decision of a regulatory officer or agency that results in permanent suspension of any permit or license, possession of which is  prerequisite to operation of Dealer's or PSS's business under applicable law;

11.4   Failure by the Dealer to make any and all payments within sixty (60) days after written notice of a delinquency is received by the Dealer, when, and if, it is determined that the Dealer's account is past due, provided, however, if such delinquency is being contested in good faith by Dealer, then such period shall be deemed extended for a reasonable period of time until such matter can be resolved; or

11.5   If the Dealer is adjudged to have violated the copyright of the software or accompanied documentation by making unauthorized duplicates of same, this Agreement shall be automatically terminated immediately.  In addition, the Dealer will be subject to any and all applicable fines and penalties under the provisions of the Federal Copyright Laws.

27.    The Agreement provides that it "will come into force on January, 1993, for an initial period of one (1) year and shall automatically renew thereafter for successive (1) year periods and is subject to earlier termination only as hereinabove provided."

28.    The Agreement provides for termination only if one of the five contingencies which are the Events of Default are met, or alternatively, if Counter-Plaintiff fails to meet its purchase quota of an average of fifty Products per year.

29.    On April 8, 2002, Counter-Defendants transmitted to Counter-Plaintiff a letter that the Agreement was purportedly terminated, effective as of December 31, 2002, and would not be renewed for the term commencing January 1, 2003.

30.     To date, none of the five contingencies which constitute "Defaults" under the Agreement, see infra, have occurred.

31.     To date, Counter-Plaintiff has met its average purchase quota for all years in which it has been a party to the Agreement.

32.     Counter-Plaintiff objects to and disagrees with Counter-Defendants' attempted termination of the Agreement and their attempted non-renewal of same.

33.     Upon information and belief, Counter-Defendants have directed one or more communications offering the SoftDent software and related products for direct sale to various SoftDent customers and/or prospective customers in PSSI's exclusive geographical region.

## COUNT I FOR A DECLARATION

34.     Counter-Plaintiff repeats and reavers the averments contained in paragraphs 1 though 33 above as if set forth at length herein.

35.     By expressly providing for "automatic" renewal for "successive" periods of one year each, the termination of which is contingent only upon the occurrence of any of the five conditions of Default or failure to meet its sales quota, the Agreement clearly and unambiguously provides that the power to terminate the same is a conditional power.

36.     Construction of the Agreement as "terminable at will" would defeat the purpose of the clearly defined conditions upon which the Agreement may be terminated, and as such, the purpose of defining such conditions would be defeated and rendered meaningless.

37.    There exists no language in the Agreement that allows Counter-Defendants to refuse to renew the Agreement without good cause; the parties clearly contemplated a continuing business relationship.

38.    That Counter-Defendants put forth the effort to define six particular circumstances for termination precludes them from arguing that they can terminate the Agreement with or without cause so long as reasonable notice is given.

39.    By notice dated April 8, 2002, Counter-Defendant SoftDent attempted to terminate its Agreement with Counter-Plaintiff, effective as of December 31, 2002.

40.    Counter-Plaintiff objects to and disagrees with the assertion that Counter-Defendants have a right to terminate the Agreement.

41.    By reason of the foregoing, there is a concrete, present and justiciable controversy affecting the rights of Counter-Plaintiff and Counter-Defendants on the issue of whether the Agreement is terminable and has been effectively terminated.

42.    The resolution of this controversy will enable the parties to conduct their business and affairs in an orderly manner, and will put to rest an existing dispute in a manner that will settle the rights and duties of the parties.

43.    There is no adequate remedy at law.

44.    Accordingly, Counter-Plaintiff seeks a declaratory judgment, pursuant to 28 U.S.C. § 2201, that (i) the Agreement is not "terminable at will" or terminable upon reasonable notice, but rather, terminable only upon the occurrence of one or more specific conditions detailed in the Agreement; and (ii) the notice dated April 8, 2002 does not serve to effectuate termination as if set forth at length herein.

## COUNT II FOR A DECLARATION

45.    Counter-Plaintiff repeats and reavers the averments contained in paragraphs 1 through 44 above as if set forth at length herein.

46.    In addition to making sales of Counter-Defendants' products, including distributing the products and acting as a value added reseller, and initiating and developing ongoing business relationships with end-users of Counter-Defendants' software and related products, Counter-Plaintiff has furnished additional consideration in reliance upon the continuing business relationship between it and Counter-Defendants; as such, Counter-Defendants are not at liberty to terminate the Agreement at will.

