**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

```
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                              )
PRACTICEWORKS, INC., et al.,                  )
                                              )
                    Plaintiffs,               )   Civil No.:  JFM 02 CV 1205
                                              )
        - against -                           )
                                              )
PROFESSIONAL SOFTWARE SOLUTIONS               )
OF ILLINOIS, INC.,                            )
                                              )
                    Defendant.                )
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                              )
PRACTICEWORKS, INC., et al.,                  )
                                              )
                    Plaintiffs,               )   Civil No.:  JFM 02 CV 1206
                                              )
        - against -                           )
                                              )
DENTAL MEDICAL AUTOMATION, INC.,              )
                                              )
                    Defendant.                )
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
```

**PLAINTIFFS' MEMORANDUM IN RESPONSE TO DEFENDANTS'
JOINT SUR-REPLY IN OPPOSITION TO PLAINTIFFS' MOTION TO
ENFORCE THE COURT'S DECISION AND JUDGMENT
AGAINST DEFENDANTS FOR ATTORNEYS' FEES AND COSTS**

        KATTEN MUCHIN ZAVIS ROSENMAN
        575 Madison Avenue
        New York, New York 10022

        Counsel for Plaintiffs
        PracticeWorks, Inc. and SoftDent LLC

**Of Counsel**:

Howard E. Cotton
Michael S. Gordon

22186951.01

Plaintiffs PracticeWorks, Inc. ("PracticeWorks") and SoftDent LLC ("SoftDent") (collectively "Plaintiffs"), respectfully submit this memorandum in response to the joint sur-reply ("Def. Sur-Reply" or "Joint Sur-Reply") of Defendants Professional Software Solutions of Illinois, Inc. ("PSSI") and Dental Medical Automation, Inc. ("DMA") (collectively "Defendants") in opposition to Plaintiffs' Motion to Enforce the Court's January 7, 2003 Decision and Judgment ordering Defendants to compensate Plaintiffs for their "reasonable attorney's fees and costs associated with bringing this action and litigating . . . [their] motion [for partial summary judgment and partial judgment on the pleadings]." See January 7 Judgment at ¶ 4; see also January 7 Decision at p. 9.

**Defendants' Improper Sur-Reply Does Not Address "New" Issues**

Notwithstanding the fact that Plaintiffs' Motion to Enforce the Court's January 7 Decision and Judgment Against Defendants for Attorneys' Fees and Costs was fully submitted on June 2, 2003, Defendants moved for leave to submit a Joint Sur-Reply on the purported ground that "new factual and legal matters . . . were asserted for the first time in Plaintiffs' Reply Memorandum [in further support of their Motion to Enforce]."[1] See Defendant's Joint Motion for Leave to File Joint Sur-Reply, dated June 10, 2003 at p. 2. However, Defendants' Joint Sur-Reply does not address "new" factual and legal matters that were "asserted for the first time" on reply by Plaintiffs. Indeed, *no* new legal arguments were raised in Plaintiffs' Reply Memorandum and the only factual matters that remotely could be deemed "new" are Plaintiffs' submissions concerning the attorneys' fees and costs incurred by them in February 2003 in

---

[1] As explained in the accompanying cover letter to the Court, when Defendants electronically filed their Motion for Leave to File a Joint Sur-Reply on June 10, 2003, the e-file notice provided that Plaintiffs had until Friday, June 27, 2003 to oppose Defendants' application. So as to avoid burdening the Court with correspondence opposing Defendants' belated and improper application, Plaintiffs intended to file their opposition to Plaintiffs' Joint Sur-Reply on or before June 27. On June 23, 2003, the Court, in a paperless Order, granted Defendants' application for leave to file a Joint Sur-Reply. On that same day, Plaintiffs' counsel telephoned the Court for direction, stating that Plaintiffs had intended to submit their opposition to Defendants' motion on or before June 27, pursuant to the e-file deadline. It was suggested that Plaintiffs serve and file under cover of a letter the papers Plaintiffs intended to submit for the Court's consideration. Accordingly, Plaintiffs respectfully request that the Court consider Plaintiffs' Memorandum in Response to Defendants' Joint Sur-Reply as well as the accompanying Affidavit of Michael S. Gordon in Response to Defendants' Joint Sur-Reply, sworn to June 24, 2003 ("Gordon Aff.").

