**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
)
PRACTICEWORKS, INC., )
1765 The Exchange )
Atlanta, Georgia 30339 )    Civil Action No. JFM-02-1205
)
    and )    Honorable J. Frederick Motz
)
SOFTDENT, LLC, )
311 International Circle, )
Hunt Valley, Maryland 21030, )
Baltimore County, )
)
                    Plaintiffs )
)
     - against - )
)
PROFESSIONAL SOFTWARE SOLUTIONS OF )
ILLINOIS, INC., )
5155 West 111th Street )
Worth, Illinois 60482 )
)
  SERVE:  Lawrence E. Eyer )
          6154 West 125th Place )
          Palos Heights, Illinois  60463 )
)
                   Defendant. )
)
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**FIRST AMENDED COMPLAINT**

      Plaintiffs PracticeWorks, Inc. ("PracticeWorks") and SoftDent LLC ("SoftDent") (collectively "Plaintiffs"), by and through their attorneys, Katten Muchin Zavis Rosenman, for their First Amended Complaint against defendant Professional Software Solutions of Illinois, Inc. ("Defendant") aver as follows:

**NATURE OF THE ACTION**

1.     Plaintiffs PracticeWorks and SoftDent are information management technology providers for dentists, oral surgeons and orthodontists throughout the United States.

2.     On or about January 1, 1993, PracticeWorks' predecessor-in-interest, Professional Software Solutions, Inc. ("PSS Md."), a Maryland corporation, entered into a Dealer/Resellers Agreement (the "Agreement") with Defendant providing for, *inter alia*, Defendant's exclusive resale or distribution of dental management software known as the "SoftDent Dental Management System" (the "Software") in specified zip code ranges located in and around Illinois.

3.     ~~Prior to its acquisition of~~In March 2001, PracticeWorks acquired dental management software providers including PSS Md. and SoftDent including all of their intellectual property rights in such software. ~~March 2001,~~Prior to these acquisitions, PracticeWorks had been marketing its own dental management software, PracticeWorks Office, through its direct sales force. As a result of its March 2001 acquisitions, however, PracticeWorks came to have a customer base in all fifty states, servicing 61,000 dental professionals in the United States, as well as dentists in Sweden and the United Kingdom. Given the national direct sales force that was in place, Plaintiffs determined that it was inefficient and costly to maintain in the same national market both a direct sales force for the PracticeWorks line of software as well as a dealer network for the SoftDent line of software. Accordingly, in the interests of conforming the marketing of the Software to its already existing direct sales method, Plaintiffs decided not to renew and to terminate dealerships like that at issue here.

4.      Because the Agreement is of unspecified or indefinite duration and because the five contingencies which constitute "Defaults" under the Agreement, see infra, have not, and are likely never to, occur, the Agreement is, under Maryland law, terminable at will, on reasonable notice.

5.      Alternatively, pursuant to the express terms of the Agreement, which provideprovides for annual renewal and therefore contemplatecontemplates non-renewal, Plaintiffs have decided not to renew their dealership arrangement with Defendant.

6.      Based on the foregoing, on April 8, 2002, Plaintiff SoftDent transmitted to Defendant a written notice that the Agreement was terminated, effective as of December 31, 2002, and would not be renewed for the term commencing January 1, 2003.

7.      Defendant has objected to and disagreed with Plaintiffs' right to terminate and not to renew the Agreement.  Defendant has refused to return "any and all materials regarding the [Software] in any form whatsoever" as provided in paragraph 13.3 of the Agreement.  Further, Defendant has continued to wrongfully use, copy, and otherwise infringe upon Plaintiffs' copyrighted Software in violation of the Agreement and a shrink wrap license agreement which conditions the use of such copyrighted Software.

8.      Accordingly, Plaintiffs seek a declaratory judgment, pursuant to 28 U.S.C. § 2201, that the notice sent to Defendant on April 8, 2002 operated to terminate the Agreement effective as of December 31, 2002; and that nine months' notice of termination, as has been provided, constitutes reasonable notice.

9.      In the alternative, Plaintiffs seek a declaratory judgment pursuant to 28 U.S.C. § 2201, that the notice sent to Defendant on April 8, 2002 operated not to renew the Agreement for

the term commencing January 1, 2003; and that nine months' notice of non-renewal, as has been provided, constitutes reasonable notice.

10.    Additionally, Plaintiffs seek to recoup under the express terms of the Agreement their expenses including, without limitation, attorneys' fees, disbursements and other costs incurred by Plaintiffs in commencing the instant action and in enforcing their rights under the Agreement.

11.    Plaintiffs also seek judgment against Defendant for breach of contract arising out of, *inter alia*, Defendant's refusal to return "any and all materials" relating to the Software as required under the Agreement upon Plaintiffs' termination thereof and Defendant's use of the Software to provide "technical support and service" to third parties in contravention of the Agreement.

