*IN THE UNITED STATES DISTRICT COURT*
*FOR THE DISTRICT OF MARYLAND*

| | | |
|---|---|---|
| PRACTICEWORKS, INC., | ) | |
| 1765 The Exchange | ) | |
| Atlanta, Georgia 30339, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| SOFTDENT, LLC, | ) | |
| 311 International Circle, | ) | |
| Hunt Valley, Maryland 21030, | ) | |
| Baltimore County, | ) | |
| | ) | Civil Action No. |
| Plaintiffs/Counter-Defendants, | ) | CCB02CV1205 |
| | ) | |
| v. | ) | |
| | ) | |
| PROFESSIONAL SOFTWARE SOLUTIONS OF | ) | |
| ILLINOIS, INC., | ) | |
| 5155 West 111th Street, | ) | |
| Alsip, IL 60803, | ) | |
| | ) | |
| Defendant/Counter-Plaintiff. | ) | **DEMAND FOR JURY TRIAL** |

## ANSWER, AFFIRMATIVE DEFENSES AND FIRST AMENDED COUNTERCLAIMS

NOW COMES the Defendant Professional Software Solutions, Inc., (hereinafter "PSSI"), by and through its attorney, John M.G. Murphy, of Ober, Kaler, Grimes & Shriver, and Mark E. Wiemelt, of the Law Offices of Mark E. Wiemelt, P.C., and answers the First Amended Complaint of Plaintiffs PracticeWorks, Inc., (hereinafter "PracticeWorks") and Softdent, L.L.C., (hereinafter "Softdent") as follows:

**NATURE OF THE ACTION**

1.    Upon information and belief, Defendant PSSI admits the allegations set forth in paragraph 1.

2.    Defendant PSSI admits the allegations set forth in paragraph 2.  Further answering, Defendant PSSI states that the copy of the Agreement which is attached to the First Amended Complaint as Exhibit A speaks for itself.

3.    Defendant PSSI is without sufficient knowledge or information to form a belief as to the truth of the allegations set forth in paragraph 3.

4.    Defendant PSSI admits that the five contingencies which constitute "Defaults" under the Agreement have not occurred, but is without sufficient knowledge or information to form a belief as to whether the five contingencies are likely never to occur, and denies the remaining allegations set forth in paragraph 4.

5.    Defendant PSSI admits that Plaintiffs have attempted to not renew the Agreement with Defendant, but denies the remaining allegations set forth in Paragraph 5. Further answering, Defendant PSSI states that the copy of the Agreement which is attached to the First Amended Complaint as Exhibit A speaks for itself.

6.    Defendant PSSI admits that Plaintiff SoftDent transmitted to Defendant a letter dated April 8, 2002 stating that the Agreement was terminated, effective as of December 31, 2002, and would not be renewed for the term commencing January 1, 2003, but denies the effect of the letter and denies the remaining allegations set forth in paragraph 6.

7.    Defendant PSSI admits that it objects to and disagrees with Plaintiffs' right to terminate and not renew the Agreement.  Defendant objects to Plaintiffs' deceptive paraphrasing of the language of the Agreement by substituting the term "Software" for "Products" and denies that it has wrongfully refused to do anything required by the Agreement.  Further answering, Defendant notes that during a February 21, 2003 hearing, the Court clarified its January 7, 2003 Decision and Judgment to provide that even after

termination of the Agreement, Defendant may continue to provide technical support and service, provided that it doesn't improperly use Plaintiffs' materials. Thereafter, counsel for the parties agreed on page 14 of the transcript of the February 21, 2003 hearing that Defendant would "drop all the materials that have ever been given them by the plaintiffs, with the exception of the software that they've purchased, drop all that material off to [their attorneys] office pending this litigation." Defendant has done so and has further notified Plaintiffs that it has done so. Defendant denies the remaining allegations of paragraph 7. Further answering, Defendant notes that the shrink wrap license agreement which allegedly conditions the use of such copyrighted Software is not attached to the First Amended Complaint.

8.    Defendant PSSI admits that Plaintiffs seek a declaratory judgment, pursuant to 28 U.S.C. § 2201, but denies that Plaintiffs are entitled to such relief. Further answering, Defendant PSSI denies that the letter sent to Defendant on April 8, 2002 operated to terminate the Agreement effective as of December 31, 2002; and denies that nine months' notice of termination, as has been provided, is proper or constitutes reasonable notice.

9.    Defendant PSSI admits that Plaintiffs seek a declaratory judgment, pursuant to 28 U.S.C. § 2201, but denies that Plaintiffs are entitled to such relief. Further answering, Defendant PSSI denies that the letter sent to Defendant on April 8, 2002 operated not to renew the Agreement for the one-year term commencing January 1, 2003; and denies that nine months' notice of termination, as has been provided, is proper or constitutes reasonable notice.

10.    Defendant PSSI admits the allegations set forth in paragraph 10, but denies that Plaintiffs are entitled to such relief. Further answering, Defendant PSSI states that the copy of the Agreement which is attached to the First Amended Complaint as Exhibit A speaks for itself.

11.    Defendant PSSI admits the allegations set forth in paragraph 11, but denies that Plaintiffs are entitled to such relief.

12.     Defendant PSSI admits the allegations set forth in paragraph 12, but denies that Plaintiffs are entitled to such relief.

13.     Defendant PSSI admits the allegations set forth in paragraph 13, but denies that Plaintiffs are entitled to such relief.

## THE PARTIES

14.     Upon information and belief, Defendant PSSI admits the allegations set forth in paragraph 14.

15.     Upon information and belief, Defendant PSSI admits the allegations set forth in paragraph 15.

16.     Defendant PSSI admits the allegations set forth in paragraph 16.

## JURISDICTION AND VENUE

17.     Defendant PSSI admits that subject matter jurisdiction is proper.

18.     Defendant PSSI admits that venue is proper.

## FACTS COMMON TO ALL CLAIMS

19.     Defendant PSSI admits entering into an Agreement with PracticeWorks' predecessor-in-interest Professional Software Solutions, Inc. ("PSS Md."), a Maryland corporation, on or about January 1, 1993, but denies Plaintiffs' characterization of the Agreement.  Further answering, Defendant PSSI states that the copy of the Agreement which is attached to the First Amended Complaint as Exhibit A speaks for itself.

20.     Defendant PSSI is without sufficient knowledge or information to form a belief as to the truth of the allegations set forth in paragraph 20.

21.     Defendant PSSI is without sufficient knowledge or information to form a belief as to the truth of the allegations set forth in paragraph 21.

22.     Defendant PSSI is without sufficient knowledge or information to form a belief as to the truth of the allegations set forth in paragraph 22.

23.     Defendant PSSI is without sufficient knowledge or information to form a belief as to the truth of the allegations set forth in paragraph 23.

**The Terms of the Agreement**

24.     Defendant PSSI denies the allegations set forth in paragraph 24.  Further answering, Defendant PSSI states that the copy of the Agreement which is attached to the Complaint as Exhibit A speaks for itself.

25.     Defendant PSSI admits the allegations set forth in paragraph 25.

26.     Defendant admits that it purchased the Software from PSS Md. as alleged by Plaintiffs in their Complaint which was originally filed in this action.  Defendant PSSI denies the remaining allegations set forth in paragraph 26.  Further answering, Defendant PSSI states that the copy of the Agreement which is attached to the First Amended Complaint as Exhibit A speaks for itself.

27.     Defendant PSSI denies that the term of the Agreement was unspecified or indefinite.  Further answering, Defendant PSSI states that the copy of the Agreement which is attached to the Complaint as Exhibit A speaks for itself.

28.     Defendant PSSI denies the allegations set forth in paragraph 28.

29.     Defendant PSSI denies the allegations set forth in paragraph 29.

30.     Defendant PSSI denies that the cited terms of the Agreement use equivocal language.  Further answering, Defendant PSSI states that the copy of the Agreement which is attached to the First Amended Complaint as Exhibit A speaks for itself.

31.     Defendant PSSI denies the allegations set forth in paragraph 31.  Further answering, Defendant PSSI states that the copy of the Agreement which is attached to the First Amended Complaint as Exhibit A speaks for itself.

32.     Defendant PSSI admits that none of the Events of Default have occurred.  Defendant PSSI is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations set forth in paragraph 32.

33.     Defendant denies the allegations set forth in paragraph 33.

34.     Defendant PSSI denies the allegations set forth in paragraph 34.

35.     Defendant PSSI denies the allegations set forth in paragraph 35.

36.    Defendant PSSI denies the allegations set forth in paragraph 32.36.  Further answering, PSSI states that one of the purposes of the Agreement was to sell the software Products in the Territory to the "End-Users."  Ex.A ¶¶1.3, 3.1, 5.1, 5.2, 7.1, 10.2, 10.3, 10.5.  Further answering, PSSI states that Paragraph 2.5 of the Agreement provides that "'End-User' shall mean a customer or purchaser of Product(s)" and is not limited to dental offices.

