PROFESSIONAL SOFTWARE SOLUTIONS, INC.

2113 Emmorton Park Road, Suite 104
Edgewood, Maryland 21040
800-433-2409   (SoftDent Sales)
800-637-2251   (MedAssist/SoftVet Sales)

Local 410-671-7770
Edgewood, Maryland 21040
Modem/Data 410-671-7189
Fax 410-671-9655

DEALER/RESELLERS AGREEMENT

This Dealer Agreement (hereinafter referred to as the "Agreement") is made as of January 1, 1993, by and between Professional Software Solutions, Inc. (hereinafter "PSS"), a Maryland corporation with its principal place of business located at 2113 Emmorton Park Rd., Suite 104, Edgewood, MD 21040 and the dealer listed below (hereinafter "Dealer").

Professional Software Solutions of Illinois, Inc., 4757 West 137th Street, Crestwood, IL 60445.

1.   RECITALS

   1.1   PSS is the owner of the trademark, "Professional Software Solutions" and is the sole distributor of the SoftDent® Dental Management System.

   1.2   InfoSoft, Inc. ("InfoSoft") is the developer and copyright holder of the aforementioned software program and has assigned PSS the conditional and exclusive distribution rights of said program.

   1.3   Dealer wishes to renew its agreement to sell the software products distributed by Professional Software Solutions, Inc. in accordance with terms and conditions set forth herein and desires the benefit of the national goodwill, which is inherent in PSS's distributed products.

   1.4   PSS is currently re-licensing its competent dealers throughout the United States. With this Agreement, it gives each dealer the right to exploit the trademark, and, by close supervision of each dealer and strict enforcement of meticulous business standards set forth in this Agreement, endeavors to maintain a nationwide network of goodwill with respect to the InfoSoft® products that will mutually benefit all parties of this Agreement.

   1.5   The royalties that are established in Section 25 and the attached addenda herein constitutes the sole consideration for the exploitation of the Products and trademarks. The restrictions and controls on the Dealer's operation and acquisition of sales supplies established herein are intended solely to protect PSS's rights to its trademark and to discharge PSS's obliga-

tion to the Dealer to maintain a high level of quality products and services.

In consideration of the premises and the mutual covenants herein set forth, it is agreed by and between PSS and Dealer:

2. **DEFINITIONS**

For the purpose of this Agreement, the following terms shall have the respective meanings indicated:

2.1 The term "Products" shall mean SoftDent® computer software and related products now or hereafter, during the term of this Agreement, developed, manufactured or distributed by PSS.

2.2 The term "Upgrade" refers to the software program that is used to convert a single workstation system to a multi-workstation software environment.

2.3 The term "Additional Site License" shall mean a discounted software license agreement that is granted to a current End-User who owns more than one office and wishes to incorporate the Product at this additional location. Please refer to Addendum B for requirements, restrictions and special license agreement.

2.4 The term "Unit" shall mean one copy of either program (single or multi-user). Upgrades do not count as complete units. The sale of three (3) Upgrades shall be counted as one unit. Additional Site Licenses count as a full unit of the Product.

2.5 The term "End-User" shall mean a customer or purchaser of Product(s).

3. **EXCLUSIVE TERRITORY**

3.1 PSS hereby grants to Dealer the exclusive right to sell the Products in the following Zip Code ranges (collectively, the "Territory"): 46000-46999, 47800-47999, 49000-49199, 49300-49799, 52600-52699, 60000-61999, 62300-62799, 63400-63599. Such exclusivity shall continue during the term of this Agreement and all renewals thereof for so long as Dealer's purchases from PSS average fifty (50) programs per year. In the event Federal Trade Laws governing Interstate Commerce and their subsequent affirmations in the federal district and appellate courts make it legally impossible for PSS to offer the exclusivity described above to Dealer in the Territory, the parties agree to negotiate in good faith an amendment to this Agreement which would modify such exclusivity solely to the extent necessary, in the

- 2 -

written legal opinion of counsel for both parties, to make such arrangement lawful. PSS acknowledges that Dealer, in executing this Agreement, is relying on the exclusive right to distribute the Products in the Territory and is expending significant funds (and foregoing other opportunities) to fully develop and maximize the economic viability of the Territory for the benefit of Dealer and PSS. It is therefore essential that such exclusivity be modified as described above by the parties acting solely in good faith.

