Not Reported in N.E.2d                                                                                      Page 1
**(Cite as: 1996 WL 71006 (Ohio App. 6 Dist.))**

Only the Westlaw citation is currently available.

CHECK OHIO SUPREME COURT RULES FOR
REPORTING OF OPINIONS AND WEIGHT OF
LEGAL AUTHORITY.

Court of Appeals of Ohio, Sixth District, Lucas
County.

BLUE CROSS & BLUE SHIELD OF OHIO
Appellant
v.
Timothy SCHMIDT, et al.  Appellees

**No. L-94-291.**

Feb. 16, 1996.

Fritz Byers, John R. Climaco, Douglas A. Andrews,
Kenneth D. Petrey, Troy L. Moore, for appellant.

Robert J. Bahret and Julie M. Pavelko and Donald A.
Powell, Frank G. Mazgaj, and Robert L. Tucker, for
appellees.


OPINION AND JUDGMENT ENTRY

HANDWORK, J.

 *1 This is an appeal from the Lucas County Court of
Common Pleas which, following a jury trial, entered
judgment for appellees, Timothy Schmidt, Ralph
Long, James Mauntler, Schmidt Long & Associates,
Inc., and Benetech, Inc. Appellant, Blue Cross &
Blue Shield of Ohio, sets forth the following three
assignments of error:
    "ASSIGNMENT OF ERROR NO. 1
    "THE    TRIAL    COURT    ERRED    IN
MISINSTRUCTING THE JURY AS TO THE
NATURE AND BREADTH OF DEFENDANTS'
DEFENSES    TO    BC'S    BUSINESS
INTERFERENCE    CLAIMS,    AND    THE
CONTENT OF THOSE CLAIMS.
    "ASSIGNMENT OF ERROR NO. 2
    "THE    TRIAL    COURT    ERRED    BY
INTERVENING    IN    THE    JURY'S
DELIBERATIONS    TO    INSTRUCT    IT,
CONTRARY TO EARLIER INSTRUCTIONS,
CONTRARY TO LAW, AND CONTRARY TO
THE CLAIMS AND EVIDENCE IN THE CASE,
THAT THE JURY'S VERDICT TURNED ON
THE SINGLE ISSUE OF WHETHER THE

HOSPITAL SETTLEMENTS BELONGED TO
BC OR ITS CUSTOMERS.
    "ASSIGNMENT OF ERROR NO. 3
    "THE    TRIAL    COURT    ERRONEOUSLY
DEPRIVED BC OF ITS RIGHT TO TRIAL BY
JURY THROUGH A COMBINATION OF
EVIDENTIARY    RULINGS    AND
EXTEMPORANEOUS COMMENTS THAT, IN
AGGREGATE, IMPERMISSIBLY INTERFERED
WITH THE JURY'S ESSENTIAL FUNCTIONS."

 The facts relevant to this appeal are as follows.  On
February 10, 1988, appellant filed a complaint
against appellees, individual and corporate
employment benefit consultants.    The complaint
alleged that appellees contacted several of appellant's
self-insured customers  [FN1] ("ASO customers");
disseminated to these customers false statements,
misrepresentations,    legal    advice,    and
recommendations adverse to appellant; and
encouraged these customers to breach or terminate
their business relationships with appellant.

> FN1. A self-insured customer, also called an
> administrative    services    only    ("ASO")
> customer or a "cost-plus" customer, did not
> purchase insurance coverage but hired
> appellant to provide administrative services
> in handling and paying claims.    ASO
> customers pay the actual cost of claims plus
> an administrative fee, approximately five
> percent of the amount of paid claims.

 A four week jury trial began on June 20, 1995 on
four claims   [FN2]:    tortious interference with
business relationships, defamation, deceptive trade
practices, and civil conspiracy.    The testimony at
trial established that appellees learned of litigation in
which Illinois ASO customers successfully claimed
an entitlement  [FN3] to certain hospital cost refunds
obtained by Illinois Blue Cross under contracts
similar to those between appellant and Toledo area
hospitals.    Under these "97/105" contracts, 97
percent of billed charges were made as interim
payments;  if the interim payments exceeded 105
percent of reimbursable costs, any overpayment had
to be refunded. Reimbursable costs were established
by appellant's annual hospital cost audit. ASO
customers received no refund even though the
refunds were partly attributable to claims paid by
them.    The ASO contracts did not mention these
hospital cost refunds.    Appellant ultimately entered
into settlement agreements with approximately
twenty-five ASO customers, some ASO customers

contacted by appellees and others whom appellant had never contacted.

