69 Fed.Appx. 178                                                                                                                     Page 1
**(Cite as: 69 Fed.Appx. 178, 2003 WL 21546001 (4th Cir.(Md.)))**

This case was not selected for publication in the Federal Reporter.

UNPUBLISHED

Please use FIND to look at the applicable circuit court rule before citing this opinion. Fourth Circuit Rule 36(c). (FIND CTA4 Rule 36(c).)

United States Court of Appeals,
Fourth Circuit.

John B. BOLLECH, Trustee; Kenneth A. Haapala, Trustee; Daniel C. Meisinger, Trustee; Dennis Winson, Trustee, Plaintiffs-Appellants,
v.
CHARLES COUNTY, MARYLAND; Board of County Commissioners of Charles County, Maryland; Charles County Planning Commission; Charles County Department of Planning and Growth Management, Defendants-Appellees.

No. 01-2385.

Argued June 3, 2003.
Decided July 10, 2003.

Real estate developers brought action against county alleging impairment of obligation of contract, in violation of Contracts Clause, and breach of contract. The United States District Court for the District of Maryland, Deborah K. Chasanow, J., 166 F.Supp.2d 443, entered summary judgment in favor of county, and developers appealed. The Court of Appeals held that developers' failure to meet their obligations under development agreement released county from its obligations under agreement.

Affirmed.

West Headnotes

**Constitutional Law** 🗝 **121(2)**
92k121(2)

**Zoning and Planning** 🗝 **376**
414k376

**Zoning and Planning** 🗝 **382.2**
414k382.2

Under Maryland law, real estate developers' failure to meet their obligations under development agreement with county to ensure development of adequate sewer and water facilities and to complete full development in timely manner released county from its obligations under agreement, and thus county's refusal to accept developers' application for preliminary plan for development because of amendments to local zoning regulations did not violate Contracts Clause, even though contract referred to ten-year construction period, where developers did not complete development by date indicated in contract. U.S.C.A. Const. Art. 1, § 10, cl. 1; Restatement (Second) of Contracts § 237.

***179** Appeal from the United States District Court for the District of Maryland, at Greenbelt. Deborah K. Chasanow, District Judge. (CA-01-38-DKC).

**ARGUED:** Robert Henry Freilich, Freilich, Leitner & Carlisle, Kansas City, Missouri, for Appellants. Kurt James Fischer, Piper Rudnick, L.L.P., Baltimore, Maryland, for Appellees. **ON BRIEF:** Marta D. Harting, Piper Rudnick, L.L.P., Baltimore, Maryland; Roger Lee Fink, County Attorney, County Commissioners of Charles County, La Plata, Maryland, for Appellees.

Before WILKINSON and MOTZ, Circuit Judges, and Robert R. BEEZER, Senior Circuit Judge of the United States Court of Appeals for the Ninth Circuit, sitting by designation.

Affirmed by unpublished PER CURIAM opinion.

**OPINION**

PER CURIAM.

****1** Appellants Bollech, Haapala, Mesisinger and Winson (the "Trustees") own land on which they planned to develop residential units. In 1989, the Trustees entered into a Development Agreement with Charles County and the Cliffton Potomac Associates Ltd. Partnerships I-X (the "Newburg Station Owners") for the residential development of land.

The Development Agreement's purpose was to assure the timely and orderly provision of water and sanitary sewer facilities to support (1) the proposed residential development on the Trustees' land (the

"Potomac Cliffs") and land owned by the Newburg Station Owners (the "Newburg Station"), and (2) a portion of existing developments on adjacent land. The Trustees and the Newburg Station Owners (collectively, the "Property Owners") were allowed under the Development Agreement to develop residential units in prescribed stages. In return, the Property Owners agreed to construct, within a certain amount of time, adequate public facilities (including upgrading, repairing and expanding the existing sewer plant) to serve the proposed residential development and a portion of the existing development on adjacent property.

