Not Reported in N.E.2d                                                    Page 1
2001-Ohio-3407
**(Cite as: 2001 WL 1665624 (Ohio App. 7 Dist.))**

CHECK OHIO SUPREME COURT RULES FOR REPORTING OF OPINIONS AND WEIGHT OF LEGAL AUTHORITY.


Court of Appeals of Ohio, Seventh District, Columbiana County.

FAIRFIELD MACHINE CO., INC., et al., Plaintiffs-Appellants,
v.
AETNA CASUALTY AND SURETY CO., et al., Defendants-Appellees.

**No. 2000 CO 14.**

Dec. 28, 2001.


Appeal from Columbiana County Common Pleas Court, Case No. 98 CV 127, Judgment Affirmed in Part, Reversed in Part and Remanded.


Attorney Janice O'Halloran, Manos, Pappas & Stefanski, Co. LPA, Youngstown, OH, for plaintiffs-appellants.

Attorney David Mellott, Attorney Mark Phillips, Cleveland, OH, for defendants-appellees.


JOSEPH J. VUKOVICH, GENE DONOFRIO and MARY DEGENARO, JJ.


OPINION

DEGENARO, J.

**\*1** This timely appeal comes for consideration upon the record in the trial court, the parties' briefs, and their oral arguments before this court. This case arises as a direct result of a jury verdict which was affirmed by the Eleventh District in *Doyle v. Fairfield Machine Co.* (1997), 120 Ohio App.3d 192, 697 N.E.2d 667, (hereinafter "the Doyle action"). Plaintiffs-Appellants, Fairfield Machine Company (hereinafter "Fairfield"), Northeast Fabricators, Inc. (hereinafter "Northeast"), and Alex Shashaty (hereinafter "Shashaty") (hereinafter collectively referred to when appropriate as "Appellants"), appeal the trial court's decision granting summary judgment for Defendants-Appellees, Aetna Casualty and Surety Company (hereinafter "Aetna") and Standard Fire

Insurance Company (hereinafter "Standard Fire") (hereinafter collectively referred to when appropriate as "Appellees") and denying summary judgment for Appellants. For the following reasons, we conclude the trial court properly found the Doyle action was either not covered or was excluded from coverage under Appellants' insurance policies. However, the trial court erred when it granted summary judgment against Northeast because Appellees were estopped from denying coverage to Northeast. Therefore, we reverse the trial court's decision to grant summary judgment against Northeast and remand for further proceedings in accordance with this opinion.

Shashaty was Fairfield's sole owner and the principal owner of two other companies, Northeast and Cyril Bath. In December 1989, Shashaty handpicked James Hynes (hereinafter "Hynes") to serve as controller for Fairfield and to be subcontracted to perform controlling duties for Northeast and Cyril Bath. Shashaty, Northeast, and Fairfield were all insured by Standard Fire, a subsidiary of Aetna.

One of Hynes' first duties was to obtain group health insurance coverage for Shashaty's three companies as their current health insurance carrier indicated it was going to raise Fairfield's premiums based upon its employees' recent claim history. When the current health insurance carrier notified Hynes of its intention to raise premiums, it supplied him with a claims history for Fairfield employees over an eight-month period which showed each claim for each employee. This claims history report showed some Fairfield employees and their dependents were suffering from serious health problems, including serious breathing abnormalities, late-stage cancer which required radical, aggressive treatment, and a serious cardiac condition.

While searching for the best bid, Hynes met with Matthew Doyle (hereinafter "Doyle"), an employee of State Mutual Life Assurance Company (hereinafter "State Mutual"), on August 27, 1990, a group insurance sales representative. Prior to the meeting, Hynes arranged to give Doyle a one page summary of the recent claims history which listed the total claims submitted for each company during that time period. During the meeting, Doyle asked two questions pertinent to this appeal: 1) whether any employee or dependent had incurred more than $5,000 or more in claims in the past twelve months and 2) whether any possible insured had been treated for a serious illness which had not been addressed in the previous question. Hynes responded in the negative to these questions both orally to Doyle and

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in N.E.2d
2001-Ohio-3407
(Cite as: 2001 WL 1665624 (Ohio App. 7 Dist.))

in the written application.

