991 F.2d 789 (Table)                                                                                         Page 1
**Unpublished Disposition**

**(Cite as: 991 F.2d 789, 1993 WL 104668 (4th Cir.(Va.)))**

NOTICE: THIS IS AN UNPUBLISHED OPINION.

(The Court's decision is referenced in a "Table of Decisions Without Reported Opinions" appearing in the Federal Reporter.  Use FI CTA4 Rule 36 for rules regarding the citation of unpublished opinions.)

United States Court of Appeals,
Fourth Circuit.

GREENWAY INVESTMENTS GENERAL PARTNERSHIP;  Christopher Perry; Carlos Perry, Jr., *Plaintiffs-Appellants,*
and
Rebecca PERRY;  Francine Perry, *Plaintiffs,*
v.
SIGNET BANK/MARYLAND;  Michael J. Mahon, *Defendants-Appellees.*
PERRY & SONS, INCORPORATED, *Plaintiff-Appellant,*
v.
SIGNET BANK/MARYLAND;  Michael J. Mahon, *Defendants-Appellees.*

**Nos. 92-1332, 92-1497.**
Argued:  October 28, 1992
Decided:  April 9, 1993

Appeals from the United States District Court for the Eastern District of Virginia, at Alexandria.  T. S. Ellis, III, and Claude M. Hilton, District Judges. (CA-91-1563-A, CA-91-1756-A)

Argued:   Robert Joseph Cunningham, Jr., Whitestone, Brent, Young & Merril, P.C., Fairfax, Virginia, for Appellants.   David Paul King, Hogan & Hartson, Baltimore, Maryland, for Appellees.

On Brief:   Michael D. Colglazier, Philip H. Wright, Hogan & Hartson, Baltimore, Maryland, for Appellees.

E.D.Va.

AFFIRMED.

Before SPROUSE and CHAPMAN, Senior Circuit Judges, and YOUNG, Senior United States District Judge for the District of Maryland, sitting by designation.

PER CURIAM:

**\*\*1** This is a consolidated appeal of two lender liability actions brought separately by Perry & Sons, Inc. ("Perry Supply") and Greenway Investments General Partnership ("Greenway") against Signet Bank/Maryland and one of its assistant vice presidents, Michael Mahon ("Signet").  In each action the district court granted summary judgment in favor of Signet.  The court ruled against the plaintiffs on their Maryland state-law claims for intentional interference with contractual relations, breach of the contractual duty of good faith, and fraud.  We affirm the judgments in both cases.

I

Perry Supply is a closely held Virginia corporation engaged in the plumbing supply, sales, and service business. Greenway is a Virginia general partnership that purchases and holds real estate.  The ownership and operation of these two organizations are closely related:  not only does Greenway lease real estate to Perry Supply, but two brothers, Christopher and Carlos Perry, are officers, directors, and shareholders of Perry Supply and general partners of Greenway. [FN1]

In early 1990, Perry Supply began experiencing financial difficulties, and on May 2, 1990, Signet extended to it a $2.5 million revolving line of credit. The line was secured by a lien on Perry Supply's assets, including its operating account at Signet.  A Loan and Security Agreement evidenced the debt. Paragraph 5.2 of the Agreement provided that if Perry Supply defaulted, Signet could,"at its election, and without notice or demand," accelerate the loan;" take exclusive possession of the Collateral";  and/or "set off against the unpaid balance of the Obligations any property of [Perry Supply] in Bank's possession, including any funds in any deposit account now or hereafter maintained by [Perry Supply] with Bank." Paragraph 6.5 required modifications of the Agreement to be in writing and signed by an authorized Signet officer.

Concurrent with the May 2 line of credit to Perry Supply, Signet extended to Greenway a $1.45 million

991 F.2d 789 (Table)  
**Unpublished Disposition**

Page 2

**(Cite as: 991 F.2d 789,  1993 WL 104668 (4th Cir.(Va.)))**

loan, evidenced by a promissory note. The loan was secured by two deeds of trust on real property, and was personally guaranteed by the Perrys. The Perry Supply line of credit and the Greenway loan were cross-collateralized and cross-defaulted. That is, each company guaranteed the other's loan and agreed that a default by one would amount to a default by the other.

