11 Fed.Appx. 279
2001-1 Trade Cases P 73,299
**(Cite as: 11 Fed.Appx. 279, 2001 WL 603416 (4th Cir.(Md.)))**

Page 1

This case was not selected for publication in the Federal Reporter.

UNPUBLISHED

Please use FIND to look at the applicable circuit court rule before citing this opinion. Fourth Circuit Rule 36(c). (FIND CTA4 Rule 36(c).)

United States Court of Appeals,
Fourth Circuit.

MICROBIX BIOSYSTEMS, INCORPORATED, Plaintiff-Appellant,
v.
BIOWHITTAKER, INCORPORATED; BioWhittaker Holdings, Incorporated; Abbott Laboratories, Defendants-Appellees.

**No. 00-2262.**

Argued May 7, 2001.
Decided June 4, 2001.

Appeal from the United States District Court for the District of Maryland, at Baltimore. Marvin J. Garbis, District Judge. (CA-97-2525-MJG).

Matthew Forte Pawa, Cohen, Milstein, Hausfeld & Toll, P.L.L.C., Washington, DC, for appellant. Jeffrey Ira Weinberger, Munger, Tolles & Olson, L.L.P., Los Angeles, CA, for appellees. ON BRIEF: Michael Z. Hausfeld, Ann E. Yahner, Cohen, Milstein, Hausfeld & Toll, P.L.L.C., Washington, DC, for appellant. David M. Rosenzweig, Munger, Tolles & Olson, L.L.P., Los Angeles, CA; John Henry Lewin, Jr., Maria F. Howell, Venable, Baetjer & Howard, Baltimore, MD, for appellees.

Before WILKINSON, Chief Judge, and WILLIAMS and MOTZ, Circuit Judges.

OPINION

PER CURIAM.

**\*\*1** In this antitrust action, Microbix Biosystems, Inc. sued BioWhittaker, Inc., BioWhittaker Holdings, Inc., and Abbott Laboratories under §§ 1 and 2 of the Sherman Act, 15 U.S.C. § 1, 2 (1994). Microbix also asserted a state law claim for tortious interference with economic relations against the defendants. The district court granted summary judgment to the defendants on all claims. We affirm.

I.

Microbix, a small Canadian company, manufactures and distributes "anitgens used to diagnose diseases such as rubella." Abbott, an "industry giant," manufactured, among other products, urokinase, which "is a broad category of thrombolytics used for treating clinical conditions caused by blood clots." BioWhittaker formerly supplied Abbott with Human Neonatal Kidney ("HNK") cells, a raw material necessary to produce urokinase.

Beginning in the late 1970s, Abbot manufactured urokinase under the trade names Abbokinase and OpenCath. Abbott purchased the necessary HNK cells from the only FDA-approved producer, BioWhittaker, **\*280** who obtained the cells from a source in Cali, Columbia. BioWhittaker's procedures were governed by a Drug Master File approved by the FDA. Abbott had an exclusive patent for Abbokinase, until it expired in 1993.

In 1994, Microbix began an experimental program to develop commercial quantities of a generic urokinase. Soon thereafter, Microbix approached BioWhittaker to discuss the purchase of HNK cells, and did in fact obtain small quantities of the cells from BioWhittaker. In March 1996, Microbix audited BioWhittaker's Maryland facility to determine if it would serve as an adequate long-term cell source. The audit did not identify any deficiencies, and Microbix purchased additional experimental lots of HNK cells from BioWhittaker. Microbix alleges that BioWhittaker agreed to be a long-term supplier of HNK cells in August 1996, but no such agreement was ever formalized.

Because Microbix was a small company with limited financial resources, it also entered into negotiations with Gensia Laboratories, Inc. to have Genesia provide Microbix with financial, developmental, and regulatory assistance. In September 1996, Microbix formalized a Development and License Agreement with Gensia.

Upon learning of Microbix's urokinase project, Abbott formed an "anti-generics task force," to find "defense strategies" aimed at responding to

11 Fed.Appx. 279  
2001-1 Trade Cases P 73,299  
**(Cite as: 11 Fed.Appx. 279, 2001 WL 603416 (4th Cir.(Md.)))**

Page 2

Microbix's potential threat to its monopoly. Shortly thereafter, in October 1996, Abbott and BioWhittaker began discussing an exclusive supply contract for HNK cells. The Exclusive Supply Agreement was formalized in July 1997, retroactive to January 1997, and prevented BioWhittaker from providing HNK cells to anyone but Abbott, even cell lots that Abbott rejected.

In May 1997, BioWhittaker notified Microbix that it would no longer supply HNK cells to Microbix. Even so, Gensia and Microbix continued development of the urokinase project. In August 1997, Microbix filed the instant action; in April 1998, it sought a preliminary injunction to obtain a three-year supply of HNK cells from BioWhittaker. The district court granted this injunction in May 1998. However, when Microbix began negotiating with Creative BioMolecules ("CBM") to obtain a facility to manufacture urokinase, Gensia refused to make financial outlays or sign an indemnity agreement with CBM, possibly due in part to the lack of a long-term cell supply.

**\*\*2** In June 1998, CBM withdrew from the urokinase project, leaving Microbix without a manufacturing facility.

During July and August 1998, FDA inspectors conducted a current Good Management Practices audit of BioWhittaker's HNK cell operation, which resulted in the filing of a Form 483, listing six categories of deficiencies in BioWhittaker's operation. On September 18, 1998, the FDA issued a Warning Letter to BioWhittaker, in which it stated that failure to meet these concerns would result in a ban on importation of cells from Columbia. Shortly thereafter, Gensia and Microbix terminated their agreement.

Without financial backing, a manufacturing facility, or the necessary HNK cells, Microbix never engaged in large-scale commercial production of generic urokinase. And because of further prohibitive action by the FDA, neither BioWhittaker nor Abbott are currently permitted to produce urokinase. As a result, urokinase is not commercially available at present.

II.

The district court granted summary judgment to the defendants on all of Microbix's claims. The court rejected the antitrust claims because it found that Microbix failed to present evidence that the **\*281** exclusive supply agreement between BioWhittaker and Abbott was a material cause of Microbix's "alleged injury" and that Microbix's claims for loss of future profits was "too speculative." The district court held that the interference with economic relationship claims suffered from "the same defects as those of the antitrust claims." The court also refused to order return of funds expended by Microbix in conjunction with procurement of the preliminary injunction.

We have carefully considered the parties' briefs, oral arguments, the record in the case, and the relevant legal authorities, and conclude that the district court properly granted summary judgment to the defendants, and properly denied Microbix return of the funds related to the preliminary injunction. Accordingly, we affirm essentially on the reasoning of the district court. *See Microbix Biosystems, Inc. v. BioWittaker, Inc.,* Civ. Action No. MJG-97- 2525 (March 28, 2000), (May 26, 2000), and (Aug. 22, 2000). [FN\*]

> FN\* Microbix maintains that the district court erred in granting the defendants summary judgment on the tortious interference claims without providing Microbix with an opportunity to present pertinent material, including its argument that more favorable Canadian (rather than Maryland) law applied to the claims. We need not reach this question because we agree with the district court's conclusion, in considering the issue on Microbix's motion for reconsideration, that even under Canadian law its tortious interference claims fail.

*AFFIRMED.*

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works