Not Reported in F.Supp.2d                                          Page 1
2003 Copr.L.Dec. P 28,647
**(Cite as: 2003 WL 21805213 (D.Md.))**

United States District Court,
D. Maryland.

MICROSOFT CORPORATION
v.
MARYLAND MICRO.COM, INC. et al.

**No. Civ. JFM-01-3797.**

July 15, 2003.

MEMORANDUM

MOTZ, J.

**\*1** Microsoft Corporation ("Microsoft") has brought suit against Maryland Micro.com ("Micro.com"), Daniel D. Youngblood, and Jim Cronk. [FN1] Microsoft claims that defendants infringed on Microsoft's copyrights in violation of the Copyright Act of 1976, 17 U.S.C. § 501, *et seq.,* violated the Lanham Act, 15 U.S.C. § § 1114, 1125, and engaged in unfair competition under Maryland common law. All parties have moved for summary judgment. Microsoft's motion for summary judgment will be granted as to liability, but issues remain to be litigated regarding damage awards.

> FN1. This is one of a large number of cases Microsoft has filed in federal courts around the country in an attempt to curtail the illegal distribution of its software. Many of these cases present very similar facts. *See, e.g., Microsoft Corp. v. Logical Choice Computers, Inc.,* No. 99 C 1300, 2001 WL 58950 (N.D.Ill. Jan. 22, 2001); *Microsoft Corp. v. Compusource Distrib., Inc.,* 115 F.Supp.2d 800 (E.D.Mich.2000); *Microsoft Corp. v. Grey Computer,* 910 F.Supp. 1077 (D.Md.1995). Microsoft's arguments here mirror the reasoning of these cases.

I.

Microsoft is one of the world's leading developers, distributors, and licensors of computer software. Microsoft owns copyrights in the following products: Microsoft Windows 98, Microsoft Office 2000 Professional, Microsoft Access 2000, Microsoft Excel 2000, Microsoft Office 2000, Microsoft PowerPoint 2000, Microsoft Word 2000, and Microsoft Publisher 2000. (Compl. ¶ ¶ 10-19 & Exs.

1-8.) Microsoft also has registered trademarks for: "Microsoft," "Windows," Windows Flag Logo, Puzzle Piece Logo, "PowerPoint," "Microsoft Access," "Bookshelf," and "Outlook." (Compl. ¶ 20 & Exs. 9-19.)

Micro.com is a Maryland corporation that distributes computer software and hardware. Youngblood is the president of Micro.com and owns one-third of the company. (Youngblood Dep., Pl.Ex. B.1, at 11, 29.) Cronk is the secretary of Micro.com and also owns one-third of the company. (Cronk Dep., Pl.Ex. B.2, at 4, 12.) Youngblood and Cronk are actively involved in the operation of Micro.com, particularly the sale of Microsoft software. (Youngblood Dep., Pl.Ex. B.1, at 44-45.) Youngblood and Cronk draw a salary and commission that are dependent on the financial success of Micro.com. (*Id.* at 63; Cronk Dep., Pl.Ex. B.2, at 13-15.)

In 2000, Micro.com registered with Microsoft as a system builder. (Youngblood Dep., Pl.Ex. B.1, at 45-46.) As a registered system builder, Micro.com received regular communications from Microsoft regarding how to avoid dealing in counterfeit Microsoft software. (*Id.* at 47.) Included in these regular communications were lists of authorized distributors of Microsoft software. [FN2] (Sellers Decl., Pl.Ex. A, ¶ 22.)

> FN2. Microsoft has relationships with several large authorized distributors. These authorized distributors (formerly known as "Delivery Service Partners") distribute Microsoft software to computer systems builders and software resellers. Microsoft maintains a list of these distributors on its website. Lists of authorized distributors are also available through Microsoft's anti-piracy hotline and are included in a variety of mass mailings Microsoft sends to system builders. (Sellers Decl., Pl.Ex. A, ¶ 22.)

