35 Fed.Appx. 75 Page 1
**(Cite as: 35 Fed.Appx. 75, 2002 WL 1018562 (4th Cir.(Md.)))**

This case was not selected for publication in the Federal Reporter.

UNPUBLISHED

Please use FIND to look at the applicable circuit court rule before citing this opinion. Fourth Circuit Rule 36(c). (FIND CTA4 Rule 36(c).)

United States Court of Appeals,
Fourth Circuit.

MITCHELL, BEST & VISNIC, INCORPORATED, Plaintiff-Appellant,
v.
TRAVELERS PROPERTY CASUALTY CORPORATION; The Travelers Indemnity Company; The Travelers Indemnity Company of Illinois; The Travelers Indemnity Company of Connecticut, Defendants-Appellees.

No. 01-1911.

Argued Feb. 26, 2002.
Decided May 16, 2002.

Insured builder of custom homes sued commercial general liability (CGL) insurer, seeking coverage in underlying actions in which home purchasers alleged that insured's negligent misrepresentations regarding restrictive covenants resulted in need for rebuilding. The United States District Court for the District of Maryland, Alexander Williams, Jr., J., 121 F.Supp.2d 848, granted insurer's summary judgment motion. Insured appealed. The Court of Appeals, Jackson, District Judge, held that claims for loss of enjoyment of property did not trigger coverage under policy's property damage provisions, which defined 'property damage' to require physical injury to, or loss of use of, tangible property.

Affirmed.

Hamilton, Senior Circuit Judge, concurred in part and dissented in part and filed a separate opinion.

West Headnotes

**Insurance** 🔑 **2277**
217k2277

Under Maryland law, claims against insured home builder for loss of enjoyment of property did not trigger coverage under property damage provisions of commercial general liability (CGL) policy, which defined 'property damage" to require physical injury to, or loss of use of, tangible property.

**\*76** Appeal from the United States District Court for the District of Maryland, at Greenbelt. Alexander Williams, Jr., District Judge. (CA-00- 986).

**ARGUED:** Mitchell J. Rotbert, Rockville, Maryland, for Appellant. Kathleen Birrane, Baltimore, Maryland, for Appellees. **ON BRIEF:** Lee H. Ogburn, Baltimore, Maryland, for Appellees.

Before NIEMEYER, Circuit Judge, HAMILTON, Senior Circuit Judge, and RAYMOND A. JACKSON, United States District Judge for the Eastern District of Virginia, sitting by designation.

Affirmed by unpublished opinion. Judge JACKSON wrote the opinion, in which Judge NIEMEYER concurred. Senior Judge HAMILTON wrote an opinion concurring in part and dissenting in part.

OPINION

JACKSON, District Judge.

**\*\*1** Mitchell, Best & Visnic, Inc. ("MBV"), a builder and sales agent of residential real estate and the plaintiff below, appeals the district court's order granting summary judgment to the defendant, Travelers Property Casualty Corporation ("Travelers"), on MBV's claim that Travelers had a duty to defend it in another law suit under the terms of a general liability insurance policy. We affirm.

This court reviews de novo a district court's order granting summary judgment and construes the facts in the light most favorable to the nonmoving party. *Scheduled Airlines Traffic Offices, Inc. v. Objective, Inc., 180 F.3d 583, 590-91 (4th Cir.1999)*. Summary judgment is appropriate when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Once the moving party discharges its burden by showing there is an absence of evidence to support the nonmoving party's case, *Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)*, the nonmoving party must come forward with

specific facts showing there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Summary judgment will be granted unless a reasonable jury could return a verdict for the nonmoving party on the evidence presented. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The liability policy that MBV purchased from Travelers contains the following relevant language:
> We will pay those sums that the insured becomes legally obligated to pay as damages *77 because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend any "suit" seeking those damages.
> * * *
> This insurance applies to "bodily injury" and "property damage" only if:
> (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory;"
> * * *
> "Property damage" means:
> a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
> b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

MBV became involved in a suit which involved the interpretation of restrictive covenants in a subdivision where it was building several homes; the issue was whether those homes were too big and therefore violated the covenants. MBV argued in the case at bar that these claims in the underlying suit had the potential, however remote, of resulting in a tear down order, which it asserted would constitute an "occurrence" that caused "property damage" under the policy. Travelers refused to defend MBV or cover its damages in this case. As a result, MBV brought the instant suit seeking a declaratory judgment that Travelers had a duty to defend and pay damages arising from the underlying suit, arguing that a claim that amounted to "loss of enjoyment" in the underlying suit qualified as "property damage" under the insurance contract. The district court granted summary judgment for Travelers on the ground that the underlying suit did not state a claim for "property damage" because loss of enjoyment is insufficient to establish "property damage" which, under the insurance contract in this case, requires physical injury to, or loss of use of, tangible property. Therefore, the district court held that the underlying suit did not qualify for coverage under the policy.

**\*\*2** Under Maryland law, an insurance company has an affirmative obligation to defend the insured when there exists a potential that a claim in the underlying suit could be covered under the policy (the "potentiality rule"). *Warfield-Dorsey Co., Inc. v. Travelers Cas. & Sur. Co. of Illinois,* 66 F.Supp.2d 681 D. Md.1999). In the case at bar, the district court, using Maryland law, applied the test in *St. Paul Fire & Marine Insurance Co. v. Pryseski,* 292 Md. 187, 438 A.2d 282 (1981), to determine whether the insurer in this case had a duty to defend its insured. That test asks the following two questions: 1) what is the coverage and what are the defenses under the terms and requirements of the insurance policy? 2) do the allegations in the tort action potentially bring the tort claim within the policy's coverage? *Id.* The first question deals with the language and requirements of the insurance policy, while the second question focuses on the allegations in the underlying suit. *Id. at 193, 438 A.2d 282.* The district court found that MBV satisfied the second prong, but failed under the first prong because it held that "property damage" under the terms of the contract did not include any damages that could potentially spring from the underlying suit, thereby relieving Travelers of its duty to defend. The district court having correctly determined and applied the law to the facts of this case, we see no need to repeat that process here.

