48 Fed.Appx. 42                                                                                    Page 1
**(Cite as: 48 Fed.Appx. 42,  2002 WL 31207199 (4th Cir.(Md.)))**

This case was not selected for publication in the Federal Reporter.

UNPUBLISHED

Please use FIND to look at the applicable circuit court rule before citing this opinion. Fourth Circuit Rule 36(c). (FIND CTA4 Rule 36(c).)

United States Court of Appeals,
Fourth Circuit.

NEUROTRON, INCORPORATED, Plaintiff-Appellant,
v.
AMERICAN ASSOCIATION OF ELECTRODIAGNOSTIC MEDICINE, Defendant-Appellee.

**No. 01-2115.**

Argued May 8, 2002.
Decided Oct. 4, 2002.

Manufacturer filed suit against medical association alleging that unfavorable technology review of its electrodiagnostic medical device in association's journal constituted injurious falsehood and false light commercial disparagement, and violated Lanham Act. The United States District Court for the District of Maryland, J. Frederick Motz, J., and William M. Nickerson, Senior Judge, 189 F.Supp.2d 271, entered summary judgment in favor of association, and manufacturer appealed. The Court of Appeals held that statements were not made with actual malice.

Affirmed.

West Headnotes

**Libel and Slander** 🔑**131**
237k131

Under Maryland law, unfavorable technology review of manufacturer's electrodiagnostic medical device in medical association's journal was not motivated by actual malice, as was required to support manufacturer's claim for injurious falsehood, despite manufacturer's allegation that device's success was not in association members' financial interests, where association's "strategic plan" supported efforts to incorporate new technologies, and review contained disclaimer stating that it was not written with intent that it be used as basis for insurance reimbursement decisions.

**\*42** Appeal from the United States District Court for the District of Maryland, at Baltimore.  J. Frederick Motz, District Judge;  William M. Nickerson, Senior District Judge.  (CA-00-514-WMN).

**ARGUED:** Kevin Francis Arthur, Kramon & Graham, P.A., Baltimore, Maryland, for Appellant.  Deanne Elizabeth Maynard, Jenner & Block, L.L.C., Washington, DC, for Appellee.  **ON BRIEF:** Jeffrey H. Scherr, Jean E. Lewis, Kramon & Graham, P.A., Baltimore, Maryland, for Appellant.  Donald B. Verrilli, Jr., Katherine A. Fallow, Jared O. Freedman, Jenner & Block, L.L.C., Washington, DC, for Appellee.

Before WIDENER, WILLIAMS, and TRAXLER, Circuit Judges.

Affirmed by unpublished PER CURIAM opinion.

**OPINION**

PER CURIAM.

**\*\*1** Plaintiff Neurotron filed suit against American Association of Electrodiagnostic Medicine (AAEM) stemming from their publication of a technology review of Neurotron's product that was not favorable. Neurotron alleged several claims including injurious falsehood, false light commercial disparagement and a Lanham Act claim and sought a retraction.  AAEM filed a motion for summary judgment which the **\*43** district court granted. [FN\*] Neurotron now appeals and we affirm.

> FN\* Because all of the remaining claims depended on the resolution of the Lanham Act and injurious falsehood claims, the district court did not address those claims individually.  The only claim raised on appeal is with respect to injurious falsehood. Brief, p. 1.

Defendant AAEM is an association of approximately 4500 medical professionals based in Minnesota. AAEM exists "to serve[ ] physicians who diagnose and treat patients with disorders of muscle and nerve"

by knowledge exchange and advocacy. AAEM carries out this mission, in part, through the publication of its official journal, *Muscle & Nerve.* AAEM periodically conducts technology reviews and issues AAEM statements in dedicated pages of *Muscle & Nerve.*

Neurotron, Inc., a Maryland corporation, is the manufacturer and distributor of the Neurometer CPT (NCPT), an electrodiagnostic medical device. The NCPT uses electrical current to allow physicians to test and diagnose neurological disorders that would otherwise require the intervention of a neurologist or other specialist. In 1989, Dr. Jefferson Katims, the inventor of the NCPT and Neurotron's medical and research director, asked AAEM to evaluate the NCPT. At this time, the AAEM declined, but by 1993, enough of AAEM's members had expressed interest or concerns over the use of the Neurometer that AAEM assigned Dr. George Baquis to prepare a technology review.

