993 F.2d 229 (Table)  
**Unpublished Disposition**

Page 1

**(Cite as: 993 F.2d 229, 1993 WL 142063 (4th Cir.(Md.)))**

NOTICE: THIS IS AN UNPUBLISHED OPINION.

(The Court's decision is referenced in a "Table of Decisions Without Reported Opinions" appearing in the Federal Reporter. Use FI CTA4 Rule 36 for rules regarding the citation of unpublished opinions.)

United States Court of Appeals,  
Fourth Circuit.

SUBURBAN MORTGAGE ASSOCIATES, INCORPORATED, *Plaintiff-Appellant,*  
v.  
SPRINGHILL HEALTH SERVICES, INCORPORATED; Crh Associates, d/b/A Coral Reef Hospital; Springhill International Medical Corporation; Coral Reef Hospital Investors, Incorporated, *Defendants-Appellees.*

No. 92-2025.

Argued: March 1, 1993  
Decided: May 5, 1993

Appeal from the United States District Court for the District of Maryland, at Baltimore. Walter E. Black, Chief District Judge. (CA-90-1903)

Andrew Spencer Newman, Patton, Boggs & Blow, Washington D.C., for Appellant.

David Brian Hamilton, Ober, Kaler, Grimes & Shriver, Baltimore, Maryland, for Appellees.

Jerianne Timmerman, Patton, Boggs & Blow, Washington, D.C., for Appellant.

John Anthony Wolf, Ober, Kaler, Grimes & Shriver, Baltimore, Maryland.

D.Md.

AFFIRMED.

Before WILKINSON, Circuit Judge, POTTER, United States District Judge for the Western District of North Carolina, sitting by designation, and HOWARD, United States District Judge for the Eastern District of North Carolina, sitting by designation.

PER CURIAM:

OPINION

**\*\*1** The Plaintiff-Appellant contends that the District Court erred:
  1. In finding no genuine issues of material fact as to whether the contract in dispute contained a condition precedent to Appellant's earning of fees.
  2. In finding no genuine issues of material fact as to the agency relationship between CRH and Springhill.
  3. In finding Simcorp and CRHI were partners with CRH and thus incapable of breaching the contract.

This case arose out of a complaint filed by Appellant alleging breach of contract, tortious interference with contract, unjust enrichment, quantum meruit, and conspiracy claims against assorted defendants. We affirm.

*FACTS*

1) *Procedural Background*

Appellant, Suburban Mortgage Associates, Inc. (Suburban) brought its action against assorted defendants-Springhill Health Services, Inc. (Springhill), Coral Reef Hospital Investors (CRHI), and Springhill International Medical Corp. (Simcorp) in a ten count complaint stating claims for relief for breach of contract, tortious interference with contract, unjust enrichment, quantum meruit, and conspiracy. Suburban's complaint arose out of a spoiled brokerage relationship between it and Coral Reef Hospital (CRH) whereby Suburban contracted to broker an FHA insured mortgage for CRH to fund a hospital construction project and other permanent re-financing expenses.

Suburban sued multiple parties in this case because some parties are either wholly or partially owned by Southern Medical Health Systems (SMHS) and some parties are wholly or partially owned by SMHS entities. Stated plainly, the structure of these SMHS associated companies and partnerships is at best amorphous. Still, Simcorp and CRHI jointly owned

993 F.2d 229 (Table)  
**Unpublished Disposition**

Page 2

**(Cite as: 993 F.2d 229, 1993 WL 142063 (4th Cir.(Md.)))**

Coral Reef Hospital (CRH; Simcorp 75% and CRHI 25%), and SMHS wholly owned Simcorp, CRHI, and Springhill. Springhill managed the day to day operations of CRH. Defendant moved to dismiss the complaint for failure to state a claim, supported by affidavits, which the court treated as a motion for summary judgment and granted as to all counts.

