```
                  IN THE UNITED STATES DISTRICT COURT
                     FOR THE DISTRICT OF MARYLAND
                           NORTHERN DIVISION

PRACTICEWORKS, INC.
SOFTDENT, LLC
                                                   CIVIL CASE NO.
        v.                                         JFM-02-1206

DENTAL MEDICAL AUTOMATION, INC.
    DEFENDANT
_____/


                    Friday, February 21, 2003
                    Baltimore, Maryland
                    (Conference Call)

    Before:   Honorable J. Frederick Motz, Judge


    Appearances: (By Telephone)

        On Behalf of the Plaintiffs:
          Michael S. Gordon, Esquire
          Howard E. Cotton, Esquire

        On Behalf of the Defendant:
          John M. G. Murphy, Esquire
          Mark E. Wiemelt, Esquire




    Reported by:
    Mary M. Zajac, RPR
    Room 3515, U.S. Courthouse
    101 West Lombard Street
    Baltimore, Maryland 21201
```

EXHIBIT A

```
 1              (Conference call at 8:30 a.m.)
 2          THE COURT:  I have a court reporter here who obviously
 3   can't see you all.  So if I could ask you to identify yourselves
 4   for the record and then try to remember to say who you are each
 5   time you speak.
 6          MR. COTTON:  Well, this is Howard Cotton.  I'm a
 7   member of the law firm of Katten, Muchin, Zavis and Rosenman in
 8   New York City.  And with me is Michael Gordon, also from the
 9   same law firm.
10          MR. WIEMELT:  Good morning, Your Honor.  Mark Wiemelt
11   on behalf of the defendants.
12          THE COURT:  All right.
13          MR. MURPHY:  And Your Honor, this is John Murphy, Ober
14   Kaler, on behalf of the defendants as well.
15          THE COURT:  Let me start because I'm not sure it was
16   referred to before the reply memorandum was filed, and that is
17   the statement made by the plaintiff on Page 30 of their summary
18   judgment motion in which they seem to indicate that they were
19   not asking that as for existing customers its services no longer
20   be provided, could no longer be provided.
21          MR. GORDON:  Your Honor, this is Michael Gordon.  Are
22   you referring to reply papers on the motion for reconsideration?
23          THE COURT:  Yes.
24          MR. GORDON:  We haven't received those papers.
25          THE COURT:  That's unfortunate.
```

```
 1              MR. MURPHY:  I mailed them out, I guess, Wednesday.
 2              THE COURT:  This is Wiemelt.
 3              MR. MURPHY:  Yeah, this is John Murphy.
 4              THE COURT:  Mr. Murphy.
 5              MR. GORDON:  Yes.  This has happened before where they
 6    sent these papers by regular mail.  And we're in New York City,
 7    they're mailing it from Baltimore, because of the inclement
 8    weather we have not received their reply papers, neither by fax,
 9    by hard copy or anything.
10              THE COURT:  Well --
11              MR. MURPHY:  Must be the weather, Your Honor.  I put
12    it in the mail Wednesday afternoon as soon as I got in the
13    office.
14              MR. GORDON:  We, as a matter of course, we had Federal
15    Expressed our papers to Mr. Wiemelt and Murphy.
16              THE COURT:  You know, this is all very interesting.  I
17    asked you to identify yourselves.  I know this is the gentleman
18    from New York speaking.  Would you please identify yourself?
19              MR. GORDON:  Mr. Gordon from New York.
20              THE COURT:  Mr. Gordon.  Has been Mr. Murphy speaking
21    on the other end.
22              MR. MURPHY:  Yes, that was me.
23              THE COURT:  Obviously, in this day and age, sending
24    stuff out by mail is stupid. But fortunately, as of two weeks
25    from now it will all be academic because we'll be doing
```

1  electronic case filing.

2          MR. GORDON:  Your Honor, this is Michael Gordon.  I
3  think what you're referring to is in the reply.  I'm going out
4  on a limb here trying to intuit what you're referring to.  But
5  I'm assuming that in their reply papers, they've made reference
6  to a statement made in our brief with respect to the right to
7  provide support and service.

8          And what we said in our brief, in our moving brief,
9  was that because the rights to provide support and service were
10 inextricably intertwined with the materials that we have given
11 them, that it was inconceivable that they would be able to
12 continue providing technical support and service because as Your
13 Honor recognized in the decision on Page Nine, they are required
14 to immediately return all materials to us.  You know, sample
15 software, documentation.

16         And so it is impossible for them to continue providing
17 technical support and service to the extent that they're holding
18 on to these materials.

