## SETTLEMENT AGREEMENT

This Settlement Agreement ("Settlement Agreement") is made and entered into as of December 27, 2004, between Plaintiffs PracticeWorks, Inc. and SoftDent LLC (collectively, "Plaintiffs"), and Defendants Professional Software Solutions of Illinois, Inc. and Dental Medical Automation, Inc. (collectively "Defendants") (collectively "Parties").

WHEREAS, the Parties had entered into dealership agreements between January 1993 and December 2002 that granted Defendants an exclusive dealership to re-sell or distribute "Products," as that term was defined in such dealership agreements, including a dental management software program known as the SoftDent® Dental Management System, and any related products, derivative works, modules, updates, upgrades, enhancements and the accompanying documentation (collectively, the "SoftDent Software"), within specified zip code ranges located throughout Illinois and Ohio (the "Agreements");

WHEREAS, on April 8, 2002, Plaintiff SoftDent sent a letter to both Defendants informing them that Plaintiffs were terminating the Agreements in nine months, effective as of December 31, 2002, and that the Agreements would not be renewed for the term commencing January 1, 2003;

WHEREAS, on April 10, 2002, Plaintiffs filed two actions in the United States District Court for the District of Maryland entitled <u>PracticeWorks, Inc. and SoftDent, LLC v. Professional Software Solutions of Illinois, Inc.</u>, Civil No. JFM-02-1205, and entitled <u>PracticeWorks, Inc. and SoftDent, LLC v. Dental Medical Automation, Inc.</u>, Civil No. JFM-02-1206 (the "Actions");

WHEREAS, in the Actions, Plaintiffs sought, *inter alia*, a declaration that they had properly terminated the Agreements on reasonable notice and Defendants filed numerous counterclaims;

WHEREAS, on January 7, 2003, the Court granted Plaintiffs' motion for partial summary judgment, holding, *inter alia*, that Plaintiffs had lawfully terminated the Agreements on reasonable notice (the "1/7/03 Decision and Order");

WHEREAS, notwithstanding the Court's decision, the Parties disagreed as to whether Defendants could continue using the SoftDent Software in providing technical support and service to third-party customers;

WHEREAS, on February 21, 2003, the Court clarified its 1/7/03 Decision and Order and held that Defendants could provide post-termination technical support and service of the SoftDent Software "provided, of course, that relevant materials were returned [to Plaintiffs] and not used";

WHEREAS, notwithstanding the Court's clarification, the Parties could not agree on the relevant materials to be returned and whether Defendants could continue to use the SoftDent Software to provide technical support and service to third parties;

WHEREAS, on June 23, 2004, the Court granted Plaintiffs' second motion for partial summary judgment, holding that Defendants' use of the SoftDent Software to provide technical support and service to third parties after the Agreements had been terminated constituted a breach of the Agreements as well as infringement of SoftDent's copyrights, and further ordered that Defendants are "prohibited from using" the SoftDent Software to provide technical support ("the 6/23/04 Decision and Order");

WHEREAS, in order to avoid the further expense of litigation, the Parties enter into this Settlement Agreement and by so doing the Parties seek to fully, completely, and finally resolve, terminate, and settle all disputes, claims, and actions which were asserted in the Actions, and to preclude the possibility of further disputes between them arising from the facts alleged in the Actions.

WHEREFORE, in consideration of the promises, covenants, warranties, and representation set forth below, and without admitting any liability or wrongdoing, whether negligent, intentional, willful or otherwise, Plaintiffs and Defendants agree as follows:

1.    <u>Consent Judgment for Permanent Injunction</u>

Concurrently with the execution of this Settlement Agreement, Plaintiffs and Defendants, shall execute and file a Consent Judgment for Permanent Injunction Against Defendants ("Consent Judgment") in the form attached hereto as Exhibit "A".

Defendants understand and agree that, under the Consent Judgment to be entered by the Court, they shall be and hereby are:

(a)    required to deliver immediately to Plaintiffs all Products, including copies of the SoftDent Software, in any form whatsoever, including screenshots (*i.e.*, documents capturing the screen of any application of the SoftDent Software), as well as sentinels, which SoftDent Software includes all copies of the following works protected by the following Certificate of Copyright Registration Nos., that are in the possession, power, custody, or control of Defendants; their officers, including, without limitation, Lawrence Eyer and Jeffrey Suglio; their directors; agents; and/or employees:

(1)    SoftDent v. 6.25 (TX 2-817-208);

(2)    SoftDent v. 7.25 (TX 3-590-481);

3

    (3)        SoftDent v. 7.35 (TX 3-849-100);

    (4)        SoftDent v. 7.45 (TX 4-023-631);

    (5)        SoftDent v. 7.7 (TX 4-745-797);

    (6)        SoftDent v. 9.7 (TX 5-790-350);

    (7)        SoftDent v. 9.8 (TX 5-789-503);  and

    (8)        SoftDent v. 10.0 (TX 5-947-127).