47.    By letter dated April 8, 2002, Counter-Defendant SoftDent attempted to terminate its Agreement with Counter-Plaintiff, effective as of December 31, 2002.

48.    Counter-Plaintiff's substantial expenditures of time and money during the previous nine years, in reliance on the continuing business relationship with Counter-Defendants, necessitates that more than nine months' notice be given where Counter-Defendants wish to terminate the Agreement without good cause and absent any of the conditions precedent for termination as defined in the Agreement.

49.    By reason thereof, nine months does not constitute "reasonable" notice with which to terminate the Agreement.

50.    Counter-Plaintiff objects to and disagrees with Counter-Defendant's assertion that nine months is a reasonable Disposition Period.

51.    By reason of the foregoing, there is a concrete, present and justiciable controversy affecting the rights of the Counter-Plaintiff and Counter-Defendants on the issue of whether nine months is reasonable notice with which to terminate the Agreement.

52.    The resolution of this controversy will enable the parties to conduct their business and affairs in an orderly manner, and will put to rest an existing dispute in a manner that will settle the duties and rights of the parties.

53.    There is no adequate remedy at law.

54.    Accordingly, Counter-Plaintiff seeks a declaratory judgment, pursuant to 28 U.S.C. § 2201, that where the parties have engaged in a business relationship for over nine years, a Disposition Period of nine months does not constitute reasonable notice of termination of the Agreement.

## COUNT III FOR A DECLARATION

55.    Counter-Plaintiff repeats and reavers the averments contained in paragraphs 1 through 54 above as if set forth at length herein.

56.    The terms of the Agreement speaking to its duration are determinable.

57.    The Agreement specifies that Counter-Plaintiff has "the exclusive right to sell the Products" in a defined zip-code range, and further, that "[s]uch exclusivity shall continue during the term of this Agreement and all renewals thereof for so long as Dealer's purchases from PSS average fifty (50) programs per year."  Compl. Ex. A at ¶ 3.1.

58.    Furthermore, the Agreement provides that Counter-Plaintiff, in executing the Agreement, "is relying on the exclusive right to distribute the Products in the Territory and is expending significant funds (and foregoing other opportunities) to fully develop and maximize the economic viability of the Territory for the benefit of Dealer and PSS."

59.    By letter dated April 8, 2002, Counter-Defendant SoftDent attempted to terminate its Agreement with Counter-Plaintiff, effective as of December 31, 2002, thereby

revoking Counter-Plaintiffs exclusivity in its defined sales territory, despite meeting its average sales quota.

60.    Counter-Plaintiff objects to and disagrees with Counter-Defendants' assertion that it has a right to terminate the Agreement, thereby revoking Counter-Plaintiff's exclusivity in its sales region, as well as nullifying the goodwill with its clients which it has expended significant resources in developing.

61.    The letter of April 8, 2002, is an anticipatory breach of the Agreement by Counter-Defendants.

62.    Such anticipatory breach of the Agreement has caused and threatens further to cause injury to Counter-Plaintiff, including litigation costs and attorneys' fees.  Such acts likely will occur, and continue to occur, unless enjoined by this Court.

63.    Through its communications with Counter-Plaintiff and customers located within Counter-Plaintiff's exclusive distribution and value added reselling geographical area, Counter-Defendants have created a real and reasonable apprehension that Counter-Plaintiff will suffer substantial hardships if Counter-Defendants are permitted to offer and sell the Software and related products directly within PSSI's exclusive territory.

64.    There is a justiciable controversy between the parties concerning Counter-Defendants' liability for anticipatory breach of the Agreement and Counter-Plaintiff's right to demand continued exclusivity as a distributor and value added reseller of the Software and related products within its defined geographical area.

65.    There is no adequate remedy at law.

66.    Accordingly, Counter-Plaintiff seeks that Counter-Defendants be enjoined preliminarily and permanently from improperly contacting or soliciting any customer or

potential customer of SoftDent Software or related products located within Counter-Plaintiff's geographical area of exclusivity, including directly offering the Software, related products, and related support, service, updates, upgrades and electronic services pertaining to the Software and related products to such customers or potential customers.