1

successfully defeating Defendants' motion to reconsider the Court's January 7 Decision and Judgement. It should be noted that, at pages 1 and 34 of Plaintiffs' initial memorandum in support of their Motion to Enforce, submitted on March 25, 2003 ("Pl. Initial Memo" or "Initial Memorandum"), Plaintiffs disclosed to Defendants and the Court that the amount of fees and costs being sought on their application did not include unbilled but incurred time charges and disbursements for the month of February 2003—insofar as the bill for said fees and costs had not yet been rendered by Plaintiffs' counsel, Katten Muchin Zavis Rosenman ("KMZ Rosenman") to Plaintiffs. Plaintiffs further stated in their Initial Memorandum that February 2003 time charges and disbursements would be submitted to the Court and Defendants when said materials were available.

Consistent with Plaintiffs' representation in their Initial Memorandum, Plaintiffs' description of the specific tasks and services performed by KMZ Rosenman in February 2003 is briefly mentioned in the preliminary statement of their Reply Memorandum (see Pl. Reply Memo at 5), which Memorandum refers over to the Cotton Reply Affidavit and the description therein of the summary of services rendered and disbursements incurred (see Reply Affidavit of Howard E. Cotton in Further Support of Plaintiffs' Motion to Enforce, sworn to May 30, 2003 ("Cotton Reply Aff.") at ¶¶ 3-7).

By comparison, Defendants' Joint Sur-Reply goes way beyond addressing Plaintiffs' February 2003 attorneys' fees and costs. Indeed, a review of Defendants' Joint Sur-Reply reveals that said fees and costs are addressed only on pages 2 through 5 thereof and the remaining 11½ pages of Defendants' submission are devoted to sur-replying improperly to Plaintiffs' Reply Memorandum. Thus, Defendants' Joint Sur-Reply, submitted under the guise of responding to "new factual and legal matters," is improper on its face.

Additionally, in their continuing assault on Plaintiffs' redaction of their legal bills to protect attorney-client privileged information contained therein, Defendant purport to suggest that the disposition of Plaintiffs' Motion to Enforce be deferred until all other issues in these cases, including Defendants' purported counterclaims, have been resolved. However, Defendants "deferral" suggestion is nothing more than a desperate attempt to stave off the inevitable day of reckoning when Defendants will be forced to comply with the Court's January 7 Judgment. First, the Court directed that the attorneys' fees issue be

2

22186951.01

resolved following the issuance of the January 7 Decision and Judgment. Moreover, Defendants "deferral" suggestion is directly contrary to the parties' agreement to have the issue of attorneys' fees resolved *prior* to the resolution of other issues in these cases, including Defendants' counterclaims. See Gordon Aff., Exs. A and B. As such, Defendants should not be permitted to recant their agreement in a self-serving attempt to defer the day when they will have to pay the fees and costs they indisputably owe.

Moreover, Defendants seem to believe that if they continue to characterize Plaintiffs' copious submissions—which include Plaintiffs' 40-page Initial Memorandum, their counsel's affidavit and the twelve exhibits thereto, Plaintiffs' 25-page Reply Memorandum, the aforementioned Cotton Reply Affidavit and five exhibits thereto and the reply affidavit of Plaintiffs' General Counsel—as vague and insufficient, that by mere repetition, it will somehow become true. However, through their bald allegations of insufficiency and their failed attempt to impose inapposite documentation requirements upon Plaintiffs, Defendants clearly are engaging in a scheme denounced by their own case law. Indeed, in National Assoc. of Concerned Veterans v. Secretary of Defense, 675 F. 2d 1319 (D.C. Cir. 1982) ("NACV"),[2] the D.C. Circuit admonished litigants that "contests over fees should not be permitted to evolve into *exhaustive trial-type proceedings*. Apart from the burden this would impose on District Courts, many factors used in calculating the fee award can usually be resolved with a reasonable degree of accuracy based on an adequately documented fee application." 675 F.2d at 1324 (emphasis added). Defendants' improper attempt to turn Plaintiffs' Motion to Enforce into an exhaustive trial-type proceeding constitutes nothing more than an improper subversion of a contractual provision to which Defendants agreed and in connection with which their liability already has been adjudged. The record unequivocally demonstrates that Plaintiffs have more than adequately documented their fee application and Defendants' *ipse dixit* on these issues will not make it otherwise.

---

[2] As argued in the Plaintiffs' Reply Memorandum, NACV, a case heavily cited by Defendants (see, e.g., Def. Joint Opp at 4, 10-11, 18-20), arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"), and the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA") and thus is inapposite to the case at bar.

3

Finally, Plaintiffs expressly reserve the right, following the Court's disposition of the instant Motion to Enforce, to recoup the additional attorneys' fees and costs incurred by Plaintiffs in the months of March through June in litigating the instant Motion.