12.    Plaintiff SoftDent further seeks judgment against Defendant for copyright infringement under the Copyright Act of 1976, 17 U.S.C. § 101 *et seq.*, including entry of an Order that Defendant, and those acting in concert with it, be preliminarily and thereafter permanently enjoined and restrained from any further copying or distribution of the Software without SoftDent's consent, as well as damages against Defendant, together with recovery of SoftDent's reasonable attorneys' fees and full costs, for all claims asserted with respect to each of the works entitled to copyright protection owned by SoftDent.

13.    Plaintiffs seeks a declaratory judgment, pursuant to 28 U.S.C. § 2201, that following termination of the Agreement, which occurred on December 31, 2002, Defendant does not have the continuing right to use the Software in providing "technical support and service" to third parties.

## THE PARTIES

14.    ~~11.~~ Plaintiff, PracticeWorks is an information management technology provider for general dentists, orthodontists and oral and maxillofacial surgeons, organized and existing under the laws of the State of Delaware.  PracticeWorks has its principal place of business in the State of Georgia.

15.    ~~12.~~ Plaintiff, SoftDent is a software provider for dentists, organized and existing under the laws of the State of Delaware.  SoftDent has its principal place of business in the State of Maryland.  Its business address in Baltimore County is 311 International Circle, Hunt Valley, Maryland  21030.  SoftDent is a wholly-owned subsidiary of PracticeWorks.

16.    ~~13.~~ Upon information and belief, Defendant is a company organized under the laws of the State of Illinois with its principal place of business in Illinois.

## JURISDICTION AND VENUE

17.    ~~14.~~ The subject matter jurisdiction of this Court is founded on 28 U.S.C. §§ 1332(a)(2) and 1332(c), in that (i) Plaintiff PracticeWorks is a citizen of the State of Georgia and Plaintiff SoftDent is a citizen of the State of Maryland and, upon information and belief, Defendant is a citizen of the State of Illinois; and (ii) the amount in controversy, exclusive of interest and costs, exceeds the sum or value of $75,000.00, from the perspective of either Plaintiffs or Defendant.  Subject matter jurisdiction is also founded on 17 U.S.C. § 101, 28 U.S.C. §§ 1331 and 1338(a) and (b).  This Court has supplemental jurisdiction over Plaintiffs' claims arising under the statutory and common laws of the State of Maryland pursuant to 28 U.S.C. § 1367(a) because these claims are so related to Plaintiffs' claims arising under federal

law that the state law claims form part of the same case or controversy and derive from a common nucleus of operative facts.

18.    15. Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and 28 U.S.C. § 1400(a), in that a substantial part of the events giving rise to plaintiffs' claim occurred in the District of Maryland and Defendant is subject to personal jurisdiction in the District of Maryland.

## FACTS COMMON TO ALL CLAIMS

19.    16. On or about January 1, 1993,  Defendant entered into a Dealer/Resellers Agreement (the "Agreement") with Professional Software Solutions, Inc., a Maryland corporation ("PSS Md.") pursuant to which Defendant was afforded an exclusive dealership of the Software within a "Territory" defined in the Agreement by reference to various zip codes located in and around Illinois.  The Agreement is annexed hereto as Exhibit A.

20.    17. At the time it entered into the Agreement, PSS Md. was the sole distributor of the Software, pursuant to exclusive distribution rights conveyed to it by InfoSoft, Inc. ("InfoSoft"), the then-developer and copyright holder of the Software.

21.    18. PracticeWorks was built by 18 acquisitions from mid-1997 through March 2001 of dental management software providers, including InfoSoft, PSS Md. and SoftDent, which acquisitions included the copyright and exclusive distribution rightsintellectual property rights, including without limitation the copyrights of the Software.  Additionally, pursuant to these acquisitions, Plaintiffs were assigned the rights of PSS Md. to the Agreement.

22.    19. Presently, PracticeWorks has a customer base in all fifty states.  Its nationwide sales force has rendered inefficient the dealer/reseller arrangements created by PracticeWorks'

predecessor-in-interest (i.e., PSS Md.) and, instead has led PracticeWorks, over the last year, to conform the marketing of the Software to its already existing direct sales method by terminating and declining to renew dealerships like that at issue here.

23. 20. In fact, prior to Plaintiffs' termination and non-renewal of the Agreement, Defendant was one of the last remaining exclusive dealers of the Software in the United States.

<u>The Terms of the Agreement</u>

24. 21. The Agreement expressly provided that it was to be interpreted and enforced under "the laws of the State of Maryland." Ex. A at ¶ 19.

25. 22. Pursuant to the Maryland Uniform Commercial Code and the common law of the State of Maryland, the Agreement is a contract for the sale of goods.

26. 23. Under the Agreement, Defendant purchased licensed copies of the Software from PSS Md. and then resold or distributed the Software, on an exclusive basis, to customers in and around Illinois. The Agreement provided that "Dealer agrees to purchase an average of fifty (50) [Software] Products per year in exchange for Dealer exclusivity in the territory and in exchange for the forty percent (40%) discount to Dealer from Suggested Retail Price (SRP) listed on the PSS Software Price List." Ex. A at ¶ 25.1.