37.    Defendant PSSI denies the allegations set forth in the first sentence of paragraph 37.  Further answering, PSSI denies that orders were filled only when a completed Purchase Registration Form had been used.  Further answering, Defendant PSSI states that the copy of the Agreement which is attached to the First Amended Complaint as Exhibit A speaks for itself.

38.    Defendant PSSI states that the copy of the Agreement which is attached to the First Amended Complaint as Exhibit A speaks for itself.

39.    Defendant PSSI states that the copy of the Agreement which is attached to the First Amended Complaint as Exhibit A speaks for itself.

40.    Defendant PSSI admits that "Products" are broadly defined in the Agreement.  Further answering, Defendant PSSI states that the copy of the Agreement which is attached to the First Amended Complaint as Exhibit A speaks for itself.

41.    Defendant PSSI states that the copy of the Agreement which is attached to the First Amended Complaint as Exhibit A speaks for itself.

### Plaintiffs' Termination and Non-Renewal of the Agreement

42.    Defendant PSSI is without sufficient knowledge or information to form a belief as to the truth of the allegations set forth in paragraph 42.

43.    Defendant PSSI admits that a copy of a letter dated April 8, 2002 and received by Defendant PSSI is attached to the First Amended Complaint as Exhibit B.  Further answering, Defendant PSSI states that the copy of the letter which is attached to the First Amended Complaint as Exhibit B speaks for itself.

44.    Defendant PSSI admits that it objects to and disagrees with Plaintiffs' right to terminate and not renew the Agreement.

45.    Defendant admits the allegations set forth in paragraph 45.

46.    Defendant denies the allegations set forth in paragraph 46.

47.    Defendant admits the allegations set forth in paragraph 47.

48.    Defendant PSSI states that the Decision and Judgment, as clarified by the Court during a February 21, 2003 hearing, speaks for itself.  Further answering, Defendant PSSI reserves all rights to appeal or otherwise challenge the Decision and Judgment as allowable by law.

49.    Defendant PSSI states that the Decision and Judgment, as clarified by the Court during a February 21, 2003 hearing, speaks for itself.  Further answering, Defendant PSSI reserves all rights to appeal or otherwise challenge the Decision and Judgment as allowable by law.

50.    Defendant PSSI states that the Decision and Judgment, as clarified by the Court during a February 21, 2003 hearing, speaks for itself.  Further answering, Defendant PSSI reserves all rights to appeal or otherwise challenge the Decision and Judgment as allowable by law.

51.    Defendant PSSI admits the allegations set forth in paragraph 51.  Further answering, PSSI notes that during the February 21, 2003 hearing, the Court clarified its January 7, 2003 Decision and Judgment to provide that even after termination of the Agreement, Defendant may continue to provide technical support and service, provided that it doesn't improperly use Plaintiffs' materials.  Thereafter, counsel for the parties agreed on page 14 of the transcript of the February 21, 2003 hearing that Defendant would "drop all the materials that have ever been given them by the plaintiffs, with the exception of the software that they've purchased, drop all that material off to [their attorneys] office pending this litigation."  Defendant has done so and has further notified Plaintiffs that it has

done so.  Further answering, Defendant PSSI reserves all rights to appeal or otherwise challenge the Decision and Judgment as allowable by law.

52.     Defendant PSSI has complied with the parties agreement on page 14 of the transcript of the February 21, 2003 hearing that Defendant would "drop all the materials that have ever been given them by the plaintiffs, with the exception of the software that they've purchased, drop all that material off to [their attorneys] office pending this litigation."  Defendant has further notified Plaintiffs that it has done so.  Further answering, Defendant PSSI reserves all rights to appeal or otherwise challenge the Decision and Judgment as allowable by law.  Defendant denies the remaining allegation set forth in paragraph 52.

53.     Defendant PSSI admits that Plaintiffs transmitted a letter to software customers in PSSI's Territory approximately two weeks after the January 7 Decision and Order.  Further answering, Defendant PSSI notes that the letter is not attached to the First Amended Complaint.  Further answering, PSSI states that the letter which is attached to hereto as Exhibit A speaks for itself.  Further answering, Defendant PSSI reserves all rights to appeal or otherwise challenge the Decision and Judgment as allowable by law.

54.     Defendant PSSI admits that it sent a letter to its customers.  Further answering, PSSI states that the letter was sent in response to the letter sent by Plaintiffs. Further answering, PSSI states that the copy of the letter which is attached to the First Amended Complaint as Exhibit C speaks for itself.  Further answering, Defendant PSSI reserves all rights to appeal or otherwise challenge the Decision and Judgment as allowable by law.

55.     Defendant PSSI admits the allegations set forth in paragraph 55.

56.     Defendant PSSI states that the transcript of the February 21, 2003 hearing speaks for itself.  Further answering, PSSI notes that in the February 21, 2003 hearing the Court clarified its January 7, 2003 Decision and Judgment to provide that even after termination of the Agreement, Defendant may continue to provide technical support and

service, provided that it doesn't improperly use Plaintiffs' materials.  Thereafter, counsel for the parties agreed on page 14 of the transcript of the February 21, 2003 hearing that Defendant would "drop all the materials that have ever been given them by the plaintiffs, with the exception of the software that they've purchased, drop all that material off to [their attorneys] office pending this litigation."  Defendant has done so and has further notified Plaintiffs that it has done so.  Further answering, Defendant PSSI reserves all rights to appeal or otherwise challenge the Decision and Judgment as allowable by law.

57.     Defendant PSSI admits the allegations set forth in paragraph 57.  Further answering, Defendant PSSI notes that the letter is not attached to the First Amended Complaint.  Further answering, PSSI states that a copy of the April 14, 2003 letter is attached to hereto as Exhibit B and it speaks for itself.  Further answering, Defendant DMA states that it responded to the April 14, 2003 letter by letter dated May 8, 2003, a copy of which is attached hereto as Exhibit C.  Further answering, Defendant PSSI has complied with the parties agreement on page 14 of the transcript of the February 21, 2003 hearing that Defendant would "drop all the materials that have ever been given them by the plaintiffs, with the exception of the software that they've purchased, drop all that material off to [their attorneys] office pending this litigation."  Defendant has further notified Plaintiffs that it has done so.  Further answering, Defendant PSSI reserves all rights to appeal or otherwise challenge the Decision and Judgment as allowable by law.

58.     Defendant PSSI has complied with the parties agreement on page 14 of the transcript of the February 21, 2003 hearing that Defendant would "drop all the materials that have ever been given them by the plaintiffs, with the exception of the software that they've purchased, drop all that material off to [their attorneys] office pending this litigation."  Defendant has further notified Plaintiffs that it has done so.  Defendant denies the remaining allegations set forth in paragraph 58.  Further answering, Defendant PSSI states that it is entitled to use copies of all software which it lawfully owns and/or for which it has a license to provide "technical support and service" to third parties.  Further

answering, Defendant PSSI reserves all rights to appeal or otherwise challenge the Decision and Judgment as allowable by law.

## <u>FIRST COUNT FOR A DECLARATION</u>

59.    Defendant PSSI realleges and incorporates by reference as if copied herein verbatim its answers to paragraphs 1 through 58 in answer to the allegations of paragraph 59.

60.    Defendant PSSI denies the allegations set forth in paragraph 60.

61.    Defendant PSSI admits that none of the Events of Default have occurred. Defendant PSSI is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations set forth in paragraph 61.

62.    Defendant PSSI admits the allegations set forth in paragraph 62.

63.    Defendant PSSI denies the allegations set forth in paragraph 63.

64.    Defendant PSSI admits that a copy of a letter dated April 8, 2002 and received by Defendant PSSI is attached to the First Amended Complaint as Exhibit B. Further answering, Defendant PSSI states that the copy of the Agreement which is attached to the First Amended Complaint as Exhibit B speaks for itself.

65.    Defendant PSSI admits that SoftDent's Notice ostensibly provided a Disposition Period of nine months.  Defendant PSSI denies that this Disposition Period is reasonable or proper.

66.    Defendant PSSI admits that it objects to and disagrees with Plaintiffs' right to terminate and not renew the Agreement.

67.    Defendant PSSI admits the allegations set forth in paragraph 67.

68.    Defendant PSSI admits the allegations set forth in paragraph 68.

69.    Defendant PSSI admits the allegations set forth in paragraph 69.

70.    Defendant PSSI admits that Plaintiffs seek a declaratory judgment, pursuant to 28 U.S.C. § 2201, but denies that Plaintiffs are entitled to such relief.  Further answering, Defendant PSSI denies that the letter sent to Defendant on April 8, 2002 operated to terminate the Agreement effective as of December 31, 2002; and denies that nine month Disposition Period ostensibly provided for in the letter is reasonable or proper.