3.2   PSS reserves the right to revoke this exclusivity in the event that the Dealer does not maintain the purchase quota outlined hereinabove.

4. CONTINUING SUPERVISION AND ASSISTANCE

PSS shall maintain a bona fide interest in the success of a Dealer's business during the term of this Agreement and shall provide the following:

4.1   Regular reports of improvements in business methods developed by PSS and other dealers in the form of Newsletters, pamphlets, brochures, annual business meetings and other methods deemed appropriate by PSS.

4.2   The services of PSS's advertising department to assist the Dealer in planning and designing local advertising campaigns.

4.3   At the Dealer's request, the personal assistance and counsel of a qualified representative of PSS or InfoSoft, who shall be experienced in the operation of the Products at the retail level. Dealer will be charged the then-applicable fees for these services and these services will be provided at PSS's or InfoSoft's location; or the dealer will pay for all direct travel expenses to and from any alternate location. PSS and InfoSoft shall provide a schedule of the then-applicable fees to Dealer at the time of such request for services.

4.4   PSS will provide mailing lists, demographic studies, brochures, demonstration disks and other sales materials to dealers at cost, per the annually-updated, attached price list incorporated herein and referred to as Addendum A. PSS reserves the right to update this Addendum of Costs quarterly without advanced notice to the Dealer based on PSS's current design and printing costs. PSS shall, however, promptly send Dealer notice of such update of the Addendum of Costs after such update becomes effective.

- 3 -

5. **PERSONAL ATTENTION OF DEALER**

   5.1   Dealer shall personally learn and sell the Products. Dealer shall use its best personal efforts to promote the Products and shall never disparage the Products.

   5.2   The requirements of personal management established herein are understood and agreed by all parties to include the Dealer's best personal efforts and a devotion to the success of the Products consistent with the spirit of this Agreement. Personal management shall include, but not be limited to, a persistent and tenacious effort to market the Product(s) to the nationally-generated leads, as well as, an effective local marketing effort that will fully exploit the sales potential of the Products in the Territory. PSS reserves the right to review the Dealer's methods of selling and to offer suggestions designed to assist Dealer to achieve the highest level of success within the industry, and the Dealer agrees to review and study updated brochures and materials, as submitted by PSS, and to ensure the careful scrutiny of these materials by all sales and support personnel.

   5.3   Dealer shall send one person from within its organization to the scheduled Update Training Classes which are designed to maintain the highest standards of product knowledge. In such case, Dealer will be responsible for all direct payments to InfoSoft or PSS with regards to the charges for these training seminars, at the then applicable fee for same (not to exceed $300 per person per seminar). Dealer is also responsible for all direct expenses associated with the travel to and from the training site.

6. **INDEMNITY OF PSS & INFOSOFT**

   6.1   Dealer shall indemnify and hold PSS, its successors and assigns, harmless against all claims, actions, proceedings, damages, losses and liabilities, including reasonable attorneys' fees, adjudged by a court of competent jurisdiction to have been caused by Dealer's wilful conduct in violation of this Agreement.

   6.2   PSS shall indemnify and hold Dealer, its successors and assigns, harmless against all claims, actions, proceedings, damages, losses and liabilities, including reasonable attorneys' fees, adjudged by a court of competent jurisdiction to have been caused by PSS's wilful conduct in violation of this Agreement.