> **FN2.** Appellees' pre-trial motion to dismiss appellant's claims of extortion, false representation as an attorney, and false and malicious criticism of an insurance company was granted.

> **FN3.** Illinois ASO customers settled their claims for $13 million.

At the end of the trial, appellees moved for a directed verdict on all claims. The trial court granted the motion as to the civil conspiracy claim but denied the motion as to the three other claims. The jury returned a defense verdict. Appellant filed a timely appeal.

**\*2** Because the first and second assignments of error both assert that the trial court erred in the jury instructions, we will address them together. In the first and second assignments of error, respectively, appellant asserts that the trial court erred in its instruction as to appellees' defenses to the business interference claim and that a mid-deliberation instruction was contrary to law and earlier instructions.

5 O.Jur.3d, Appellate Review, Section 683, states:
> "A reviewing court may look into the record and if the judgment being reviewed on appeal is right for any reason, it is the duty of the reviewing court to affirm it, as is graphically shown by holdings on a wide variety of situations."

In *Laub v. Murphy* (1933), 16 Ohio Law Abs. 186, paragraph four of the syllabus, the appellate court held that when the evidence was such that the trial court would have been warranted in directing a verdict for the defendant, the judgment for the defendant would be affirmed even though the trial court erred in excluding evidence. In *Matcoski v. Canton* (1935), 54 Ohio App. 234, paragraph two of the syllabus, the court held that:
> "2. Inasmuch as the trial court should have directed a verdict for defendant * * *, the judgment of the trial court should be sustained, the reviewing court having power under Section 11364, General Code, to refuse to reverse any judgment by reason of error which does not affect the substantial rights of the adverse party."

Section 11364 is now R.C. 2309.59. See, also, *Kovach v. Mechanical Rubber Co.* (1932), 42 Ohio

App. 265 (an erroneous instruction does not amount to prejudicial error requiring a reversal of a judgment for the defendant where there is no evidence which would warrant a recovery for the plaintiff).

In *O'Day v. Webb* (1972), 29 Ohio St.2d 215, 220, the Ohio Supreme Court set forth the following standard for granting a directed verdict:
> "[I]t is also the duty of a trial court to withhold an essential issue from the jury when there *is not* sufficient evidence relating to that issue to permit reasonable minds to reach different conclusions on that issue. In other words, if all the evidence relating to an essential issue is sufficient to permit only a conclusion by reasonable minds against a party, after construing the evidence most favorably to that party, it is the duty of the trial court to instruct a finding or direct a verdict on that issue against that party." (Emphasis *sic.*)

Thus, if the evidence at trial failed to establish the required elements of any claim, the trial court should have granted a directed verdict on that claim. If the trial court should have granted a directed verdict, this court may disregard any alleged errors in the jury instructions and affirm the verdict for appellees.

A tortious interference claim requires a showing that appellees' actions induced or caused a third party to discontinue a business relationship with appellant. *Akron-Canton Waste Oil, Inc. v. Safety-Kleen Oil Serv.,Inc.* (1992), 81 Ohio App.3d 591; *Contadino v. Tilow* (1990), 68 Ohio App.3d 463. After thoroughly reviewing the trial transcript, this court concludes that the testimony adduced at trial failed to establish this element of the tortious interference claim. The evidence established that no ASO customer had discontinued being an ASO customer of appellant as a result of appellees' actions. Therefore, a directed verdict on the tortious interference claim should have been granted.

**\*3** A defamation claim requires appellant, as a public figure [FN4], to prove, by clear and convincing evidence, that appellees' statements were made with actual malice: with either actual knowledge of falsity or a high degree of awareness of probable falsity. *New York Times Co. v. Sullivan* (1964), 376 U.S. 254; *Curtis Publishing Co. v. Butts* (1967), 388 U.S. 130; *Dupler v. Mansfield Journal* (1980), 64 Ohio St.2d 116. There is no evidence that appellees entertained any doubt as to the truth of their statements. As noted by the Ohio Supreme Court in *Perez v. Scripps-Howard Broadcasting Co.* (1988), 35 Ohio St.3d 215, 218:

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

**FN4.** See, *Reliance Ins. Co. v. Barron's* (1977, SD NY), 442 F.Supp. 1341 (court noted that insurance company was a large government regulated corporation with more than a billion dollars in assets); and *National Life Ins. Co. v. Phillips Pub., Inc.* (1992, Md), 793 F.Supp. 627 (court held insurance company limited public figure required to establish malice in defamation action.)