In 1999, the Trustees submitted an application for a preliminary plan for development. The County refused to accept the application because amendments to the local zoning regulations prevented the County from approving the application. The Trustees claim the Development Agreement provides that the Trustees may develop the residential units on their land irrespective of changes in County land use regulations. In response, the County claims that the County is no longer obligated under the Development Agreement to approve the Trustees' development applications for building permits.

The Trustees brought suit against the County for (1) impairment of the obligation of contract in violation of the Contracts Clause, U.S. Const. Art. I, § 10, cl. 1; and (2) breach of contract. The district court entered an order granting the County's *180 motion for summary judgment and denying the Trustees' cross-motion for summary judgment. In a memorandum opinion, the district court stated that the Development Agreement no longer imposed an enforceable obligation on the County because the Trustees did not ensure the provision of adequate sewer and water facilities within the time period required by the Development Agreement.

We AFFIRM the district court's decision.

I

A district court's grant of summary judgment is reviewed *de novo*. Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir.1994). Summary judgment is proper where there is no genuine issue of material fact. Fed.R.Civ.P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). We look at the undisputed facts and draw all reasonable inferences in favor of the non-moving party. See Miller v. Leathers, 913 F.2d 1085, 1087 (4th Cir.1990). When both parties file summary judgment motions, as was done in this case, the district court rules on each motion on an individual and separate basis. See Mingus Constructors, Inc. v. United States, 812 F.2d 1387, 1391 (Fed.Cir.1987) (stating courts evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration).

II

**2 The Contracts Clause states that "No State shall ... pass any ... Law impairing the Obligation of Contracts." U.S. Const. Art. I, § 10, cl. 1. In order to prove a violation of the Contracts Clause, a plaintiff must first prove that there is an enforceable contract that the government has impaired in some manner. See United States Trust Co. of New York v. New Jersey, 431 U.S. 1, 17, 97 S.Ct. 1505, 52 L.Ed.2d 92 (1977); Allied Structural Steel Co. v. Spannaus, 438 U.S. 234, 244, 98 S.Ct. 2716, 57 L.Ed.2d 727 (1978). If there is no enforceable contract, there is no violation of the Contracts Clause. See City of Charleston v. Public Service Com'n of West Virginia, 57 F.3d 385, 391 (4th Cir.1995).

If there is an enforceable contractual obligation that has been impaired, the plaintiff must prove that the impairment was substantial. Baltimore Teachers Union v. Mayor and City Council of Baltimore, 6 F.3d 1012, 1014-15 (4th Cir.1993). If the impairment is substantial, the court then determine if the government action giving rise to the substantial impairment was reasonable and necessary to protect an important public interest. *Id.*

A

The County claims there was no enforceable contractual obligation to the Trustees at the time of the alleged impairment, 1999. Whether there is an enforceable contractual obligation is a question of contract interpretation. Maryland applies the principle of objective interpretation of contracts, which means that "where language employed in a contract is unambiguous, a court shall give effect to its plain meaning and there is no need for further construction by the court." Wells v. Chevy Chase Bank, 363 Md. 232, 768 A.2d 620, 630 (2001). "If a court properly determines that the contract is unambiguous on the dispositive issue, it may then properly interpret the contract as a matter of law and grant summary judgment because no interpretive facts are in genuine issue." World-Wide Rights Ltd. v. Combe Inc., 955 F.2d 242, 245 (4th Cir.1992) (citations omitted).

**\*181** The language of the Development Agreement indicates (1) that the Trustees had an obligation to expand and repair the existing sewage treatment plant as a predicate for development of the proposed residential units and (2) that the development of Potomac Cliffs was to take place by a specified date in 1994. In return, the County promised, among other things, to issue building permits upon application and upon compliance with applicable regulations, in accordance with the schedule set out in the Development Agreement.

The Development Agreement unambiguously imposes obligations on the Trustees. For instance, the Development Agreement states in § 4.1:
> The development of the property shall be supported by adequate levels of public facilities, including sanitary sewer facilities, water facilities, roadway facilities, stormwater management facilities.... All public facilities necessary to meet adequacy requirements shall be provided and initially financed by the property owners. Owners ... of the Potomac Cliffs Tract generally are responsible for providing public facilities to be situated on that tract.