 **\*2** At the close of the meeting, Hynes asked Doyle to sign a purported "letter of binding". This letter appeared to bind State Mutual to coverage immediately. However, Doyle told Hynes that Doyle had no authority to sign the letter. Furthermore, the application contained a clause denying State Mutual's employee, Doyle, the authority to bind State Mutual. However, Hynes insisted it was just a favor to satisfy Shashaty and that it would not come back to haunt Doyle. Doyle signed the letter because he felt Fairfield had a clean application and there should be no problem underwriting their group health insurance.

 Subsequently, State Mutual discovered the true nature of Fairfield's employees' recent claims history and denied coverage for the quoted price. At Shashaty's direction, Hynes and Fairfield sent a letter to the Department of Insurance complaining of Doyle's and State Mutual's actions, claiming in part that Doyle misled them into believing he had the authority to bind State Mutual based on the letter Hynes asked him to sign at the August 27, 1990 meeting. Doyle was subsequently fired by State Mutual due, in part, to the letter sent to the Department of Insurance by Hynes and Fairfield. It is the substance of the August 27, 1990 meeting and the events subsequent to that meeting which were the basis of Doyle's underlying action.

 On November 26, 1991, Doyle filed a complaint against Fairfield and Hynes alleging four counts: 1) fraud, 2) negligent misrepresentation, 3) defamation, and 4) intentional or tortious interference with an employment relationship. Upon receiving the complaint, Hynes contacted the independent insurance agent for Fairfield, Richard Janus (hereinafter "Janus"). Janus then notified Fairfield's insurance carrier, Aetna, of the complaint at its Cleveland office.

 Aetna sent a "reservation of rights" letter to Hynes and Shashaty, as president of Fairfield, stating Aetna reserved the right to disclaim coverage if Aetna later found the claims were excluded from coverage. That letter also stated Fairfield and Hynes' defense had been referred to Reminger & Reminger Co., L.P.A. (hereinafter "Reminger Firm"). After consulting with Hynes, the Reminger Firm filed an answer to Doyle's complaint.

 After receiving the court's permission, Doyle filed an amended complaint on February 8, 1993 adding

Shashaty and Northeast as defendants. When Shashaty received Doyle's amended complaint with a copy of the summons at his residence, he saw the summons identified the parties as "Fairfield Machine Company, Inc., et al." and, not realizing he was a party to the suit personally and mistakenly thinking he received Fairfield's complaint, forwarded the amended complaint to Hynes who forwarded it to Janus. Aetna then received the amended complaint from Janus and referred it to the Reminger Firm, apparently assuming the claim fell within the Fairfield policy and not realizing both Shashaty and Northeast also had independent insurance policies with the insurance companies. Aetna did not send a reservation of rights letter to either Shashaty or Northeast.

 **\*3** All parties made motions and cross-motions for summary judgment and, on February 7, 1994, the trial court granted summary judgment for the defendants, Hynes, Fairfield, Northeast, and Shashaty, on Doyle's negligent misrepresentation and defamation claims. However, the trial court did not grant the defendants' motion for summary judgment on the issues of fraud and tortious interference, setting these claims for trial. Because the terms of Fairfield's insurance policy provided Aetna would not cover damages arising from intentional conduct, on November 8, 1994, Aetna informed Hynes it no longer had an obligation to defend the action. At that time, trial was set for February 1995. Shashaty responded to this letter on December 16, 1994, demanding Aetna either continue to provide a defense or settle the claim. Aetna agreed to pay for the defense of the action, but refused to indemnify the defendants should the trial court render a judgment against them.