On December 19, 1990, Perry Supply and Signet agreed to reduce the company's revolving line of credit to $1.75 million. On the same day, Signet extended to Perry Supply a $150,000 loan, evidenced by a promissory note requiring monthly payments of both interest (beginning January 1, 1991) and principal (beginning February 1, 1991). The Perrys claim, however, that Mahon orally promised them that Perry Supply would have to pay only interest on the debt. The loan was cross-covered by the May 2, 1990 Loan and Security Agreement, and provided that if Perry Supply failed to make a payment by its due date, Signet could call the loan "at any time thereafter." On January 2, 1991, Perry Supply made its first monthly interest payment on the $150,000 note. The parties disagree when the company submitted its next interest payment. The Bank maintains that no payment was made until April 17, while Perry Supply claims that interest payments were debited from the company's account at Signet on the first of the month in February, March, and April. It is undisputed that Perry Supply never made any principal payments on the $150,000 loan, as required by the terms of the promissory note.

**\*\*2** On January 9, 1991, Greenway made its monthly $22,500 loan payment to the Bank. According to Greenway, the Bank's statement showed an erroneous distribution of the principal and interest portions of this payment. As a result, Mahon allegedly orally agreed to modify the payment schedule so that Greenway's next payment would be due in March.

On March 1, 1991, Perry Supply sent the Bank an unaudited financial statement showing that the company had lost over $1 million in fiscal year 1990, and had ended the year with a negative tangible capital base. Since the Loan and Security Agreement contained a covenant requiring the company to maintain a minimum tangible capital base of $700,000, Signet claims that the statement put Perry Supply in default of the Agreement.

On March 6, Mahon and the Perrys met to discuss the future business operations of Perry Supply. The events at that meeting are disputed. The Perrys claim that Mahon told them Perry Supply was in "technical default" of its note and the Loan and Security Agreement, that the Bank would work with Perry Supply to get through its financial problems, that it would never freeze Perry Supply's operating account, and that it would give Perry Supply "sufficient notice" if it decided to accelerate the note. The Perrys also maintain that at the meeting Carlos Perry gave Mahon a $22,500 check constituting Greenway's March loan payment. Under Signet's version of the March 6 meeting, Mahon told the Perrys that both Perry Supply and Greenway had defaulted on their loans. [FN2] Mahon claims he never said the Bank would refrain from freezing Perry Supply's operating account; nor does he admit promising to notify Perry Supply before accelerating its note. Mahon also professes not to remember Carlos Perry giving him a check for $22,500. It is undisputed that the Bank never deposited such a check.

Mahon claims that on Thursday, March 7, the day after the meeting, Perry Supply's attorney telephoned him with news that the company would file for Chapter 11 bankruptcy [FN3] on the following Monday, March 11. The Perrys assert that they had not authorized their attorney to make such a statement, and that at the time Perry Supply had no intention of filing for bankruptcy.

On Friday, March 8, Mahon wrote letters to Perry Supply and Greenway notifying them that they were in default and that Signet would be accelerating their loans. The letters were not postmarked until March 11. On March 8, according to the appellants, the Bank froze Perry Supply's operating account. Signet claims it froze Perry Supply's operating account on the 11th and returned all checks presented after that date. [FN4]

On March 13, Perry Supply filed a Chapter 11 petition. It claims that it was forced to declare bankruptcy because Signet had frozen its operating account, preventing the company from paying its vendors and making lease payments to Greenway, which also later filed for bankruptcy. Signet claims that under the terms of the loan documents, it was entitled to freeze the account and accelerate the loans once the appellants defaulted, and stresses that its actions were compelled by the telephone call from

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

**(Cite as: 991 F.2d 789, 1993 WL 104668 (4th Cir.(Va.)))**

Perry's attorney, who advised Signet that Perry Supply planned to file for bankruptcy.

II

**\*\*3** Greenway filed the first action in state court, alleging intentional interference with the Greenway-Perry Supply lease. After removal to federal district court, the district court granted summary judgment to Signet, finding principally that the bank's actions were taken pursuant to its contractual rights. [FN5] Perry Supply brought the second action below, alleging intentional interference with its contracts with its vendors, fraud, and breach of a contractual duty of good faith. [FN6] The district court also granted summary judgment to Signet in that action, finding Perry Supply's claims barred by principles of collateral estoppel. [FN7] We affirm both judgments.