Defendants nonetheless purchased a significant amount of software from unauthorized distributors. (McAfee Decl., Pl.Ex. F, ¶ ¶ 2-3 & Ex. 1; Sellers Decl., Pl.Ex. A, ¶ 23.) Defendants contend that they acquired over 85% of their products from View Micro and SourceNet. (Youngblood Aff., Def. Ex. 2, ¶ 6.) According to defendants, View Micro primarily drop-shipped software directly from Synnex, an authorized Microsoft distributor. (*Id.*) SourceNet attended Microsoft anti-piracy classes and educated

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.2d
2003 Copr.L.Dec. P 28,647
**(Cite as: 2003 WL 21805213 (D.Md.))**

Micro.com about how to determine counterfeiting. (*Id.*) Defendants also contend that View Micro and SourceNet are "regular Microsoft distributors." (*Id.*) Neither company, however, is, or ever has been, an authorized Microsoft distributor. (Sellers Decl., Pl.Ex. A, ¶ 23.)

 **\*2** On June 21, 2001, a Microsoft investigator purchased Microsoft Office Professional 2000 software  [FN3] and an accompanying end user license agreement from defendants. (Shaffer Decl., Pl.Ex. C, ¶¶ 2-3.) Microsoft inspected the software and license agreement and determined that both were counterfeit. (Sellers Decl., Pl.Ex. A, ¶¶ 10-15.)

> FN3. Microsoft Office Professional 2000 is a collection of several software programs, each independently copyrighted. The separate programs include: Microsoft Access 2000, Microsoft Excel 2000, Microsoft Office 2000, Microsoft PowerPoint 2000, Microsoft Publisher 2000, and Microsoft Word 2000. (Compl.¶ 12.)

 On August 2, 2001, Microsoft sent a cease and desist letter to defendants. (Leyba Decl., Pl.Ex. D, ¶ 2.) The letter informed defendants that they had distributed counterfeit Microsoft software and, by doing so, had violated federal copyright and trademark law. (Letter from Leyba to Micro.com of 8/2/01, Pl.Ex. D.1, at 1.) Micro .com responded by letter on August 14, 2001. (Youngblood Dep., Pl.Ex. B.1, at 161.) In that letter, Micro.com expressed remorse for the unlawful distribution and claimed that it was an isolated incident. (Letter from Youngblood to Leyba of 8/14/01, Pl.Ex. B.1 at Ex. 32.) The letter also insured Microsoft that Micro.com was purchasing its software through the proper channels. (*Id.*)

 In October 2001, a Microsoft investigator purchased Microsoft Windows 98 and Microsoft Office 2000 Professional Software from Micro.com. (Holt Decl., Pl.Ex. E, ¶ 2.) Cronk personally handled the transaction. [FN4] (Cronk Aff., Def. Ex. 1, ¶ 4.) After inspecting the Windows 98 software, Microsoft determined that it was counterfeit. (Sellers Decl., Pl.Ex. A, ¶¶ 16-18.) Microsoft also learned that between August 2000 and December 2002 defendants acquired nearly 2000 units of Microsoft software and licenses [FN5] from sources other than authorized distributors. [FN6] (McAfee Decl., Pl.Ex. F, ¶¶ 2-3 & Ex. 1; Sellers Decl., Pl.Ex. A, ¶ 23.)

> FN4. Cronk describes the transaction as follows:
> On October 31, 2001, the individual who has been identified as the Microsoft investigator appeared at our office and identified himself as a dealer from Virginia. He stated that he needed a copy of Office Pro 2000 to use for repairs. I advised him that we did not have any in inventory and would have to purchase XP. He was shown through our inventory and a copy of Windows 98 which included Office Pro 2000 was found on our workbench. While he was advised that that was not for sale, it was eventually sold to him for $190 to assist his situation. There was no sale for profit and I had no knowledge this was not authentic software.
> (Cronk Aff., Def. Ex. 1, ¶ 4.)

> FN5. The Microsoft software and licenses defendants purchased included: Microsoft Office, Windows 95, Windows 98, Windows NT Workstation, Windows NT Workstation License, Windows NT Server, Windows 2000, Windows 2000 License, Windows 2000 Server, Windows 2000 Server License, Windows Millennium Edition, and Windows XP. (McAfee Decl., Pl.Ex. F, ¶¶ 2-3 & Ex. 1.)

> FN6. Microsoft has also produced evidence demonstrating that defendants purchased Microsoft software at suspiciously low prices before and after receiving the cease and desist letter. (*See* Pl.'s Mem. at 7-8.)