Accordingly, we affirm the district court's order based on its reasoning as **\*78** articulated in its Memorandum Opinion of November 27, 2000, granting summary judgment for the Defendant.

*AFFIRMED.*


HAMILTON, Senior Circuit Judge, concurring in part and dissenting in part:


I agree with the majority that Travelers Property Casualty Corporation (Travelers) had no duty to defend some of the claims asserted against Mitchell, Best, and Visnic, Incorporated (MBV) in the three related lawsuits which involved disputes concerning restrictive covenants related to land located in Potomac Hunt Acres (Ardnave), a subdivision owned by the Livingston Family Limited Partnership (Livingston) in Montgomery County, Maryland. However, I believe Travelers had a duty to defend some of the claims asserted against MBV and, therefore, I concur in part and dissent in part.

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

## I

MBV was Livingston's sales agent in Ardnave and built several custom homes on lots purchased there. Ardnave was part of a larger tract of land formerly owned by the Federal Deposit Insurance Corporation (FDIC). In 1993, the FDIC conveyed one portion of the tract to Livingston and the remainder of the tract to Kodor Associates Limited Partnership (Kodor). As part of that transaction, Livingston and Kodor executed a declaration of covenants (the Original Covenants) that was recorded among the land records of Montgomery County in 1993. In 1998, Livingston and Kodor executed a release of declaration of covenants and, simultaneously, a second declaration of covenants (the Revised Covenants) all of which were also recorded among the land records of Montgomery County. In 1998, Kodor purchased a lot in Ardnave for $595,000. The issues in the litigation that ensued concerned the validity, enforceability, and the interpretation of the Original Covenants, the release, and the Revised Covenants, as well as whether MBV had induced Kodor to revise the Original Covenants by making material misrepresentations regarding MBV's intent to keep Kodor advised of the nature of the houses being built in Ardnave and whether Livingston was selling lots in Ardnave that were subject to a separate set of covenants, drafted by Livingston (the Livingston Covenants), that were less restrictive than either the Original Covenants or the Revised Covenants.

## II

**\*\*3** As recognized by the majority, subject to certain express definitions, exclusions, and conditions, the policy at issue in this case states:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend any "suit" seeking those damages.

(J.A. 34). This insurance applies to "bodily injury" and "property damage" only if the bodily injury or property damage is caused by an "occurrence" that takes place in the "coverage territory." *Id.* The policy defines "property damage" as:

> a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
> b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

(J.A. 44).

In my opinion, there are two claims that were asserted against MBV that Travelers **\*79** had a duty to defend. The first claim is a counterclaim that was asserted against MBV. The counterclaim centers on Kodor's allegation that MBV's misrepresentations resulted in Kodor paying more for its lot in 1998 than the lot was worth and that, under the Revised/Livingston Covenants, a house built on its lot would have unsightly or obstructed views. The simple reason why this claim involves the "loss of use of tangible property" is because the view from the lot constitutes a use of tangible property. The view being lost means that there is a loss of use. Travelers suggests that there was *only* a loss of the ability to enforce a restrictive covenant, not a loss of use. However, the "intangible" covenant does not affect, much less diminish, the fact that Kodor alleges a loss of use of *its* tangible property.

The second claim involves a cross-claim (the Kamba/Hackney Cross-Claim) that was asserted against MBV. Kamba and Hackney had purchased a lot in Ardnave and contracted with MBV to build a home on that lot. The Kamba/Hackney Cross-Claim alleged, among other things: (1) that, if the covenants were construed in the manner requested by Kodor, MBV had misrepresented the kind of structures that could be built on the Kamba/Hackney lot, (2) that, as a result of these misrepresentations, the Kamba/Hackney residence might have to be reconfigured or deconstructed, and (3) that, as a result of MBV's misrepresentations, Kamba/Hackney would be harmed in that they could not build certain structures on their property, namely, a pool house.

The allegations of harm in the Kamba/Hackney Cross-Claim fit the definition of "loss of use of tangible property" as defined in the subject policy. If the covenants are construed in the manner requested by Kodor, Kamba/Hackney cannot build a pool house and, therefore, have a loss of use. Also, if the covenants are construed in the manner requested by Kodor, Kamba/Hackney cannot *use* their house in its current form (a loss of use and/or views) because it may have to be reconfigured to conform to the covenants.

## III

**\*\*4** In summary, although I agree with the majority that Travelers had no duty to defend some of the claims asserted against MBV, I am of the opinion that Travelers had a duty to defend: (1) the Kodor

35 Fed.Appx. 75                                                                                                                         Page 4
**(Cite as: 35 Fed.Appx. 75, 2002 WL 1018562 (4th Cir.(Md.)))**

counterclaim that centered on Kodor's allegation that MBV's misrepresentations resulted in Kodor paying more for its Ardnave lot in 1998 than the lot was worth and that, under the Revised/Livingston Covenants, a house built on its lot would have unsightly or obstructed views; and (2) the Kamba/Hackney Cross-Claim. Accordingly, I concur in the court's opinion in part and dissent from it in part.

35 Fed.Appx. 75, 2002 WL 1018562 (4th Cir.(Md.))

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works