Dr. Baquis reviewed 164 articles dealing with the NCPT's usefulness in diagnostic testing. Dr. Baquis adopted a set of six factors to evaluate the literature in order to narrow the field of articles upon which he would base his review to those with highest degree of scholarly merit. Four of these factors required some facility with statistics, but owing to his limited knowledge in that field, Dr. Baquis applied those factors loosely, i.e., he credited with statistical analysis any reliance on statistics in an article reviewed. Dr. Baquis eventually identified 44 articles meeting his criteria. The review concluded that "the information in the publications is insufficient to make conclusions about the usefulness of ... [the NCPT] at the present time."

The AAEM approved the article in 1996, but did not publish it until 1999. The author of the article was listed as "AAEM Equipment and Computer Committee." The parties disagree about whether the article was in fact authored solely by Dr. Baquis or the committee as a whole. The district court found that this was not a material fact.

Dr. Katims prepared a comprehensive response to the article and requested that AAEM publish it in *Muscle & Nerve* and retract the review. AAEM notified Dr. Katims that the review would not be retracted, that his response would not be published because it was too long, and that if he wanted to respond, it would have to conform to the length of a letter to the editor of 500 words or fewer.

**\*\*2** Neurotron brought claims against AAEM for injurious falsehood, false light commercial disparagement, civil conspiracy, violation of the Lanham Act, 15 U.S.C. § 1125, and tortious interference. Neurotron claims that the article has caused insurers to stop reimbursing practitioners for NCPT testing. Neurotron claims that the AAEM had a financial motive for publishing a negative article because the NCPT can be used by medical professionals other than those who are AAEM members. The district court granted summary judgment in favor of AAEM on all claims.

The district began its analysis with the Lanham Act claim. The district court stated that the threshold requirement for a **\*44** Lanham Act claim under 15 U.S.C. § 1125(a)(1)(B) was a showing that the challenged speech is commercial speech. Citing *United States v. Edge Broadcasting Co.,* 509 U.S. 418, 426, 113 S.Ct. 2696, 125 L.Ed.2d 345 (1993), and quoting *City of Cincinnati v. Discovery Network, Inc.,* 507 U.S. 410, 422, 113 S.Ct. 1505, 123 L.Ed.2d 99 (1993), the district court concluded that AAEM's article did not fall into the definition of commercial speech because it did not refer only to a commercial transaction, nor was it an "expression related solely to the economic interests of the speaker and its audience." Importantly, the district court also found that "chilling the speech of the AAEM in this instance would likely prevent all debate about such subjects from entering into the marketplace," because AAEM is the leading professional association for practitioners in the field. As stated, this part of the district court's decision is not contested on appeal.

On the injurious falsehood claims, the district court reviewed the relevant Maryland law and stated that ECC " 'must establish that [Defendant], *with malice,* published a known falsity to a third party, that caused special damages.' " Mem. Op. at 12 (quoting *National Board for Certification in Occupational Therapy, Inc. v. American Occupational Therapy Association,* 24 F.Supp.2d 494, 511 (D.Md.1998) (italics added by district court)). A principal proof plaintiff offered as tending to show malice was its characterization of the defendant's Strategic Plan, available on AAEM's website. The plaintiff alleged that this plan showed a clear economic motivation to discourage the use of "competing emerging technologies," of which the NCPT is one. Mem. Op. at 13. The district court found that this plan did not establish malice by clear and convincing evidence required by Maryland law, stating that the plan, to the contrary, "identifies the need for the assimilation to adapt to modern standards in the field." Additionally, the district court found that the technology review could not be viewed as an attempt to prevent insurers

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

**(Cite as: 48 Fed.Appx. 42,  2002 WL 31207199 (4th Cir.(Md.)))**

from reimbursing users of the NCPT because the review specifically included a disclaimer that "[t]his review is not written with the intent that it be used as a basis for reimbursement decisions."  Mem. Op. at 13.  Accordingly, the district court granted summary judgment on the injurious falsehood claim. Having had the benefit of briefing and oral argument, we are of opinion that the grant of summary judgment to AAEM was proper for the reasons substantially stated in the opinion of the district court.

**\*\*3** Accordingly, the judgment of the district court is

*AFFIRMED.*

48 Fed.Appx. 42, 2002 WL 31207199 (4th Cir.(Md.))

END OF DOCUMENT

Copr. ©  West 2004 No Claim to Orig. U.S. Govt. Works