2) *Factual Background*

In September of 1986, Springhill (an Alabama corporation which managed CRH) contacted Suburban to inquire whether it would broker for CRH a Federal Housing Administration (FHA) insured, $32,500,000 mortgage to modernize Coral Reef Hospital in Florida. Eventually, Suburban did provide Springhill with a commitment letter which stated it agreed to provide the requested financing if the mortgage received FHA insurance to back it. The first line of the Suburban commitment letter stated:
> Subject to the issuance by the Government National Mortgage Association of its commitment to guaranty both the construction and permanent loan certificates to be issued by us in connection with the funding of this transaction, [Suburban] ... hereby issues its commitment to make a first mortgage construction and permanent loan....

Joint Appendix at 26. Springhill submitted the commitment letter to the CRH Board of Directors for its approval. The CRH Board voted to approve the letter and Springhill executives signed it in Alabama.

**\*\*2** The letter further stated that Suburban would assist ("shepherd") in processing the loan insurance application, service the loan by acting as mortgagee, and collect monthly payments. The letter also stated Suburban would receive "On the date of Initial Endorsement ... an initial service charge and a permanent loan placement fee." *Id.* at 27. The term "initial endorsement" was defined in the letter to mean, "formal and irrevocable approval of the amount of the ... loan by FHA ... acceptable to [CRH]." *Id.* Finally, the letter stated,
> On or before the date of Initial Endorsement, [CRH] shall pay SMAI a commitment fee which may be required by the purchasers of the GNMA-MBS in connection with the marketing of such securities (The Fee). Such fee shall be refunded to [CRH] upon issuance of the Initial Endorsement if such failure is for any reason other than [CRH] arbitrarily refusing to accept the Initial Endorsement and close this Insured Loan.

*Id.* at 28.

Suburban, CRH, and Springhill began the process of collecting the necessary information to present a mortgage insurance application to the FHA. However, before the FHA could provide mortgage insurance to CRH, the Department of Health and Human Services (HHS) had to approve the insurance relationship. Thus, Suburban, CRH and Springhill began the long bureaucratic process of demonstrating the worthiness of the CRH mortgage proposal to the FHA and HHS authorities.

HHS undertook to appraise the hospital in order to determine whether its value would support the loan. The HHS appraisal determined the hospital was not worth the amount of the requested mortgage value. Congressmen and Senators were enlisted to convince HHS to back the deal. Nevertheless, the politicians failed and HHS continued to stick with its appraisal and prevent the consummation of the loan.

Eventually, Suburban convinced HHS to reconsider. Suburban, Springhill, and CRH engaged the services of Peat, Marwick, Main & Co. (Peat, Marwick) to undertake a financial feasibility study to support an updated application requested by HHS. Peat, Marwick eventually told Springhill and CRH that it would not issue a feasibility study due to the declining financial condition of CRH. The process stalled, with sporadic contact between Suburban, Springhill and CRH over the next year. Eventually, Suburban learned Springhill and CRH decided to abandon the project and that the hospital was sold in April of 1990. Suburban then sued Springhill and the other defendants for breach of contract and other theories. Appellant Suburban claims Springhill and CRH breached their mortgage contract when they "unilaterally decided not to proceed" with the loan deal while Springhill and CRH claim the deal simply "died."

3) *The District Court Ruling*

Plaintiff-Appellant Suburban argued below that either securing the loan was not a condition precedent to CRH's duty to pay for Suburban's services or that if it was, CRH cannot escape liability because it caused the condition to fail by refusing to proceed with the loan application. The first count alleged Springhill breached its contract (the commitment letter). The district court found that Appellees'Defendants' duty to pay was conditioned upon the FHA issuing a mortgage which Appellant-

**(Cite as: 993 F.2d 229, 1993 WL 142063 (4th Cir.(Md.)))**

Plaintiff could broker to them. Since the condition never occurred, the duty to pay never arose. Further, the Court found that Appellees-Defendants fulfilled any duties they may have had in pursuing the financing arrangement. Consequently, the court found no factual basis for concluding any claim for relief had been adequately stated.