19         If they return the materials, I don't know how they're
20 going to go about doing that.  But that was the point that we
21 made in our moving brief last August, if that's what is being
22 referred to.

23         THE COURT:  Well, maybe that will help clarify the
24 issue.  Is what's being, I'm being ask to reconsider in part is
25 simply whether the technical services can be provided, provided

1  all relevant materials were returned?

2  MR. WIEMELT: Judge, this is Mark Wiemelt. I don't
3  believe there's any factual basis in the record to make the
4  conclusion that the defendants can return all the materials and
5  not provide technical support and service. It's clearly the
6  defendant's position that they can do that just as anyone who is
7  not a party to the agreements can provide technical support and
8  service to the plaintiffs' software.

9  THE COURT: Is all that you're asking is for the right
10 to continue to provide technical services after having returned
11 all relevant materials?

12 MR. WIEMELT: That's correct, Your Honor. Mark
13 Wiemelt.

14 MR. GORDON: Your Honor, this is Michael Gordon. I
15 want to point out that defendants specifically sought a
16 declaration from the Court regarding their continuing right to
17 support, to provide support and service, which is derived from
18 their exclusive right as distributor and value added resaler as
19 granted by the plaintiff in the agreements.

20 They asked the Court to declare that those rights
21 continued. They sought an injunction and to preliminarily
22 enjoin us from providing technical support and service, and the
23 Court declined both of those applications.

24 So they themselves have acknowledged that these rights
25 derived from the agreements. The Court determined that those

1  rights terminated as of December 31st, 2002. They put the issue
2  into play. And the Court ruled unequivocally, unambiguously,
3  and clearly that the rights to provide support and service end
4  on December 31st, 2002.
5       THE COURT: But still, you said in your papers, Page
6  30 of your original memorandum in support, and now I've got to
7  find it, but I think you've just reiterated it here.
8  "Plaintiffs did not dispute the defendants may continue to
9  provide 'technical support' and 'service' to their former and
10 existing customers even after the agreements have been
11 terminated."
12      Now, my understanding is that you've reiterated that
13 today. Your position is that they can't provide that unless
14 they have the technical materials that they have to return.
15      MR. GORDON: Which they still, might I add, have not
16 returned. And our position was we didn't see how they would be
17 able to continue providing said support and services without
18 having those materials. As I said, they are just inextricably
19 intertwined.
20      THE COURT: That's a different question. If all I am
21 being asked is to clarify my opinion to say that they can
22 continue to provide technical support and service as long as
23 they return all relevant materials, then it seems to me that
24 there's no disagreement.
25      MR. GORDON: Well, I guess the question I have is what

1  was the purpose of them seeking a declaration as to their
2  continuing right if they thought, like anybody else in the
3  public, that they had a right to continue doing so? I don't
4  understand why they, why they interposed a counterclaim directed
5  to this right if indeed they thought this right continued. I
6  mean, the Court determined that it doesn't continue.

       THE COURT: Well, I'm not sure I understand that,
either, why they asserted the counterclaim and then, and then --

       MR. GORDON: The agreement, Your Honor. I mean, there
are judicial admissions all over their counterclaim. You know,
this is an agreement for the provision of services. This is a,
these rights derive from the agreement as cited in said
Paragraphs 12 and 105 in their third counterclaim.

       They're asking to permanently and preliminarily enjoin
us, plaintiffs, from directly offering support and service to
their customers. If they thought that, quote, "like any other
members of the public" their right to provide support and
service was outside the contract, then I can't imagine why they
would have requested that kind of relief from the Court. It
just doesn't make sense. And the Court has ruled on this issue
very clearly. And it's our position that those rights have
ended.

       THE COURT: Well, I'll hear from Mr. Wiemelt. I guess
the answer is, in light of my ruling or maybe people can make
mistakes when they file counterclaims.

1            MR. GORDON:  By the way --

2            THE COURT:  Wait a minute.  I want to hear from Mr.
3   Wiemelt.  I know it's difficult over the telephone.  But I just
4   said I wanted to hear from Mr. Wiemelt and I was speaking.

5            MR. GORDON:  Sorry, Your Honor.

6            THE COURT:  Now, Mr. Wiemelt, my understanding is that
7   if for whatever reason you filed the counterclaim, then you
8   didn't oppose it on summary judgment.  Your position is now, may
9   have been then, that you had rights derived from the agreement,
10  presumably unspoken, you also had rights derived from common
11  law.