Defendants relinquish all rights, title and interest in and to all Products, including the SoftDent Software, in any form whatsoever, and sentinels that are the subject of this settlement, and agree that all such materials shall be released to Plaintiffs and disposed of or retained by Plaintiffs as they deem appropriate;

    (b)    permanently enjoined and restrained from selling, renting, marketing, manufacturing, leasing, distributing, subscribing or otherwise disposing of, or making any other sale or distribution of the SoftDent Software and other works now or hereafter protected by copyrights related to the SoftDent Software;

    (c)    permanently enjoined and restrained from using, copying (as that term is defined in the Copyright Act), and/or duplicating the SoftDent Software for any external, commercial purpose including, without limitation, the provision of technical support and/or service, including training, of the SoftDent Software; preparing derivative works based on any or all of the SoftDent Software; using the SoftDent Software to create a data conversion program and/or using a data conversion program that uses, copies and/or duplicates the SoftDent Software; reverse engineering and/or making any other use of the SoftDent Software and other works now or hereafter protected by copyrights related to the SoftDent Software;

4

(d)    except as provided in paragraph 2 below, permanently enjoined and restrained from providing any telephonic, on-site or other form of technical support and/or service, including training, of the SoftDent Software and other works now or hereafter protected by copyrights related to the SoftDent Software;

(e)    permanently enjoined and restrained from representing, stating, advertising, and/or in any other way communicating to third parties that Defendants are authorized by, certified by, sanctioned by, affiliated with in any way, providing services complementary to and/or working in collaboration with, Plaintiffs as sellers and/or providers of technical support and/or service, including training, of the Software and other works now or hereafter protected by copyrights related to the SoftDent Software;

(f)    permanently enjoined and restrained from assisting, acting in concert with, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in paragraphs 1(a) through 1(e) above.  Defendants shall not be in violation of this subparagraph or subparagraph 1(c) based on a data conversion performed by a customer or another—who neither is controlled by Defendants, acting, or purporting to act on Defendants' behalf and/or affiliated with Defendants, it being understood that any third-party entity who is not in control of, is not controlled by, and/or is not under common control with, either Defendant shall not be deemed to be an "affiliate" of that Defendant—from or on a computer containing an authorized copy of the SoftDent Software; and

(g)    Nothing contained in this paragraph 1 shall prevent the making of a copy or adaptation of customers' SoftDent Software by Defendants:  (i) for archival or backup purposes and/or to install a hardware backup system that is part of a system network, but not for the purpose of performing a data conversion; or (ii) solely by virtue of the activation of computer

5

hardware that lawfully contains an authorized copy of the SoftDent Software, for purposes only of maintenance and repair of that computer hardware.

2.    <u>One Year Period</u>:

Notwithstanding subparagraph 1(d) hereinabove and paragraph (d) of the Consent Judgment, Defendants may continue to provide telephonic or on-site support and service, including training, to customers for a period of one-year from the date of execution of this Settlement Agreement (the "One-Year Period"), on the sole condition that in providing telephonic or on-site support and service, including training, during the One-Year Period, Defendants do not use, copy (as that term is defined in the Copyright Act), duplicate and/or make any other use of the SoftDent Software, as set forth in subparagaph 1(c) hereinabove.  Moreover, in each and every instance that Defendants provide on-site support and service, including training, during the One-Year Period, they are restricted,  (i) to viewing the SoftDent Software over their customers' shoulder(s) on their customers' computers and (ii) to providing technical support and/or service, including training, exclusively and solely to the facility, dentist and/or customer that Defendants are visiting, and to no other facility, dentist and/or customer. Additionally, during the One-Year Period, Defendants are prohibited from undertaking or performing the conversion of any customer data for use in connection with software that competes with the SoftDent Software.  Defendants shall not be in violation of this paragraph 2 based on a data conversion performed by a customer or another—who neither is controlled by Defendants, acting, or purporting to act on Defendants' behalf and/or affiliated with Defendants, it being understood that any third-party entity who is not in control of, is not controlled by, and/or is not under common control with, either Defendant shall not be deemed to be an "affiliate" of that Defendant—from or on a computer containing an authorized copy of the

6

SoftDent Software.  At the end of the One-Year Period, Defendants are permanently enjoined and restrained from providing any technical support and service whatsoever, including training, of the SoftDent Software, including, without limitation, telephonic or on-site support and service, including training.