## COUNT IV FOR A DECLARATION

67.     Counter-Plaintiff repeats and reavers the averments contained in paragraphs 1 through 66 above as if set forth at length herein.

68.     The Agreement contains an exclusive license to distribute software protected under federal copyright law.

69.     Federal copyright law preempts state law.

70.     Licensing agreements such as the Agreement in question are terminable at the will of the author only during a five year period beginning at the end of thirty-five years from the date of execution of the license.

71.     Thirty-five years have not yet passed from the date of the execution of the license to Counter-Plaintiff by Counter-Defendants; as such, the Notice dated April 8, 2002, by Counter-Defendants did not serve to terminate the Agreement.

72.     Counter-Plaintiff objects to and disagrees with the assertion that Counter-Defendants have a right to terminate the Agreement.

73.     By reason of the foregoing, there is a concrete, present and justiciable controversy affecting the rights of Counter-Plaintiff and Counter-Defendants on the issue of whether the Agreement is terminable and has been effectively terminated.

74.     The resolution of this controversy will enable the parties to conduct their business affairs in an orderly manner, and will put to rest an existing dispute in a manner that will settle the rights and duties of the parties.

75.     There is no adequate remedy at law.

76.     Accordingly, Counter-Plaintiff seeks a declaratory judgment, pursuant to 28 U.S.C. § 2201 and 17 U.S.C. §§ 203(a) and 302(c) that (i) the Agreement is not "terminable at will," but rather, terminable only at the will of the author during a five year period beginning at the end of thirty-five years from the date of execution of the Agreement, unless terminated as expressly set forth in the Agreement; and (ii) the notice dated April 8, 2002 does not serve to effectuate termination as if set forth at length herein.

## COUNT V FOR A DECLARATION

77.     Counter-Plaintiff repeats and reavers the averments contained in paragraphs 1 through 76 as if set forth at length herein.

78.     The Agreement between Counter-Plaintiff and Counter-Defendants is subject to the Maryland Uniform Computer Information Transactions Act, Md. Com. Law Code Ann. § 22-101 et seq. (2001) ("MD UCITA"), where the drafters of the UCITA intended for the act to apply to transactions regarding the distribution of, or grant of a right to use, a computer program, whether they involve a license or an unrestricted sale of a copy of a program.

79.     Under Section 22-308(2) of the MD UCITA, the license granted by the Agreement between Counter-Plaintiff and Counter-Defendants is perpetual.

80.     As such, the letter dated April 8, 2002, by Counter-Defendants did not serve to terminate the Agreement.

81.     Counter-Plaintiff objects to and disagrees with the assertion that Counter-Defendants have a right to terminate the Agreement.

82.     By reason of the foregoing, there is a concrete, present and justiciable controversy affecting the rights of Counter-Plaintiff and Counter-Defendants on the issue of whether the Agreement is terminable and has been effectively terminated.

83.     The resolution of this controversy will enable the parties to conduct their business affairs in an orderly manner, and will put to rest an existing dispute in a manner that will settle the rights and duties of the parties.

84.     There is no adequate remedy at law.

85.     Accordingly, Counter-Plaintiff seeks a declaratory judgment, pursuant to 28 U.S.C. § 2201 that (i) the Agreement is not "terminable at will," but rather, perpetual in duration under the Maryland Uniform Computer Information Transactions Act; and (ii) the notice dated April 8, 2002 does not serve to effectuate termination as if set forth at length herein.

## COUNT VI FOR BREACH OF CONTRACT, DUTY OF GOOD FAITH AND FAIR DEALING

86. Counter-Plaintiff repeats and reavers the averments contained in paragraphs 1 through 85 above as if set forth at length herein.

87. SoftDent's "Platinum", "Advantage", and "Subscription" products and services contain Counter-Defendants' SoftDent Software and related products, which, by definition, are subject to the terms of the Agreement.

88. Counter-Defendants, in violation of Sections 3.1, 4.1, 4.4, 10.1 and 10.7 of the Agreement, have: i) offered to sell Software and related products to customers within Counter-Plaintiff's exclusive geographical territory; ii) sold Software and related products to customers within Counter-Plaintiff's exclusive geographical territory; iii) directly advertised its SoftDent Software and related products and services to customers and potential customers within Counter-Plaintiff's exclusive geographical territory; iv) failed to provide mailing lists, demographic studies, brochures, demonstration disks and other sales materials to Counter-Plaintiff, as provided in paragraph 4.4; v) failed to compensate Counter-Plaintiff as provided in the Agreement; vi) failed to provide regular reports as required in paragraph 4.1; and vii) otherwise interfered with the Fair Trade Practices of Counter-Plaintiff.