## ARGUMENT

### I.

### CONTRARY TO DEFENDANTS' BALD AND SELF-SERVING CONTENTIONS OF INSUFFICIENCY, PLAINTIFFS' SUBMISSIONS REGARDING FEES AND COSTS INCURRED IN FEBRUARY 2003 MEET DOCUMENTATION REQUIREMENTS UNDER MARYLAND LAW

As forecasted in their Initial Memorandum, Plaintiffs annexed to their Reply Memorandum adequate documentation in support of their attorneys' fees and costs incurred during February 2003 in the amount of $67,113.91. As amplified in the Cotton Reply Affidavit, during February 2003, Plaintiffs incurred reasonable time charges in the amount of $65,337.00, which included, *inter alia*, the exchange of significant correspondence with Defendants and the Court, as well as research relating to Defendants' non-compliance with the Court's January 7 Decision and Judgment, opposing Defendants' unsuccessful motion to reconsider, alter, amend and/or stay enforcement of said Decision and Judgment, and preparing the instant application to enforce the Court's judgment against Defendants for attorneys' fees and costs. (Cotton Reply Aff. ¶¶ 4-6). Additionally, during February 2003, Plaintiffs incurred actual, necessary and reasonable out-of-pocket expenses in the amount of $1,776.91 (which included charges for telephone and facsimile communications, photocopying charges and legal research on Westlaw), for a total amount of $67,113.91 (Id. ¶ 7). Thus, the total amount of reasonable attorneys' fees and costs sought by Plaintiffs on their Motion to Enforce, including fees and costs attributable to February 2003, is $779,357.89.

Contrary to Defendants' bald assertions of impermissible vagueness, Plaintiffs have done far more that simply provide the total time spent multiplied by the rates charged by each attorney in February 2003. Indeed, in addition to identifying the attorneys who provided services for Plaintiffs in February 2003, the Cotton Reply Affidavit sets forth the specific tasks performed by each attorney and the amount of time spent performing said tasks as follows:

4

> . . . I . . .[spent] 42.7 hours in February reviewing Defendants' motion for reconsideration and drafting Plaintiffs' opposition thereto, preparing for and participating in oral argument on Defendants' motion (by teleconference on February 21), conferring with Messrs. Dennis Stockwell and Al Fiore regarding the Court's January 7 Decision and Judgment and Defendants' refusal to abide by the same, and conferring with Mr. Gordon regarding litigation strategy and case management issues.
>
> . . . Mr. Gordon spent 82.10 hours drafting and revising Plaintiffs' papers in opposition to Defendants' motion for reconsideration, drafting letters to Defendants' counsel and the Court regarding Defendants' non-compliance with the January 7 Decision and Judgment, researching myriad federal procedural rules implicated by Defendants' non-compliance with the Court's January 7 Decision and Judgment, and participating in oral argument on Defendants' motion (by teleconference on February 21), reviewing Plaintiffs' bills and drafting the instant motion to enforce. Junior associates Geoffrey Cahen and Kerri Folb assisted Mr. Gordon by researching various issues implicated by Defendants' non-compliance with the January 7 Decision and Judgment and the consequent motion for reconsideration, and issues relating to the instant motion to enforce. Mr. Cahen spent 10.5 hours and Ms. Folb spent 20.3 hours researching such issues.

(Cotton Reply Aff. ¶¶ 5-6). Moreover, in addition to the foregoing description and consistent with the documentation requirements under Local Rule 109.2.b and Maryland case law applicable to contract-based attorneys' fees provisions, Plaintiffs identified each attorney that performed services in February 2003, the time expended thereon, and the hourly rates charged. (Cotton Reply Aff., Ex. A).

As set forth more fully in Point II(A), Plaintiffs properly redacted these bills in the instant pending actions because, as Defendants' own case law confirms, bills, and time records that reveal the motive of the client in seeking representation, litigation strategy, and/or the specific nature of the services provided, such as researching particular areas of the law, fall within the attorney-client privilege. See Maxima Corp. v. 6933 Arlington Dev. Ltd. Partnership, 100 Md.App. 441, 456-57, 641 A.2d 977, 984 (Md. Ct. Spec. App. 1994) (quoting Clarke v. American Commerce Nat'l Bank, 974 F.2d 127, 129 (9th Cir. 1992)). Thus, Plaintiffs clearly have provided a sufficiently detailed description in support of their application.