27. 24. The term of the Agreement was unspecified or indefinite. The Agreement provided that it would "come into force on January 1, 1993, for an initial period of one (1) year and shall *automatically* renew thereafter for *successive* (1) year periods and is subject to earlier termination only as hereinabove provided." Ex. A at ¶ 22 (emphasis added).

28. 25. By expressly providing for "automatic" renewal for "successive" one year periods, the Agreement was indefinite in duration so as to be terminable at will on reasonable notice.

29. 26. In the alternative, by expressly providing for renewal on an annual basis, the Agreement also contemplates non-renewal.

30. 27. Using permissive and equivocal language,  the Agreement enumerates five events of default (the "Events of Default") each of which "w[ould] permit the aggrieved party to terminate the Agreement[s]," as follows:

11.1    An affirmative act of insolvency by either Dealer or PSS or the filing by Dealer or PSS, as the case may be, of a petition under any bankruptcy, reorganization, insolvency, or moratoria law, or any law for the relief of, or relating to, debtors;

11.2    The filing of any involuntary petition under any bankruptcy statute against Dealer or PSS or the appointment of any receiver or trustee to take possession of property of Dealer or PSS, as the case may be, unless such petition or appointment is set aside or withdrawn or ceases to be in effect within sixty (60) days of the date of such filing or appointment;

11.3    A final non-appealable judgment of a court with competent jurisdiction or the final non-appealable decision of a regulatory officer or agency that results in permanent suspension of any permit or license, possession of which is a prerequisite to operation of Dealer's or PSS's business under applicable law;

11.4    Failure by the Dealer to make any and all payments within sixty (60) days after written notice of a delinquency is received by the Dealer, when, and if, it is determined that the Dealer's account is past due, provided, however, if such delinquency is being contested in good faith by Dealer, then such period shall be deemed extended for a reasonable period of time until such matter can be resolved; or

11.5    If the Dealer is adjudged to have violated the copyright of the software or accompanied documentation by making unauthorized duplicates of same, this Agreement shall be automatically terminated immediately.  In addition, the Dealer will be subject to any and all applicable fines and penalties under the provisions of Federal Copyright Laws.

Ex. A at ¶ 11.

8

31.    28. The five contingencies which are the Events of Default -- (i) an affirmative act of insolvency, (ii) the filing of an involuntary petition under any bankruptcy statute, (iii) the permanent suspension of any permit or license to conduct business, (iv) a failure by Defendant to make required payments under the Agreement within sixty days of receiving a notice of delinquency, and (v) a judgment of copyright violation of the Software against Defendant -- are not determinable events.

32.    29. None of these Events of Default has occurred or, is likely ever to occur, absent an affirmative act or decision by a party to the Agreement to precipitate such Event of Default.

33.    30. Even if the Agreement did not list the Events of Default, a party to the Agreement would have the right to terminate the Agreement on the grounds of material breach if any of these Events of Default took place.

34.    31. By reason thereof, the Agreement is so indefinite in duration as to be terminable at will on reasonable notice pursuant to the Maryland Uniform Commercial Code and the common law of the State of Maryland.

35.    32. In the alternative, the Agreement also is non-renewable on reasonable notice pursuant to the Maryland Uniform Commercial Code and the common law of the State of Maryland.

Provisions of the Agreement Precluding the Continued Use of the
Software Upon Termination to Provide Technical Services and Support

36.    The purpose of the Agreement was to facilitate the sale of copies of the Software to end-users, which are dental offices in the dealer's territory ("End-Users").  Ex. A ¶ 3.1.

37.    Plaintiffs tightly control the dissemination of copies of the Software, making sure that each one is specifically ordered on behalf of a registered End-User.  The Agreement

provides that "orders may only be filled when a completed Purchase Registration Form . . . has been executed by the End-User and received by [Plaintiffs]." Ex. A ¶ 23.

38.     In the Agreement, Defendant "acknowledge[d] the proprietary rights of [SoftDent]" to the Software and agreed "[t]hroughout the term of this Agreement ***and at all times thereafter*** . . . not to disclose, or cause to be disclosed, any confidential or proprietary information relating to the [Software] or [SoftDent], other than in the faithful performance of the duties hereunder." Ex. A ¶ 13.1 (emphasis added).

39.     In the same vein, the Agreement provides that upon termination, Defendant must "immediately return" to Plaintiffs "any and all materials regarding the Products in any form whatsoever," including any and all Software, as follows:

> Upon the termination of this Agreement, for any reason whatsoever, [Defendant] shall immediately return any and all materials regarding the Products in any form whatsoever received from . . . [Plaintiffs], . . . to the party supplying same, provided [Plaintiffs] will pay [Defendant] for the price [Defendant] paid for any unopened Products and shall pay fair value for other items of value which were purchased from [Plaintiffs].