## SECOND COUNT FOR A DECLARATION

71.    Defendant PSSI realleges and incorporates by reference as if copied herein verbatim its answers to paragraphs 1 through 70 in answer to the allegations of paragraph 71.

72.    Defendant PSSI denies the allegations set forth in paragraph 72.

73.    Defendant PSSI denies the allegations set forth in paragraph 73.

74.    Defendant PSSI admits that a copy of a letter dated April 8, 2002 and received by Defendant PSSI is attached to the First Amended Complaint as Exhibit B. Further answering, Defendant PSSI states that the copy of the letter which is attached to the First Amended Complaint as Exhibit B speaks for itself.

75.    Defendant PSSI admits that SoftDent's Notice ostensibly provided a Disposition Period of nine months.  Defendant PSSI denies that this Disposition Period is reasonable or proper.

76.    Defendant PSSI admits that it objects to and disagrees with Plaintiffs' right to terminate and not renew the Agreement.

77.    Defendant PSSI admits the allegations set forth in paragraph 77.

78.    Defendant PSSI admits the allegations set forth in paragraph 78.

79.    Defendant PSSI admits the allegations set forth in paragraph 79.

80.    Defendant PSSI admits that Plaintiffs seek a declaratory judgment, pursuant to 28 U.S.C. § 2201, but denies that Plaintiffs are entitled to such relief.  Further answering, Defendant PSSI denies that the letter sent to Defendant on April 8, 2002 operated not to renew the Agreement for the term commencing January 1, 2003; and denies that nine month Disposition Period ostensibly provided for in the letter is reasonable or proper.


## THIRD COUNT FOR ATTORNEYS FEES

81.    Defendant PSSI realleges and incorporates by reference as if copied herein verbatim its answers to paragraphs 1 through 80 in answer to the allegations of paragraph 81.

82.    Defendant PSSI admits the allegations set forth in paragraph 82.

83.    Defendant PSSI denies the allegations set forth in paragraph 83.

84.    Defendant PSSI denies the allegations set forth in paragraph 84.

## FOURTH COUNT
## FOR BREACH OF CONTRACT

85.    Defendant PSSI realleges and incorporates by reference as if copied herein verbatim its answers to paragraphs 1 through 84 in answer to the allegations of paragraph 85.

86.    Defendant PSSI admits that the Fourth Count of the First Amended Complaint purports to allege a cause of action for breach of contract arising under the common law of Maryland, but denies that Plaintiffs cause of action has any basis in fact or

law, and denies that Plaintiffs are entitled to the relief they seek.

87.     Defendant PSSI admits the allegations set forth in paragraph 87.

88.     Defendant PSSI denies the allegations set forth in paragraph 88.

89.     Defendant PSSI denies the allegations set forth in paragraph 89.  Further
answering, Defendant PSSI reserves all rights to appeal or otherwise challenge the
Decision and Judgment as allowable by law.

90.     Defendant PSSI denies the allegations set forth in paragraph 90.  Further
answering, Defendant PSSI reserves all rights to appeal or otherwise challenge the Court's
January 7 Decision and Judgment as allowable by law.

91.     Defendant PSSI denies the allegations set forth in paragraph 91.

92.     Defendant PSSI denies the allegations set forth in paragraph 92.

## FIFTH COUNT

## FOR COPYRIGHT INFRINGEMENT

93.     Defendant PSSI realleges and incorporates by reference as if copied herein
verbatim its answers to paragraphs 1 through 92 in answer to the allegations of paragraph
93.

94.     Defendant PSSI admits that the Fifth Count of the First Amended Complaint
purports to allege a cause of action breach of contract arising under 17 U.S.C. § 101 *et seq.*,
but denies that Plaintiffs cause of action has any basis in fact or law, and denies that
Plaintiffs are entitled to the relief they seek.

95.     Defendant PSSI is without sufficient knowledge or information to form a
belief as to the truth of the allegations set forth in paragraph 95.

96.     Defendant PSSI is without sufficient knowledge or information to form a

belief as to the truth of the allegations set forth in paragraph 96.

97.    Defendant PSSI is without sufficient knowledge or information to form a belief as to the truth of the allegations set forth in paragraph 97.

98.    Defendant PSSI states that the Agreement speaks for itself.

99.    Defendant PSSI denies the allegations set forth in paragraph 99.

100.    Defendant PSSI admits the allegations set forth in paragraph 100.

101.    Defendant PSSI denies the allegations set forth in paragraph 101. Further answering, Defendant PSSI reserves all rights to appeal or otherwise challenge the Decision and Judgment as allowable by law.

102.    Defendant PSSI denies the allegations set forth in paragraph 102. Further answering, Defendant PSSI reserves all rights to appeal or otherwise challenge the Decision and Judgment as allowable by law.

103.    Defendant PSSI denies the allegations set forth in paragraph 103. Further answering, Defendant PSSI reserves all rights to appeal or otherwise challenge the Decision and Judgment as allowable by law.

104.    Defendant PSSI denies the allegations set forth in paragraph 104. Further answering, Defendant PSSI reserves all rights to appeal or otherwise challenge the Decision and Judgment as allowable by law.

105.    Defendant PSSI denies the allegations set forth in paragraph 105. Further answering, Defendant PSSI reserves all rights to appeal or otherwise challenge the Decision and Judgment as allowable by law.

106.    Defendant PSSI denies the allegations set forth in paragraph 106.

107.    Defendant PSSI denies the allegations set forth in paragraph 107.

108.    Defendant PSSI denies the allegations set forth in paragraph 108.

## SIXTH COUNT

## FOR A DECLARATION

109.    Defendant PSSI realleges and incorporates by reference as if copied herein verbatim its answers to paragraphs 1 through 108 in answer to the allegations of paragraph 109.

110.    Defendant PSSI states that the Decision and Judgment, as clarified by the Court during a February 21, 2003 hearing, speaks for itself.  Further answering, Defendant PSSI reserves all rights to appeal or otherwise challenge the Decision and Judgment as allowable by law.

111.    Defendant PSSI states that the Decision and Judgment, as clarified by the Court during a February 21, 2003 hearing, speaks for itself.  Further answering, Defendant PSSI reserves all rights to appeal or otherwise challenge the Decision and Judgment as allowable by law.

112.    Defendant PSSI states that the transcript of the February 21, 2003 hearing speaks for itself.  Further answering, Defendant PSSI reserves all rights to appeal or otherwise challenge the Decision and Judgment as allowable by law.

113.    Defendant PSSI admits that it has taken the position that it has the right to use copies of all software which it lawfully owns and/or for which it has a license to provide "technical support and service" to third parties.  Further answering, Defendant PSSI states that it has complied with the parties agreement on page 14 of the transcript of the February 21, 2003 hearing that Defendant would "drop all the materials that have ever been given them by the plaintiffs, with the exception of the software that they've

purchased, drop all that material off to [their attorneys] office pending this litigation."
Defendant has further notified Plaintiffs that it has done so.  Defendant denies the
remaining allegations set forth in paragraph 113.  Further answering, Defendant PSSI
reserves all rights to appeal or otherwise challenge the Decision and Judgment as allowable
by law.

       114.    Defendant PSSI admits the allegations set forth in paragraph 114.

       115.    Defendant PSSI admits the allegations set forth in paragraph 115

       116.    Defendant PSSI admits the allegations set forth in paragraph 116.

       117.    Defendant PSSI admits the allegations set forth in paragraph 117.

       118.    Defendant PSSI admits that Plaintiffs seek a declaratory judgment, pursuant
to 28 U.S.C. § 2201, but denies that Plaintiffs are entitled to such relief.  Further answering,
Defendant PSSI states that it has the right to use copies of all software which it lawfully
owns and/or for which it has a license to provide "technical support and service" to third
parties, even following termination of the Agreement. Further answering, Defendant PSSI
reserves all rights to appeal or otherwise challenge the Decision and Judgment as allowable
by law.

## PRAYER FOR RELIEF

      Defendants have not violated any statutes or any common law alleged in the First
Amended Complaint.  Therefore, Plaintiff is entitled to no relief and  no judgment in favor
of Plaintiff is necessary.