7. **USE OF ADVERTISING FUND**

- 4 -

7.1   PSS shall establish and maintain an advertising fund that will be equal to at least two percent (2%) of the gross revenues PSS receives from the sale of Products through the dealer network.

7.2   PSS shall use the advertising fund for national and regional advertising, which PSS, at its sole discretion, considers necessary and appropriate. Portions of the advertising fund may be used for advertising that benefits an individual dealer, but this involvement is at the sole discretion of PSS, based on available funds and with a guaranteed cost-sharing of the dealer(s) of at least 60% of the total cost of the advertisement.

7.3   PSS may also use the advertising fund for the costs associated with a mass mailing campaign to the targeted markets.

7.4   PSS may use the advertising fund for costs associated with the design and printing of promotional items for the Products. If PSS uses any portion of the advertising fund for the design and printing of promotional materials, the aforementioned "cost" of these items would be discounted to reflect this subsidization from the advertising fund.

7.5   PSS will not use the advertising fund to promote the recruitment of new dealers.

8. USE OF REGISTERED TRADEMARKS

8.1   Dealer acknowledges that InfoSoft*, SoftDent*, MedAssist*, and SoftVet* are registered trademarks of InfoSoft, Inc. To the best knowledge of PSS, the trademarks' registrations are in good standing, valid, subsisting and in full force and effect. To the best knowledge of PSS, there is not now and not been during the past six (6) years any infringement, misuse or misappropriation by InfoSoft of any valid trademark, tradename, copyright or trade secret which relates to the Products and which is owned by any third party, and to the best knowledge of PSS, there is not now any existing or threatened claim against PSS or InfoSoft for infringement, misuse or misappropriation of any such trademark, tradename, copyright or trade secret relating to the Products.

8.2   The Dealer agrees to send a sample of any locally-designed, printed materials containing these registered trademarks to both PSS and InfoSoft, Inc., prior to the distribution of same, provided, however, that all of Dealer's existing uses of the trademarks as of the date of this Agreement are deemed approved and

- 5 -

no future approvals will be necessary for future uses of such trademarks which are consistent with such past uses.

9. **ASSIGNMENT BY DEALER**

   9.1 Dealer may assign its interest in this Agreement with the written approval of PSS, which shall not be unreasonably withheld. Dealer shall be given such approval if the original Dealer complies with the provisions set forth below and is a Dealer which is not in Default of this Agreement.

   9.2 Public advertisements offering Dealer's interest for sale shall not include any reference to PSS, InfoSoft® or to the SoftDent® trademarks, but shall identify the unit only as Dental Management Software.

   9.3 Dealer's assignee must be reasonably acceptable to PSS by the minimum objective standards then utilized and consistently applied by PSS in approving applicants for new dealerships. Upon Dealer's request, PSS shall furnish Dealer with a copy of such standards utilized by PSS. PSS agrees to use good faith in evaluating Dealer's assignee and will not hold the proposed assignee to any higher standard than any other dealer.

   9.4 Dealer's assignee must execute an assignment of this Agreement, in a form which is reasonably acceptable to PSS, which will cause the assignee to receive all of the benefits of this Agreement and be subject to all of the obligations and liabilities hereunder.

   9.5 Dealer must satisfy all outstanding financial obligations to PSS.

10. **MUTUAL ACCEPTANCE AND ENDORSEMENT OF FAIR AND FREE TRADE PRACTICES**

    10.1 The Products' Suggested Retail Price (SRP), as described in Addendum A, are not fixed by either PSS or InfoSoft, Inc. and are subject to change with ninety (90) days written notice or upon mutual agreement of the parties hereto.

    10.2 The Dealer offers value-added services that affect the overall "system" pricing of the Products in the marketplace such as hardware, training, installation and support. However, it is suggested that the Dealer offer the Products for the then-advertised Suggested Retail Price (SRP) stated separately from any adjunctive services. In the event that the Dealer does not offer the Products at the then-advertised SRP, PSS

reserves the right, upon five (5) days prior written notice to Dealer, to circumvent the Dealer and sell directly to the customer for the then-advertised SRP of the Product. PSS will not discount these Products to the End-user.