"The proof of actual malice must be clear and convincing. *Gertz v. Robert Welch, Inc.* (1974), 418 U.S. 323, 342. In making that measurement, the focus is upon the defendant's attitude toward the truth or falsity of the published statements, rather than upon the existence of hatefulness or ill will. *Garrison v. Louisiana* (1964), 379 U.S. 64, 74; *Herbert v. Lando* (1979), 441 U.S. 153. The plaintiff's burden is to show with convincing clarity that: (1) the false statements were made with a high degree of awareness of their probable falsity, *Garrison, supra,* at 74, or (2) the defendant entertained serious doubts as to the truth of the publication, *St. Amant v. Thompson* (1968), 390 U.S. 727, 731. On appeal, the appellate court must exercise its independent judgment in deciding whether the evidence of record meets these tests. (Citations omitted.)
"On these basic principles, the law of Ohio and federal law are in accord." (Citations omitted.)

After thoroughly reviewing the trial transcript, this court concludes that the testimony adduced at trial failed to establish actual malice. Therefore, a directed verdict on the defamation claim should have been granted.

A deceptive trade practices claim is a separate tort from defamation. When the integrity or credit of a business has been impugned, a claim may be asserted under a defamation theory; when the quality of goods or services has been demeaned, a commercial disparagement claim may be asserted. [FN5] As stated by the court in *Crinkley v. Dow Jones And Co.,* (Ill.1978), 385 N.E.2d 714, 719 [FN6]:

**FN5.** See, *Brown & Williamson Tobacco Corp. v. Jacobson* (3rd Cir.1983), 713 F.2d 262; *American Pet Motels v. Chicago Vet. Med. Assn.* (Ill.1982), 435 N.E.2d 1297; *Crinkley v. Dow Jones And Co.* (Ill.1978), 385 N.E.2d 714.

**FN6.** In 1966, Illinois adopted the 1964 Uniform Deceptive Trade Practices Act, 815 ILCS 510/2. This provision is identical to R.C. 4165.02(H), enacted when Ohio adopted the 1966 Uniform Deceptive Trade Practices Act in 1969.

"But in the case at bar, the allegedly offending statement did not disparage the *quality* of plaintiff's services as an executive. The statement appears to have imputed want of integrity to plaintiff in his business, which may be actionable under a defamation theory." (Emphasis in original.)

The services provided by appellant to the ASO customers were the handling and paying of the ASO employees' medical claims. After thoroughly reviewing the trial transcript, this court concludes that the testimony at trial established that appellees' statements were not directed at the quality of the services provided. The statements were directed at appellant's integrity in its approach to the hospital settlements [FN7]. Therefore, a directed verdict on the deceptive trade practices claim should have been granted. Because this court concludes that a directed verdict should have been granted, we may disregard any alleged errors in the jury instructions [FN8] and affirm the verdict for appellees. Accordingly, appellant's first and second assignments of error are found not well-taken.

**FN7.** Appellant states in its brief: "Defendants' campaign against [appellant] assailed its business practices, its ethics, and the logical and legal integrity of its approach to the hospital settlements."

**FN8.** In the third assignment of error concerning the trial court's comments on fiduciary duty, but not set forth as a separate assignment of error, appellant argued that the trial court erred in instructing on appellant's fiduciary status and duties. The rationale of our disposition of the second and third assignments of error is applicable to this argument.

*4 In the third assignment of error, appellant argues that it was deprived of its right to a jury trial because of the trial judge's evidentiary rulings and extemporaneous comments. In regard to the evidentiary rulings, appellant argues that the trial

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in N.E.2d                                                                    Page 4
**(Cite as: 1996 WL 71006 (Ohio App. 6 Dist.))**

judge erred in refusing to take judicial notice of and admit a judgment entry from another case and erred in precluding the testimony of two witnesses.