**\*\*3** Under § 4.2.3 of the Development Agreement, the Newburg Station Owners had primary responsibility for the construction of sewer and water facilities, but § 4.2.2(c) states that the Trustees had responsibility for the construction of the facilities if the Newburg Station Owners failed to construct the facilities and the Trustees still planned to develop Potomac Cliffs.

In addition, § 3.2 of the Development Agreement requires the property owners to develop their property in phases. Section 3.2(a) details the schedule of construction phases in which Potomac Cliffs was to be developed. Full development of Potomac Cliffs by the Trustees was scheduled to be completed in 1994.

There is no factual dispute as to whether the Trustees developed Potomac Cliffs by 1994; not only had the Trustees failed to develop Potomac Cliffs by the specified date, but the Trustees failed to ensure the development of adequate sewer and water facilities as required by the Development Agreement in Section 4.2.6(a), which states, in part: "Construction of the additional capacity [to the existing sewer facility] shall be pursued in a timely and reasonable manner, subject to timely approval by the appropriate authorities, so as to meet the schedule for development set forth in Section 3.2 of this Agreement."

The Trustees' failure to meet their obligation under the Development Agreement released the County from the County's obligations under the Agreement. See Wilcom v. Wilcom, 66 Md.App. 84, 502 A.2d 1076, 1081 (1986) (citing Restatement (Second) of Contracts § 237). A material failure to perform by one party "prevents performance of [the other party's remaining duties] from becoming due, at least temporarily, and it discharges those duties if it has not been cured during the time in which performance can occur." Restatement (Second) of Contracts § 237 cmt. a. The County was discharged from any enforceable contractual obligation after the Trustees failed to perform within the time period specified in the Development Agreement.

B

The Trustees make the following arguments: (1) the district court erred in finding that the Development Agreement imposes a six-year termination date; (2) the district court erred in not finding the Trustees entitled to summary judgment because the County allegedly impaired the obligations of the Development Agreement **\*182** by enacting intervening regulatory changes; (3) the district court erred because there are material factual disputes and the district court erroneously considered extrinsic evidence; (4) the district court improperly relied on affidavits which do not comply with Rule 56; and (5) res judicata bars the County from arguing a defense of termination of contract based on the Trustees' breach of contract. None of the Trustees' arguments alter the conclusion that the County was released from its obligations to the Trustees upon the Trustees' failure to perform within the specified time.

1

The Trustees argue that the district court erred in finding that the Development Agreement imposes a six-year termination date. The Trustees point out that the Development Agreement expressly required construction to extend over a period of ten years. In addition, the Trustees argue that because the Development Agreement had no express termination date, the Development Agreement is valid for a reasonable amount of time. See Goldman, Skeen & Wadler, P.A. v. Cooper, Beckman & Tuerk, L.L.P., 122 Md.App. 29, 712 A.2d 1, 9 (1998) (stating that in the in the absence of a specific termination date, a contact is valid for a reasonable period of time).

**\*\*4** The district court did not find that the Development Agreement terminated after six years.

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

The district court recognized that the Trustees were obligated to develop the residential units on their property within the time specified in the Development Agreement under § 3.2. Section 3.2(a) requires that the Potomac Cliffs area be developed by August 12, 1994. In addition, § 4.2.6(a) requires the construction of additional capacity at the existing sewer facility in time to meet the schedule in Section 3.2. Section 4.2.6(a) also requires that the design documents for the construction of additional capacity be submitted for approval to the appropriate authorities no later than six months after the effective date of the Agreement. The Trustees did not meet their obligations within the specified time periods. The Trustees' failure to perform released the County from the County's obligations after the specified time periods elapsed. *See* Wilcom, 502 A.2d at 1081; Restatement (Second) of Contracts § 237 cmt. a.