 The case proceeded to jury trial on June 12, 1995. After four days of trial, the jury returned a judgment of $1.4 million against the defendants. The trial court later denied a motion for prejudgment interest, a motion for judgment notwithstanding the verdict, and a motion for a new trial. The judgment was affirmed on May 5, 1997 by the Eleventh District in *Doyle, supra.*

 On March 13, 1998, Shashaty, Northeast, and Fairfield commenced the action *sub judice.* They assert three causes of action against Standard Fire and Aetna: 1) breach of contract; 2) negligent performance of duty; and, 3) breach of duty of good faith. Janus, the Reminger Firm, and the attorneys within the Reminger Firm were also named defendants pursuant to various theories of recovery.

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in N.E.2d                                                                    Page 3
2001-Ohio-3407
(Cite as: 2001 WL 1665624 (Ohio App. 7 Dist.))

The claim against Janus was voluntarily dismissed pursuant to Civ.R. 41(A)(1)(a). Following discovery, Standard Fire, Aetna, and the Reminger Firm defendants filed motions for summary judgment, with Appellants filing cross- motions. On January 4, 2000, the trial court granted summary judgment for Standard Fire and Aetna, denied summary judgment for Appellants and the Reminger Firm and its attorneys. Appellants claim against the Reminger Firm and its attorneys went to jury trial on January 27, 2000 and resulted in a verdict for the law firm. It is from the trial court's summary judgment in favor of Standard Fire and Aetna that Shashaty, Northeast and Fairfield appeal.

As their sole assignment of error, Appellants argue:
    "The trial court erred when it granted summary judgment in favor of Aetna Casualty and Standard Fire against Northeast, Shashaty and Fairfield."
Appellants present two different issues within this assignment of error: 1) whether the underlying judgment was either not covered by Appellants' policies or excluded from coverage pursuant to those policies; and, 2) whether Appellees have waived or are estopped from denying coverage to Northeast and Shashaty for not sending them a reservation of rights letter.

  *4 Under Civ.R. 56(C), a court may grant summary judgment only when it determines:
    "(1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion when viewing evidence in favor of the nonmoving party, and that conclusion is adverse to the nonmoving party." Doe v. Shaffer (2000), 90 Ohio St.3d 388, 390, 738 N.E.2d 1243, 1245.
    "[T]he moving party bears the initial responsibility of informing the trial court of the basis for motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of fact or material element of the nonmoving party's claim." Drescher v. Burt (1996), 75 Ohio St.3d 280, 296, 662 N .E.2d 264, 276.
  The nonmoving party has the reciprocal burden of specificity and cannot rest on mere allegations or denials in the pleadings. Id. at 293, 662 N.E.2d at 274. An appellate court must review the grant of summary judgment de novo. Shaffer at 390, 738 N.E.2d at 1245.

  Each insurance policy excludes coverage of an injury "expected or intended by the insured." Appellants first argue summary judgment should not

have been granted Appellees because the jury verdict against them in the Doyle action for an intentional tort does not prove Appellants expected or intended the injury. Appellees argue the claims tried in the Doyle action were not covered because the injury suffered by Doyle does not fall within the scope of the coverage provided by the policies and, even if it does, the insureds' conduct excludes coverage under the policies.

  In the Doyle action, the only claims which went to trial were those of fraud and intentional interference with an employment relationship. Doyle claimed the intentional interference and fraud proximately caused him deprivation of his employment relationship with State Mutual, a loss of income and earning capacity, damage to his reputation, and great pain and mental anguish.

  "It is axiomatic that an insurance company is under no obligation to its insured, or to others harmed by the actions of an insured, unless the conduct alleged of the insured falls within the coverage of the policy." Gearing v. Nationwide Ins. Co. (1996), 76 Ohio St.3d 34, 36, 665 N.E.2d 1115, 1117. The insured generally has the burden of demonstrating coverage under the policy and then proving a loss. Chicago Title Ins. Co. v. Huntington Natl. Bank (1999), 87 Ohio St.3d 270, 273, 719 N.E.2d 955, 959. To do this, "[t]he insured must show facts sufficient to prove that its loss was within the description of the policy." Sterling Merchandise Co. v. Hartford Ins. Co. (1986), 30 Ohio App.3d 131, 137, 30 OBR 249, 255, 506 N.E.2d 1192, 1198. However, once a plaintiff establishes coverage under the insurance policy, the ultimate burden of persuasion is on the insurer to establish the applicability of any exclusion by a preponderance of the evidence. Evans v. National Life and Acc. Ins. Co. (1986), 22 Ohio St.3d 87, 93, 22 OBR 123, 128, 488 N.E.2d 1247, 1252 (Celebreeze, C.J., dissenting). Therefore, we must first determine whether there is coverage under the policy. If so, we then determine whether any policy exclusions apply. In order to find coverage, we must determine whether the injuries suffered as a proximate cause of Doyle's theories of recovery were within the scope of the policy's coverage.