III

We, of course, review de novo the district court's decision to grant Signet's summary judgment motions, *Cohn v. Bond,* 953 F.2d 154, 157 (4th Cir. 1991), *cert. denied,* 112 S. Ct. 3057 (1992), and must affirm if there is no issue as to any material fact and Signet is entitled to judgment as a matter of law, *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).

First, we consider the claims that Signet intentionally interfered with the appellants' contracts by freezing Perry Supply's operating account. Greenway contends that the bank interfered with its lease with Perry Supply. Perry Supply contends that Signet interfered with its contracts with its various vendors. Signet maintains that neither plaintiff alleged sufficient facts to show that the inference was "wrongful and without justification," as required by Maryland law. *Sharrow v. State Farm Mut. Automobile Ins. Co.,* 511 A.2d 492, 497 (Md. 1986). We agree. In *Sharrow* the Maryland Court of Appeals stated that liability for the tort of intentional interference with contractual relations requires "a wrongful or unlawful act done intentionally without cause or excuse." *Id.* at 498. Justified interference absolves the defendant from liability:

> [E]ven though a third party may for his own benefit intentionally induce one party to terminate a contract with another, this alone will not render him liable in an action for tortious interference if he had a right to cause the breach since, in such circumstances, the conduct would not be wrongful or improper.

*Id.;* accord Restatement (Second) of Torts § 766 comment j (1989).

It cannot be doubted that when Signet froze Perry Supply's operating account, it made an intentional decision and realized that its action would cut off funds to Perry Supply's lessor and vendors. Appellants' arguments fail, however, because Signet's action was neither wrongful nor improper. We agree with the district court that Perry Supply merely pursued its contractual remedies once Perry Supply defaulted. Perry Supply defaulted on the Loan and Security Agreement when its minimum tangible capital base fell below $700,000. It also defaulted on its $150,000 note by failing to make any principal payments on the note. The facts surrounding these defaults are not in dispute. [FN8] Once Perry Supply defaulted, paragraph 5.2 of the Loan and Security Agreement gave Signet the right to "take exclusive possession of the Collateral," which it did by freezing the operating account, and to accelerate the note. Signet's action not only was authorized by the loan document, but also was the normal and justifiable reaction of a bank to a commercial development affecting its debtors. As in *Sharrow,* there were circumstances here to support the conclusion that "a party [was] the means of causing a contract to be broken and still [was not] liable." *Sharrow,* 511 A.2d at 497.

**\*\*4** It follows from the lawfulness of Signet's actions in these circumstances that it did not violate any implied duty of good faith. [FN9] In *Parker v. Columbia Bank,* 604 A.2d 521 (Md. App.), *cert. denied,* 610 A.2d 796 (Md. 1992), the Maryland Court of Special Appeals held that "the duty of good faith merely obligates a lender to exercise good faith in performing its contractual obligations; it does not obligate a lender to take affirmative actions that the lender is clearly not required to take under its loan documents." *Id.* at 531. It follows that the duty of good faith does not obligate a lender to refrain from taking actions it is permitted to take under its loan documents. Signet did nothing more than pursue its contractual rights in response to Perry Supply's default, and did not violate its duty of good faith. *See also Quality Automotive Co. v. Signet Bank/Md.,* No. 92-1619, slip op. at 5 (4th Cir. Jan. 15, 1993) (unpublished) (Without deciding whether Maryland recognizes an independent cause of action for breach of the duty of good faith, court found that Signet did not breach its duty of good faith because "none of Signet's actions constituted a breach of its loan

991 F.2d 789 (Table)  
**Unpublished Disposition**

Page 4

**(Cite as: 991 F.2d 789, 1993 WL 104668 (4th Cir.(Va.)))**

agreement.").

Perry Supply bases its fraud charge on Mahon's alleged promise during the March 6 meeting that the Bank would not freeze the operating account and that it would give Perry Supply "sufficient notice" before calling its loan. Under Maryland law, Perry Supply had the burden of alleging sufficient facts to make out each of the following five elements: Mahon (1) made a misrepresentation (2) with knowledge of its falsity or reckless disregard for the truth and (3) with the intent of defrauding Perry Supply; (4) Perry Supply reasonably relied on the misrepresentation, and (5) was damaged as a result. Parker, 604 A.2d at 527. Even on summary judgment, Perry Supply had the burden of alleging enough facts to make out these elements by clear and convincing evidence. Anderson v. Liberty Lobby, 477 U.S. 242, 252-54 (1986); Parker, 604 A.2d at 530.