II.

A.

 Microsoft first claims that defendants committed copyright infringement in violation of 17 U.S.C. § 501, *et seq.* To establish a claim for copyright infringement, a plaintiff must show that: (1) it owned a valid copyright, and (2) the defendant encroached upon the rights conferred by copyright ownership. 17 U.S.C. § 501(a); *Avtec Sys., Inc. v. Peiffer,* 21 F.3d 568, 571 (4th Cir.1994). The owner of a copyright has the exclusive right to: (1) reproduce the copyrighted works, (2) prepare derivative works

Not Reported in F.Supp.2d
2003 Copr.L.Dec. P 28,647
(Cite as: 2003 WL 21805213 (D.Md.))

Page 3

based on the copyrighted work, and (3) distribute copies of the copyrighted work. 17 U.S.C. § 106(1)-(3).

Certificates of copyright registration constitute "prima facie evidence of the validity of the copyright." *Id.* § 410(c). Microsoft has submitted certificates of copyright registration for Microsoft Windows 98, Microsoft Office 2000 Professional, Microsoft Access 2000, Microsoft Excel 2000, Microsoft Office 2000, Microsoft PowerPoint 2000, Microsoft Word 2000, and Microsoft Publisher 2000. (Compl.Exs.1-8.) Defendants do not challenge Microsoft's ownership of these copyrights or their validity.

The record also establishes that defendants infringed upon Microsoft's copyrights by distributing counterfeit copies of Microsoft software. On two separate occasions, defendants sold counterfeit copies of Microsoft software to Microsoft investigators. On June 21, 2001, defendants sold Microsoft a counterfeit copy of Microsoft Office Professional 2000 software. In October 2001, defendants sold Microsoft a counterfeit copy of Microsoft Windows 98. As a result, Microsoft is entitled to summary judgment on its claim for copyright infringement.

B.

**\*3** Microsoft also asserts two claims under the Lanham Act: (1) trademark infringement in violation of 15 U.S.C. § 1114, and (2) false designation of origin in violation of 15 U.S.C. § 1125. To establish either of these claims, a plaintiff must show that: (1) it owns a trademark; (2) the defendant used a counterfeit, copy, or colorable imitation of the mark in commerce; (3) the defendant used the mark in connection with the sale, distribution, or advertising of goods or services; and (4) the defendant used the mark in a manner likely to confuse consumers, 15 U.S.C. § § 1114(1), 1125(a); *People for the Ethical Treatment of Animals v. Doughney,* 263 F.3d 359, 364 (4th Cir.2001); *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Virginia, Inc.,* 43 F.3d 922, 930 (4th Cir.1995).

Registration of a trademark "creates a presumption of the registrant's ownership of the mark." *Brittingham v. Jenkins,* 914 F.2d 447, 452 (4th Cir.1990). Microsoft has registered the following trademarks: "Microsoft," "Windows," Windows Flag Logo, Puzzle Piece Logo, "PowerPoint," "Microsoft Access," "Bookshelf," and "Outlook." (Compl.Exs.9-19.) Defendants have presented no evidence to rebut

the presumption that Microsoft owns these trademarks.

Microsoft has also demonstrated that defendants used copies of Microsoft's trademarks "in commerce" and in connection with the sale, distribution, or advertising of goods and services. Microsoft distributes its products in all fifty states and around the world, and defendants sold products that contained copies of each of the above-listed trademarks to Microsoft investigators. *See* 15 U.S.C. § 1127; *Grey Computer,* 910 F.Supp. at 1086-87.

Finally, defendants' use of copies of Microsoft's trademarks is likely to confuse consumers. When determining whether a plaintiff has demonstrated a likelihood of confusion, a court should consider the following factors:

(1) the strength or distinctiveness of the plaintiff's mark, (2) the similarity of the two parties' marks, (3) the similarity of the goods and services the marks identify, (4) the similarity of the facilities the two parties use in their business, (5) the similarity of advertising used by the two parties, (6) the defendant's intent, and (7) actual confusion.