**\*\*3** Alternatively, the court resolved the dispute on agency principles. The Court found that Springhill was in fact the agent of CRH which was the actual party to the contract because the contract (the commitment letter) states CRH is the mortgagor and Springhill could not sign the letter without the CRH board of director's approval. Since Springhill, acting as an agent, made no contract, Suburban failed to make out two essential elements of its breach of contract theory: that Springhill entered and breached a contract.

The Court found that count two failed to state a claim because it accused CRH of tortiously interfering with Springhill's contractual relationship with Suburban. The Court held that Springhill was the agent of CRH and that a party to a contract cannot tortiously interfere with its own contract. That is, breach of contract and tortious interference with contract are different matters. Similarly, Simcorp and CRHI could not tortiously interfere with the contract because, as partners with CRH, they were parties to the contract and could not tortiously interfere with their own contract. Finally, since the parties were interconnected as either wholly or jointly owned, they could not conspire with themselves.

Finally, as to the quantum meruit and unjust enrichment claims, the Court found that plaintiffs cannot avail themselves of these remedies when an express contract exists. An express contract existed in this case. Therefore, the implied contract theories must fail.

For reasons stated *infra,* we affirm the district court's entry of summary judgment for substantially the same reasons as those articulated by the district court.

*DISCUSSION*

We review district court grants of summary judgment under a *de novo* standard and apply the same standards as the district court. *Temkin v. Frederick County Commissioners,* 945 F.2d 716, 718 (4th Cir. 1991), *cert. denied,* 112 S.Ct. 1475 (1991).

Id., *Barwick v. Celotex Corp.,* 736 F.2d 946, 58 (4th Cir. 1984). To attain summary judgment, the movant bears an initial burden of demonstrating no genuine issues of material fact are present. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). The burden then shifts to the non-moving party who must point out disputed issues of fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986). Thus, summary judgment is appropriate only where no material facts are disputed and there is "a complete failure of proof concerning an essential element of the non-moving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986). Finally, district courts must evaluate the evidence in the light most favorable to the non-moving party and draw all reasonable inferences from the facts in that party's favor. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

Regarding summary judgment on contract disputes, we have said "[o]nly an unambiguous writing justifies summary judgment.... The first step for a court asked to grant summary judgment based on a contract's interpretation is, therefore, whether, as a matter of law, the contract on its face is ambiguous or unambiguous on its face." *WorldWide Rights Ltd. v. Combe, Inc.,* 955 F.2d 242, 245 (4th Cir. 1992). Of course, it is the intent of the parties, manifested by a writing at issue, which controls a contract case. We have also said, "[i]f there is more than one permissible inference as to intent to be drawn from the language employed, the question of the parties' actual intention is a triable issue of fact." *Bear Brand Hosiery Co. v. Tights, Inc.,* 605 F.2d 723, 726 (4th Cir. 1979).

**\*\*4** We believe the disputed contract presented in this case lends itself to only one reasonable reading and is, for that reason, unambiguous on its face. The contract, written by Suburban, states CRH must pay Suburban "[o]n the date of Initial Endorsement ... an initial service charge and a permanent loan placement fee." Appendix at 27. The term "initial endorsement" was defined in the letter to mean, "formal and irrevocable approval of the amount of the ... loan by FHA ... acceptable to [CRH]." *Id.* We believe that sentence demonstrates both the time and the condition precedent to payment of the loan placement fee.

Indeed, the contract could not be clearer on the matter. It would be absurd to designate the time of loan approval as the date for payment of the placement fee if the loan approval itself never

**(Cite as: 993 F.2d 229, 1993 WL 142063 (4th Cir.(Md.)))**

occurred. Otherwise, how would the paying party know when the time to pay had arrived? Necessarily, the loan must both be approved, and be approved on a particular date, before payment of the placement fee can be made on that date. Therefore, loan approval was both the time and the precondition of paying the placement fee.