12           Now, I have ruled against you on the agreement after
13  you didn't oppose it and I probably, you didn't oppose it and I
14  ruled against you.  Now you're saying, well, all I want is a
15  clarification that all you ruled was on our counterclaim which
16  says, you know, that no rights from the agreement, that provided
17  that we return all the materials, we still have a right under
18  the law, as any other member of the public, to provide technical
19  support and service.

20           MR. WIEMELT:  Mark Wiemelt, Your Honor.  That's
21  correct.  And I note that in plaintiff's motion for summary
22  judgment on Page 30, they continue by stating, quote, "hence
23  defendants may continue to provide technical support and service
24  insofar as these activities do not involve the use of materials
25  which defendants otherwise are obligated to return to

1   plaintiffs."

2           In light of those two admissions in their, in their
3   motion for summary judgment, we saw no reason to contest that
4   and didn't file a response because we, they agreed that we could
5   provide technical support and service after the agreements were
6   terminated.  So we conceded the point that we could not provide
7   updates, upgrades, and other electronic services under the
8   agreement, but we thought we would retain our common law rights
9   to provide technical support and service, especially because the
10  plaintiffs agreed with us on that point.

11          THE COURT:  And on this issue, that's all you're
12  asking clarification on?

13          MR. WIEMELT:  That is correct.

14          THE COURT:  All right.  Mr. Gordon.

15          MR. GORDON:  Yeah.  As I previously said, we agreed
16  with them to the extent that they returned all materials to us.
17  Our understanding, that they are continuing to use our software
18  and our documentation to provide that support.

19          And again, we don't see how they're going to be able
20  to provide support.  And we, in fact, believe that they will
21  compromise the integrity of the product if they purport to
22  provide support without the materials that they are supposed to
23  return to us.

24          Again, I don't understand why the technical support
25  issue was lumped into the counterclaim.  We feel the Court's

Case 1:02-cv-01205-JFM   Document 82-9   Filed 04/05/2004   Page 10 of 16

10

```
1    decision was clear and unambiguous and should stick.
2            THE COURT: Mr. Wiemelt, what about the fact that, how
3    can you provide, are you returning all the materials? Have you
4    returned them? Are you using them? What's the story on that?
5            MR. WIEMELT: Mark Wiemelt, Your Honor. We're
6    prepared, you know, upon resolution of the issues in this case,
7    there are some counterclaims pending. And I guess we'd have to
8    resolve what to do with the material to the extent that it's
9    relevant to our counterclaims. But we're prepared to return
10   those materials once those issues are decided and we can
11   continue to provide support and service without the materials.
12           It's important to note that the materials relate, were
13   advertising collateral used to sell the product. It's not
14   necessary for my clients to use that material to provide
15   technical support and service for the products.
16           Now, I want to make it clear. They will use software
17   but they're using only software that they have, that they have
18   lawfully purchased and for which title has passed to them. And
19   there's no question that any member of the public can either use
20   software they purchased from the plaintiff to provide technical
21   support and service or the defendants can simply use the
22   software that their customers have purchased from plaintiffs to
23   provide technical support and service.
24           So to say it's a virtual impossibility for the
25   defendants to provide technical support and service after
```

1   returning the materials related to the product is inaccurate.
2           MR. GORDON:  Your Honor, Michael Gordon.  Implicit in
3   what Mr. Wiemelt just said, he's using our software.  And he has
4   judicially admitted that his rights to sell, support and service
5   derive from the agreement.  The agreements have terminated.
6           And again, it's our position, based on the plain
7   language of the agreements and on the Court's determination with
8   respect to the counterclaim, that all of these rights have come
9   to an end.
10          THE COURT:  Okay.  I'm prepared to rule on this.  The
11  motion for clarification is granted on this limited issue.  All
12  I intended to do was to address the rights under the agreement.
13  That's what I was focused upon.
14          In light of what the plaintiffs had said, frankly, I'm
15  not even sure I had focused upon this, but the plaintiffs
16  themselves made it clear in their memorandum in support that
17  they were not disputing "the defendants may continue to provide
18  technical support and service to their former and existing
19  customers even after the agreements have been terminated",
20  provided, and that's the end of the quote, but provided, of
21  course, protected, that relevant materials were returned and not
22  used.
23          That's all I'm holding today is that that, my holding
24  was limited to that; to the extent that there was an independent
25  right on the part of the defendants to provide technical support