     3.     <u>PSSI's Limited Retention of SoftDent Software</u>

Notwithstanding subparagraph 1(a) hereinabove and paragraph (a) of the Consent Judgment, as of the date of execution of this Settlement Agreement, Defendant PSSI may retain one (1) copy of the SoftDent Software, which single copy it agrees to use solely for its internal accounting and billing purposes and not for any external, commercial purpose (with the sole exception of billing) including, without limitation, the provision of technical support and/or service, including training, to third parties, and which copy PSSI agrees to deliver to Plaintiffs no later than Monday, January 10, 2005, subject to the terms and conditions stated in paragraph 1 hereinabove.  PSSI may retain, however, hard copies or print-outs of its accounting/billing data that it generates through its use of the SoftDent Software.

     4.     <u>Consultant</u>

     (a)     Plaintiffs, at Defendants' expense, which shall be capped at $10,000.00 total, shall retain the services of Satterfield Computer Services, LLC as a third-party consultant ("Consultant"), who will file a report with Plaintiffs certifying the removal of all SoftDent Software from the computers, electronic files and storage media in the offices of Defendants, including, without limitation, all Defendants' employees—as well as computers, electronic files and storage media maintained at the residences of Defendants' principals, Lawrence Eyer and Jeffrey Suglio.  Defendants shall certify to Consultant and Plaintiffs, by affidavit, in the form annexed hereto as Exhibit "B", that they have identified to Consultant all computers, electronic

7

files and storage media in their possession, power, custody, or control. Each employee of Defendants identified in Exhibit "C", who is still in the employ of Defendants, shall certify by affidavit, in the form annexed hereto as Exhibit "D", that he or she has never loaded the SoftDent Software on any other computers outside Defendants' place of business, including, without limitation, that employee's home, unless the Software was loaded onto a customer's computer(s). Only in the event an employee cannot so certify, Consultant will also inspect any such computers at the employee's home. Consultant will not enter keystrokes and/or directly operate Defendants' computers, but rather will use Defendants' computers by looking over the shoulder(s) of Defendants or Defendants' designees and instructing Defendants or Defendants' designees to enter keystrokes and/or operate Defendants' computers in furtherance of the conduct of the audit provided for in this paragraph. Consultant will proceed in the foregoing manner on the condition that Defendants or Defendants' designees do not countermand, decline or refuse to cooperate with the conduct of the audit provided for in this paragraph. Any copies of SoftDent Software found on Defendants' computers, electronic files and storage media will be purged therefrom and copied and transferred to removable media, which will be provided to and retained by outside counsel for Plaintiffs and Defendants solely for the purposes of maintaining a record of compliance with this Settlement Agreement and for use in the event that any further dispute between the Parties arises with respect to such documents. Except for providing the materials to outside counsel for Plaintiff, Consultant shall not copy, disclose, use or retain copies of any of said materials found on Defendants' computers. Such audit shall be conducted during regular business hours and shall be completed in a reasonable time and manner, in the presence of Defendants or Defendants' designees, on the conditions that (i) Defendants or their designees do not impede, obstruct and/or interfere in any way with the Consultant's performance of the

audit and (ii) Defendants do not use their unavailability and/or inability to be present during an audit as a basis for deferring, adjourning, re-scheduling and/or in any way interfering with such audit. On or before January 10, 2005, Plaintiffs' counsel shall provide Defendants' counsel with written notice of the starting date and location that Consultant will begin the initial audit of Defendants during the week of January 17, 2005. Certification that Consultant has undertaken the process set forth in a letter to Howard E. Cotton, Esq., with a copy to Mark E. Wiemelt, Esq., dated on or before February 1, 2005, shall constitute an acceptable certification pursuant to this paragraph.