89. Every contract includes an implied covenant of good faith and fair dealing.

90. Counter-Defendants have: i) failed to forward sales "leads" within Counter-Plaintiff's exclusive geographical territory to Counter-Plaintiff; ii) failed to cooperate with Counter-Plaintiff regarding issues pertaining to the distribution of Software upgrades, pricing, and participation in trade shows; and iii) failed to allow Counter-Plaintiff to offer products and services within Counter-Plaintiff's territory when the products and services were offered in other territories.

91. As such, Counter-Defendants have expressly breached the terms of the Agreement and have breached the implied covenant of good faith and fair dealing in its business and contractual relationship with Counter-Plaintiff.

92. Counter-Defendants conduct has caused Counter-Plaintiff damage in an amount not yet determined.

93. Accordingly, Counter-Plaintiff seeks compensatory damages in an amount to be determined at trial.

## <u>COUNT VII – FOR A DECLARATION</u>

94. Counter-Plaintiff repeats and reavers the averments contained in paragraphs 1 through 93 above as if set forth at length herein.

95. Counter-Plaintiff has a history of providing technical support and service of Counter-Defendants' Products to third parties which precedes the effective date of the Agreement.

96. Counter-Defendants maintain that Counter-Plaintiff cannot continue to provide technical support and service of Counter-Defendants Products to customers pending this litigation or after termination of the Agreement by Counter-Defendant.

97. Upon information and belief, Counter-Defendants have expressly asserted to third parties, including customers of Counter-Plaintiff, that Counter-Plaintiff cannot continue to provide technical support and service of Counter-Defendants Products to customers.

98. Such assertions have caused and threaten further to cause injury to Counter-Plaintiff, including litigation costs and attorneys' fees. Such acts likely will occur, and continue to occur, unless enjoined by this Court.

99. There is a justiciable controversy between the parties concerning Counter-Plantiff's ability to provide technical support and service of Counter-Plaintiff's Products to customers pending this litigation or after termination of the Agreement by Counter-Defendant.

100. There is no adequate remedy at law.

101.  Accordingly, Counter-Plaintiff seeks a declaratory judgment, pursuant to 28 U.S.C. § 2201 that Counter-Plaintiff can continue to provide technical support and service of Counter-Defendants Products to customers pending this litigation or after termination of the Agreement by Counter-Defendant.

## COUNT VIII FOR A DECLARATION

102.     Counter-Plaintiff repeats and reavers the averments contained in paragraphs 1 through 101 above as if set forth at length herein.

103.     In its role as a "value added reseller," Counter-Plaintiff provides continual technical support, service, updates, upgrades and electronic services to its customers of the Software and related products, and thus receives compensation for the value it adds to same.

104.     Counter-Plaintiff asserts that nothing in the Agreement bars it from continuing to offer technical support, service, updates, upgrades and electronic services to its former and existing customers of the Software and related products.

105.     Counter-Plaintiff objects to Counter-Defendants' assertion that termination of the Agreement thereby terminates Counter-Plaintiff's rights to continue providing technical support, service, updates, upgrades and electronic services to its former and existing customers of the Software and related products within its exclusive geographical territory.

106.     By reason of the foregoing, there is a concrete, present and justiciable controversy affecting the rights of the Counter-Plaintiff and Counter-Defendants on the issue of whether terminating the Agreement terminates Counter-

Plaintiff's right to continue to provide support, service, updates, upgrades and electronic services it provides to former and existing customers of the Software and related products.

107.    The resolution of this controversy will enable the parties to conduct their business and affairs in an orderly manner, and will put to rest an existing dispute in a manner that will settle the duties and rights of the parties.

108.    There is no adequate remedy at law.

109.    Accordingly, Counter-Plaintiff seeks a declaratory judgment pursuant to 28 U.S.C. § 2201 that its rights to provide support, service, updates, upgrades and electronic services derived from its exclusive rights as a distributor and value added reseller as granted by Counter-Defendants in the Agreement cannot be terminated by the letter of April 8, 2002.