In a further attempt to distract the Court, Defendants purport that the February 2003 time charges and disbursements at issue allegedly were incurred on matters for which Plaintiffs have not prevailed. However, as amplified in Plaintiffs' Reply Memorandum, the correspondence between the parties and with the Court arose out of Defendants' erroneous contention that the January 7 Decision and Judgment somehow was unenforceable by virtue of it being interlocutory—a point on which Plaintiffs prevailed.

5

As further amplified in Plaintiffs' Reply Memorandum, in February 2003, Plaintiffs successfully defeated Defendants' motion to reconsider, alter, amend and/or stay enforcement of said Decision and Judgment. In addition to denying Defendants' motions on February 21, 2003 in their entirety, the Court clarified its dismissal of the Eighth Counterclaim to the limited extent of holding that Defendants could provide technical support and services pertaining to the software at issue "provided, of course, . . . that relevant materials were returned and not used." (Cotton Reply Aff., Ex. D, Trans. at p. 11). To the extent that Defendants are suggesting that the Court's clarification of its dismissal of the Eighth Counterclaim somehow renders the dismissal of said Counterclaim any less a "prevailing issue" for Plaintiffs, such position is itself a gross mischaracterization and distortion of the record. Indeed, the fact remains that the Eighth Counterclaim is still dismissed, as is every other Counterclaim that Defendants placed in issue on their ill-fated reconsideration motion.

In any event, to the extent the Court wishes to confirm further the accuracy of the exhaustive descriptions provided by Plaintiffs in the their Initial and Reply Memoranda, as well as the supporting affidavits of Howard E. Cotton and Dennis Stockwell, Plaintiffs have offered to submit unredacted copies of the bills for *in camera* inspection.

## II.

### CONTRARY TO DEFENDANTS' IMPROPER SUR-REPLY, PLAINTIFFS HAVE MET THEIR BURDEN OF DOCUMENTING THE REASONABLENESS OF THEIR ATTORNEYS' FEES AND COSTS

Defendants do not dispute the fact that virtually every case cited by them in their Joint Opposition to Plaintiffs' Motion to Enforce arises under a federal statutory scheme not present here, pursuant to which district courts are afforded broader discretion and a far greater role in assessing the reasonableness of attorneys' fees and costs than under a contractual provision, which is at issue here. Unable to surmount this fatal flaw, Defendants attempt to obscure their improper reliance on an inapposite body of case law with the feeble contention (buried in footnote 1 of their Joint Sur-Reply) that their federal statutory cases fall under Local Rule 109.2.b's catch-all reference to "any additional factors required by the case law" which may be considered by the Court on an attorneys' fees application. However, Defendants betray their own recognition that their statutory-based case law is irrelevant here by abandoning this line of

authority altogether, and instead challenging Plaintiffs' reliance on <u>Sullivan v. Easco Corp.</u>, 662 F. Supp. 1396, 1404 (D. Md. 1987)—a case decided by the District of Maryland which, like here, involved a contract providing for an award of attorneys' fees and costs to the party prevailing in a dispute thereunder.

Defendants misleadingly contend that subsequent to <u>Sullivan</u>, the Maryland Court of Special Appeals "outlined [a] procedure for proving reasonable attorneys' fees in a contract case and that procedure was cited favorably by a Fourth Circuit opinion." (See Def. Sur-Reply at 7, *citing* <u>Maxima Corp. v. 6933 Arlington Dev. Ltd. Partnership</u>, 100 Md.App. 441, 641 A.2d 977 (Md. Ct. Spec. App. 1994), which was cited by the Fourth Circuit in <u>Majestic Distilling Co., Inc. v. Stanley Stawski Distrib. Co.</u>, No. 98-2624, 2000 U.S. App. LEXIS 2884 (4th Cir. Feb 28, 2000)—a case which, Defendants readily acknowledge, "involv[ed] a non-contractual award of attorneys fees," <u>see</u> Def. Sur-Reply at 8).

What Defendants fail to disclose, however, is that in citing favorably to <u>Maxima</u>, the reasonableness factors set forth by the Fourth Circuit in <u>Majestic</u> are ***not*** those exhaustively block-quoted on pages 8-9 of Defendants' Joint Sur-Reply, but rather those itemized in <u>Reisterstown Plaza Associates v. General Nutrition Center, Inc.</u>, 89 Md. App. 232, 247, 597 A.2d 1049, 1056-1057 (Md. Ct. Spec. App. 1991) ("<u>Reisterstown</u>")—the seminal case evaluating contractual attorneys' fees awards, cited in Plaintiffs' Initial and Reply Memoranda. (See Pl. Mov. Mem. at 36; Pl Reply Mem. at 8-9). As articulated in <u>Reisterstown</u>, and cited favorably by the Fourth Circuit in <u>Majestic</u>, in considering the reasonableness of attorneys' fees, a Maryland court may consider the following factors:

> . . . the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
>
> \* \* \*
>
> . . . the fee customarily charged in the locality for similar legal services;
>
> . . . the amount involved and the results obtained;
>
> . . . the time limitations imposed by the client or by the circumstances;
>
> . . . the nature and length of the professional relationship with the client;
>
> . . . the experience, reputation, and ability of the lawyer or lawyers performing the services; and
>
> . . . whether the fee is fixed or contingent.