Ex A ¶ 13.3.

40.     "Products" are broadly defined in the Agreement as "SoftDent computer software and related products now or hereafter, during the term of this Agreement, developed, manufactured or distributed by [Plaintiffs]." Ex. A ¶ 2.1.

41.     Additionally, an Event of Default occurs entitling Plaintiffs to immediately terminate the Agreement "[i]f the Dealer is adjudged to have violated the copyright of the Software or accompanied documentation by making unauthorized duplicates of same." Ex. A ¶ 11.5.

<u>Plaintiffs' Termination and Non-Renewal of the Agreement</u>

42.    ~~33. By~~<u>As hereinabove set forth, by</u> virtue of Plaintiffs' realization that it was inefficient and costly to maintain in the same national market both a direct sales force for the PracticeWorks line of software as well as a dealer network for the SoftDent line of software, Plaintiffs decided to terminate and not to renew dealerships like that at issue here.

43.    ~~34.~~ Accordingly, on April 8, 2002, Plaintiff SoftDent transmitted to Defendant a written notice that the Agreement was terminated, effective as of December 31, 2002, and would not be renewed for the term commencing January 1, 2003, as follows:

> The current Term of the Agreement, as set forth in paragraph 22 therein, ends on December 31, 2002. We hereby formally provide you with Notice that the Agreement will terminate as of the end of the day December 31, 2002 (the "Termination Date") and that the Term of the Agreement will not be renewed for the calendar year commencing January 1, 2003. You shall have the right, up to and including, the Termination Date to market, sell and dispose of any inventory currently on hand, and to fulfill outstanding customer orders (the "Disposition Period"). Having provided a sufficiently extended and reasonable Disposition Period, we expect that given your experience and knowledge of the industry, that you have taken and will continue to take all steps necessary to develop and exploit other opportunities.

A copy of the Notice is annexed hereto as Exhibit B.

44.    ~~35.~~ Defendant has objected to and disagreed with Plaintiffs' right to terminate and not to renew the Agreement.

<u>The Commencement of this Action and the Court's Grant of
Summary Judgment in Plaintiffs' Favor Terminating the Agreement</u>

45.    On or about April 9, 2002, Plaintiffs commenced the instant action in which it asserted two claims for a declaration that the Agreement properly was terminated and non-renewed effective as of December 31, 2002, and that the nine-months' notice of termination and non-renewal afforded to Defendant was reasonable, as well as a third claim for recoupment of

attorneys' fees and costs incurred by Plaintiffs in commencing the instant action and enforcing their rights under the Agreement.

46.     In or about May 2003, Defendant interposed nine counterclaims basically seeking the inverse relief, *i.e.*, a declaration that the Agreements were ***not*** properly terminated and non-renewed on reasonable notice.   In its Ninth Counterclaim, Defendant also sought to recover attorneys' fees in the event that it prevailed in this action.

47.     Thereafter, Plaintiffs made motions for partial summary judgment and for partial judgment on the pleadings, which were fully submitted on September 27, 2002, seeking summary judgment on their three claims and summary judgment dismissing seven of Defendant's nine counterclaims

48.     On or about January 7, 2003, the Court issued a Decision and Judgment in which the Court held, as a matter of law, that the Agreement properly was terminated and non-renewed on reasonable notice by letter dated April 8, 2002, which termination and non-renewal became effective as of December 31, 2002.  In doing so, the Court granted judgment in Plaintiffs' favor on all three of their causes of action, including their Third Count for attorneys' fees, and dismissed seven of Defendant's nine counterclaims (*i.e.*, Counterclaims One through Five, Eight and Nine) which sought the inverse relief of that sought by Plaintiffs.

49.     The Court dismissed Defendant's Eighth Counterclaim for a declaration that Defendant had the "continuing right" to provide "support, service, updates, upgrades and certain electronic services derived from its exclusive right as a distributor and value added reseller as granted by [Plaintiffs] in the Agreement . . ."

50.     The Court dismissed the Eighth Counterclaim in its entirety and held that Defendant was required "to immediately return [to the plaintiffs] any and all materials regarding the Products in any form whatsoever," as required in the Agreements.  (Decision at p. 9, *quoting* Section 13.3 of the Agreements).

51.     Shortly after the Court issued its January 7 Decision and Judgment, Plaintiffs demanded that Defendant immediately return any and all materials regarding the Products, including the Software, in any form whatsoever, as required under paragraph 13.3 of the Agreement.

52.     Defendant refused to return any and all materials regarding the Products on the purported ground that the Court's Decision and Judgment was not enforceable because no final judgment had been entered.

53.     Approximately two weeks after the Court issued its January 7 Decision and Judgment, Plaintiffs transmitted a letter to software customers in Defendant's formerly exclusive territories informing these customers that Plaintiffs had terminated their dealer arrangement with Defendant and offered to assist these customers on transitional matters concerning the sale and technical support of the software at issue.