## AFFIRMATIVE DEFENSES

1.      Count One fails to state a cause of action against Defendant PSSI upon which relief can be granted.

2.      Count Two fails to state a cause of action against Defendant PSSI upon which relief can be granted.

3.      Count Three fails to state a cause of action against Defendant PSSI upon which relief can be granted.

4.      Plaintiffs Count Four fails to state a cause of action against Defendant PSSI upon which relief can be granted

5.      Count Five fails to state a cause of action against Defendant PSSI upon which relief can be granted

6.      Count Six fails to state a cause of action against Defendant PSSI upon which relief can be granted

7.      Plaintiffs' have failed to mitigate any purported damages or attorneys fees.

8.      Plaintiffs One or more of Plaintiffs' claims are barred by the doctrine of waiver.

9.      PlantiffsOne or more of Plaintiffs' claims are barred by the doctrine of estoppel.

10.     One or more of Plantiffs' claims are barred by the doctrine of laches.

11.     One or more of Plantiffs' claims are barred by the doctrine of acquiescence.

12.     Plantiffs' copyright infringement claim is barred by the doctrine of fair use.

13.     Defendant PSSI does not infringe any of Plaintiff's copyrights because it lawfully owns and/or for which it has a license to the software.

14.     Plaintiffs' copyright infringement claim is barred by the first sale doctrine.

15.     One or more of Plaintiffs' claims arising from their alleged copyrights are not for lawful rights such as may be granted by the provisions of the Federal Copyright Act, 17 U.S.C. § 501, because their alleged works lack originality.

16.     Plaintiffs misrepresented the nature and extent of their protectable authorship, if any, in its applications for United States copyrights, and Plaintiffs' copyright infringement claim is barred under the doctrine of unclean hands.

17.     Plaintiffs are not entitled to assert infringement because one or more of the copyright registrations, as issued, is unenforceable due to inequitable conduct, namely the failure of Plaintiffs to inform the Copyright Office of requisite information in their purported applications, including accurate information regarding an identification of preexisting work or works that the alleged works are based on or incorporate and an accurate statement of the material that has been added to the alleged work and in which the copyright is claimed, if any.

18.     Plaintiffs misrepresented the nature and extent of their rights, if any, under the provisions of the Copyright Laws, and Plaintiffs' claims are barred under the doctrine of unclean hands.

19.     Plaintiffs misrepresented the nature and extent of their rights, if any, under the provisions of the Copyright Laws, and Plaintiffs' claims are barred under the doctrine of copyright misuse.

20.     Plaintiffs copyright infringement claims are barred due to their bad faith enforcement of intellectual property rights.

21.     Plaintiffs are not entitled to statutory damages or attorneys' fees because

they did not comply with the requirements of the Copyright Laws.

22.    One or more of Plaintiffs copyright registrations are invalid for failure to comply with the requirements of the Copyright Laws.

23.    Plaintiffs' breach of contract claim is barred because Plaintiffs' alleged confidential or proprietary information is not confidential or proprietary information.

WHEREFORE, Defendant request that Plaintiffs' First Amended Complaint be dismissed in its entirety, with prejudice, that Defendant be granted its costs and reasonable attorney's fees incurred in connection with its defense of the First Amended Complaint, and that Defendant be awarded such relief as the Court deems appropriate, including attorneys' fees and costs.

## JURY DEMAND

Defendant hereby demands a trial by jury in the above-captioned action.

## DEFENDANT PROFESSIONAL SOFTWARE SOLUTIONS OF ILLINOIS, INC.'S FIRST AMENDED COUNTERCLAIMS

NOW COMES the Counter-Plaintiff Professional Software Solutions of Illinois, Inc., (hereinafter "PSSI"), by and through its attorneys, John M.G. Murphy, of Ober, Kaler, Grimes & Shriver, and Mark E. Wiemelt, of the Law Offices of Mark E. Wiemelt, P.C., and alleges its first amended counterclaims against Counter-Defendants PracticeWorks, Inc., and Softdent, L.L.C., (collectively, "Counter-Defendants") as follows:

## NATURE OF THE ACTION

1.    Counter-Plaintiff PSSI is an Illinois corporation.

2.    On or about January 1, 1993, Counter-Plaintiff entered into a Dealer/Resellers Agreement (the "Agreement") with Counter-Defendant PracticeWorks' predecessor-in-interest Professional Software Solutions, Inc., a Maryland Corporation, providing for, inter alia, Counter-Plaintiff's rights as an exclusive distributor and value added reseller of dental management computer software known as the "SoftDent Dental Management System" (the "Software") and related products, during the term of the Agreement, which were developed, manufactured or distributed by PSS, in specified zip code ranges located in and around Illinois, a copy of which is attached to the First Amended Complaint in this matter as Exhibit A.

3.    On April 8, 2002, Counter-Defendants transmitted to Counter-Plaintiff a letter purportedly terminating the Agreement effective as of December 31, 2002, and further purportedly operating to provide for non-renewal of the Agreement for the term commencing January 1, 2003, a copy of which is attached to the First Amended Complaint in this matter as Exhibit B.

4.    Counter-Plaintiff objects to and disagrees with Counter-Defendants' assertion that the letter of April 8, 2002, effectuated a termination or non-renewal of the Agreement.

5.    Accordingly, Counter-Plaintiff seeks a declaratory judgment, pursuant to 28 U.S.C. § 2201, that the letter sent to Counter-Plaintiff on April 8, 2002, did not operate to terminate the Agreement effective as of December 31, 2002; and that the Agreement is one consisting of discrete year-to-year terms automatically renewable in the event that Counter-Plaintiff meets its quota of purchases as set forth in the Agreement, and as such, is not "terminable at will" or upon reasonable notice.

6.    In the alternative, Counter-Plaintiff seeks a declaratory judgment pursuant to 28 U.S.C. § 2201 that the letter sent to Counter-Plaintiff on April 8, 2002, did not operate as a non-renewal of the Agreement effective as of January 1, 2003; and that nine months' notice of termination does not constitute reasonable notice.

7.      In the alternative, Counter-Plaintiff seeks a declaratory judgment pursuant to 28 U.S.C. § 2201 that the letter sent to Counter-Plaintiff on April 8, 2002, operated as an anticipatory breach of the Agreement by Counter-Defendants to grant Counter-Plaintiff exclusivity in its defined sales territory so long as Counter-Plaintiff meets its quota of purchases set forth in the Agreement.

8.      In the alternative, Counter-Plaintiff seeks a declaratory judgment that terms of the duration of the Agreement are preempted by Federal Copyright Law, 17 U.S.C. §§ 203(a) and 302(c).

9.      In addition, Counter-Plaintiff alleges that Counter-Defendants made disparaging, false, inaccurate and/or misleading representations in violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/1-7(1965), namely § 2(8), a deceptive act or practice in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1-12 (1961), and unfair competition and trade disparagement under the common law of Illinois..

10.     Counter-Plaintiff also alleges that Counter-Defendants breached express terms of the Agreement, including the implied covenant of good faith and fair dealing, thereby entitling Counter-Plaintiff to compensatory damages.

11.     Counter-Plaintiff also seeks a declaratory judgment, pursuant to 28 U.S.C. § 2201 that Counter-Plaintiff can continue to provide technical support and service of Counter-Defendants Products to customers pending this litigation or after termination of the Agreement by Counter-Defendant.

12.     Counter-Plaintiff also alleges that Counter-Defendants violated Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) by publishing false, inaccurate and/or misleading representations related to the services of Counter-Plaintiff to third parties.

13.     Additionally, Counter-Plaintiff seeks to recoup under the express terms of the Agreement its expenses including, without limitation, attorneys' fees, disbursements

and other costs incurred by Counter-Plaintiff in commencing the instant action and in enforcing its rights under the Agreement.

14.     Counter-Plaintiff also alleges that Counter-Defendants tortiously interfered with Counter-Plaintiff's contracts with Counter-Plaintiff's customers.

15.     Counter-Plaintiff also alleges that Counter-Defendants tortiously interfered with Counter-Plaintiff's prospective economic advantage with respect to Counter-Plaintiff's prospective customers.

16.     Counter-Plaintiff seeks an accounting.

17.     Counter-Plaintiff also alleges that Counter-Defendants violated the Antitrust Laws.


## THE PARTIES

18.     Counter-Plaintiff PSSI is a corporation organized under the laws of the State of Illinois with its principal place of business in Illinois.

19.     Upon information and belief, Counter-Defendant PracticeWorks is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in the State of Georgia.

20.     Upon information and belief, Counter-Defendant SoftDent, a wholly-owned subsidiary of Counter-Defendant Practice-Works, is a limited liability corporation organized and existing under the laws of the State of Delaware, with its principal place of business in the State of Maryland.


## JURISDICTION AND VENUE

21.     The Maryland District Court has jurisdiction over this action as a counterclaim and pursuant to: (i) 28 U.S.C. §§ 1332(a)(2) and 1332(c), in that Counter-Plaintiff PSSI is a citizen of the State of Illinois, Counter-Defendant PracticeWorks is a

citizen of the State of Georgia, and Counter-Defendant SoftDent is a citizen of the State of

Maryland and furthermore, the amount in controversy, exclusive of interest and costs,

exceeds the sum or value of $75,000.00, from the perspective of either Counter-Plaintiff or

Counter-Defendants; and (ii) 28 U.S.C. §1338(a) (arising under Copyright Laws).