10.3 In the event that a Product is sold to the End-User by any person or entity other than the Dealer in the Dealer's Territory, PSS will compensate the Dealer by the payment of forty (40) percent of the Suggested Retail Price (SRP) of the Product provided Dealer is not in Default of this Agreement.

10.4 Discounts with regards to the Products' SRP are allowed, but this practice is not recommended or encouraged due to the effects that discounting might have on the fair market value of the Products.

10.5 It is also agreed and understood the Dealer may offer local support to their customers for a fee determined by the Dealer. It is further understood that there is an implicit need for a strong national support organization, which is provided by InfoSoft. Dealer agrees to offer both of these services to the End-User and allow the customer to decide based on the merits and prices of these support options. At no time will the Dealer impede, block, obstruct, inhibit, or restrict InfoSoft's or PSS's access to the End-User with regards to these services or any other adjunctive services that might be offered by either of these organizations. PSS warrants, however, that PSS and InfoSoft will not sell any Product to the End-User except as specifically permitted herein.

10.6 Under no circumstances will the Dealer interfere with the Fair Trade Practices of either PSS or InfoSoft.

10.7 Under no circumstances will PSS or InfoSoft interfere with the Fair Trade Practices of Dealer.

11. DEFAULT - The occurrence of any of the following events (a "Default") will permit the aggrieved party to terminate this Agreement:

11.1 An affirmative act of insolvency by either Dealer or PSS or the filing by Dealer or PSS, as the case may be, of a petition under any bankruptcy, reorganization, insolvency, or moratoria law, or any law for the relief of, or relating to, debtors;

11.2 The filing of any involuntary petition under any bankruptcy statute against Dealer or PSS or the appointment of any receiver or trustee to take posses-

- 7 -

sion of property of Dealer or PSS, as the case may be, unless such petition or appointment is set aside or withdrawn or ceases to be in effect within sixty (60) days of the date of such filing or appointment;

11.3 A final non-appealable judgment of a court with competent jurisdiction or the final non-appealable decision of a regulatory officer or agency that results in permanent suspension of any permit or license, possession of which is a prerequisite to operation of Dealer's or PSS's business under applicable law;

11.4 Failure by the Dealer to make any and all payments within sixty (60) days after written notice of a delinquency is received by the Dealer, when, and if, it is determined that the Dealer's account is past due, provided, however, if such delinquency is being contested in good faith by Dealer, then such period shall be deemed extended for a reasonable period of time until such matter can be resolved; or

11.5 If the Dealer is adjudged to have violated the copyright of the software or accompanied documentation by making unauthorized duplicates of same, this Agreement shall be automatically terminated immediately.  In addition, the Dealer will be subject to any and all applicable fines and penalties under the provisions of the Federal Copyright Laws.

## 12. COVENANT NOT TO COMPETE

12.1 After termination of the Dealer by PSS for Default in accordance with this Agreement, Dealer shall not engage in the business of selling dental office management software products within its franchise area for a period of six (6) months.

12.2 At no time during the term of this Agreement shall the Dealer sell a dental product that directly competes with a software product that is manufactured by InfoSoft and distributed by PSS and Dealer.

## 13. PROTECTION OF TRADE SECRETS

13.1 Dealer acknowledges the proprietary rights of InfoSoft to the Products. Accordingly, throughout the term of this Agreement and at all times thereafter Dealer agrees not to disclose, or cause to be disclosed, any confidential or proprietary information relating to the Products or InfoSoft, other than in the faithful performance of the duties hereunder. Dealer shall,



however, have no obligation with respect to any such information which is:

    a. publicly known or becomes publicly known without wrongful act or breach of this Agreement by Dealer;

    b. rightfully received from a third party on a non-confidential basis; or

    c. approved for release by PSS or InfoSoft.