A trial court has broad discretion in the exclusion of evidence. See, Evid.R. 403. When a party challenges a ruling on the exclusion of evidence by a trial court, an appellate court will not reverse the trial court's ruling unless the trial court abused its discretion. *O'Brien v. Angley* (1980), 63 Ohio St.2d 159, 163. "The term 'abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219. (Citations omitted).

After thoroughly reviewing the relevant portions of the record and the trial transcript, this court finds without merit appellant's argument that the trial court abused its discretion in its rulings regarding the consent judgment.

In regard to the expert witnesses, appellant sought to introduce expert testimony that appellees' conduct violated Ohio public policy against unauthorized practice of law and expert testimony concerning the appropriateness of its business practices in keeping the hospital refunds. Prior to trial, the trial court dismissed appellant's cause of action which alleged unauthorized practice of law. Appellant did not appeal that dismissal. Because that cause of action was dismissed, there was no need for expert testimony on that issue. We find no abuse of discretion in the exclusion of that expert.

The trial court granted appellees' motion *in limine* which sought to preclude expert testimony regarding the appropriateness of appellant's business practices because, as a non-attorney, the expert lacked the qualifications to opine on the obligations imposed on appellant by state law or contract. In *Ohio Turnpike Comm. v. Ellis* (1955), 164 Ohio St. 377, 386, *cert. denied* (1956), 352 U.S. 806, the Ohio Supreme Court stated:

"[T]he qualification or competency of a witness to testify as an expert or to give his opinion on a particular subject rests with the trial court, and, on appeal, its ruling with respect to such matters will ordinarily not be reversed unless there is a clear showing that the court abused its discretion."

We find no abuse of discretion in this expert's exclusion.

In regard to the trial court's extemporaneous comments, in one cited example, appellant argues that the trial judge, in commenting on appellant's

fiduciary duty to its customers, was wrong to make an analogy to a bank. However, the trial judge was merely recapping the testimony of appellant's own executives. [FN9] In regard to other comments cited by appellant as prejudicial, this court has thoroughly reviewed the entire trial transcript. This court concludes that many of the trial court's comments on evidence and the proceeding constituted efforts to keep the trial within reasonable bounds and/or were induced by behavior of counsel in a long and hotly contested trial. Using the criteria in *State v. Wade* (1978), 53 Ohio St.2d 182, 188 [FN10], vacated on other grounds, (1978), 57 L.Ed.2d 1157, to determine whether the trial judge's comments were prejudicial, we conclude that, within the context of the proceedings, the trial judge's comments represented the proper exercise of his authority to maintain order in the courtroom. Some comments demonstrated impatience with trial counsel for interrupting the judge while he made a ruling or for repeatedly challenging the judge's rulings or for pressing a line of questioning which was repetitive or irrelevant despite being cautioned by the judge.

FN9. One of appellant's executives testified that some ASO customers were required to make advance deposits, part of which was placed in appellant's general account from which withdrawals were made when disbursements were needed. In regard to appellant's reserves account into which the hospital cost refunds were deposited, appellant's former president testified that "It's a bank account. It's like a savings account * * *."

FN10. The Supreme Court of Ohio set forth this five-part test:
" * * * (1) The burden of proof is placed upon the defendant to demonstrate prejudice, (2) it is presumed that the trial judge is in the best position to decide when a breach is committed and what corrective measures are called for, (3) the remarks are to be considered in light of the circumstances under which they are made, (4) consideration is to be given to their possible effect upon the jury, and (5) their possible impairment of the effectiveness of counsel." 53 Ohio St.2d at 188.

**\*5** Furthermore, although we find no prejudice, any potential prejudice to appellant was offset by the trial

Not Reported in N.E.2d                                                              Page 5
**(Cite as: 1996 WL 71006 (Ohio App. 6 Dist.))**

court's jury instruction which cautioned the jurors against being influenced by any impressions they had of what the trial judge thought. We find without merit appellant's argument that the trial court's extemporaneous comments were prejudicial. Accordingly, appellant's third assignment of error is found not well-taken.

On consideration whereof, the court finds that substantial justice has been done the party complaining, and the judgment of the Lucas County Court of Common Pleas is affirmed. Appellant is ordered to pay the court costs of this appeal.

*JUDGMENT AFFIRMED.*

GLASSER and ABOOD, JJ., concur.

1996 WL 71006 (Ohio App. 6 Dist.)

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works