The reference to the ten year construction period does not extend the period in which the Trustees can perform. Section 3.2 states that "[t]he construction schedule shall extend over a period of a minimum of ten (10) years, commencing, for the purpose of this Agreement, August 12, 1988." This language applies to the development of both Potomac Cliffs and Newbury Station as a unit. Section 3.2 lays out the phases, within the ten year period, in which each property must be developed. Section 3.2(a) lays out the plan for Potomac Cliffs, which involves five phases, the last ending in August 1994. Section 3.2(b) lays out the plan for Newbury Station, which involves nine phases, the last ending in August 1998.

The County's obligation to the Trustees were discharged after August 1994. The district court correctly held that there was no enforceable contract obligation between the County and the Trustees at the time the alleged violation occurred.

2

The Trustees argue that the district erred in not finding the Trustees entitled to summary judgment because the County allegedly impaired the obligations of the Development Agreement by enacting regulatory changes which precluded the Trustees from obtaining approval for its **\*183** preliminary plan in 1999. The lack of a contractual obligation in 1999 precludes this argument. *See* City of Charleston, 57 F.3d at 391 ("*Only if there is a contract,* which has been substantially impaired, and there is no legitimate public purpose justifying the impairment, is there a violation of the Contract Clause.") (emphasis added).

3

The Trustees claim that there are material facts in dispute and that the district court erroneously considered extrinsic evidence. The Trustees demonstrate that the district court's memorandum opinion relies primarily on the County's facts in presenting the history and context out of which the Development Agreement arose. The Trustees do not demonstrate that the district court relied on a factual finding where the fact was actually the subject of genuine dispute. In addition, the Trustees did not identify any extrinsic evidence actually used by the district court in interpreting the contract. The district court's decision relied on the unambiguous terms of the contract to resolve the legal question whether the County was bound by an enforceable contractual obligation. The district court's grant of summary judgment was proper because no interpretive facts are in genuine issue. World-Wide Rights Ltd., 955 F.2d at 245.

4

**\*\*5** The Trustees argue that the County's motion for summary judgment lacked support because the County's affidavits do not comply with Fed.R.Civ.P. 56(e). Rule 56(e) states:

 Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.... When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

The affidavits cited by the district court were used to provide history and background; the affidavits were not used to interpret the Development Agreement. The district court relied exclusively on the terms of the Development Agreement in reaching its decision. We need not decide whether the affidavits supplied by the County were defective because the district court did not rely on facts contained in the affidavits in reaching its legal conclusion. Rather, the court properly determined that the Development Agreement was unambiguous on the dispositive issue. *See* World-Wide Rights Ltd., 955 F.2d at 245.

5

69 Fed.Appx. 178                                                                                             Page 5
**(Cite as: 69 Fed.Appx. 178, 2003 WL 21546001 (4th Cir.(Md.)))**

The Trustees claim that res judicata bars the County from arguing a defense of termination of contract based on the Trustees' breach of contract. This argument was not raised before the district court and is waived. *Washington Metro. Area Transit Auth. v. Precision Small Engines,* 227 F.3d 224, 227-28 (4th Cir.2000).

### III

The district court held that there was no breach of contract for the same reason there was no Contracts Clause violation: at the time of the alleged violation, there was no enforceable contractual obligation **\*184** against the County. The above analysis validates the district court's decision.

### IV

Summary judgment for the County was proper. Viewing the evidence in the light most favorable to the Trustees, there was no violation of the Contracts Clause and there was no breach of contract because the County was no longer under an enforceable contractual obligation after 1994. None of the arguments raised by the Trustees on appeal alter the above analysis.

As summary judgment for the County was proper, the district court properly denied the Trustees' cross-motion for summary judgment.

We affirm (1) the district court's grant of the County's motion for summary judgment and (2) the district court's denial of the Trustees cross-motion for summary judgment.

*AFFIRMED.*

69 Fed.Appx. 178, 2003 WL 21546001 (4th Cir.(Md.))

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works