  *5 Shashaty's policy covers all personal injury or property damage resulting from an accident which occurs during the policy period. The policy defines "personal injury" as bodily injury, shock, mental anguish, sickness or disease, false arrest, detention or imprisonment, malicious prosecution, wrongful entry or eviction, humiliation, libel or slander, defamation

Not Reported in N.E.2d                                                    Page 4
2001-Ohio-3407
**(Cite as: 2001 WL 1665624 (Ohio App. 7 Dist.))**

of character, and invasion of privacy. In his complaint, Doyle alleged "great pain and mental anguish" as a result of Appellants' actions. Because mental anguish is defined as a personal injury in the policy, Shashaty's policy provided him coverage for the type of injury alleged. However, Shashaty's policy excluded any injury "arising out of the business pursuits of any insured" from coverage. Therefore, even though Shashaty's policy covered the type of damages awarded to Doyle, that coverage is excluded under Shashaty's policy because the injuries arose out of his business pursuits, namely, obtaining health insurance coverage for his employees.

Fairfield and Northeast's policies are identical in all aspects relevant to the issue of coverage, using precisely the same language to define what is covered and what is excluded. Each policy covers those sums the insured becomes legally obligated to pay as damages because of bodily injury or property damage as long as the injury or damage is caused by an occurrence that takes place in the coverage territory and occurs during the policy period. The policies also cover those sums the insured becomes legally obligated to pay as damages resulting from a personal injury arising out of the insured's business, excluding advertising, publishing, broadcasting or telecasting done by or for the insured or advertising injury caused by an offense committed in the course of advertising the insured's goods, products or services. The policy defined "personal injury" as any injury arising out of false arrest, detention or imprisonment, malicious prosecution, wrongful eviction or wrongful entry, oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services, or oral or written publication of material that violates a person's right of privacy.

Doyle did not allege any property damage, bodily injury, or injuries resulting from Northeast's or Fairfield's advertising their goods, products or services. Coverage under either Fairfield or Northeast's policies would exist only if Doyle's claims of fraud and intentional interference with an employment relationship caused him a personal injury as defined in the policies.

The definition of personal injury in Northeast's and Fairfield's policies include oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services. "There are two forms of defamation: libel and slander. Generally, slander refers to spoken defamatory words

and libel refers to written defamatory words." *Sweitzer v. Outlet Communications, Inc.* (1999), 133 Ohio App.3d 102, 108, 726 N.E.2d 1084, 1088. Doyle did not suffer a personal injury because of libel, slander or defamation because the trial court in the Doyle action specifically dismissed these claims. Furthermore, the letter to the Department of Insurance did not disparage Doyle's goods, products or services.

**\*6** This last example of personal injury as defined in the policy is strikingly similar to one of the definitions of a deceptive trade practice found in R.C. 4165.02. "A person engages in a deceptive trade practice when, in the course of the person's business, vocation, or occupation, the person * * * [d]isparages the goods, services, or business of another by false representation of fact." R.C. 4165.02(A)(10). As the Sixth District explained in *Blue Cross & Blue Shield of Ohio v. Schmidt* (Feb. 16, 1996), Lucas App. No. L-94-291, unreported:

"A deceptive trade practices claim is a separate tort from defamation. When the integrity or credit of a business has been impugned, a claim may be asserted under a defamation theory; when the quality of goods or services has been demeaned, a commercial disparagement claim may be asserted. As stated by the court in *Crinkley v. Dow Jones And Co.,* (Ill.1978), 385 N.E.2d 714, 719:

'But in the case at bar, the allegedly offending statement did not disparage the quality of plaintiff's services as an executive. The statement appears to have imputed want of integrity to plaintiff in his business, which may be actionable under a defamation theory.' " (Emphasis *sic.*) (Footnotes omitted) *Id.* at 3.