Assuming, as we must, that Mahon made the purported promise, Perry Supply failed to allege facts that would clearly and convincingly establish the first three elements of a fraud claim. See Parker, 604 A.2d at 528 (fraudulent intent requires that promise be false when made). Mahon averred in his affidavit that he did not decide to freeze the operating account or accelerate Perry Supply's loan until Friday, March 8, after he received the phone call from Perry Supply's attorney indicating the company would file for bankruptcy on the following Monday, March 11, and after he spoke with Signet's counsel. Perry Supply did not allege facts contradicting Mahon's affidavit; it merely argued that it did not authorize its attorney, who is now deceased, to make the call. Although Perry Supply questioned whether the call had in fact occurred, it presented no evidence to support this bald assertion. Mahon maintained that because he learned from the call that Perry Supply was on the verge of declaring bankruptcy, he did not have the option of keeping his promise; he had to freeze the operating account and call the loan immediately to protect the Bank's interests. [FN10] Perry Supply alleged no facts to establish clearly and convincingly that Mahon intended not to keep his promise at the time he made it. Even accepting appellants' version of the facts, Signet is entitled to judgment as a matter of law. See Anderson, 477 U.S. at 248.

**\*\*5** AFFIRMED

FN1 The Perrys are plaintiff-appellants.

FN2. Signet argues that Perry Supply had defaulted three times and that Greenway had defaulted twice. Perry Supply had (1) violated a covenant in the Loan and Security Agreement by keeping its tangible capital base below minimum, (2) failed to make its principal (and interest) payments on its $150,000 note in February and March, and (3) defaulted when Greenway defaulted, because Perry Supply had guaranteed the Greenway note. Greenway had (1) failed to make the March payment on its note, and (2) defaulted when Perry Supply defaulted, because Greenway had guaranteed the Perry Supply note. Perry Supply and Greenway deny that they defaulted.

FN3. 11 U.S.C. § 1101 et seq.

FN4. According to Signet, Perry Supply overdrew its operating account by $120,000 on March 14. The appellants contend that the checks bounced on or before March 11.

FN5. Greenway also alleged that Signet had breached its contractual duty to enforce the Loan and Security Agreement in good faith. The district court found that Greenway lacked standing to pursue this claim, since the Agreement was between Signet and Perry Supply. Greenway does not appeal the standing issue.

FN6. In a fourth count, Perry Supply alleged that Signet had breached the Loan and Security Agreement. Perry Supply does not appeal the district court's decision to award Signet summary judgment on this claim.

FN7. Perry Supply appeals all three claims on the merits. It does not contend that the district court misapplied the doctrine of collateral estoppel.

991 F.2d 789 (Table)  
**Unpublished Disposition**

Page 5

**(Cite as: 991 F.2d 789, 1993 WL 104668 (4th Cir.(Va.)))**

FN8. Although Perry Supply claims that Mahon orally modified the payment schedule of the $150,000 note by telling the Perrys that they had to make interest payments only, paragraph 6.5 of the Loan and Security Agreement expressly required all modifications to be in writing. Perry Supply's reliance on its corporate guarantee of the Greenway loan, which allowed modifications to be "oral or in writing," is misplaced: that document is irrelevant to modifications of the Perry Supply note.

FN9. It is not clear whether Maryland recognizes an independent cause of action for breach of the implied duty of good faith under Md. Com. Code § 1-203. *Compare Quality Automotive Co. v. Signet Bank/Md., 775 F. Supp. 849, 851-52 (D. Md. 1991)* (holding that such a cause of action exists) *with Maryland Nat'l Bank v. Quince Diamond Ltd. Partnership,* Civ. No. 76454, at 13-14 (Montgomery County Cir. Ct. Oct. 28, 1991) (holding that it does not), *appeal docketed,* No. 92-164 (Md. App. Nov. 27, 1991). In any event, resolution of that issue would not affect our conclusion since Perry Supply alleged no facts that would establish such a breach.

FN10. Whether the Bank froze the account on Friday, March 8, as Perry Supply alleged, or on Monday, March 11, as Signet alleged, does not affect our analysis.

991 F.2d 789 (Table), 1993 WL 104668 (4th Cir.(Va.)), Unpublished Disposition

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works