*Petro Shopping Ctrs., L.P. v. James River Petroleum, Inc.,* 130 F.3d 88, 91 (4th Cir.1997). All of the factors relevant to this case weigh in favor of Microsoft. Microsoft's trademarks are as distinct as any in the world. The marks on the goods sold by defendants were nearly identical to Microsoft's trademarks-they were intentional copies. Finally, actual confusion exists; defendants sold packages of software that contained copies of Microsoft's trademarks to investigators requesting Microsoft software. As a result, Microsoft is entitled to summary judgment on its claim of trademark infringement and false designation of origin.

C.

Microsoft's final claim against defendants is for unfair competition under Maryland common law. [FN7] One way a defendant can commit the tort of unfair competition is to pass off its goods as those of the plaintiff. *Edmondson Vill. Theatre v. Einbinder,* 208 Md. 38, 44, 116 A.2d 377, 380 (1955). The test for this type of unfair competition is the same as that for trademark infringement-whether the defendant's use of the plaintiff's name is likely to confuse consumers. *Scotch Whisky Ass'n v. Majestic Distilling Co.,* 958 F.2d 594, 597 (4th Cir.1992); *Grey Computer,* 910 F.Supp. at 1088. As described above, defendants' use of Microsoft's name is likely to cause confusion among consumers. Thus, Microsoft is

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

entitled to summary judgment on its claim for unfair competition. [FN8]

FN7. Microsoft's complaint states that this claim in brought under Maryland common law. (Compl.¶  ¶  56-59.) However, Microsoft's brief on this issue seems to suggest that this claim is brought under the Maryland Consumer Protection Act, Md.Code Ann., Com. Law II § 13-101, *et seq.* (*See* Pl.'s Mem. at 15.) Microsoft cannot bring this claim under the Maryland Consumer Protection Act because it is not a consumer. *See, e.g., Penn-Plax, Inc. v. L. Schultz, Inc.,* 988 F.Supp. 906, 909-11 (D.Md.1997). Therefore, the claim will be analyzed under Maryland common law.

FN8. Defendants' only defense to general liability is that they made good faith efforts to prevent copyright and trademark infringement. (*See* Def.'s Opp'n at 4-6.) This is not a defense to copyright infringement, trademark infringement, or the tort of unfair competition. *See Pizzeria Uno Corp. v. Temple,* 747 F.2d 1522, 1535 (4th Cir.1984); *Grey Computer,* 910 F.Supp. at 1083; *Einbinder,* 208 Md. at 46, 116 A.2d at 381.

### III.

**\*4** Microsoft contends that Youngblood and Cronk are liable along with Micro.com. (Pl.'s Mem. at 16-17.) Defendants have filed a motion for summary judgment in which they argue that under the facts of this case they cannot be personally liable for copyright infringement, Lanham Act violations, or common law unfair competition. Defendants' argument fails.

Officers of a corporation may be held individually liable for the corporation's copyright infringement. *See, e.g., Southern Bell Tel. & Tel. Co. v. Associated Tel. Directory Publishers,* 756 F.2d 801, 811 (11th Cir.1985). *See generally* 3 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 12.04 [A][3][d] (2003). To be personally liable, a corporate officer must either: (1) have the ability to supervise the infringing activity and have a financial interest in the exploitation of the copyrighted material; or (2) personally participate in the infringing activity. *Southern Bell,* 756 F.2d at 811; *Grey Computer,* 910

F.Supp. at 1090-91.

Here, Youngblood and Cronk had the ability to supervise the infringing activity. Both men own one-third of the company and serve as corporate officers. Moreover, Youngblood manages the day-to-day operation of Micro.com, and both Youngblood and Cronk sell Microsoft products for Micro.com. Both men also have a financial interest in the company, and thus a financial interest in exploiting copyrighted material. In addition to owning one-third of Micro.com, Youngblood and Cronk receive a salary and commission that depends on the financial success of the company. Finally, Cronk participated in an act of copyright infringement when he personally sold a Microsoft investigator a counterfeit copy of Windows 98. Under these facts, Youngblood and Cronk are personally liable for Micro.com's copyright infringement.