In fact, a reading of the contract demonstrates exactly the type of language Suburban could have used had it intended unconditional payment. When Suburban wanted to be paid for a commitment fee regardless of any conditions precedent, the contract provided for it by indicating the appropriate time of payment, not the precondition of payment. The contract stated,

> *On or before the date of Initial Endorsement,* [CRH] shall pay [Suburban] a commitment fee which may be required by the purchaser(s) of the GNMA-MBS in connection with the marketing of such securities. (The Fee). Such fee shall be refunded to [CRH] upon issuance of the Initial Endorsement if such failure is for any reason other than [CRH] arbitrarily refusing to accept the Initial Endorsement and close this Insured Loan.

*Id.* at 28 (emphasis added). Here, Suburban made it clear that payment of the commitment fee could be "on, or before" the date of initial endorsement, but in no case was it conditioned upon whether CRH obtained a mortgage. However, language of this sort was not used with respect to the permanent loan placement fee which was unambiguously due *after* the mortgage was irrevocably approved. This alone convinces us that the intent of the parties was that no permanent placement fee would be paid until the mortgage was approved.

Therefore, we agree with the district court that there being a failure of a condition precedent (Suburban obtaining a mortgage for CRH), there was no breach of contract. Consequently, Suburban completely failed to prove an essential element of its contract claim, namely; breach. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986). There being no breach, judgment was properly entered on count one of the complaint as a matter of law.

Since this case is jurisdictionally in federal court on the parties' diversity of citizenship, and since it is a dispute involving contract and tort theories, the choice of law rules of the state in which the district court sits determines the applicable substantive law. *Erie Railroad Co. v. Tompkins,* 304 U.S. 64 (1938). Maryland choice of law doctrine looks to the law of the state in which the contract was executed-in this case, Alabama. *Kramer v. Bally's Park Place, Inc.,* 311 Md. 387, 390 (1988). The remaining claims for tortious interference of contract, unjust enrichment, quantum meruit, and conspiracy must therefore be governed by Alabama law.

**\*5** We are of the opinion that since there was no breach of contract, there was no tortious interference with contract by the remaining parties to the lawsuit. A requisite element, missing in this case, of a tortious interference with contract claim is that "the defendant ... shall have intentionally ... induced one of the contracting parties to *refuse to perform* his contract to the injury of the other contracting party." 86 C.J.S. *Torts* § 44 (1954) (emphasis added). Accordingly, summary judgment was properly entered as to all tortious interference with contract counts.

Furthermore, no quantum meruit or unjust enrichment claims have been made out since the failure of the condition precedent (the mortgage) was the enrichment sought by the alleged transgressing parties. It is the long recognized rule that "the receipt of a benefit, inequitable to retain, is the essence of [quantum meruit or unjust enrichment] obligation, no cause of action can lie in quasi-contract against one not shown to have been enriched wrongfully at plaintiff's expense...." 17 C.J.S. *Contracts* § 6 (1963). Under quasi-contractual theories it is necessary that, "the plaintiff has suffered a detriment and the defendant has received a benefit as a result, it is said that justice demands the repayment by the defendant of the plaintiff's loss. But in any case there must be ... a benefit...." *Opelika Production Credit Association Inc. v. Lamb,* 361 So.2d 95, 99 (Ala. 1978). Having enjoyed no enrichment or benefit of any kind from the relationship-by virtue of a complete failure of the condition precedent-the remaining parties were entitled to summary judgment because Plaintiff-Appellant failed to establish an essential element (enrichment or benefit conferred) on those claims. *Celotex,* 377 U.S. at 322-23.

In sum, we affirm the district court's entry of summary judgment entirely.

*AFFIRMED*

993 F.2d 229 (Table), 1993 WL 142063 (4th Cir.(Md.)), Unpublished Disposition

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

993 F.2d 229 (Table)
**Unpublished Disposition**

Page 5

**(Cite as: 993 F.2d 229,  1993 WL 142063 (4th Cir.(Md.)))**

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works