1   and service just like any other member of the public, I did not
2   mean to address that. And so to that extent, my opinion is
3   clarified because that's all I was addressing.
4       Now, if there are issues that materials are being
5   improperly used, that's a whole different question. And if the
6   plaintiffs want to move for an injunction, if their position is,
7   well, materials are being used improperly, that they should be
8   returned or that software is being used improperly, that is a
9   whole different legal issue. And I am perfectly willing to
10  entertain that in the proper context. But this isn't the
11  context.
12      The opinion was limited to the counterclaim. Why the
13  counterclaim was asserted, you know, that's curious, but maybe
14  not. I don't want to reanalyze that.
15      The fact of the matter is all I was addressing was
16  what was before me, and that was whether or not the agreement
17  provided a -- I've held what I held and I was not intending to
18  address any independent right that the defendants may have had
19  because the plaintiffs didn't put that before me. They said in
20  their motion that they did not dispute that the defendants could
21  continue to provide technical support and service, provided that
22  they didn't improperly use plaintiffs' materials.
23      So on these other issues, I mean, I'm here.
24      MR. GORDON: This is Michael Gordon. Now, you had
25  raised the possibility of us filing an application for

1    injunctive relief but we do not want to burden the Court with
2    additional paper. Your decision said, on Page Nine, defendants
3    are required to immediately return to plaintiffs any and all
4    materials regarding the products in any form whatsoever.
5         We would be moving for an application or an order
6    directly requiring them to do that at the risk of contempt. If
7    they are willing to do that, then we don't need to make an
8    application for injunctive relief.
9         THE COURT: Mr. Wiemelt?
10        MR. WIEMELT: Yeah, Judge, Mark Wiemelt. We're
11   willing to return the materials and not use them to provide
12   technical support and service. Again, the one issue we have is
13   many of these materials are relevant to our counterclaims. So,
14   you know, I guess we would be willing not to use them but to
15   return them would then be returning the evidence of some of our
16   counterclaims.
17        THE COURT: Maybe you and Mr. Gordon can work that
18   out. Maybe, maybe they should be held by you as counsel if you
19   need them and not by your client, in case there's concern that,
20   in fact, they're being used to provide services. Would that be
21   an avenue of a possible resolution of that issue?
22        MR. GORDON: Yeah. As long as all copies as well are
23   maintained by Mr. Wiemelt.
24        MR. WIEMELT: Mark Wiemelt. Yeah. That's acceptable,
25   Judge. And I guess we'll try to work it out. But I would ask

1   that they try to more clearly identify which issues they think
2   are subject to return.
3           MR. GORDON: Everything. The agreement says "any and
4   all materials regarding the product." Extremely broad language.
5   Everything you've ever received. Everything your clients have
6   ever received.
7           MR. WIEMELT: Mark Wiemelt again. I think in theory,
8   and probably in practice, it's possible to do that. We talked
9   before. It's hypothetically possible to burn down the building
10  and walk across the street with a lunch pail and still provide
11  technical support and service.
12          I think I can check with my clients and see if they
13  can't drop all the materials that have ever been given them by
14  the plaintiffs, with the exception of the software that they've
15  purchased, drop all that material off to my office pending this
16  litigation.
17          THE COURT: Okay.
18          MR. GORDON: Okay.
19          THE COURT: Good. That seems to resolve it.
20          As far as the other issues are concerned, they were
21  closely, they're close legal issues now, they were close legal
22  issues then in terms of, I don't know how close they were. But
23  they're difficult legal issues in terms of the reasonable notice
24  and in terms of the extrinsic evidence. They're issues that I
25  thoroughly considered. And to the extent that I'm asked to

reconsider them, I deny that motion. Okay?

MR. GORDON: Thank you, Your Honor.

THE COURT: Thank you all very much. I'm sorry I was sharp with you, Mr. Gordon. I know it's very tough on these telephones when you don't see one another. There's delay in transmissions. Thank you. Anything else?

MR. GORDON: No.

THE COURT: Are we otherwise on schedule?

MR. COTTON: Judge, this is Mr. Cotton. I wanted to raise an issue with respect to the orders issue regarding attorney's fees.

What we're still trying to do and hopefully we'll be able to do this without further engaging the Court is work that issue out.

THE COURT: By the way, I've told Mary, unless you all want this, this doesn't have to be on the record, does it?

MR. COTTON: That's entirely up to you.

(Off record discussion.)

(Conclusion of Proceedings.)

REPORTER'S CERTIFICATE

I, Mary M. Zajac, do hereby certify that I recorded stenographically the proceedings in the matter of PracticeWorks, Inc. Versus Dental Medical Automation, Inc., Case Number(s) JFM-02-1206, on February 21, 2003.

I further certify that the aforegoing pages constitute the official transcript of proceedings as transcribed by me to the within matter in a complete and accurate manner.

In Witness Whereof, I have hereunto affixed my signature this 26th day of February, 2003.

_____
Mary M. Zajac,
Official Court Reporter