(b)    Concurrently with the execution of this Settlement Agreement, each Defendant will provide an affidavit to Plaintiffs, in the form annexed hereto as Exhibit "B", that they have provided to counsel for Plaintiffs, all Products, including any and all copies of the SoftDent Software, in any form whatsoever, as well as all sentinels, that are in the possession, power, custody, or control of Defendants.

(c)    In addition to the Consultant's inspection provided for in subparagraph 4(a) hereinabove, Defendants agree that for a period of three years following the date of execution of this Settlement Agreement, Plaintiffs may engage, at Plaintiffs' expense, Consultant, or any other entity of their choosing, to conduct an audit of computers, electronic files and storage media in the possession, power, custody, or control of Defendants and/or their principals Lawrence Eyer and Jeffrey Suglio (pursuant to the protocol set forth in subparagraph 4(a)). Such audits shall be conducted no more frequently than twice during any one calendar year, shall be conducted during regular business hours, and shall be completed in a reasonable time and manner in the presence of Defendants or Defendants' designees, on the conditions that (i) Defendants or their designees do not impede, obstruct and/or interfere in any way with the

9

Consultant's performance of the audit and (ii) Defendants do not use their unavailability and/or inability to be present during an audit as a basis for deferring, adjourning, re-scheduling and/or in any way interfering with such audit.

5.    Dismissal of Action With Prejudice

Concurrently with the execution of this Settlement Agreement, Plaintiffs and Defendants shall execute and file a Stipulation of Dismissal With Prejudice pursuant to F.R.C.P. Rule 41(a), in the form annexed hereto as Exhibit "E", providing that the Actions are dismissed with prejudice, that the Parties waive all rights to appeal any Decision, Judgment or Order entered in the Actions, that each Party shall bear its own costs, and that the Court will retain jurisdiction to enforce the Settlement Agreement, the Consent Judgment, and, if necessary, to enter the Stipulation for Entry of Money Judgment, described below at paragraph 14.

6.    Bankruptcy Waiver

(a)    Defendants hereby agree that the contingent indebtedness provided for in the Stipulation for Entry of Money Judgment to be entered as part of this Settlement Agreement, which are predicated upon either Defendant's alleged intentional infringement of SoftDent's copyrights, shall be non-dischargeable in any bankruptcy proceeding involving Defendants pursuant to 11 U.S.C. § 523(a)(6), or any successor provision of the federal bankruptcy laws, and that Defendants shall not seek to avoid such contingent indebtedness by obtaining a determination that said indebtedness is dischargeable in bankruptcy pursuant to 11 U.S.C. §§ 727, 1141, 1228 or 1328, or any successor provisions of the federal bankruptcy laws.

(b)    Defendants hereby agree that in the event either files a petition, or a petition is filed against them, under the Federal Bankruptcy Reform Act of 1978, as amended, or any successor statute, this Settlement Agreement may be offered in any judicial, quasi judicial,

10

administrative or arbitration proceeding as conclusive evidence of the contingent indebtedness evidenced in the Stipulation for Entry of Money Judgment. Defendants further agree that, should a bankruptcy proceeding be commenced by or on behalf of them, they shall execute waivers of discharge as to the contingent indebtedness set forth in the Stipulation for Entry of Money Judgment, and stipulate, in a form satisfactory to Plaintiffs, that any stays entered pursuant to order of the Bankruptcy Court or 15 U.S.C. 362(a) shall not apply to the contingent indebtedness set forth in the Stipulation for Entry of Money Judgment, and shall take all actions and execute all documents necessary to assure that such waivers of discharge and stipulations are timely approved by the applicable Bankruptcy Court.

(c)     Defendants do hereby forever waive and relinquish in favor of Plaintiffs and each other, and their respective successors, endorsees and assigns, any claim or right to payment Defendants may now have or hereafter have or acquire, by subrogation or otherwise, by reason of the existence, performance or enforcement of any of their obligations under this Settlement Agreement, so that at no time shall Defendants be or become a "creditor" within the meaning of 11 U.S.C. § 547(b), or any successor provision of the federal bankruptcy laws. If payment is made by Defendants for any alleged infringement, whether voluntarily or otherwise, or by any third party, on the contingent indebtedness provided for in the Stipulation for Entry of Money Judgment, and Plaintiffs are thereafter required to remit any portion of that payment to either Defendant's trustee in bankruptcy or to any similar person under the federal bankruptcy laws or any law for the relief of debtors, the indebtedness shall be considered unpaid for the purpose of enforcing this Settlement Agreement.