## COUNT IX FOR ATTORNEYS' FEES

110.    Counter-Plaintiff repeats and reavers the averments contained in paragraphs 1 through 105 above as if set forth at length herein.

111.    The Agreement provides for recoupment of attorneys fees by the successful party for any action filed in relation to the Agreement as follows:

> In the event that any action is filed in relation to this Agreement, the unsuccessful party in the action shall pay to the successful party, in addition to all of the sums that the unsuccessful party may be called on to pay, a reasonable sum for the successful party's reasonable attorneys' fees. Ex. A at ¶ 17.

112.    By virtue of Counter-Defendants' dispute of and challenge to Counter-Plaintiff's attempted anticipatory wrongful termination, anticipatory breach,

and breach of the Agreement, Counter-Plaintiff has been forced to incur expenses, including, without limitation, attorneys' fees, disbursements and other costs incurred by Counter-Plaintiffs in commencing the instant action and enforcing its rights under the Agreement.

113.    As a result, Counter-Defendants are liable to Counter-Plaintiff for Counter-Plaintiff's expenses including, without limitation, attorneys' fees, disbursements and other costs incurred by Plaintiffs in commencing the instant action and enforcing its rights under the Agreement, in an amount to be determined at trial.

### COUNT X – FOR TORTIOUS INTERFERENCE WITH CONTRACT

114.    Counter-Plaintiff repeats and reavers the averments contained in paragraphs 1 through 105 above as if set forth at length herein.

115.    Counter-Plaintiff has entered into long-term contracts for the provision of technical support and service of Counter-Defendants' Products to numerous customers of Counter-Plaintiff.

116.    Upon information and belief, Counter-Defendants have expressly asserted to third parties, including customers of Counter-Plaintiff, that Counter-Plaintiff cannot continue to provide technical support and service of Counter-Defendants Products to customers.

117.    Upon information and belief, Counter-Defendants have contacted customers of Counter-Plaintiff knowing that they were under contract with Counter-Plaintiff and recommended that said customers cease using Counter-Plaintiff's technical support and service under the terms of the existing contracts, demand a partial refund of the contract price for said technical support and service, thereby breaching

said contracts, and enter into contracts with Counter-Defendants for technical support and service.

118.     As such, Counter-Defendants knew of and have purposely, intentionally, maliciously and without legal justification interfered with Counter-Plaintiff's contracts under Illinois and other state laws.

119.     Counter-Plaintiff has suffered and will continue to suffer injury and damages as a result of Counter-Defendants' interference with Counter-Plaintiff's contracts.

120.     Counter-Defendants' conduct has caused Counter-Plaintiff damage in an amount not yet determined.

121.     Accordingly, Counter-Plaintiff seeks compensatory and punitive damages in an amount to be determined at trial.

## COUNT XI – FOR TORTIOUS INTERFERENCE WITH PROPSECTIVE ECONOMIC ADVANTAGE

122.     Counter-Plaintiff repeats and reavers the averments contained in paragraphs 1 through 113 above as if set forth at length herein.

123.     Counter-Plaintiff has a history of entering into long-term contracts with third parties for the provision of technical support and service of Counter-Defendants' Products.

124.     Upon information and belief, Counter-Defendants have expressly asserted to third parties, including customers and prospective customers of Counter-Plaintiff, that Counter-Plaintiff cannot continue to provide technical support and service of Counter-Defendants Products to customers or prospective customers.

125.     Based on its prior dealings with customers and prospective customers, Counter-Plaintiff had a reasonable expectation of entering into and continuing valid business relationships with said customers and prospective customers.

126.     As such, Counter-Defendants knew of and have purposely, intentionally, maliciously and without legal justification interfered with Counter-Plaintiff's legitimate expectancy of business relationships by inducing or causing customers and prospective customers of Counter-Plaintiff to refrain from and delay entering into a business relationship with Counter-Plaintiff under Illinois and other state laws.

127.     Counter-Plaintiff has suffered and will continue to suffer injury and damages as a result of Counter-Defendants' interference with Counter-Plaintiff's prospective economic advantage.