Majestic, 2000 U.S. App. LEXIS 2884 at * 8 - * 9 (citing, Maxima, 100 Md.App. at 454, 641 A.2d at 983, which in turn cites, Reisterstown, 89 Md. App. at 247, 597 A.2d at 1056-1057).  As Plaintiffs have pointed out, the Reisterstown factors are adapted from Rule 1.5(a) of the Maryland Rules of Professional Conduct, and, not surprisingly, are entirely consistent with the requirements set forth in Local Rule 109.2.b.  Although conveniently omitted by Defendants, the Maxima court further observed that each Reisterstown/Rule 1.5 factor need not be evaluated by the court on the record, so long as the record includes "information that sufficiently and competently supports the court's findings" as to an award of attorneys' fees and costs.  Maxima, 100 Md. App. at 458, 641 A.2d at 985.

Mindful of the Fourth Circuit's re-affirmation of Reisterstown in Majestic, Defendants purport that "the Reisterstown factors must be examined only after the movant presents 'evidence necessary for the fact finder to evaluate the reasonableness of the fees.'" (Def. Sur-Reply at 10, *quoting* Maxima, 641 A.2d at 983).  Such evidence undoubtedly has been proffered by Plaintiffs.  The Maxima court noted that in a contractual attorneys' fees case, "the losing party is 'entitled to have the amount of fees and expenses proven with the certainty and under the standards ordinarily applicable for proof of contractual damages.'" 100 Md. App. at 453, 641 A.2d at 982 (*quoting* Bankers & Shippers Ins. Co. v. Electro Enter., Inc., 287 Md. 641, 661, 415 A.2d 278 (Md. Ct. App. 1980)).

The Maxima court—drawing from the case law of "other jurisdictions"—posited, in relevant part, that a prevailing party must present evidence (i) "sufficient for a trial court to render a judgment as to their reasonableness . . .;" (ii) "specify[ing] the services performed, by whom they were performed, the time expended thereon, and the hourly rates charged . . . ;" and (iii) "present[ing] detailed records that contain the relevant facts and computations undergirding the computation of charges . . . .." 100 Md.App. at 453, 641 A.2d at 982.

Even if the evidentiary burden articulated in Maxima had been adopted by the Fourth Circuit in Majestic—which is belied by the Fourth Circuit's delineation of only the Reisterstown factors in citing to Maxima (see Majestic, 2000 U.S. App. LEXIS 2884 at * 8 - *9)—there can be no doubt that Plaintiffs' submissions on the instant application more than comply with said burden.  Indeed, in sharp contrast to the fee applicant in Maxima—who "submitted below only a very cursory schedule of its attorneys' fees

8

22186951.01

that included the rate charged, the number of hours worked, and the dates that the work was performed," Maxima, 100 Md.App. at 454, 641 A.2d at 983—Plaintiffs have submitted highly detailed and exhaustive summaries of the services provided to them by KMZ Rosenman, which summaries provide an ample basis for the Court to grant the application in its entirety because they include "the relevant facts and computations undergirding the computation of charges" and "the services performed, by whom they were performed, the time expended thereon, and the hourly rates charged." Id.  Rather than regurgitating these submissions, Plaintiffs respectfully refer the Court over to their Initial and Reply Memoranda and the accompanying affidavits in support thereof.