54.     Shortly thereafter, in late January 2003, Defendant transmitted a letter to its customers containing the misleading statement that Defendant "disagree(s) with the legality of the purported termination of [its] rights to distribute the products and [is] continuing to litigate the matter."  The letter further contained a bold reference line informing customers that Defendant would "continue to provide support and services" to them.  A copy of Defendant's letter is annexed hereto as Exhibit C.

55.     In late January 2003, Defendant moved to reconsider, alter, amend and/or stay enforcement of the January 7 Decision and Judgment and sought clarification of the Court's dismissal of the Eighth Counterclaim seeking a declaration that Defendant had the "continuing right" to provide "support, service, updates, upgrades and certain electronic services derived from its exclusive right as a distributor and value added reseller as granted by [Plaintiffs] in the Agreement . . ."

56.     On February 21, 2003, the Court declined to reconsider, alter, amend and/or stay enforcement of the January 7 Decision and Judgment in its entirety with respect to the termination and non-renewal of the Agreement, but clarified its dismissal of Defendant's Eighth Counterclaim to the limited extent of holding that Defendant could provide technical support and service pertaining to the Software "provided, of course, . . . that relevant materials were returned [to Plaintiffs] and not used."  (Feb. 21, 2003 Trans. at p. 11).  The Court's holding was consistent with its finding in its January 7 Decision that Defendant was required "'to immediately return [to the plaintiffs] any and all materials regarding the Products in any form whatsoever,'" as required in the Agreements.  (Decision at p. 9, *quoting* Section 13.3 of the Agreements).

57.     By letter dated April 14, 2003, Plaintiffs demanded that Defendant immediately return to them any and all materials regarding the Products in any form whatsoever, including the Software, as required in the Agreement.

58.     Defendant has refused to return its copies of the Software and—in breach of the Agreement and in violation of Plaintiffs' copyright—has copied and/or is copying and using the Software currently in its possession to provide "technical support and service" to third parties.

# FIRST COUNT
## FOR A DECLARATION

59.    36. Plaintiffs repeat and reaver the averments contained in paragraphs 1 through 3558 above as if set forth at length herein.

60.    37. By expressly providing for "automatic" renewal for "successive" one year periods, the Agreement was unspecified or indefinite as to duration.

61.    38. None of the five contingencies set forth in the Agreement as Events of Default has occurred or, is likely ever to occur, absent an affirmative act or decision by a party to the Agreement to precipitate such Event of Default.

62.    39. The five contingencies set forth in the Agreement as Events of Default do not transform the Agreement into a contract of definite duration.

63.    40. By reason thereof, the Agreement is so indefinite in duration as to be terminable at will on reasonable notice pursuant to the Maryland Uniform Commercial Code and the common law of the State of Maryland.

64.    41. By Notice dated April 8, 2002, Plaintiff SoftDent notified Defendant that the Agreement was terminated,  effective as of December 31, 2002.

65.    42. SoftDent's Notice provided for a reasonable Disposition Period of nine months.

66.    43. Defendant has objected to and disagreed with Plaintiffs' right to terminate the Agreement.

67.    44. By reason of the foregoing, there is a concrete, present and justiciable controversy affecting the rights of the Plaintiffs and Defendant on the issue of whether the Agreement has been terminated, and whether such termination was on reasonable notice.

68. ~~45.~~ The resolution of this controversy will enable the parties to conduct their business and affairs in an orderly manner, and will put to rest an existing dispute in a manner that will settle the duties and rights of the parties.

69. ~~46.~~ There is no adequate remedy at law.

70. ~~47.~~ Accordingly, Plaintiffs seek a declaratory judgment, pursuant to 28 U.S.C. § 2201, that (i) the Notice sent to Defendant operated to terminate the Agreement effective as of December 31, 2002; and (ii) that the nine-month Disposition Period provided for in the Notice is reasonable.

## SECOND COUNT
## FOR A DECLARATION

71. ~~48.~~ Plaintiffs repeat and reaver the averments contained in paragraphs 1 through ~~47~~70 above as if set forth at length herein.

72. ~~49.~~ By expressly providing for renewal on an annual basis, the Agreement also contemplates non-renewal.

73. ~~50.~~ By reason thereof, the Agreement is non-renewable on reasonable notice pursuant to the Maryland Uniform Commercial Code and the common law of the State of Maryland.

74. ~~51.~~ By Notice dated April 8, 2002, Plaintiff SoftDent notified Defendant that the Agreement would not be renewed for the term commencing January 1, 2003.

75. ~~52.~~ SoftDent's Notice provided for a reasonable Disposition Period of nine months.

76. ~~53.~~ Defendant has objected to and disagreed with Plaintiffs' right not to renew the Agreement.