22.    Upon information and belief, Counter-Defendants transact business within

the State of Maryland and specifically within this judicial district.

23.    Venue is proper in the Judicial District of the District of Maryland as a

counterclaim and under 28 U.S.C. § 1391 (b) because a substantial part of the events giving

rise to Counter-Plaintiff's claims occurred within this jurisdiction, and Counter-Defendants

are subject to personal jurisdiction in the District of Maryland.

## FACTS COMMON TO ALL COUNTERCLAIMS

24.    On or about January 1, 1993, Counter-Plaintiff executed the Agreement

thereby entering into a contractual business relationship with Counter-Defendant

PracticeWorks' predecessor-in-interest Professional Software Solutions, Inc. ("PSS"), a

Maryland Corporation, providing for, inter alia, Counter-Plaintiff's exclusive rights as a

distributor and value added reseller of the Software, and related products, during the term

of the Agreement, which were developed, manufactured or distributed by PSS, in specified

zip code ranges located in and around Illinois.

25.    The Agreement provided that Counter-Plaintiff's exclusive rights as a

distributor and value added reseller of the Software and related products shall continue

during the term of the Agreement and all renewals thereof for so long as Counter-Plaintiff

purchases from PSS an average of fifty Products per year.

26.    The Agreement further acknowledged that Counter-Plaintiff, in executing

the Agreement, is relying on the exclusive right as a distributor and value added reseller of

the Software and related products in the specified zip code ranges, and is expending

significant funds (and foregoing other opportunities) to fully develop and maximize the economic viability of the defined territory for the benefit of Counter-Plaintiff and PSS.

27.    The Agreement provided that title to the products shall pass from PSS to PSSI after delivery of such Products.

28.    The Agreement further provided that PSS reserves the right to revoke Counter-Plaintiff's exclusive right as a distributor and value added reseller of the Software and related products in the defined territory if Counter-Plaintiff failed to maintain the purchase quota of fifty Products per year on average.

29.    The Agreement enumerates five events of default (the "Events of Default"), each of which "w[ould] permit the aggrieved party to terminate [the] Agreement" as follows:

11.1    An affirmative act of insolvency by either Dealer or PSS or the filing by Dealer or PSS, as the case may be, of a petition under any bankruptcy, reorganization, insolvency, or moratoria law, or any law for the relief of, or relating to, debtors;

11.2    The filing of any involuntary petition under any bankruptcy statute against Dealer or PSS or the appointment of any receiver or trustee to take possession of property of Dealer or PSS, as the case may be, unless such petition or appointment is set aside or withdrawn or ceases to be in effect within sixty (60) days of the date of such filing or appointment;

11.3    A final non-appealable judgment of a court with competent jurisdiction or the final non-appealable decision of a regulatory officer or agency that results in permanent suspension of any permit or license, possession of which is  prerequisite to operation of Dealer's or PSS's business under applicable law;

11.4    Failure by the Dealer to make any and all payments within sixty (60) days after written notice of a delinquency is received by the Dealer, when, and if, it is determined that the Dealer's account is past due, provided, however, if such delinquency is being contested in good faith by Dealer, then such period shall be deemed extended for a reasonable period of time until such matter can be resolved; or

11.5    If the Dealer is adjudged to have violated the copyright of the software or accompanied documentation by making unauthorized duplicates of same, this Agreement shall be automatically terminated immediately.  In addition, the Dealer will be subject to any and all applicable fines and penalties under the provisions of the Federal Copyright Laws.

30.    The Agreement provides that it "will come into force on January, 1993, for an initial period of one (1) year and shall automatically renew thereafter for successive (1) year periods and is subject to earlier termination only as hereinabove provided.

31.    The Agreement provides for termination only if one of the five contingencies which are the Events of Default are met, or alternatively, if Counter-Plaintiff fails to meet its purchase quota of an average of fifty Products per year.

32.    On April 8, 2002, Counter-Defendants transmitted to Counter-Plaintiff a letter that the Agreement was purportedly terminated, effective as of December 31, 2002, and would not be renewed for the term commencing January 1, 2003.

33.    To date, none of the five contingencies which constitute "Defaults" under the Agreement, see infra, have occurred.

34.    To date, Counter-Plaintiff has met its average purchase quota for all years in which it has been a party to the Agreement.

35.    Counter-Plaintiff objects to and disagrees with Counter-Defendants' attempted termination of the Agreement and their attempted non-renewal of same.

36.    Upon information and belief, Counter-Defendants have directed one or more communications offering the SoftDent software and related products for direct sale to various SoftDent customers and/or prospective customers in PSSI's exclusive geographical region.

37.    Counter-Plaintiff purchased SoftDent software from Counter-Defendants and their predecessors-in-interest.

38.    The sales of SoftDent software by Counter-Defendants and their predecessors-in-interest to Counter-Defendant constituted sales.

39.    The sales of SoftDent software by Counter-Defendants and their predecessors-in-interest to End-Users constituted and continues to constitute sales.

40.    The sales of SoftDent software by Counter-Plaintiff to End-Users constituted sales.

41.    Upon information and belief, Counter-Defendants have contacted customers of Counter-Plaintiff knowing that they were under contract with Counter-Plaintiff and recommended that said customers cease using Counter-Plaintiff's technical support and service under the terms of the existing contracts, demand a full or partial refund of the contract price for said technical support and service, and enter into contracts with Counter-Defendants for technical support and service.

42.    Upon information and belief, Counter-Defendants have expressly asserted to third parties, including customers of Counter-Plaintiff, that a Judgment was entered against Counter-Plaintiff and in favor of Counter-Defendant in this action, requiring Counter-Plaintiff to pay Counter-Defendant at least $500,000.00.

43.    Upon information and belief, Counter-Defendants have expressly asserted to third parties, including customers of Counter-Plaintiff, that Counter-Plaintiff is going out of business and/or bankrupt.

44.    Counter-Defendants have until recently sold its software without requiring that end-user's purchase technical support and services from it.  Counter-Plaintiff has also sold Counter-Defendants' software without providing technical support and services.

45.    Counter-Plaintiffs have also provided technical support and services for Counter-Defendants' software separate from any software sales.

46.    Using the Counter-Defendants's software without technical support and service renders the software useless to most end-users.

47.    Counter-Defendants have recently begun to sell their software to end-users only if they agree to accept technical support and services from Counter-Defendants.  Upon information and belief, Counter-Defendants' contract for sales of software assumes the purchase of technical support and services from Counter-Defendants.

48.    Counter-Defendants further expressly allege to end-user customers and potential end-user customers that Counter-Plaintiff is no longer able to provide technical support and services for Plaintiff's software.

49.    A number of Counter-Plaintiff's customers have inquired of Counter-Plaintiff whether they could purchase software from Counter-Defendants and technical support and services from Counter-Plaintiff.

50.    Counter-Plaintiff has been and continues to be ready, willing, and able to provide technical support and services for Counter-Defendants' software.

## COUNT I FOR A DECLARATION

51.    Counter-Plaintiff repeats and reavers the averments contained in paragraphs 1 though 50 above as if set forth at length herein.

52.    By expressly providing for "automatic" renewal for "successive" periods of one year each, the termination of which is contingent only upon the occurrence of any of the five conditions of Default or failure to meet its sales quota, the Agreement clearly and unambiguously provides that the power to terminate the same is a conditional power.

53.    Construction of the Agreement as "terminable at will" would defeat the purpose of the clearly defined conditions upon which the Agreement may be terminated, and as such, the purpose of defining such conditions would be defeated and rendered meaningless.

54.    There exists no language in the Agreement that allows Counter-Defendants to refuse to renew the Agreement without good cause; the parties clearly contemplated a continuing business relationship.

55.    That Counter-Defendants put forth the effort to define six particular circumstances for termination precludes them from arguing that they can terminate the Agreement with or without cause so long as reasonable notice is given.

56.    By notice dated April 8, 2002, Counter-Defendant SoftDent attempted to terminate its Agreement with Counter-Plaintiff, effective as of December 31, 2002.

57.    Counter-Plaintiff objects to and disagrees with the assertion that Counter-Defendants have a right to terminate the Agreement.

58.    By reason of the foregoing, there is a concrete, present and justiciable controversy affecting the rights of Counter-Plaintiff and Counter-Defendants on the issue of whether the Agreement is terminable and has been effectively terminated.

59.    The resolution of this controversy will enable the parties to conduct their business and affairs in an orderly manner, and will put to rest an existing dispute in a manner that will settle the rights and duties of the parties

60.    There is no adequate remedy at law.

61.    Accordingly, Counter-Plaintiff seeks a declaratory judgment, pursuant to 28 U.S.C. § 2201, that (i) the Agreement is not "terminable at will" or terminable upon reasonable notice, but rather, terminable only upon the occurrence of one or more specific conditions detailed in the Agreement; and (ii) the notice dated April 8, 2002 does not serve to effectuate termination as if set forth at length herein.