13.2 Dealer agrees not to reveal the contents of the PSS Dealer manual or any other confidential information relating to the operation and sale of PSS's trademark systems and the Products during or after the term of this Agreement, except pursuant to a lawful subpoena issued by a court of competent jurisdiction or other action taken in conjunction with a court's jurisdiction.

13.3 Upon the termination of this Agreement, for any reason whatsoever, Dealer shall immediately return any and all materials regarding the Products in any form whatsoever received from either PSS or InfoSoft, as the case may be, to the party supplying same, provided PSS will pay Dealer for the price Dealer paid for any unopened Products and shall pay fair value for other items of value which were purchased from PSS.

## 14. RELATIONSHIP OF PARTIES

14.1 Dealer is and shall be considered an independent contractor with entire control and direction of its business and operations, subject only to the conditions and obligations established by this Agreement. No agency, employment, partnership or joint venture is created by this Agreement. Dealer's business is separate and apart from any that may be operated by PSS or InfoSoft. Neither party to this Agreement shall make any representations tending to create apparent agency, employment, partnership or joint venture. Neither party will have authority to act for the other in any manner to create obligations or debts binding on the other, and neither party will be responsible for any obligations or expenses whatsoever of the other. Neither Dealer or any person performing any duties or engaged in any work on the premises at the request of Dealer shall be deemed an employee or agent of PSS or InfoSoft.

14.2 Dealer (and its representatives and agents) shall properly identify their status as a dealer (and agents

of the Dealer) in relation to InfoSoft and at any time during or after the term of this Agreement shall not engage in any advertising, contracts, or practices that might mislead or deceive the public regarding InfoSoft, its products and services.

## 15. EFFECT OF PARTIAL INVALIDITY

The invalidity of any portion of this Agreement will not and shall not be deemed to affect the validity of any other provisions. In the event that any provision of this Agreement is invalid, the parties agree that the remaining provisions shall be deemed to be in full force and in effect as if they had been executed by both parties subsequent to expungement of the invalid provision.

## 16. RESTRICTIONS ON EFFECT OF WAIVER

No delay or omission to exercise a right, power or remedy accruing to either PSS or Dealer on any Default of the other party under this Agreement shall impair any such right, power or remedy of the aggrieved party, or InfoSoft, and shall not be construed to be a waiver of any such Default, or an acquiescence therein, or in any similar Default thereafter occurring; nor shall any waiver of any single Default be deemed a waiver of any other Default theretofore or thereafter occurring. Any waiver, permit, consent or approval of any kind or character on the part of either party that in any way Defaults this Agreement, or any waiver on the part of either party of any provision or condition of this Agreement, must be in writing and shall be effective only to the extent specifically allowed by such writing. All remedies, either under this Agreement or by law, or otherwise afforded to either party or InfoSoft, shall be cumulative and not alternative.

## 17. ATTORNEYS FEE

In the event that any action is filed in relation to this Agreement, the unsuccessful party in the action shall pay to the successful party, in addition to all of the sums that the unsuccessful party may be called on to pay, a reasonable sum for the successful party's reasonable attorneys' fees.

## 18. NOTICES

Any notices to be given hereunder shall be given by mailing such notices to PSS at 2113 Emmorton Park Road, Edgewood, MD 21040, and to Dealer at the above referenced address.

## 19. GOVERNING LAW

This Agreement and the construction thereof shall be governed by the laws of the State of Maryland.

## 20. UNAVOIDABLE CONTINGENCIES

Neither PSS nor Dealer shall be responsible for any contingency that is unavoidable or beyond PSS or Dealer's control wherever arising, including, but without being limited to, strike, flood, riot, war, fire, rebellion or governmental limitation, solely during the period in which the contingency remains unavoidable or beyond such party's control.