Therefore, in order for the policy to provide coverage, the letter to the Department of Insurance must have disparaged the quality of Doyle's services, *i.e.* his job performance, not his integrity. However, a review of the letter reveals it disparaged Doyle's integrity, not his job performance. It suggests Doyle misrepresented his authority at the August 27, 1990 meeting rather than alleging he performed his job incompetently. Thus, neither the Northeast nor the Fairfield policy provided coverage against Doyle's action.

Appellants next argue that regardless of whether or not coverage existed or was excluded, Appellees either waived that argument or are estopped from raising a lack of coverage to Northeast and Shashaty because they failed to reserve the right to disclaim coverage once they began defending the Doyle action. Appellees sent a letter reserving their right to

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

later deny coverage if that action was warranted to Fairfield, but never sent such a letter either personally to Shashaty or to Northeast.

"An insurer's duty to defend is separate and distinct from its duty to indemnify." *Erie Ins. Exchange v. Colony Dev. Corp.* (1999), 136 Ohio App.3d 406, 412, 736 N.E.2d 941, 946. This duty to defend is broader than the duty to indemnify. *Red Head Brass, Inc. v. Buckeye Union Ins. Co.* (1999), 135 Ohio App.3d 616, 625, 735 N.E.2d 48, 54 citing *Socony-Vacuum Oil Co. V. Continental Cas. Co.* (1945), 144 Ohio St. 382, 29 O.O. 563, 59 N.E.2d 199, paragraph one of the syllabus. "As long as the complaint contains some claim which is arguably within the scope of the policy coverage, the insurer is obliged to defend the insured." *Id.* citing *Sanderson v. Ohio Edison Co.* (1994), 69 Ohio St.3d 582, 635 N.E.2d 19, paragraph one of the syllabus. Once it is determined there is no possibility of coverage under the policy based on the allegations in the complaint, an insurer no longer has the duty to defend the insured. *Wedge Products, Inc. v. Hartford Equity Sales Co.* (1987), 31 Ohio St.3d 65, 67-68, 31 OBR 180, 181-182, 509 N.E.2d 74, 75-76. Even if the underlying action eventually produces a result which does not trigger a duty to indemnify under the policy, this has no bearing on whether the insurer had a duty to defend the action. *Preferred Mut. Ins. Co. v. Thompson* (1986), 23 Ohio St.3d 78, 80, 23 OBR 208, 209-210, 491 N.E.2d 688, 690. An insurer's failure to honor the duty to defend constitutes a material breach of the contract. *Sanderson* at 586, 635 N.E.2d at 23.

**\*7** Whenever an insured fulfills its duty to defend by assuming control of a defense for an insured but also intends to challenge its duty to indemnify if the defense is unsuccessful, then it creates a potential conflict of interest. *Collins v. Grange Mut. Cas. Co.* (1997), 124 Ohio App.3d 574, 577, 706 N.E.2d 856. In order to cure this potential conflict, an insurer must warn the insured of the conflict by reserving its rights under the policy. *Dietz-Britton v. Smythe* (2000), 139 Ohio App.3d 337, 344, 743 N .E.2d 960, 966. To effectively reserve its rights under the policy, an insurer would notify the insured it will defend the suit, but reserve all rights it has based on non-coverage under the policy. *Motorists Mut. Ins. Co. v. Trainor* (1993), 33 Ohio St.2d 41, 45, 62 O.O.2d 402, 404, 294 N.E.2d 874, 877.