A corporate officer can also be personally liable for a corporation's trademark infringement. *Polo Fashions, Inc. v. Craftex, Inc.,* 816 F.2d 145, 149 (4th Cir.1987). *See generally* 4 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 25:24 (4th ed.2003). A corporate officer is personally liable for trademark infringement if the officer "directs, controls, ratifies, participates in, or is the moving force behind the infringing activity." *Babbit Elecs., Inc. v. Dynascan Corp.,* 38 F.3d 1161, 1184 (11th Cir.1994); *see also Brittingham,* 914 F.2d at 458; *Polo Fashions,* 816 F.2d at 149. The same principles apply for holding corporate officers liable for the tort of unfair competition. *See Tedrow v. Deskin,* 265 Md. 546, 550, 290 A.2d 799, 802 (1972) ("The general rule is that corporate officers or agents are personally liable for those torts which they personally commit, or which they inspire or participate in, even though performed in the name of an artificial body.").

Youngblood and Cronk were the "moving force" behind Micro.com's trademark violations and acts of unfair competition. Youngblood and Cronk are Micro.com's owners, corporate officers, and managers. Under their direction, Micro.com repeatedly acquired Microsoft products from unauthorized distributors and sold those products to consumers. This evidence is sufficient to support a finding of personal liability for trademark infringement and unfair competition. *See Brittingham,* 914 F.2d at 458 ("As the principal architect of the underlying infringement, equity requires that [the defendant] be held jointly and severally liable for the judgment in this case.");

Not Reported in F.Supp.2d                                    Page 5
2003 Copr.L.Dec. P 28,647
**(Cite as: 2003 WL 21805213 (D.Md.))**

*Logical Choice,* 2001 WL 58950, at *11. *See generally,* 4 McCarthy, *supra,* § 25:24. In addition, Cronk personally participated in one of the infringing acts.

### IV.

**\*5** Microsoft requests three different remedies: (1) statutory damages under the Copyright Act and Lanham Act; (2) a permanent injunction against defendants; and (3) attorney's fees.

### A.

Whether defendants' copyright and trademark infringement was willful directly affects the award of attorney's fees and indirectly affects Microsoft's request for statutory damages under the Copyright Act and Lanham Act.

Infringement is willful if the defendant: (1) has either actual or constructive knowledge that its actions constitute infringement, or (2) recklessly disregards a copyright or trademark holder's rights. *See Lyons P'ship, L.P. v. Morris Costumes, Inc.,* 243 F.3d 789, 799 (4th Cir.2001); *Logical Choice,* 2001 WL 58950, at *11. Microsoft argues that defendants conduct was willful because they: (1) continued to distribute counterfeit software after receiving a cease and desist letter; (2) routinely acquired Microsoft software from unauthorized distributors; and (3) ignored suspect pricing from their suppliers. (Pl.'s Mem. at 19-21; Pl.'s Reply at 3-8.) Defendants contend that their actions were not willful because: (1) they made good faith efforts to comply with Microsoft's demands to cease infringing activity; and (2) the second sale of counterfeit software was a "courtesy" sale of an item not in defendants' regular inventory. (Def.'s Opp'n at 5-6.)

There remains a genuine issue of fact about whether defendants' conduct was willful. Microsoft's characterization of defendants' actions suggests a reckless disregard for Microsoft's rights-defendants ignored instructions about where to get genuine software, ignored a warning to cease and desist distributing counterfeit products, and acquired products at a suspiciously low prices. *See Logical Choice,* 2001 WL 58950, at *10. Defendants affidavits, however, present a somewhat different picture-one that does not suggest a reckless disregard for Microsoft's rights. While defendants did acquire products from unauthorized sources at suspiciously low prices, they also made legitimate efforts to guarantee authenticity. Moreover, while defendants

did sell a counterfeit product after receiving a cease and desist letter, Microsoft has presented no evidence to counter defendants' contention that this was an isolated, accidental sale.

### B.

The Copyright Act and Lanham Act both allow a plaintiff to elect specified statutory damages. 17 U.S.C. § 504(c)(1); 15 U.S.C. § 1117(c). Microsoft has requested these damages in this case. (Pl.'s Mem. at 19.) Under the Copyright Act, a plaintiff may recover between $750 and $30,000 per work infringed for non-willful infringement. 17 U.S.C. § 504(c)(1). Under the Lanham Act, a plaintiff may recover between $500 and $100,000 per work infringed for non-willful infringement. 15 U.S.C. § 1117(c)(1). The exact amount to be awarded is entirely within my discretion. 17 U.S.C. § 504(c)(1); 15 U.S.C. § 1117(c)(1).