(d)     Nothing contained in this Settlement Agreement shall effect or limit Plaintiffs' ability or right to file a proof of claim and to participate in any distributions from the

11

bankruptcy estates of Defendants in any bankruptcy proceeding, and any such distributions shall be credited first against any portion of the contingent indebtedness provided for in the Stipulation for Entry of Money Judgment which is determined to be dischargeable.

(e)    Defendants warrant and agree that each of the waivers set forth above were made with the full knowledge of the significance and consequences and that, under the circumstances, the waivers are reasonable and not contrary to public policy or law.  If any such waiver is determined to be contrary to any applicable law or public policy, such waiver shall be effective only to the extent permitted by law or public policy.

7.    Continuing Jurisdiction of Court

The Parties agree that the United States District Court for the District of Maryland, the Honorable J. Frederick Motz (the "Court") shall retain jurisdiction of the Actions and of this Settlement Agreement to the extent necessary to enforce this Settlement Agreement, the Consent Judgment, and the Stipulation for Entry of Money Judgment.

8.    Release of Claims by Plaintiffs

Upon the entry of the dismissal described in paragraph 5 of this Settlement Agreement, and entry of the Consent Judgment described in paragraph 1 of this Settlement Agreement, Plaintiffs, collectively and individually together with their assigns, predecessors-in-interest, successors-in-interest, divisions, all affiliated, parent or subsidiary corporations or entities, agents, officers, directors, employees, managers, supervisors, shareholders, representatives, attorneys, partners, joint venturers and any and all other persons or entities who have at any time acted, or purported to act on its behalf, absolutely and forever release and discharge Defendants, together with their assigns, predecessors-in-interest, successors-in-interest, divisions, all affiliated parent or subsidiary corporations or entities, agents, officers, directors, employees,

12

managers, supervisors, shareholders, representatives, attorneys, partners, joint venturers, and any and all other persons or entities who have at any time acted, or purported to act on their behalf, from any and all claims, rights, demands, covenants, agreements, contracts, duties, obligations, responsibilities, representations, warranties, promises, liens, accounts, debts, liabilities, damages, expenses, attorneys' fees, costs and causes of action, known or unknown of whatever kind and howsoever arising, which Plaintiffs now have, ever have had, or may have had up to and until the date of execution of this Settlement Agreement, whether at law or in equity, including all claims which were asserted or which could have been asserted by Plaintiffs against Defendants in the Actions.

Defendants understand and acknowledge that if they engage in any activity which is prohibited under this Settlement Agreement or which constitutes an infringement of SoftDent's Software copyrights after the date they sign this Settlement Agreement, Plaintiffs may bring suit against Defendants and seek the remedies set forth in paragraph 14 below.

9.    Release of Claims by Defendants

Upon execution of this Settlement Agreement, Defendants, together with their assigns, predecessors-in-interest, successors-in-interest, divisions, all affiliated parent or subsidiary corporations or entities, agents, officers, directors, employees, managers, supervisors, shareholders, representatives, attorneys, partners, joint venturers and any and all persons or entities who have at any time acted, or purported to act on their behalf, absolutely and forever, release and discharge Plaintiffs, together with their assigns, predecessors-in-interest, successors-in-interest, divisions, all affiliated, parent or subsidiary corporations, trade associations or entities, agents, officers, directors, partners, employees, managers, supervisors, shareholders, representatives, attorneys, partners, joint venturers and any and all other persons or entities who

13

have at any time acted, or purported to act on their behalf, from any and all claims, rights, demands, covenants, agreements, contracts, duties, obligations, responsibilities, representations, warranties, promises, liens, accounts, debts, liabilities, damages, expenses, attorneys' fees, costs and causes of action known or unknown of whatever kind and howsoever arising, which Defendants now have, ever have had, or may have had up to and until the date of execution of this Settlement Agreement, whether at law or in equity, including all counterclaims which were asserted or which could have been asserted against Plaintiffs in the Actions.

10.   Disclosures to Third Parties:

The Parties may disclose to third parties the terms and conditions of this Settlement Agreement, the Consent Judgment and/or the Stipulation for Entry of Money Judgment, it being understood that such disclosure must be consistent with the terms and conditions of the aforementioned documents.