128.     Counter-Defendants' conduct has caused Counter-Plaintiff damage in an amount not yet determined.

129.     Accordingly, Counter-Plaintiff seeks compensatory and punitive damages in an amount to be determined at trial.

**WHEREFORE**, Counter-Plaintiff respectfully requests that the Court:

(a)     grant Counter-Plaintiff relief on the first count against Counter-Defendants as follows: a declaration pursuant to 28 U.S.C. § 2201, that: (i) the Agreement is not "terminable at will" or terminable upon reasonable notice, but rather, terminable only upon the occurrence of one or more of the specific conditions detailed in the Agreement; and (ii) the letter dated April 8, 2002 does not serve to effectuate termination of the Agreement;

(b)    grant Counter-Plaintiff relief on the second count against Counter-Defendant as follows: a declaration pursuant to 28 U.S.C. § 2201 that where the parties have engaged in a business relationship for over nine years, that a Disposition Period of nine months does not constitute reasonable notice of termination of the Agreement;

(c)    grant Counter-Plaintiff relief on the third count against Counter-Defendants as follows: a declaration pursuant to 28 U.S.C. § 2201 that the April 8, 2002 letter sent to Counter-Plaintiff operated to anticipatorily breach the Agreement regarding Counter-Plaintiff's rights in its defined sales;

(d)    grant Counter-Plaintiff relief on the fourth count against Counter-Defendants as follows: a declaration pursuant to 28 U.S.C. § 2201 and 17 U.S.C. §§ 203(a) and 302(c) that (i) the Agreement is not "terminable at will," but rather, terminable only at the will of the author during a five year period beginning at the end of thirty-five years from the date of execution of the Agreement, unless terminated as expressly set forth in the Agreement; and (ii) the notice dated April 8, 2002 does not serve to effectuate termination as if set forth at length herein;

(e)    grant Counter-Plaintiff relief on the fifth count against Counter-Defendants as follows: a declaration pursuant to 28 U.S.C. § 2201 that:  i) the Agreement is not "terminable at will," but rather, perpetual in duration under the Maryland Uniform Computer Information Transactions Act; and (ii) the letter dated April 8, 2002 does not serve to effectuate termination of the Agreement

(f)    grant Counter-Plaintiff relief on the sixth count against Counter-Defendants for breach of contract, good faith and fair dealing in a monetary amount to be determined at trial;

(g)     grant Counter-Plaintiff relief on the seventh count against Counter-Defendant as follows: a declaration that Counter-Plaintiff can continue to provide technical support and service of Counter-Defendants Products to customers pending this litigation or after termination of the Agreement by Counter-Defendant

(h)     grant Counter-Plaintiff relief on the eighth count against Counter-Defendants as follows: a declaration pursuant to 28 U.S.C. § 2201 that Counter-Plaintiff's rights to provide support, service, updates, upgrades and electronic services derived from its exclusive rights as a distributor and value added reseller as granted by Counter-Defendants in the Agreement cannot be terminated by the letter of April 8, 2002;

(i)     grant Counter-Plaintiff the equitable relief of specific performance of the terms of the Agreement by Counter-Defendants;

(j)     grant Counter-Plaintiff relief on the ninth count against Counter-Defendants as follows: for recoupment of expenses under the Agreement including, without limitation, attorneys' fees, disbursements and other costs incurred by Counter-Plaintiff in commencing the instant action and enforcing its rights under the Agreement, in an amount to be determined at trial;

(k)     grant Counter-Plaintiff relief on the tenth count against Counter-Defendants for tortious interference with contract in a monetary amount to be determined at trial;

(l)     grant Counter-Plaintiff relief on the eleventh count against Counter-Defendants for tortious interference with prospective economic advantage in a monetary amount to be determined at trial;

(m)     for punitive damages; and

(n)     such other relief as the Court may deem just and proper.

**JURY DEMAND**

Counter-Plaintiff hereby demands a trial by jury regarding the above counterclaims.


Dated: June 10, 2003

Respectfully submitted,

PROFESSIONAL SOFTWARE

SOLUTIONS OF ILLINOIS, INC.

DENTAL MEDICAL AUTOMATION, INC.


By: /s/ Mark E. Wiemelt
    Mark E. Wiemelt

Lead Counsel (Pro Hac Vice):
Mark E. Wiemelt (06208213)
LAW OFFICES OF MARK E. WIEMELT, P.C.
10 S. LaSalle St., Ste. 3500
Chicago, Illinois  60603
(312) 372-7664

Local Counsel:
John M.G. Murphy
Ober, Kaler, Grimes & Shriver
120 E. Baltimore Street
Baltimore, MD 21202-1643
(410) 347-7334