Additionally, contrary to Defendants' suggestion that Maxima somehow constituted a departure from the documentation standard applied in Sullivan for contract-based attorneys' fees applications, the Sullivan court held that a party must provide sufficient evidence to allow the court to determine whether the fees requested are "reasonable," including "some documentation of the hours worked" and "an explanation of how the time was spent . . . ." Sullivan, 662 F. Supp. at 1404.  Moreover, the evidence submitted by the prevailing party in Sullivan is on all fours with the Maxima court's articulation of the documentation to be provided by a prevailing party in support of its fees and costs application, *e.g.*, evidence "specify[ing] the services performed, by whom they were performed, the time expended thereon, and the hourly rates charged" and "detailed records that contain the relevant facts and computations undergirding the computation of charges," Maxima, 100 Md.App. at 453, 641 A.2d at 982. Indeed the Sullivan court observed that:

> In support of his request, [plaintiff] . . . outlines the hours spent and basic services rendered by the various partners and associates with the law firm . . . which represents him in the instant case.  [Footnote, The approximate hourly fees charged by each partner and associate are readily ascertainable from the aforementioned information].
>
> [T]he Court notes that any possible inadequacy in [plaintiff's] documentation has been remedied by the submission of a computer printout as well as a letter . . . detailing the time charges. . . . [T]he computer printout identif[ies] persons in addition to the initially named ones involved in the litigation of the case, as well as the hours spent, and fees incurred by them . . . . [Moreover,] [i]n an abundance of caution, [the attorney] submitted a letter essentially summarizing the pertinent parts of the computer printout and providing some additional information.  [The attorney] listed the attorneys involved . . . the fee incurred, and the basic services rendered. . . Clearly, [the plaintiff] has satisfied his burden of documentation with respect to attorney's fees.

9

Sullivan, 662 F. Supp. at 1405 and n. 8.

Finally, it should be noted that the Fourth Circuit in Majestic *affirmed* the district court's award of attorneys' fees and costs based on the fact that, like here, "the district court had ample evidence to make a determination concerning the reasonableness of the attorney's fees sought . . . [including] detailed statements concerning the services rendered by its counsel." 2000 U.S. App. LEXIS 2884 at * 7.

Accordingly, far from supporting Defendants' position, Majestic demonstrates that Plaintiffs' application should be granted because, like the party seeking fees in Majestic, Plaintiffs have submitted ample evidence in support of their application for attorneys fees, including "detailed statements concerning the services rendered by [their] counsel" and affidavits attesting to the reasonableness of the services performed.

A.  **Defendants' Continuing Assault Upon Plaintiffs' Redaction of their Legal Bills in the Instant Active Litigation is Insupportable as a Matter of Law**

Faced with the irrefutable fact that Plaintiffs have furnished ample documentation for the Court to make a reasonableness determination, Defendants continue their tiresome assault upon Plaintiffs' redaction of billing records, notwithstanding Plaintiffs' sworn statement as to the necessity of redaction for preserving in *the foregoing active matters* "attorney-client privileged information, including, *inter alia*, attorney thought processes, strategies and/or communications memorialized in these time records." (See Reply Affidavit of Dennis Stockwell, sworn to May 30, 2003 at ¶ 22). Relying on the Maxima court's finding that "[a]ttorneys' bills are generally not protected by the attorney-client privilege," Defendants conspicuously ignore the Maxima court's acknowledgment that ". . . bills, ledgers, statements, and time records which also reveal the motive of the client in seeking representation, litigation strategy, or the specific nature of the services provided, such as researching particular areas of the law, *fall within the privilege*." 100 Md. App. at 456-57, 641 A.2d at 983-84 (emphasis added) (*quoting* Clarke v. American Commerce Nat'l Bank, 974 F.2d 127, 129 (9th Cir. 1992)).

Ironically, moreover, the defendant in Maxima who had submitted only "a very cursory schedule" absent any detailed description of the work performed, 100 Md.App. at 454, 641 A.2d at 983, was *not* required to produce its billing records. Rather, the court remanded the case to the trial court to give the

10

defendant "an opportunity to raise properly the attorney-client privilege" in the context of "a specific and detailed motion" regarding the same. 100 Md.App. at 455, 458, 641 A.2d at 984. There is no need for such motion here, because unlike the party seeking fees in Maxima, Plaintiffs have provided a detailed description of the work performed so as to obviate the necessity for further detail in the form of unredacted bills.

Similarly without merit is Defendants' assertion that Plaintiffs have mischaracterized the Fourth Circuit's holding in Chaudhry v. Gallerizzo, 174 F.3d 394 (4th Cir. 1999) by "selectively omit[ting] the court's statement that 'typically, the attorney client privilege does not extend to billing records and expense reports.'" (Def. Sur-Reply at 12.) However, reference to the aforementioned *dicta* was unnecessary, given the Fourth Circuit's holding in Chaudhry, **denying** a motion to compel the production of attorney billing records because, like here, said billing records contained attorney-client privileged information.