16

77.    54.  By reason of the foregoing, there is a concrete, present and justiciable controversy affecting the rights of the Plaintiffs and Defendant on the issue of whether the Agreement has not been renewed, and whether such non-renewal was on reasonable notice.

78.    55.  The resolution of this controversy will enable the parties to conduct their business and affairs in an orderly manner, and will put to rest an existing dispute in a manner that will settle the duties and rights of the parties.

79.    56.  There is no adequate remedy at law.

80.    57.  Accordingly, Plaintiffs seek a declaratory judgment, pursuant to 28 U.S.C. § 2201, that (i) the Notice sent to Defendant operated not to renew the Agreement for the term commencing January 1, 2003; and (ii) that the nine-month Disposition Period provided for in the Notice is reasonable.

## THIRD COUNT
## FOR ATTORNEYS' FEES

81.    58.  Plaintiffs repeat and reaver the averments contained in paragraphs 1 through 57 80 above as if set forth at length herein.

82.    59.  The Agreement provides for recoupment of attorneys fees by the successful party for any action filed in relation to the Agreement as follows:

> In the event that any action is filed in relation to this Agreement, the unsuccessful party in the action shall pay to the successful party, in addition to all of the sums that the unsuccessful party may be called on to pay, a reasonable sum for the successful party's reasonable attorneys' fees.

Exs. A at ¶ 17.

83.    60.  By virtue of Defendant's dispute of and challenge to Plaintiffs' termination and non-renewal of the Agreement, as well as their continuing breach of the Agreement and

infringement of SoftDent's copyrighted Software, see *infra,* Plaintiffs have been forced to incur expenses, including, without limitation, attorneys' fees, disbursements and other costs incurred by Plaintiffs in commencing the instant action and enforcing their rights under the Agreement.

84.    61. As a result, Defendant is liable to Plaintiffs for Plaintiffs' expenses including, without limitation, attorneys' fees, disbursements and other costs incurred by Plaintiffs in commencing the instant action and enforcing their rights under the Agreement, in an amount to be determined at trial.

**FOURTH COUNT**
**FOR BREACH OF CONTRACT**

85.    Plaintiffs repeat and reaver the averments contained in paragraphs 1 through 84 above as if set forth at length herein.

86.    This Count arises under the common law of Maryland.

87.    Plaintiffs and Defendant entered into a valid and enforceable contract dated January 15, 1993.

88.    Plaintiffs have fully complied with their contractual obligations set forth in the Agreement.

89.    Defendant has breached the Agreement, through one or more acts, including without limitation:

   (a)    failing to return or deliver immediately "any and all materials regarding in the Products in any form whatsoever" received from Plaintiffs or their predecessors (Ex. A ¶ 13.3);

   (b)    "disclos[ing], or caus[ing] to be disclosed, . . . confidential or proprietary information relating to the [Software] or [SoftDent]" (*id.* ¶ 13.1); and

(c)    continuing to use, copy, reference or otherwise exploit the Software to provide technical support and service to third parties.

90.    Despite demands by Plaintiffs that Defendant comply with its contractual obligation to immediately return all materials, including the Software, to Plaintiffs, Defendant continues to breach the Agreement by using the Software to provide technical support and services to customers.

91.    The foregoing acts of Defendant constitute breach of contract under the common law of Maryland, and as a result of Defendant's breach of the Agreement, Plaintiffs have suffered damages in excess of $1 million including, without limitation, lost technical support opportunities in Defendant's former territory and lost access to customers for other products and services—which losses Defendant reasonably foresaw as the probable result of breach at the time it entered into the Agreement.

92.    As a result, Defendant is liable to Plaintiffs for substantial damages in excess of $1 million arising out of Defendant's breach of the Agreement, the exact amount of which is to be determined at trial.

## FIFTH COUNT
## FOR COPYRIGHT INFRINGEMENT

93.    Plaintiff SoftDent repeats and reavers the averments contained in paragraphs 1 through 92 above as if set forth at length herein.

94.    This Count arises under 17 U.S.C. § 101 *et seq.*

95.    Between March 1990 and continuing to the present, Plaintiffs' predecessor-in-interest, InfoSoft, applied for copyrights for the computer source code and documentation for the Software with the United States Copyright Office, and Certificates of Registration, No. TX-2-

817-208, TX-3-590-481, TX-3-849-100, TX-4-023-631, TX-4-745-797, TX-5-790-350 and TX-5-789-503 have been issued, effective April 3, 1990, May 21, 1993, June 21, 1994, July 28, 1995, March 23, 1998, October 1, 2003 and October 1, 2003, respectively.  Copies of the Certificates of Registration, Nos. TX-2-817-208, TX-3-590-481, TX-3-849-100, TX-4-023-631, TX-4-745-797, TX-5-790-350 and TX-5-789-503 are attached hereto and incorporated herein as Exhibits D, E, F, G, H, I and J respectively.