## COUNT II FOR A DECLARATION

62.    Counter-Plaintiff repeats and reavers the averments contained in paragraphs 1 through 61 above as if set forth at length herein.

63.    In addition to making sales of Counter-Defendants' products, including distributing the products and acting as a value added reseller, and initiating and developing ongoing business relationships with end-users of Counter-Defendants' software and related products, Counter-Plaintiff has furnished additional consideration in reliance upon the continuing business relationship between it and Counter-Defendants; as such, Counter-Defendants are not at liberty to terminate the Agreement at will.

64.    By letter dated April 8, 2002, Counter-Defendant SoftDent attempted to terminate its Agreement with Counter-Plaintiff, effective as of December 31, 2002.

65.    Counter-Plaintiff's substantial expenditures of time and money during the previous nine years, in reliance on the continuing business relationship with Counter-Defendants, necessitates that more than nine months' notice be given where Counter-Defendants wish to terminate the Agreement without good cause and absent any of the conditions precedent for termination as defined in the Agreement.

66.    By reason thereof, nine months does not constitute "reasonable" notice with which to terminate the Agreement.

67.    Counter-Plaintiff objects to and disagrees with Counter-Defendant's assertion that nine months is a reasonable Disposition Period.

68.    By reason of the foregoing, there is a concrete, present and justiciable controversy affecting the rights of the Counter-Plaintiff and Counter-Defendants on the issue of whether nine months is reasonable notice with which to terminate the Agreement.

69.    The resolution of this controversy will enable the parties to conduct their business and affairs in an orderly manner, and will put to rest an existing dispute in a manner that will settle the duties and rights of the parties.

70.    There is no adequate remedy at law.

71.    Accordingly, Counter-Plaintiff seeks a declaratory judgment, pursuant to 28 U.S.C. § 2201, that where the parties have engaged in a business relationship for over nine

years, a Disposition Period of nine months does not constitute reasonable notice of termination of the Agreement.

## COUNT III FOR A DECLARATION

72.    Counter-Plaintiff repeats and reavers the averments contained in paragraphs 1 through 71 above as if set forth at length herein.

73.    The terms of the Agreement speaking to its duration are determinable.

74.    The Agreement specifies that Counter-Plaintiff has "the exclusive right to sell the Products" in a defined zip-code range, and further, that "[s]uch exclusivity shall continue during the term of this Agreement and all renewals thereof for so long as Dealer's purchases from PSS average fifty (50) programs per year."  Compl. Ex. A at ¶ 3.1.

75.    Furthermore, the Agreement provides that Counter-Plaintiff, in executing the Agreement, "is relying on the exclusive right to distribute the Products in the Territory and is expending significant funds (and foregoing other opportunities) to fully develop and maximize the economic viability of the Territory for the benefit of Dealer and PSS." Compl. Ex. A at ¶ 3.1.

76.    By letter dated April 8, 2002, Counter-Defendant SoftDent attempted to terminate its Agreement with Counter-Plaintiff, effective as of December 31, 2002, thereby revoking Counter-Plaintiffs exclusivity in its defined sales territory, despite meeting its average sales quota.

77.    Counter-Plaintiff objects to and disagrees with Counter-Defendants' assertion that it has a right to terminate the Agreement, thereby revoking Counter-Plaintiff's exclusivity in its sales region, as well as nullifying the goodwill with its clients which it has expended significant resources in developing.

78.    The letter of April 8, 2002, is an anticipatory breach of the Agreement by Counter-Defendants.

79.    Such anticipatory breach of the Agreement has caused and threatens further to cause injury to Counter-Plaintiff, including litigation costs and attorneys' fees.  Such acts likely will occur, and continue to occur, unless enjoined by this Court.

80.    Through its communications with Counter-Plaintiff and customers located within Counter-Plaintiff's exclusive distribution and value added reselling geographical area, Counter-Defendants have created a real and reasonable apprehension that Counter-Plaintiff will suffer substantial hardships if Counter-Defendants are permitted to offer and sell the Software and related products directly within PSSI's exclusive territory.

81.    There is a justiciable controversy between the parties concerning Counter-Defendants' liability for anticipatory breach of the Agreement and Counter-Plaintiff's right to demand continued exclusivity as a distributor and value added reseller of the Software and related products within its defined geographical area.

82.    There is no adequate remedy at law.

83.    Accordingly, Counter-Plaintiff seeks that Counter-Defendants be enjoined preliminarily and permanently from improperly contacting or soliciting any customer or potential customer of SoftDent Software or related products located within Counter-Plaintiff's geographical area of exclusivity, including directly offering the Software, related products, and related support, service, updates, upgrades and electronic services pertaining to the Software and related products to such customers or potential customers.

## COUNT IV FOR A DECLARATION

84.    Counter-Plaintiff repeats and reavers the averments contained in paragraphs 1 through 83 above as if set forth at length herein.

85.    The Agreement contains an exclusive license to distribute software protected under federal copyright law.

86.    Federal copyright law preempts state law.

87.     Licensing agreements such as the Agreement in question are terminable at the will of the author only during a five year period beginning at the end of thirty-five years from the date of execution of the license.

88.     Thirty-five years have not yet passed from the date of the execution of the license to Counter-Plaintiff by Counter-Defendants; as such, the Notice dated April 8, 2002, by Counter-Defendants did not serve to terminate the Agreement.

89.     Counter-Plaintiff objects to and disagrees with the assertion that Counter-Defendants have a right to terminate the Agreement.

90.     By reason of the foregoing, there is a concrete, present and justiciable controversy affecting the rights of Counter-Plaintiff and Counter-Defendants on the issue of whether the Agreement is terminable and has been effectively terminated.

91.     The resolution of this controversy will enable the parties to conduct their business affairs in an orderly manner, and will put to rest an existing dispute in a manner that will settle the rights and duties of the parties.

92.     There is no adequate remedy at law.

93.     Accordingly, Counter-Plaintiff seeks a declaratory judgment, pursuant to 28 U.S.C. § 2201 and 17 U.S.C. §§ 203(a) and 302(c) that (i) the Agreement is not "terminable at will," but rather, terminable only at the will of the author during a five year period beginning at the end of thirty-five years from the date of execution of the Agreement, unless terminated as expressly set forth in the Agreement; and (ii) the notice dated April 8, 2002 does not serve to effectuate termination as if set forth at length herein.

## COUNT V FOR VIOLATION OF THE ILLINOIS DECEPTIVE TRADE PRACTICES ACT,  VIOLATION OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSNEISS PRACTICES ACT, UNFAIR COMPETITION AND TRADE DISPARAGEMENT

94.     Counter-Plaintiff repeats and reavers the averments contained in paragraphs 1 through 93 above as if set forth at length herein.

95.     Counter-Defendants' disparaging, false, inaccurate and/or misleading representations are in violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/1-7(1965), namely § 2(8), a deceptive act or practice in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1-12 (1961) and constitute unfair competition and trade disparagement under the common law of Illinois.

96.     By their actions, as described above, Counter-Defendants willfully engaged in an unfair method of competition and a deceptive act or practice.

97.     As a direct and proximate result of the unfair competition, deceptive trade practices and defamatory acts of Counter-Defendants, Counter-Plaintiff has suffered and will continue to suffer damages in amounts not yet fully determined, including lost profits and the expenditure of attorneys' fees and court costs.

## COUNT VI FOR BREACH OF CONTRACT, DUTY OF GOOD FAITH AND FAIR DEALING

98.     Counter-Plaintiff repeats and reavers the averments contained in paragraphs 1 through 97 above as if set forth at length herein.

99.     This Count arises under the common law of Maryland.

100.    Counter-Plaintiff and Counter-Defendants entered into a valid and enforceable contract dated January 15, 1993, a copy of which is attached to the First Amended Complaint in this matter as Exhibit A.

101.    Counter-Plaintiff has fully complied with its contractual obligations set forth in the Agreement.

102.    SoftDent's "Platinum", "Advantage", and "Subscription" products and services contain Counter-Defendants' SoftDent Software and related products, which, by definition, are subject to the terms of the Agreement.

103.    Counter-Defendants, in violation of Sections 3.1, 4.1, 4.4, 10.1 and 10.7 of the Agreement, have: i) offered to sell Software and related products to customers within Counter-Plaintiff's exclusive geographical territory; ii) sold Software and related products to customers within Counter-Plaintiff's exclusive geographical territory; iii) directly advertised its SoftDent Software and related products and services to customers and potential customers within Counter-Plaintiff's exclusive geographical territory; iv) failed to provide mailing lists, demographic studies, brochures, demonstration disks and other sales materials to Counter-Plaintiff, as provided in paragraph 4.4; v) failed to compensate Counter-Plaintiff as provided in the Agreement; vi) failed to provide regular reports as required in paragraph 4.1; and vii) otherwise interfered with the Fair Trade Practices of Counter-Plaintiff.