## 21. INSPECTION OF CONTRACT BY DEALER

This instrument embodies the entire agreement of the parties and representations, inducements, promises and agreements, oral or otherwise, not included herein will have no force or effect in the construction or the rights and obligations of the parties created hereby. Dealer certifies that it received a complete copy of this Agreement and had fifteen (15) days to inspect it. This Agreement shall not be modified, amended or in any way altered except by an instrument in writing signed by both parties.

## 22. TERM

This Agreement will come into force on January 1, 1993, for an initial period of one (1) year and shall automatically renew thereafter for successive one (1) year periods and is subject to earlier termination only as hereinabove provided.

## 23. SHIPMENT AND DELIVERY OF PRODUCTS

PSS shall use reasonable efforts to ship all Products ordered by Dealer within one (1) business day after receipt of Dealer's order. Orders may only be filled when a completed Purchase Registration Form (incorporated herein as Addendum C) has been executed by the End-User and received by PSS. Delivery of Products shall be F.O.B. Edgewood, MD. Title and risk of loss or damage with respect to any of the products to be delivered hereunder shall pass from PSS to the Dealer after delivery of such Products. All transportation and handling charges for any of the Products shall be borne by PSS and included in the price of same. Any special handling (i.e. Next Day Air, etc.) shall be paid for by the Dealer unless required due to a lack of inventory at PSS and the need for a timely delivery to Dealer. All actual transportation and handling costs of hardware related products (computers & peripherals) shall be borne by the Dealer as billed by PSS.

## 24. DEALER PRICES

24.1 The purchase price for units of the Products ordered by the Dealer pursuant to this Agreement shall be PSS's Suggested Retail Price (SRP) less forty (40) percent ("Dealer Price"), as in effect on the day such Products were ordered. Such Dealer Price shall include any license fees with respect to the software contained in such units.

24.2 All shipments to Dealer shall be Cash On Delivery (COD), Company Credit Account, or Company Check unless the Dealer has previously been approved for other payment terms by PSS.

24.3 PSS accepts Master Card and Visa for payment of direct shipments to doctors, sub-dealers or the Dealer's location, however, there is a 2% processing fee for these transactions.

## 25. CONSIDERATION

25.1 Dealer agrees to purchase an average of fifty (50) Products per year in exchange for Dealer exclusivity in the Territory and in exchange for the forty percent (40%) discount to Dealer from Suggested Retail Price (SRP) listed on the PSS Software Price List (Addendum A).

25.2 If the Dealer does not make a purchase of at least one (1) of the "Products" within the first 90 days of this Agreement, this Agreement may be optionally terminated by PSS.

25.3 PSS agrees to pay Dealer a fee equal to ten (10) percent of all monies collected by PSS and InfoSoft from End-Users in Dealer's Territory on Electronic Claims Servicing ("ECS"), and at Dealer's election, such monies may be used as credits on any amounts owed by Dealer to PSS for Product purchases.

## 26. LIMITED WARRANTY

26.1 PSS and InfoSoft warrants to the Dealer that the Products purchased shall be free from defects in materials or workmanship. If failure of the Product resulted from accident, abuse or misapplication of the Product, then PSS shall have no responsibility to replace the Product under this warranty.

26.2 The above is the only warranty of any kind, either expressed or implied, including, but not limited to the implied warranties of merchantability and fitness for a particular purpose that is made by PSS or InfoSoft on the Products. This warranty gives you specific legal rights and you may also have other rights which vary from state to state.

26.3 Neither PSS nor InfoSoft nor anyone else who has been involved in the creation, production or delivery of the Products shall be liable to any End-User for any direct, indirect, consequential or incidental damages

- 12 -

arising out of the use, the results of use, or inability to use the Products, even if PSS has been advised of the possibility of such damages or claims.