"An insurer's reservation of rights is important because insurers often find themselves in positions that might create a conflict of interest. In some circumstances, an insurer might believe that its insured's conduct constitutes excluded conduct under an insurance policy. Hence, it may be to the insurer's financial advantage to see that the conduct is excluded, thus precluding indemnification. This constitutes a potential (though not necessarily actual) conflict of interest. See *Collins v. Grange Mut. Cas. Co.*, 124 Ohio App.3d at 577, 706 N.E.2d at 858. Under such circumstances, the insurer is obligated to defend the action but reserves its rights to indemnification. This way, the client can make a knowing choice whether to proceed with representation and the possible conflict, or obtain independent counsel." *Dietz-Britton* at 345, 743 N.E.2d at 966.

Appellants argue Appellees failure to inform Shashaty and Northeast of their intention to reserve their rights under the policy mean Appellees' waived their ability to deny coverage or estop them from denying coverage. Generally, the doctrines of waiver and estoppel may not be used to expand insurance coverage. *Erie Ins. Co. v. Favor* (1998), 129 Ohio App.3d 644, 649, 718 N.E.2d 968, 972; *Hybud Equip. Corp. v. Sphere Drake Ins. Co., Ltd* . (1992), 64 Ohio St.3d 657, 668, 597 N.E.2d 1096, 1103-1104. There are three reasons for this general rule:

"(1) a court cannot create a new contract for the parties; (2) an insurer should not be required to pay for a loss for which it charged no premium; and (3) a risk should be not imposed upon an insurer which it might have denied." *Insurance Co. of North America v. Travelers Ins. Co.* (1997), 118 Ohio App.3d 302, 318, 692 N.E.2d 1028, 1038.

Ohio courts have recognized an exception to the general rule and allow an insurance company to lose its right to assert policy limitations by waiver or estoppel. *Hounshell v. American States Ins. Co.* (1981), 67 Ohio St.2d 427, 430, 21 O.O.3d 267, 269, 424 N .E.2d 311, 314. As the Ninth District explained:

"In cases where the insurer represents the insured without a reservation of rights, the insured may be prejudiced by the legal strategy adopted by the insurer. Absent a reservation of rights, the insurer should not be able to terminate its representation of the insured regardless of when it concludes it is not required to defend its insured. To ignore the actions of the insurer would be an 'unfortunate triumph of form over substance.' [*Harr v. Allstate Ins. Co.* (1969), 54 N.J. 287,] 307, [255 A.2d 208,] 219.

**\*8** "If the insurer is saddled with coverage it may not have intended or desired, it is of its own making. The insurer has the ability to protect itself against such claims by ensuring that its customers receive the coverage they request or by entering a defense of a claim that may not be covered by the

policy only after reserving its right to raise policy defenses at a later time. Waiver and estoppel should apply only in those cases where there is a clear misrepresentation of fact or when the insurer provides a defense without reserving its rights for a period sufficient to prejudice the insured's ability to conduct its own defense." (Emphasis added) *Turner Liquidating v. St. Paul Surplus Lines Ins. Co.* (1994), 93 Ohio App.3d 292, 299, 638 N.E.2d 174, 180.

"To hold otherwise would allow the insurer to conduct the defense of the action without the knowledge of the insured that a conflict of interest exists between itself and the insurer." *Equity General Ins. Co. v. C & A Realty Co.* (1985), 148 Ariz. 515, 518, 715 P.2d 768, 771.

Although Shashaty and Northeast clearly pled all the elements of estoppel in their complaint, Shashaty cannot claim coverage via the doctrines of waiver and estoppel because he never invoked Appellee's duty to defend the suit. Pursuant to his policy, in order to make a claim with the insurance company, Shashaty had to give written notice to the insurance company or its agent as soon as practicable, which sets forth, among other things, the identity of the policy and insured. Although the trial court found Shashaty substantially complied with the policies notification requirements and that substantial compliance was sufficient to invoke Appellee's duty to defend, the policy's terms place the burden of identifying the policy with Shashaty, not the insurance company. Therefore, whether the insurance company could have discovered his policy during the course of defending Fairfield's suit is immaterial. It did not have the affirmative duty to discover whether Shashaty's policy may cover the suit.