Microsoft requests the statutory maximum-$30,000 per copyright and $100,000 per trademark-for each of the eight copyrights and eight trademarks defendants infringed. (Pl.'s Mem. at 21.) A described above, Microsoft contends that defendants' infringement was willful. Rather than seek enhanced statutory damages for willful infringement, however, Microsoft requests only the statutory maximum for non-willful infringement. (*Id.* at 19-22.)

**\*6** Microsoft's approach is not without appeal. However, particularly because there is a genuine dispute about defendants' willfulness, it would constitute an abuse of discretion for me to impose the statutory maximum without holding a hearing and without further analysis. In exercising discretion, I must consider various factors, including "the expenses saved and profits reaped by the defendants in connection with the infringements, the revenues lost by the plaintiffs as a result of the defendant's conduct, and the infringers' state of mind-whether willful, knowing, or merely innocent." *See N.A.S. Import, Corp. v. Chenson Enter., Inc.,* 968 F.2d 250, 252 (2nd Cir.1992) (quoting *Boz Scaggs Music v. KND Corp.,* 491 F.Supp. 908, 914 (D.Conn.1980)).

### C.

Both the Copyright Act and Lanham Act also allow for permanent injunctions. 17 U.S.C. § 502(a); 15 U.S.C. § 1116(a). Prevailing plaintiffs in copyright and trademark infringement cases are normally entitled to injunctive relief. *See M.L.E. Music v. Kimble, Inc.,* 109 F.Supp.2d 469, 472-73 (S.D.W.Va.2000) ("Various district courts within this

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

circuit have held that when a claim of copyright infringement has been proven, a permanent injunction prohibiting further infringements is appropriate and routinely entered."); 5 McCarthy, *supra,* § 30:1 ("A prevailing plaintiff in a case of trademark infringement ... is ordinarily entitled to injunctive relief of some kind."). Moreover, an injunction prohibiting defendants from infringing upon Microsoft's copyrights and trademarks would not give rise to cognizable harm to defendants. Therefore, I will enter a permanent injunction after conferring with counsel about its form.

D.

Finally, both the Copyright Act and Lanham Act allow for the awarding of attorney's fees. 17 U.S.C. § 505; 15 U.S.C. § 1117(a). Under the Copyright Act, attorney's fees are to be awarded "only as a matter of the court's discretion." *Fogerty v. Fantasy, Inc.,* 510 U.S. 517, 534 (1994). Factors that a court should consider when determining whether to award attorney's fees include: frivolousness, motivation, objective unreasonableness, and considerations of compensation and deterrence. *Id.* at 534 n. 19; *see also Ale House Mgmt., Inc. v. Raleigh Ale House, Inc.,* 205 F.3d 137, 144 (4th Cir.2000). Under the Lanham Act, attorney's fees are to be awarded only in "exceptional cases." 15 U.S.C. § 1117(a). In the Fourth Circuit, a plaintiff must show that the defendant's infringement was malicious, fraudulent, deliberate, or willful. *Doughney,* 263 F.3d at 370.

If I determine that defendants' copyright and trademark infringement were willful, Microsoft should be awarded attorney's fees. *See Logical Choice,* 2001 WL 58950, at *12; *Grey Computer,* 910 F.Supp. at 1093. If I determine that defendants' conduct was not willful, however, I may not award attorney's fees because statutory damages and a permanent injunction might provide sufficient compensation for Microsoft and act as a significant deterrent to these defendants as well as other potential infringers.

**\*7** A separate order is being entered herewith.

ORDER

For the reasons stated in the accompanying memorandum, it is, this 15th day of July 2003,

ORDERED that

1. Plaintiff's motion for summary judgment (Docket # 20) is granted as to defendants' liability, but denied as to damages; and

2. Defendants' motion for summary judgment (Docket # 21) is denied.

2003 WL 21805213 (D.Md.), 2003 Copr.L.Dec. P 28,647

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works