11.   Notices

All notices provided for herein shall be sent to Plaintiffs to the attention of Howard E. Cotton, Esq., Katten Muchin Zavis Rosenman, 575 Madison Avenue, New York, New York 10022; and to Defendants, to the attention of Mark Wiemelt, Esq., at 10 S. LaSalle St., Suite 3300, Chicago, Illinois 60603. Written notice may be sent by first class mail or facsimile.

12.   Applicable Law

This Agreement and the rights, duties, and obligations of the Parties to this Agreement shall be interpreted, construed, performed, and enforced in accordance with and shall be governed by the laws of the State of Maryland. Any action brought to enforce the terms of the Agreement shall be filed in the United States District Court. The Parties agree to the jurisdiction

14

of the United States District Court for the District of Maryland for resolving any claims or actions arising from this Settlement Agreement or its interpretation.

13.    Differences in Fact

The Parties fully understand and agree that the assumptions and perceived circumstances upon which this Settlement Agreement is executed may be mistaken or otherwise in error. With such understanding and agreement, the Parties expressly accept and assume the risk of facts being other than or different from their assumptions or perceptions as of any date prior to and including the date hereof; the Parties fully agree that this Settlement Agreement shall be in all respects effective, and shall not be subject to termination, rescission, or modification by reason of any mistaken or erroneous assumption of perceived circumstances.

14.    No Representation

The Parties acknowledge to one another that no promise, inducement or agreement not contained herein has been expressed or made to any of them in connection with this Settlement Agreement.

15.    Remedies Upon Breach

The Parties acknowledge and agree that it is difficult to ascertain both the degree of injuries suffered by Plaintiffs as a result of Defendants' alleged breach of the Agreements and/or alleged infringement of SoftDent's copyrights, and the precise amount of damages which would properly compensate Plaintiffs for those injuries. As a result, as part of this settlement, each Defendant will execute a Stipulation for Entry of Money Judgment in the form attached hereto as Exhibit "F".

In the event of any breach of the Consent Judgment and/or Settlement Agreement by either Defendant, the Parties agree that Plaintiffs shall have and recover from the breaching

15

Defendant the amount of One Hundred Fifty Thousand Dollars ($150,000) for each work (as provided by the Copyright Act and relevant caselaw) of the SoftDent Software that has been infringed (hereinafter referred to as the "Recovery"), as reflected in the Stipulation for Entry of Money Judgment. Upon such breach, Plaintiffs shall have full right and authority to file the Stipulation for Entry of Money Judgment with the Court along with a pleading captioned "Plaintiffs' Notice of Defendant's Noncompliance with Consent Judgment and/or Settlement Agreement" (the "Notice"), which shall set forth the facts of the breach or violation which entitles Plaintiffs to enforcement and entry of the Stipulation for Entry of Money Judgment by the Court. The breaching Defendant shall have fourteen (14) days from the date of Plaintiffs' service of the Notice on the breaching Defendant to take action to oppose entry of the Stipulation for Entry of Money Judgment. Plaintiffs shall have eleven (11) days from the date of the breaching Defendant's service of the opposition to Plaintiffs' Notice to reply to said opposition. The Parties agree that the Recovery is not a penalty, but rather damages, which Plaintiffs are entitled to recover from the breaching Defendant and will only become due should the breaching Defendant violate the terms of the Consent Judgment and/or this Settlement Agreement.

The Parties further acknowledge and agree that the prevailing party shall be entitled to recover their actual expenses associated with the enforcement of this Settlement Agreement, the Consent Judgment and/or the Stipulation for Entry of Money Judgment (including the filing of the Stipulation for Entry of Money Judgment and Notice), including, but not limited to, reasonable attorneys' fees and recoverable costs incurred in connection with such enforcement.

The Parties further agree that an impending or existing violation of any provision of this Settlement Agreement and/or the Consent Judgment would cause Plaintiffs irreparable injury for which they would have no adequate remedy at law, and agree that Plaintiffs shall be entitled to

16

81337906_12

obtain immediate injunctive relief prohibiting such violation, in addition to any other rights and remedies available to them.

16.   Complete Agreement

This Settlement Agreement is intended by the Parties as a final and complete expression of their agreement and understanding with respect to its subject matter. The terms of this Settlement Agreement are contractual, and may not be changed, modified, altered, interlineated, or supplemented, nor may any covenant, representation, warranty, or other provisions hereof be waived, except by agreement in writing signed by the party against whom enforcement of the change, modification, alteration, interlineation, or supplementation is sought.  Nor may any covenant, representations, warranty, or other provision hereof be waived, except by agreement in writing signed by the party against whom enforcement of the waiver is sought. The Parties acknowledge to one another that no promise, inducement, or agreement not contained herein has been expressed or made to any of them in connection with this Settlement Agreement.