Indeed, in Chaudhry, where the district court had reviewed *in camera* the unredacted legal bills prepared by defendants' counsel, the Fourth Circuit held that the district court had not abused its discretion in denying plaintiffs' motion to compel production of unredacted legal bills. Citing to Clarke—the same Ninth Circuit case relied on by the Maxima court—the Chaudhry court held that "the legal bills revealed the identity of the federal statutes researched [and] [s]ince the records would divulge confidential information regarding legal advice, they constitute privileged communications and, as such, should not be disclosed." Chaudhry, 174 F.3d at 403, (*quoting* Clarke, 974 F.2d at 129).

Here, as in Chaudhry, Plaintiffs have properly redacted KMZ Rosenman's billing records because, said billing records reveal, *inter alia*, Plaintiffs' motive in seeking representation, Plaintiffs' litigation strategy, as well as the specific nature of the services provided, including specific research undertaken in numerous areas of the law—all within the context of a continuing active litigation. See, e.g., Maxima, 100 Md.App. at 458, 641 A.2d at 985. Further, as in Chaudhry, Plaintiffs have offered to submit the billing records to the court for *in camera* review to confirm the propriety of their privilege claims. Accordingly, Defendants have no basis for asserting that Plaintiffs have improperly relied on Chaudhry or that the billing records must be produced despite Plaintiffs' privilege claim.

11

**B.      Defendants' Request to Defer the Resolution of Attorneys'
        Fees and Costs until all Other Issues, Including their Purported
        Counterclaims Have Been Resolved, Should Be Rejected**

In an attempt to undermine Plaintiffs' bona-fide contentions of preserving their attorney-client privilege during the pendency of these actions, Defendants purport that if Plaintiffs' concern of waiving the attorney-client privilege is "legitimate," then "the review, hearing, and decision on the attorneys' fees and costs matter should be deferred until all of the other issues in the cases, including the Counterclaims have been resolved." (Def. Sur-Reply at 5, 13). Defendants "deferral" suggestion is nothing more than a desperate attempt to stave off the inevitable day of reckoning when Defendants will be forced to comply with the Court's January 7 Judgment. Indeed, the Court directed Plaintiffs to submit their Motion to Enforce said Judgment in the event the parties were unable to agree on an appropriate amount of fees and costs.[3]

Moreover, Defendants "deferral" suggestion is contrary to the parties' agreement to have the fees issue resolved *prior* to the resolution of the other issues in the cases, including Defendants' purported counterclaims. Indeed, as Defendants unambiguously admitted in a March 11, 2003 letter to the Court, "in the interests of litigation efficiency, the parties have agreed to defer pre-trial discovery and depositions regarding Defendants' remaining two counterclaims pending the disposition of Plaintiffs' Motion to Enforce with respect to attorneys' fees." See Affidavit of Michael S. Gordon, sworn to June 24, 2003 at Exhibit A; see also id., Ex. B (Letter from Plaintiffs to Court, dated March 11, 2003, confirming "the deferral of discovery and depositions concerning Defendants' remaining counterclaims,"

---

[3]   In this regard, Defendants accuse Plaintiffs of "foray[ing] into the world of settlement negotiations." (Def. Sur-Reply at 5). Remarkably it was Defendants who opened the door on this issue in stating on page 2 of their Joint Opposition and in their counsel's affidavit that "Defendants offered to settle all of the remaining issues in both cases, including the payment of a net sum to Plaintiffs of $50,000.00 (inclusive of attorneys fees and costs), a waiver of Defendants' appellate rights, and dismissal with prejudice of Defendants' Counterclaims." (See Def. Joint Opp. at 2; Wiemelt Aff. ¶ 3). Based on the foregoing inaccurate statement, Plaintiffs thus had no choice but to respond that, at no point did Defendants *ever* offer a lump sum payment of $50,000 for attorneys' fees and costs incurred by Plaintiffs in these cases and that, even if such amount had been offered, it would have been rejected as grossly inadequate and unacceptable, given the disparity in value between the legal services rendered by KMZ Rosenman on the one hand, and the purported value of Defendants' counterclaims and appellate rights on the other.

pending the resolution of Plaintiffs' Motion to Enforce). As such, Defendants should not be permitted to recant their agreement on this issue in a self-serving attempt to defer the day when they will have to pay the fees and costs they indisputably owe.