96.     Plaintiff SoftDent is the sole owner of the copyrights associated with the Software.

97.     The works associated with the Software possess the requisite originality as demanded by 17 U.S.C. § 101 et seq. and, as such, SoftDent was properly granted an authentic and valid copyright.

98.     Defendant recognized SoftDent's ownership of the copyrights in the Software and agreed to be subject to all the penalties under the Copyright Act for unauthorized duplication of the Software or accompanied documentation as follows:

> 11.5    If [Defendant] is adjudged to have violated the copyright of the software or accompanied documentation by making unauthorized duplicates of same, this Agreement shall be automatically terminated immediately.  In addition, [Defendant] will be subject to any and all applicable fines and penalties under the provisions of the Federal Copyright Laws.

Ex. A ¶ 11.

99.     After termination of the Agreement, Defendant has, upon information and belief, willfully infringed SoftDent's copyrights by using, copying and/or distributing copies of the Software and by selling technical support and other services which use, employ, or otherwise

exploit the copyrighted Software in violation of 17 U.S.C. § 106.  All such use of the Software was without authorization, license or permission from SoftDent.

100.    In order to use SoftDent's Software, or a portion of it, the Software must be loaded into a computer's Random Access Memory ("RAM").  This loading into a computer's RAM requires copying of the Software from a disk or other storage media into RAM, and that copying, when done without SoftDent's authorization, is a direct infringement of SoftDent's Copyrights.

101.    Following Plaintiffs' termination of the Agreement, Defendant no longer had any authorization, rights, permission or license from SoftDent to use SoftDent's Software.

102.    Upon information and belief, Defendant has infringed, and continues to infringe, SoftDent's copyrighted Software by making copies of the Software when Defendant utilizes, "boots up," runs, and/or initiates the Software on any computer for purposes such as providing technical support and other services.

103.    SoftDent informed Defendant of its copyright ownership in the Software, and Defendant is aware of such rights. SoftDent has demanded that Defendant cease and desist its infringing use of the copyrighted Software, and Defendant continues to use such copyrighted Software wrongfully and without authorization, permission, or license.  Defendant's infringing conduct is knowing, willful and intentional.

104.    SoftDent has suffered, and will continue to suffer (unless Defendant's conduct is enjoined by the Court), immediate, substantial and irreparable damage to its business reputation and goodwill, as well as losses in an amount not yet ascertainable, but which will be determined according to proof.  SoftDent has no adequate remedy at law that will compensate it fully for the

continuing and irreparable harm that it will suffer if the wrongful conduct of Defendant is not enjoined.

105.   SoftDent is entitled to injunctive relief pursuant to 17 U.S.C. § 502, including entry of an Order that Defendant, and those acting in concert with it, be preliminarily and thereafter permanently enjoined and restrained from any further copying or distribution of the Software without SoftDent's consent, from preparing derivative works based on any or all of the Software without SoftDent's consent and/or from engaging in any other act constituting unfair competition with SoftDent or constituting infringement of SoftDent's intellectual property.

106.   SoftDent is entitled to recovery of its damages and/or all profits made by Defendant from Defendant's wrongful acts, pursuant to 17 U.S.C. § 504.

107.   In the alternative, SoftDent is entitled to statutory damages pursuant to 17 U.S.C. § 504(c), in an enhanced amount as provided by 17 U.S.C. § 504(c)(2) due to Defendant's willful infringement.

108.   SoftDent is further entitled to recovery of their full costs including attorneys' fees incurred in connection with this matter, as provided by 17 U.S.C. § 505.

### SIXTH COUNT
### FOR A DECLARATION

109.   Plaintiffs repeats and reaver the averments contained in paragraphs 1 through 108 above as if set forth at length herein.

110.   On or about January 7, 2003, the Court issued a Decision and Judgment in which *inter alia*, the Court dismissed in its entirety Defendant's Eighth Counterclaim for a declaration that Defendant had the "continuing right" to provide "support, service, updates, upgrades and

certain electronic services derived from its exclusive right as a distributor and value added reseller as granted by [Plaintiffs] in the Agreement . . ."

111.    The Court held that Defendant was required "to immediately return [to the plaintiffs] any and all materials regarding the Products in any form whatsoever," as required in the Agreements.  (Decision at p. 9, *quoting* Section 13.3 of the Agreements).

112.    On or about February 21, 2003, the Court clarified its dismissal of Defendant's Eighth Counterclaim to the limited extent of holding that Defendant could provide technical support and service pertaining to the Software "provided, of course, . . . that relevant materials were returned [to Plaintiffs] and not used."  (Trans. at p. 11).

113.    Defendant has refused to return its copies of the Software to Plaintiffs on the erroneous ground that "title" to the Software has passed to Defendant and further has taken the position that it has the right to use the Software in providing "technical support and service" to third parties.

114.    Plaintiffs have objected to and disagreed with Defendant's right to use the Software in providing "technical support and service" to third parties.