104.    Every contract includes an implied covenant of good faith and fair dealing.

105.    Counter-Defendants have: i) failed to forward sales "leads" within Counter-Plaintiff's exclusive geographical territory to Counter-Plaintiff; ii) failed to cooperate with Counter-Plaintiff regarding issues pertaining to the distribution of Software upgrades, pricing, and participation in trade shows; and iii) failed to allow Counter-Plaintiff to offer products and services within Counter-Plaintiff's territory when the products and services were offered in other territories.

106.    As such, Counter-Defendants have expressly breached the terms of the Agreement and have breached the implied covenant of good faith and fair dealing in its business and contractual relationship with Counter-Plaintiff.

107.    As a result of Counter-Defendants' breach of the Agreement, Counter-Plaintiff has suffered damage in excess of $1 million dollars including, without limitation, lost technical support and service opportunities in Counter-Plaintiff's Territory under the Agreement and lost access to customers for others services – which losses Counter-Defendants reasonably foresaw as the probable result of breach at the time it entered into the Agreement.

108.    As a result, Counter-Defendants are liable to Counter-Plaintiff for substantial damages in excess of $1 million arising out of Counter-Defendant's breach of the Agreement, the exact amount of which is to be determined at trial.

## COUNT VII – FOR A DECLARATION

109.    Counter-Plaintiff repeats and reavers the averments contained in paragraphs 1 through 108 above as if set forth at length herein.

110.    Counter-Plaintiff has a history of providing technical support and service of Counter-Defendants' Products to third parties which precedes the effective date of the Agreement.

111.    Counter-Defendants maintain that Counter-Plaintiff cannot continue to provide technical support and service of Counter-Defendants Products to customers pending this litigation or after termination of the Agreement by Counter-Defendant.

112.    Upon information and belief, Counter-Defendants have expressly asserted to third parties, including customers of Counter-Plaintiff, that Counter-Plaintiff cannot continue to provide technical support and service of Counter-Defendants Products to customers.

113.    Such assertions have caused and threaten further to cause injury to Counter-Plaintiff, including litigation costs and attorneys' fees.  Such acts likely will occur, and continue to occur, unless enjoined by this Court.

114.    There is a justiciable controversy between the parties concerning Counter-Plaintiffs' ability to provide technical support and service of Counter-Defendants' Products to customers pending this litigation or after termination of the Agreement by Counter-Defendant.

115.    There is no adequate remedy at law.

116.    Accordingly, Counter-Plaintiff seeks a declaratory judgment, pursuant to 28 U.S.C. § 2201 that Counter-Plaintiff can continue to provide technical support and service of Counter-Defendants Products to customers pending this litigation or after termination of the Agreement by Counter-Defendant.

## COUNT VIII FOR FEDERAL UNFAIR COMPETITION FOR FALSE AND/OR MISLEADING REPRESENTATIONS

117.    Counter-Plaintiff repeats and reavers the averments contained in paragraphs 1 through 116 above as if set forth at length herein.

118.    This Count arises under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) for federal unfair competition in the form of the false, inaccurate and/or misleading representations related to the services of Counter-Plaintiff and their publication to third parties.

119.    Counter-Plaintiffs statements constitute false, inaccurate and/or misleading representations and their publication to third parties in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

120.    Counter-Defendants' violation of 15 U.S.C. § 1125(a) has been willful and malicious.

121.    As a direct and proximate result of the false, inaccurate and/or misleading representations and their publication to third parties, Counter-Plaintiffs have suffered and will continue to suffer damages in amounts not yet fully determined, including lost profits and the expenditure of attorneys' fees and court costs.

## COUNT IX FOR ATTORNEYS' FEES

122.    Counter-Plaintiff repeats and reavers the averments contained in paragraphs 1 through 121 above as if set forth at length herein.

123.    The Agreement provides for recoupment of attorneys fees by the successful party for any action filed in relation to the Agreement as follows:

> In the event that any action is filed in relation to this Agreement, the unsuccessful party in the action shall pay to the successful party, in addition to all of the sums that the unsuccessful party may be called on to pay, a reasonable sum for the successful party's reasonable attorneys' fees. Ex. A at ¶ 17.

124.    By virtue of Counter-Defendants' dispute of and challenge to Counter-Plaintiff's attempted anticipatory wrongful termination, anticipatory breach, and breach of the Agreement, Counter-Plaintiff has been forced to incur expenses, including, without limitation, attorneys' fees, disbursements and other costs incurred by Counter-Plaintiffs in commencing the instant action and enforcing its rights under the Agreement.

125.    As a result, Counter-Defendants are liable to Counter-Plaintiff for Counter-Plaintiff's expenses including, without limitation, attorneys' fees, disbursements and other costs incurred by Plaintiffs in commencing the instant action and enforcing its rights under the Agreement, in an amount to be determined at trial.

## COUNT X – FOR TORTIOUS INTERFERENCE WITH CONTRACT

126.    Counter-Plaintiff repeats and reavers the averments contained in paragraphs 1 through 125 above as if set forth at length herein.

127.    Counter-Plaintiff has entered into long-term contracts for the provision of technical support and service of Counter-Defendants' Products to numerous customers of Counter-Plaintiff.

128.    Upon information and belief, Counter-Defendants have expressly asserted to third parties, including customers of Counter-Plaintiff, that Counter-Plaintiff cannot

continue to provide technical support and service of Counter-Defendants Products to customers.

129.    Upon information and belief, Counter-Defendants have contacted customers of Counter-Plaintiff knowing that they were under contract with Counter-Plaintiff and recommended that said customers cease using Counter-Plaintiff's technical support and service under the terms of the existing contracts, demand a full or partial refund of the contract price for said technical support and service, thereby breaching said contracts, and enter into contracts with Counter-Defendants for technical support and service.

130.    As such, Counter-Defendants knew of and have purposely, intentionally, maliciously and without legal justification interfered with Counter-Plaintiff's contracts under Illinois and other state laws.

131.    Counter-Plaintiff has suffered and will continue to suffer injury and damages as a result of Counter-Defendants' interference with Counter-Plaintiff's contracts.

132.    Counter-Defendants' conduct has caused Counter-Plaintiff damage in an amount not yet determined.

133.    Accordingly, Counter-Plaintiff seeks compensatory and punitive damages in an amount to be determined at trial.

## COUNT XI – FOR TORTIOUS INTERFERENCE WITH PROPSECTIVE ECONOMIC ADVANTAGE

134.    Counter-Plaintiff repeats and reavers the averments contained in paragraphs 1 through 133 above as if set forth at length herein.

135.    Counter-Plaintiff has a history of entering into long-term contracts with third parties for the provision of technical support and service of Counter-Defendants' Products.

136.    Upon information and belief, Counter-Defendants have expressly asserted to third parties, including customers and prospective customers of Counter-Plaintiff, that

Counter-Plaintiff cannot continue to provide technical support and service of Counter-Defendants Products to customers or prospective customers.

137.   Based on its prior dealings with customers and prospective customers, Counter-Plaintiff had a reasonable expectation of entering into and continuing valid business relationships with said customers and prospective customers.

138.   As such, Counter-Defendants knew of and have purposely, intentionally, maliciously and without legal justification interfered with Counter-Plaintiff's legitimate expectancy of business relationships by inducing or causing customers and prospective customers of Counter-Plaintiff to refrain from and delay entering into a business relationship with Counter-Plaintiff under Illinois and other state laws.

139.   Counter-Plaintiff has suffered and will continue to suffer injury and damages as a result of Counter-Defendants' interference with Counter-Plaintiff's prospective economic advantage.

140.   Counter-Defendants' conduct has caused Counter-Plaintiff damage in an amount not yet determined.

141.   Accordingly, Counter-Plaintiff seeks compensatory and punitive damages in an amount to be determined at trial.

## COUNT XII - FOR ACCOUNTING

142.   Counter-Plaintiff repeats and reavers the averments contained in paragraphs 1 through 141 above as if set forth at length herein.

143.   By virtue of the facts set forth above, Counter-Plaintiff is entitled to and demands a complete accounting of the gross revenues and profits of the business of Counter-Defendants, including all gross revenues and profits arising from, related to, diverted from, or otherwise attributable to the sale of software products and the provision of computer and software related services in the Territory since January 1, 1993.

## COUNT XIII - ANTITRUST

## Sherman Act (15 U.S.C. §1 et seq.)

144.    Counter-Plaintiff repeats and reavers the averments contained in paragraphs 1 through 143 above as if set forth at length herein.