## 27. MISCELLANEOUS

27.1 PSS warrants and represents that all of its agreements with InfoSoft are valid, binding and enforceable in accordance with their terms, and that PSS has the exclusive rights to distribute the Products. PSS warrants and represents that it is not in breach of, or in default under, any contract, agreement or commitment with InfoSoft and no event or action has occurred, is pending, or is threatened, which, after the giving of notice, or the lapse of time, or otherwise, could constitute or result in a breach or a default by PSS under any contract, agreement, or commitment with InfoSoft.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement by their duly authorized representatives on the respective date indicated below.

For PROFESSIONAL SOFTWARE SOLUTIONS, INC.

BY: _____  4/6/93

TITLE:     President            DATE: January 15, 1993

For DEALER: PROFESSIONAL SOFTWARE SOLUTIONS OF ILLINOIS, INC.

BY: _____

TITLE:   Vice President          DATE: 1-15-93

Witness: _____  DATE: 1-15-93

PROFESSIONAL SOFTWARE SOLUTIONS, INC.



3008 Churchville Road
P.O. Box 280
Churchville, Maryland 21040

### ADDENDUM TO DEALER/RESELLERS AGREEMENT

2.1 is changed to read:

   2.1 The term "Products" shall mean the SoftDent® Dental Management System software program and related products now or hereafter, during the term of this Agreement, developed, manufactured or distributed by PSS. This includes all programs and related products now or hereafter, except an update to the current DOS version which can be sold directly by InfoSoft, Inc. For example a SoftDent® Dental Management System software Windows® version, if developed, would be "Products" as defined here, and would not be an update. Another example of "Products" would be a SoftDent® Dental Management System software program with only some of the features that exist, now or hereafter, and sold at a lower retail price than the complete SoftDent® Dental Management System software.

3.1 The "Territory" is enlarged to include the following Zip Code ranges: 62000-62299, 62800-62999, 63000-63399, 63600-63999.

3.3 is added and reads:

   3.3 PSS grants to the Dealer the right of first refusal on all new PSS products with respect to the Territory.

IN WITNESS WHEREOF, the parties hereto have executed this Addendum by their duly authorized representatives on the respective date indicated below.

For PROFESSIONAL SOFTWARE SOLUTIONS, INC.

BY: _____

TITLE:   PRESIDENT         DATE: May 9, 1994

For DEALER: PROFESSIONAL SOFTWARE SOLUTIONS OF ILLINOIS, INC.

BY: _____

TITLE:  VICE PRESIDENT       DATE: 5-9-94

Witness: _____        DATE: 5-9-94

## AGREEMENT

This Agreement is signed as of the /8th day of August, 1995, between Professional Software Solutions, Inc. ("PSS"), and Professional Software Solutions of Illinois, Inc. ("PSSI").

The parties acknowledge and agree that PSS and PSSI have signed a Dealer/Resellers Agreement dated as of January 1, 1993, and amended by an Addendum To Dealer/Resellers Agreement dated May 9, 1994 (the Agreement, the Addendum, and any future Addendums are collectively referred to as the "Dealer Agreement").

FOR VALUE RECEIVED, the adequacy and sufficiency of which is hereby acknowledged by PSS, PSS covenants and agrees that in the event of any sale of PSS, sale of substantially all of its assets (including the sale, transfer, assignment, or other disposition of its rights under any dealer/resellers agreements), merger, consolidation, or other transfer of a substantial portion of PSS's business to a third party, PSS will include the Dealer Agreement as part of such transaction and will cause the transferee to acknowledge and agree in writing to PSSI at the time of or prior to the closing on such transaction that the Dealer Agreement will be considered valid, binding, and enforceable against such transferee in accordance with its terms.

IN WITNESS WHEREOF, the undersigned have signed this Agreement as of the date first written above.

PROFESSIONAL SOFTWARE
SOLUTIONS, INC.

By: _____
Title: President

PROFESSIONAL SOFTWARE
SOLUTIONS OF ILLINOIS, INC.

By: _____
Title: Vice President