In the present case Shashaty merely ensured the amended complaint was forwarded to the insurance company without telling the insurance company of the existence of his policy. In his deposition, Shashaty testified he did not know he was party to the suit until December 1994. The insurance company was not properly notified and did not have the duty to defend under Shashaty's policy. Without this duty, the insurance company cannot be deemed either to have waived or be estopped from asserting the defense of non-coverage.

In contrast, Northeast properly invoked Appellees' duty to defend the Doyle action. Although Northeast's president did much the same thing Shashaty did when he received a copy of the amended complaint, *i.e.* he gave it to Hynes who sent

it to Independent Agent Janus who sent it to Aetna, Northeast's policy merely requires timely written notice stating the specifics of the claim. As the trial court stated, it is "specious argument" to contend a copy of the amended complaint would not operate as written notice of the claim pursuant to the policy. Therefore, Appellees had the duty to defend Northeast in the Doyle action. Because Appellees did, in fact, provide a defense for Northeast at trial, and neglected to reserve their right to later deny coverage, they may be estopped from denying coverage.

**\*9** Waiver is the voluntary relinquishment of a known right and may be express or implied. *State ex rel. Wallace v. State Med. Bd. of Ohio* (2000), 89 Ohio St.3d 431, 435, 732 N.E.2d 960, 965. "Waiver exists when an insurer, by acts or declarations, evidences a recognition of liability under the policy." *Leader Natl. Ins. Co. v. Eaton* (1997), 301 Ohio App.3d 688, 692, 696 N.E.2d 236, 239. "By contrast, the doctrine of equitable estoppel precludes a party from asserting certain facts where the party, by his conduct, has induced another to change his position in good faith reliance upon the party's conduct." *Turner Liquidating* at 295, 638 N.E.2d at 176. "The purpose of equitable estoppel is to prevent actual or constructive fraud and to promote the ends of justice." *Ohio State Bd. of Pharmacy v. Frantz* (1990), 51 Ohio St.3d 143, 145, 555 N.E.2d 630, 633. The doctrine of equitable estoppel has four elements: (1) a factual misrepresentation (2) which is misleading (3) and induces reasonable and good faith reliance (4) to the detriment of the relying party. *Helman v. EPL Prolong, Inc.* (2000), 139 Ohio App.3d 231, 246, 743 N.E.2d 484, 495.

"In assessing these four elements in the context of a particular case, relevant factors include: ' * * * [ (a) ] the nature of the representation; (b) whether the representation was in fact misleading; (c) the relative knowledge and experience of the parties; (d) whether the representation was made with the intent that it be relied upon; and (e) the reasonableness and good faith of the reliance, given all the facts and circumstances.' 'D7D *Doe v. Blue Cross/Blue Shield of Ohio* (1992), 79 Ohio App.3d 369, 379, 607 N.E.2d 492, 499 quoting *First Fed. S. & L. Assn. v. Perry's Landing, Inc.* (1983), 11 Ohio App.3d 135, at 145, 11 OBR 215, at 227, 463 N.E.2d 636, at 648.

With regard to the first two elements of equitable estoppel, the Ohio Supreme Court has indicated a plaintiff must show either actual or constructive fraud. *Helman* at 246, 743 N.E.2d at 496 citing *State ex rel. Ryan v. State Teachers Retirement Sys.* (1994),

*71 Ohio St.3d 362, 368, 643 N.E.2d 1122, 1127-1128.* Fraud can be either an affirmative misstatement of fact or, where there is a duty to disclose, concealment of a fact which is material to the transaction at hand. *Williams v. Aetna Fin. Co. (1998), 83 Ohio St.3d 464, 475, 700 N.E.2d 859, 868.* As *Turner Liquidating* indicates, when an insurer creates a potential conflict of interest between it and the insured by defending the insured but later denies coverage without previously informing the insured of the potential conflict in a reservation of rights letter, then through its conduct, the insurer has concealed a material fact. See *Id. at 299, 638 N.E.2d at 179.* Because Appellees concealed a material fact and Northeast relied upon that fact, the only question is whether Northeast was prejudiced by that reliance.