17.   No Assignment

The Parties expressly represent and warrant that they have not assigned or transferred to any person, firm, corporation, partnership, association, or other entity whatsoever any or all of the rights, duties, or obligations embodied or released in this Settlement Agreement.

18.   Binding Effect

This Settlement Agreement and any and all Exhibits referenced hereinabove shall be binding upon and inure to the benefit of the Parties hereto and their respective successors-in-interest, assigns, officers, directors, employees, shareholders, representatives and any parent or subsidiary corporation, or Affiliate  (as well as the officers, directors, employees, managers, shareholders and representatives thereof), it being understood that "Affiliate" shall mean any

17

entity or person that, directly or indirectly, is in control of, is controlled by, or is under common control with, another entity or person. For purposes of this Agreement, an entity or person shall be deemed "controlled by" another entity or person, if such other entity or person possesses directly, or indirectly, power either (i) to vote 10% or more of the securities having ordinary voting power for the election of directors of such entity or person or (ii) to direct or cause the direction of the management and policies of such entity or person whether by contract or otherwise.

19.     <u>General Provisions</u>

(a)     The Parties agree that this Settlement Agreement may be executed in counterparts and will become effective immediately upon execution by all Parties, subject to exchange of signature pages.

(b)     Facsimile signatures in this Settlement Agreement and any and all Exhibits referenced hereinabove shall be treated as originals.

(c)     In the event any provision of this Settlement Agreement is found to be unenforceable, that finding shall not affect the enforceability of any other provision hereof.

(d)     This Settlement Agreement confers no rights upon any party, person and/or entity that is not a signatory hereto.

(e)     The language of this Settlement Agreement is a product of the mutual effort of the Parties. This Settlement Agreement shall be construed fairly as to all Parties, and it shall not be construed for or against any of the Parties on the basis of the extent to which that party participated in drafting it.

(f)     Except as otherwise provided in this Settlement Agreement, the Parties agree to assume their respective costs, expenses and attorneys' fees incurred in the Actions.

18

81337906_12

(g)    This Settlement Agreement constitutes a single, integrated contract expressing the entire agreement of the Parties concerning its subject matter.    All prior discussions and negotiations concerning the subject matter of this Settlement Agreement have been merged and integrated into, and are superseded by, this Settlement Agreement.

IN WITNESS THEREOF, each Party acknowledges and represents that it has read and understands the terms and provisions of this Settlement Agreement and that it knowingly agrees to all of said terms and provisions.

DEFENDANTS:

PROFESSIONAL SOFTWARE
SOLUTIONS OF ILLINOIS, INC.:

DATED: December 27, 2004

By: Lawrence Eyer

Title: President

DENTAL MEDICAL
AUTOMATION, INC.:

DATED: December ___, 2004

By: Jeffrey Suglio
Title: President

PLAINTIFFS:

PRACTICEWORKS, INC.

DATED: December 27, 2004

By: Al Fiore
Title: Vice President, Corporate Development

19

81537906 12

(g)    This Settlement Agreement constitutes a single, integrated contract expressing the entire agreement of the Parties concerning its subject matter.    All prior discussions and negotiations concerning the subject matter of this Settlement Agreement have been merged and integrated into, and are superseded by, this Settlement Agreement.

IN WITNESS THEREOF, each Party acknowledges and represents that it has read and understands the terms and provisions of this Settlement Agreement and that it knowingly agrees to all of said terms and provisions.

DEFENDANTS:

PROFESSIONAL SOFTWARE
SOLUTIONS OF ILLINOIS, INC.:

DATED: December ___, 2004

By: Lawrence Eyer

Title: President

DENTAL MEDICAL
AUTOMATION, INC.:

DATED: December 27, 2004

By: Jeffry Sitallo
Title: President

PLAINTIFFS:

PRACTICEWORKS, INC.

DATED: December 21, 2004

By: Al Fiore
Title: Vice President, Corporate Development

19

$133/7006_12

SOFTDENT LLC

DATED: December 27, 2004

By: Al Fiore
Title: Vice President, Corporate Development

SO ORDERED this 29th day of _____, 2004:

Judge, United States District
For the District of Maryland

20