Finally, Defendants' continued reliance on <u>Brown v. Stackler</u>, 612 F.2d 1057 (7th Cir. 1980) in support of their "deferral" proposal is improper. First, <u>Brown</u> did not address a request to defer a decision on a party's application for attorneys' fees. Second, as explained in Plaintiffs' Reply Memorandum, that case involved a discretionary award of attorneys fees made pursuant to a federal statute rather than a contract-based attorneys fee award. Third, <u>Brown</u> is irrelevant for the further reason that the attorneys' fee application at issue was denied because the work performed consisted mostly of "motions for extension of time" to answer a "six-page complaint [that] raised an issue which everyone knew would be controlled by the results of litigation pending in other courts." 612 F.2d at 1058. Despite the fact that the attorney had performed virtually no substantive work, the attorney sought reimbursement for "over 800 hours of billable time" which the court correctly determined to be unreasonable. <u>Id.</u> Here, in stark contrast to the attorney in <u>Brown</u>, KMZ Rosenman was able to formulate and execute a complex litigation strategy involving myriad procedural and substantive issues that enabled Plaintiffs to terminate the Agreements in a single, consolidated proceeding. Moreover, as Plaintiffs' Initial Memorandum makes clear, KMZ Rosenman worked vigorously throughout the relevant period to achieve Plaintiffs' objectives in sharp contrast to the attorney in <u>Brown</u>.

For all of these reasons, Defendants' deferral proposal should be rejected.

**C.     Plaintiffs' Reliance on the *National Law Journal* Survey is Entirely Proper**

As amplified in their Initial and Reply Memoranda, Plaintiffs submitted *The National Law Journal's* 2002 survey of billing rates at law firms nationwide ("*The National Law Journal* Survey") for the purpose of establishing that the rates charged by KMZ Rosenman are commensurate with "the customary fee" for like work prevailing in KMZ Rosenman's community. (<u>See</u> Cotton Aff., Ex. L, "A Firm By Firm Sampling of Billing Rates Nationwide, *The National Law Journal*, December 2002). In

13

their improper Sur-Reply, Defendants rehash their argument (already refuted in Plaintiffs' Reply Memorandum) that *The National Law Journal* Survey is inadmissible hearsay, relying on Shepherd v. American Broadcasting Co., Inc., 862 F. Supp. 505 (D.D.C.), vacated, 62 F.3d 1469 (D.C. Cir. 1995) and Brown v. Pro Football, 846 F. Supp. 108 (D.D.C.), rev'd, 50 F.3d 1041 (D.C. Cir. 1995) (Def. Sur-Reply at 13-14.)

However, Defendants' reliance on Judge Lamberth's decisions in Shepherd and Brown is misplaced. Separate and apart from the fact that the D.C Court of Appeals vacated Shepherd and reversed Brown in 1995, these cases are non-binding precedent on the Court. Indeed, Defendants have not and cannot dispute the fact that courts in the District of Maryland have relied upon previous editions of the very same *National Law Journal* Survey cited here by Plaintiffs as well as other similar surveys in addressing the reasonableness of attorneys fee applications. See, e.g., Padgett v. Comm'rs, Somerset Co., Civ. No. HAR-85-3190, 1989 U.S. Dist. LEXIS 5096 at * 5 n. 5 (D. Md. May 2, 1989) (court stated that it "takes note" of *National Law Journal* Survey in computing prevailing market rates for attorneys fees for purpose of deciding attorneys fee application); Dameron v. Sinai Hospital of Baltimore, Inc., 644 F. Supp. 551, 558 (D. Md. 1986) (holding that survey of billing rates charged by Los Angeles based attorneys for work done in the District of Maryland supported claim that attorney's rates were reasonable); see also M.S. o/b/o I.O. v. N.Y.C. Bd. of Educ., No. 01 Civ. 4015, 2002 U.S. Dist. LEXIS 22220 at * 12 (S.D.N.Y. Nov. 15, 2002) (accepting *National Law Journal* Survey as evidence of prevailing attorneys fee rates in deciding attorneys fee application).

## CONCLUSION

For all of the foregoing reasons, it is respectfully requested that Defendants be adjudged to reimburse Plaintiffs in the amount of $779,357.89 in bringing this action, litigating their motion for partial summary judgment and partial judgment on the pleadings, and in successfully defending against Defendants' motion for reconsideration.

Dated: June 24, 2003

                                      Respectfully submitted,

                                      KATTEN MUCHIN ZAVIS ROSENMAN


By:        /s/ Howard E. Cotton
        Howard E. Cotton (admitted *pro hac vice*)
        Michael S. Gordon (admitted *pro hac vice*)
        575 Madison Avenue
        New York, New York 10022
        Telephone: (212) 940-8855
        Facsimile: (212) 894-5966

        Counsel for Plaintiffs
        PracticeWorks, Inc. and SoftDent LLC