115.    By reason of the foregoing, there is a concrete, present and justiciable controversy affecting the rights of Plaintiffs and Defendant on the issue of whether following termination of the Agreement and Defendant's rights thereunder, which occurred on December 31, 2002, Defendant has the right to continue to use the Software in providing "technical support and service" to third parties.

116.   The resolution of this controversy will enable the parties to conduct their business and affairs in an orderly manner, and will put to rest an existing dispute in a manner that will settle the duties and rights of the parties.

117.   There is no adequate remedy at law.

118.   Accordingly, Plaintiffs seek a declaratory judgment, pursuant to 28 U.S.C. § 2201, that following termination of the Agreement, which occurred on December 31, 2002, Defendant does not have the continuing right to use the Software in providing "technical support and service" to third parties.

**WHEREFORE**, Plaintiffs respectfully request that the Court:

(a)     grant Plaintiffs relief on the first count against Defendant as follows: a declaration pursuant to 28 U.S.C. § 2201, that (i) the Notice sent to Defendant operated to terminate the Agreement effective as of December 31, 2002; and (ii) that the nine-month Disposition Period provided for in the Notice is reasonable;

(b)     grant Plaintiffs relief on the second count against Defendant as follows: a declaration pursuant to 28 U.S.C. § 2201, that (i) the Notice sent to Defendant operated not to renew the Agreement for the ~~term~~calendar year commencing January 1, 2003; and (ii) that the nine-month Disposition Period provided for in the Notice is reasonable;

(c)     grant Plaintiffs relief on the third count against Defendant as follows: for recoupment of expenses under the Agreement including, without limitation, attorneys' fees, disbursements and other costs incurred by Plaintiffs in commencing the instant action and enforcing their rights under the Agreement, in an amount to be determined at trial; ~~and~~

24

(d)     grant Plaintiffs relief on the fourth count against Defendant as follows: for damages in excess of $1 million arising out of breach of the Agreement, the exact amount of which is to be determined at trial;

(e)     grant SoftDent relief on the fifth count against Defendant as follows:

(i)     as provided by 17 U.S.C. § 502, an Order preliminarily and thereafter permanently enjoining Defendant, and those acting in concert with it, from infringing the works protected under Certificates of Copyright Registration Nos. TX-2-817-208, TX-3-590-481, TX-3-849-100, TX-4-023-631, TX-4-745-797, TX-5-790-350 and TX-5-789-503, and/or any other works entitled to copyright protection owned by SoftDent, by copying or distributing those works without SoftDent's consent, by preparing derivative works based on any or all of those works without SoftDent's consent and/or by engaging in any other act constituting unfair competition with SoftDent or constituting infringement of SoftDent's intellectual property;

(ii)    as provided by 17 U.S.C. §§ 504 and 505, an Order awarding SoftDent, at its election, either actual or statutory damages against Defendant, together with recovery of SoftDent's reasonable attorneys' fees and full costs, for all claims asserted with respect to each of the works protected under Certificates of Copyright Registration Nos. TX-2-817-208, TX-3-590-481, TX-3-849-100, TX-4-023-631, TX-4-745-797, TX-5-790-350 and TX-5-

789-503, and/or any other works entitled to copyright protection owned by SoftDent;

(iii)    an Order awarding SoftDent an increased award of damages for those acts of willful infringement found to have been committed by Defendant involving the works protected under Certificates of Copyright Registration Nos. TX-2-817-208, TX-3-590-481, TX-3-849-100, TX-4-023-631, TX-4-745-797, TX-5-790-350 and TX-5-789-503 and/or any other works entitled to copyright protection owned by SoftDent; and

(iv)    an Order requiring Defendant to deliver up to the Court for destruction or return to SoftDent all works that infringe on SoftDent's copyrighted works; and

(f)    grant Plaintiffs relief on the sixth count against Defendant as follows: a declaration pursuant to 28 U.S.C. § 2201, that following termination of the Agreement, which occurred on December 31, 2002, Defendant does not have the continuing right to use the Software in providing "technical support and service" to third parties; and

(g)     (d) grant Plaintiffs such other relief as the Court may deem just and proper.

Dated: April ___, 2002  October 16, 2003

Respectfully submitted,

_____

_____
S. Scott Morrison (Bar No. 06540)

KATTEN MUCHIN ZAVIS ROSENMAN

1025 Thomas Jefferson Street, N.W.
East Lobby, Suite 700
Washington, DC 20007-5201
Telephone:  (202) 625-3624
Facsimile:  (202) 298-7570

and

By: _____/s/  Howard E. Cotton _____
Howard E. Cotton      (admitted *pro hac vice*)
Michael S. Gordon

_____KATTEN MUCHIN ZAVIS ROSENMAN

_____(admitted *pro hac vice*)
575 Madison Avenue
New York, New York 10022
Telephone:  (212) 940-8855
Facsimile:   (212) 894-5966

AttorneysCounsel for Plaintiffs
PracticeWorks, Inc. and SoftDent