145.    Counter-Defendants sell on a national scale a software program designed for dental practices ("end-users") and enabled for use for billing and other purposes. Counter-Defendants' software is superior to other software on the market designed for the same purpose and is, therefore, highly desirable by end-users.

146.    Counter-Defendants have until recently sold its software separately from and without requiring that end-user's purchase technical support and services from it. Counter-Plaintiff has also sold Counter-Defendants' software separately from and without providing technical support and services.

147.    Counter-Plaintiffs have also provided technical support and services for Counter-Defendants' software separate from any software sales.

148.    Using the Counter-Defendants's software without technical support and service renders the software useless to most end-users.

149.    Counter-Defendants have recently begun to sell their software to end-users only if they agree to accept technical support and services from Counter-Defendants.  Upon information and belief, Counter-Defendants' contract for sales of software assumes the purchase of technical support and services from Counter-Defendants.

150.    Counter-Defendants further expressly allege to end-user customers and potential end-user customers that Counter-Plaintiff is no longer able to provide technical support and services for Counter-Defendants' software.

151.    A number of Counter-Plaintiff's customers have inquired of Counter-Plaintiff whether they could purchase software from Counter-Defendants and technical support and services from Counter-Plaintiff.

152.    Counter-Plaintiff has been and continues to be ready, willing, and able to provide technical support and services for Counter-Defendants' software.

153.    Coercing an end-user to purchase technical support and services from Counter-Defendants in order to receive the software unlawfully restricts an end-user's ability to purchase the software from Counter-Defendants and technical support and service from a provider of end-user's choosing.

154.    Informing end-users and potential end-users that Counter-Plaintiff is unable to provide technical support and services for Counter-Defendants' software infers that the only viable economic option for the end-user is to buy technical support and services from Counter-Defendants.

155.    As a result of Counter-Defendants' unlawful tying of its software and support and maintenance services, Counter-Plaintiff has suffered injury.

## COUNT XIV FOR BREACH OF CONTRACT

156.    Counter-Plaintiff repeats and reavers the averments contained in paragraphs 1 through 155 above as if set forth at length herein.

157.    This Count arises under the laws of Maryland.

158.    Counter-Plaintiff and Counter-Defendants entered into a valid and enforceable contract for the sale of SoftDent software by Counter-Defendants to Counter-Plaintiff ("Sale Contract"), the terms of which are included in an Invoice dated November 15, 2002, a copy of which is attached hereto as Exhibit D.

159.    Counter-Plaintiff has fully complied with its contractual obligations set forth in the Sale Contract, including payment of the purchase price.

160.    Per the terms of the Sale Contract, Counter-Defendants provided Counter-Plaintiff with version 9.7 of the software.

161.    Under to the terms of the Sale Contract, Counter-Plaintiff purchased a one year Update Subscription.

162.    Under an Update Subscription, a purchaser pre-purchases all updated versions of the SoftDent software which are released and distributed by Counter-Defendants for one year following the purchase date of the Update Subscription.

163.    During the one year following the date of the Sale Contract, Counter-Defendants released and distributed multiple updated versions of the SoftDent software, including versions 9.8, 10.0.1 and 10.0.2, to their customers, including those who purchased an Update Subscription covering the release and distribution period.

164.    Under the terms of the Sale Contract, Counter-Plaintiff was and is entitled to receive all updated versions of the SoftDent software, for one year following the date of the Sale Contract, including versions 9.8, 10.0.1 and 10.0.2.

165.    Despite repeated demands by Counter-Plaintiff that Counter-Defendants comply with their contractual obligations to provide Counter-Plaintiff with versions 9.8, 10.0.1 and 10.0.2 of the software, Counter-Defendants fail and refuse to do so.

166.    As such, Counter-Defendants have expressly breached the terms of the Sale Contract and have breached the Sale Contract.

167.    As a result of Counter-Defendants' breach of the Sale Contract, Counter-Plaintiff has suffered damage in excess of $1 million dollars including, without limitation, lost technical support and service opportunities in Counter-Plaintiff's Territory – which losses Counter-Defendants reasonably foresaw as the probable result of breach at the time it entered into the Sale Contract.

168.    As a result, Counter-Defendants are liable to Counter-Plaintiff for substantial damages in excess of $1 million arising out of Counter-Defendant's breach of the Sale Contract, the exact amount of which is to be determined at trial

**WHEREFORE**, Counter-Plaintiff respectfully requests that the Court:

(a)    grant Counter-Plaintiff relief on the first count against Counter-Defendants as follows: a declaration pursuant to 28 U.S.C. § 2201, that: (i) the Agreement is not "terminable at will" or terminable upon reasonable notice, but rather, terminable only upon the occurrence of one or more of the specific conditions detailed in the Agreement; and (ii) the letter dated April 8, 2002 does not serve to effectuate termination of the Agreement;

(b)    grant Counter-Plaintiff relief on the second count against Counter-Defendant as follows: a declaration pursuant to 28 U.S.C. § 2201 that where the parties have engaged in a business relationship for over nine years, that a Disposition Period of nine months does not constitute reasonable notice of termination of the Agreement;

(c)    grant Counter-Plaintiff relief on the third count against Counter-Defendants as follows: a declaration pursuant to 28 U.S.C. § 2201 that the April 8, 2002 letter sent to Counter-Plaintiff operated to anticipatorily breach the Agreement regarding Counter-Plaintiff's rights in its defined sales area;

(d)    grant Counter-Plaintiff relief on the fourth count against Counter-Defendants as follows: a declaration pursuant to 28 U.S.C. § 2201 and 17 U.S.C. §§ 203(a) and 302(c) that (i) the Agreement is not "terminable at will," but rather, terminable only at the will of the author during a five year period beginning at the end of thirty-five years from the date of execution of the Agreement, unless terminated as expressly set forth in the Agreement; and (ii) the notice dated April 8, 2002 does not serve to effectuate termination as if set forth at length herein;

(e)    grant Counter-Plaintiff relief on the fifth count against Counter-Defendants for violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/1-

7(1965), namely § 2(8), violation of the Illinois Consumer Fraud and Deceptive Business

Practices Act, 815 ILCS 505/1-12 (1961) and unfair competition and trade disparagement

under the common law of Illinois, in a monetary amount to be determined at trial

    (f)    grant Counter-Plaintiff relief on the sixth count against Counter-Defendants

for breach of contract, good faith and fair dealing in a monetary amount to be determined

at trial;

    (g)    grant Counter-Plaintiff relief on the seventh count against Counter-

Defendant as follows: a declaration that Counter-Plaintiff can continue to provide technical

support and service of Counter-Defendants Products to customers pending this litigation or

after termination of the Agreement by Counter-Defendant

    (h)    grant Counter-Plaintiff relief on the eighth count against Counter-

Defendants for violation of the Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), in a

monetary amount to be determined at trial;

    (i)    grant Counter-Plaintiff relief on the ninth count against Counter-Defendants

as follows: for recoupment of expenses under the Agreement including, without limitation,

attorneys' fees, disbursements and other costs incurred by Counter-Plaintiff in commencing

the instant action and enforcing its rights under the Agreement, in an amount to be

determined at trial;

    (j)    grant Counter-Plaintiff relief on the tenth count against Counter-Defendants

for tortious interference with contract in a monetary amount to be determined at trial;

    (k)    grant Counter-Plaintiff relief on the eleventh count against Counter-

Defendants for tortious interference with prospective economic advantage in a monetary

amount to be determined at trial;

(l)     grant Counter-Plaintiff relief on the twelfth count against Counter-Defendant for an accounting;

(m)     grant Counter-Plaintiff relief on the thirteenth count against Counter-Defendants for violation of the Sherman Act (15 U.S.C. §1 et seq.) in a monetary amount to be determined at trial;

(n)     grant Counter-Plaintiff relief on the fouteenth count against Counter-Defendants for breach of contract in a monetary amount to be determined at trial;

(o)     award Counter-Plaintiff treble and punitive damages;

(p)     award Counter-Plaintiff attorneys and costs; and

(q)     grant Counter-Plaintiff such other relief as the Court may deem just and proper.


## JURY DEMAND

Counter-Plaintiff hereby demands a trial by jury regarding the above counterclaims.


Dated: November 14, 2003


Respectfully submitted,

PROFESSIONAL SOFTWARE

SOLUTIONS OF ILLINOIS, INC.

By: /s/ Mark E. Wiemelt
    Mark E. Wiemelt

Lead Counsel (Pro Hac Vice):
Mark E. Wiemelt (06208213)
LAW OFFICES OF MARK E. WIEMELT, P.C.
10 S. LaSalle St., Ste. 3500

Chicago, Illinois  60603
(312) 372-7664

<u>Local Counsel:</u>
John M.G. Murphy
Ober, Kaler, Grimes & Shriver
120 E. Baltimore Street
Baltimore, MD 21202-1643
(410) 347-7334