Northeast relies upon *Insurance Co. of North America* to argue there is a conclusive presumption of prejudice when an insurance company fails to notify its insured that it reserves its right to deny coverage after it has assumed the duty to defend the insured. However, the Eighth District, which decided *Insurance Co. of North America,* rejected the idea in *Dietz-Britton,* stating, "we must determine whether [the insurer]'s late reservation of rights caused plaintiff prejudice." *Id. at 348, 743 N.E.2d at 968.* Other districts have also rejected the idea that courts should presume prejudice in this situation. *Pasco v. State Auto. Mut. Ins. Co.* (Dec. 21, 1999), Franklin App. No. 99AP 430, unreported; *Agee v. Hofelich* (Nov. 22, 1995), Crawford App. No. 3-95-10, unreported. This is because, as stated above, as a general rule insurance coverage is not expanded through the doctrines of waiver or estoppel. *Favor, supra.* Rather than forcing an insurer to prove the absence of prejudice by presuming prejudice, an insured must prove they were prejudiced in order to fall within this exception to the general rule.

**\*10** An insured may suffer prejudice when, due to its reliance on the insurer, it loses its right to control the litigation, pursue earlier or more favorable defense strategies or settlement terms, is faced with having to defend a case at trial that it had no part in preparing, *Insurance Co. of North America at 320, 692 N.E.2d at 1039-1040,* or when the reservation of rights comes so late it impairs the insured's ability to defend the matter. *Dietz Britton at 345, 743 N.E.2d at 966; Turner Liquidating at 299, 638 N.E.2d at 179.* " 'Factors that may result in prejudice include the loss of a favorable settlement opportunity, inability to produce all testimony existing in support of a case, inability to produce favorable witnesses, loss of benefit of any defense in law or fact through

reliance upon the insurer's promise to defend, or withdrawal so near the time of trial that the insured is hampered in the preparation of its defense.' " *Dietz-Britton at 348, 743 N.E.2d at 968* quoting 7C Appleman, Insurance Law and Practice (1979) 313-319, Section 4693.

Appellees argue three items illustrate a lack of prejudice: 1) Northeast did not surrender control of its defense to Aetna or act in reliance upon Aetna's acts or omissions; 2) no evidence supports a finding that Aetna ever controlled, conducted, or coordinated any aspect of Northeast's defense to the Doyle action; and, 3) Northeast knew of the reservation of rights after the November 1994 letter and could not be prejudiced since this letter was sent before trial and nothing in the record suggests Northeast would have adopted a different course of action with respect to their defense if they had also received reservation of rights letters. However, the facts do not illustrate a lack of prejudice.

Northeast's president had little prior experience with legal representation provided pursuant to insurance coverage. In his experience, he had trusted the insurance company to take care of the claim and contact him if it needed his input, and he assumed the same in this case. Northeast was never contacted by Appellees and only appeared at the Doyle trial during the last day of trial at Shashaty's insistence. It does not matter whether Appellees controlled Northeast's defense of the Doyle action as long as Appellees' actions communicated to Northeast that Appellees were defending the case. Finally, Appellees never informed Northeast either that it was reserving its right to later deny coverage or that it did intend to deny coverage. Shashaty's knowledge of either the reservation of rights or the November 1994 letter cannot be imputed to Northeast. Shashaty was the principal owner of Northeast's stock and a director of the company. He was not the president of Northeast and he did not have any decision making capacity other than as director. Appellees' actions denied Northeast the opportunity to participate in its defense, causing Northeast prejudice.

For the foregoing reasons, we affirm the trial court's summary judgment against Shashaty and Fairfield, reverse the trial court's summary judgment against Northeast, and remand this matter for further proceedings in accordance with this opinion.

VUKOVICH, P.J. and DONOFRIO, J., concur.

2001 WL 1665624 (Ohio App. 7 Dist.), 2001-Ohio-

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in N.E.2d                                                                                      Page 8
2001-Ohio-3407
**(Cite as: 2001 WL 1665624 (Ohio App. 7 Dist.))**

3407

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works